**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DENNIS MONTGOMERY, an individual
State of Washington

     And

LARRY KLAYMAN, an individual
State of Florida

        Plaintiffs,

v.

JAMES COMEY, an individual,
Individually and in his past official capacity as Director of the
Federal Bureau of Investigation
State of Virginia

     And

FEDERAL BUREAU OF INVESTIGATION,
Washington, DC

     And

MICHAEL S. ROGERS, an individual;
Individually and in his official capacity as Director of the
National Security Agency
State of Virginia

     And

NATIONAL SECURITY AGENCY,
Fort Meade, MD

     And

JOHN BRENNAN, an individual,
Individually and in his past official capacity as Director of the
Central Intelligence Agency
State of Virginia

     And

**COMPLAINT**

MIKE POMPEO, an individual
Individually and in his official capacity as Director of the
Central Intelligence Agency
State of Virginia

    And

CENTRAL INTELLIGENCE AGENCY,
Langley, VA

    And

JAMES R. CLAPPPER, an individual,
Individually and in his past official capacity as Director of
National Intelligence
State of Virginia

    And

DAN COATS, an individual,
Individually and in his official capacity as Director of National
Intelligence
State of Virginia

    And

BARACK OBAMA, an individual,
Individually and in his past official capacity as President of the
United States of America
Washington, D.C.

          Defendants.

## I.   INTRODUCTION

Plaintiffs Dennis Montgomery ("Plaintiff Montgomery") and Larry Klayman ("Plaintiff

Klayman") have, at all material times, been the targets of illegal spying and surveillance by

Defendants the Federal Bureau of Investigation ("FBI") under the leadership of and at the

direction of former FBI Director James Comey ("Defendant Comey"), the National Security

Agency ("NSA") under the leadership of and at the direction of current NSA Director Admiral Michael S. Rogers ("Defendant Rogers"), the Central Intelligence Agency ("CIA") under the leadership of and at the direction of current CIA Director Mike Pompeo ("Defendant Pompeo") and before that former CIA Director John Brennan ("Defendant Brennan"), current Director of National Intelligence Dan Coats (" Defendant Coats"), former President Barack Obama ("Defendant Obama"), and former Director of National Intelligence James R. Clapper ("Defendant Clapper") (collectively "Defendants" unless individually named). Defendants Rogers, Pompeo, Coats, Obama, Comey, Clapper, and Brennan acted outside the scope of their employment, in their personal capacities, and through their surrogates still embedded in the Trump administration (the "Obama Deep State") to illegally and unconstitutionally spy on millions of Americans, including Plaintiffs, without probable cause or a warrant.

Plaintiff Montgomery is a former NSA, CIA, and Director of National Intelligence ("DNI") contractor and whistleblower who has intimate knowledge of Defendants', each and every one them, acting individually and in concert, longstanding pattern and practice of conducting illegal, unconstitutional surveillance on millions of Americans. On August 19, 2015 Plaintiff Montgomery was induced by Defendants Comey and the FBI and made to turn over 47 hard drives of evidence of the aforementioned illegal, unconstitutional activity, which hard drives alone are valued in excess of $50,000 dollars. Indeed, counsel for Montgomery, Plaintiff Klayman, was told and assured by the former General Counsel of the FBI, James Baker, that Defendant Comey was taking "hands on" supervision and conducting the FBI's Montgomery investigation, given its importance. While much of the information was classified, Plaintiff Klayman never saw it, which is why the information was given to Defendant Comey and the FBI to begin with. As a result, on or about December 21, 2015, Plaintiff Montgomery was

interviewed under oath at the FBI Field Office in the District of Columbia. There, over the course of an over three-hour interview, recorded on video, with Special Agents Walter Giardina and William Barnett, Plaintiff Montgomery meticulously laid out the NSA, CIA, DNI's, and the other Defendants' – particularly Defendants Clapper and Brennan's - pattern and practice of conducting illegal, unconstitutional surveillance against millions of Americans, including prominent Americans such as the chief justice of the U.S. Supreme Court, other justices, 156 judges, prominent businessmen, and others such as Donald J. Trump, as well as Plaintiffs themselves. Plaintiffs were assured that the FBI, under Defendant Comey, would conduct a full investigation into the grave instances of illegal and unconstitutional activity set forth by Montgomery. However, the FBI, on Defendant Comey's orders, buried the FBI's investigation because the FBI itself is involved in an ongoing conspiracy to not only conduct the aforementioned illegal, unconstitutional surveillance, but to cover it up as well. Plaintiff Klayman has contacted FBI General Counsel James Baker numerous times to obtain an update on the Montgomery investigation, but has been ignored each time. The FBI has taken no action in the over two years that have passed and has willfully ignored a Privacy Act request for 302 reports of Plaintiff Montgomery's interviews. Defendant Comey and his FBI have obstructed justice and engaged in illegal conduct by sweeping Plaintiff Montgomery's interviews "under the rug." Thus, the FBI, under the leadership of, and at the direction of Defendant Comey, has engaged a massive scheme to cover up the fact that Defendants NSA, CIA and DNI and their respective directors and leaders, as well as Defendants Obama, Brennan, Clapper, Rogers, and Coats have continued to engage in ongoing, unlawful, and unconstitutional mass surveillance. In short, the FBI, under Defendant Comey, itself collaborates with, and continues to collaborate with, the Defendant spy agencies to conduct illegal surveillance.

Recent reports have confirmed that this massive, illegal surveillance is ongoing. In a disclosure from Circa News, it was revealed that:

> The FBI has illegally shared raw intelligence about Americans with unauthorized third parties and violated other constitutional privacy protections, according to newly declassified government documents that undercut the bureau's public assurances about how carefully it handles warrantless spy data to avoid abuses or leaks….Once-top secret U.S. intelligence community memos reviewed by Circa tell a different story, citing instances of "disregard" for rules, inadequate training and "deficient" oversight and even one case of deliberately sharing spy data with a forbidden party…. The behavior the FBI admitted to a FISA judge just last month ranged from illegally sharing raw intelligence with unauthorized third parties to accessing intercepted attorney-client privileged communications without proper oversight the bureau promised was in place years ago.[1]

> The Justice Department inspector general's office declassified a report in 2015 that reveals the internal watchdog had concerns as early as 2012 that the FBI was submitting 'deficient' reports indicating it had a clean record complying with spy data gathered on Americans without a warrant. The FBI normally is forbidden from surveilling an American without a warrant. But Section 702 of the Foreign Surveillance Act, last updated by Congress in 2008, allowed the NSA to share with the FBI spy data collected without a warrant that includes the communications of Americans with "foreign targets." But the FISA court watchdogs suggest FBI compliance problems began months after Section 702 was implemented.[2]

> Amy Jeffress, the former top security adviser to former Attorney General Eric Holder, was appointed by the intelligence court in 2015 to give an independent assessment of the FBI's record of compliance. <u>Jeffress concluded agents' searches of NSA data now extend far beyond national security issues and thus were "overstepping" the constitutional protections designed to ensure the bureau isn't violating Americans' 4th Amendment protections against unlawful search and seizure</u>. "The FBI procedures allow for really virtually unrestricted querying of the Section 702 data in a way the NSA and CIA have restrained it through their procedures," she argued before the court in a sealed 2015 proceeding.[3]

---

[1] John Solomon, Sara Carter, *Declassified Memos Show FBI Illegally Shared Spy Data On Americans With Private Parties*, Circa, May 25, 2017, available at: http://circa.com/politics/declassified-memos-show-fbi-illegally-shared-spy-data-on-americans-with-private-parties.

[2] *Id*.

[3] *Id*. (emphasis added)

Circa News also revealed that Defendant Obama, and the Defendants acting in concert with him, "distribut[ed] thousands of intelligence reports across government with the unredacted names of U.S. residents during the midst of a divisive 2016 presidential election."[4]

> The data, made available this week by the Office of the Director of National Intelligence, provides the clearest evidence to date of how information accidentally collected by the NSA overseas about Americans was subsequently searched and disseminated after President Obama loosened privacy protections to make such sharing easier in 2011 in the name of national security….The revelations are particularly sensitive since the NSA is legally forbidden from directly spying on Americans and its authority to conduct warrantless searches on foreigners is up for renewal in Congress later this year. And it comes as lawmakers investigate President Trump's own claims that his privacy was violated by his predecessor during the 2016 election. In all, government officials conducted 30,355 searches in 2016 seeking information about Americans in NSA intercept metadata, which include telephone numbers and email addresses. The activity amounted to a 27.5 percent increase over the prior year and more than triple the 9,500 such searches that occurred in 2013, the first year such data was kept. The government in 2016 also scoured the actual contents of NSA intercepted calls and emails for 5,288 Americans, an increase of 13 percent over the prior year and a massive spike from the 198 names searched in 2013.[5]

> Among those whose names were unmasked in 2016 or early 2017 were campaign or transition associates of President Trump as well as members of Congress and their staffers, according to sources with direct knowledge.[6]

The revelations disclosed by Circa News have been corroborated with recently declassified court orders. For instance, as revealed and found in a recently declassified order (the "Order") from and of the Foreign Intelligence Surveillance Court ("FISC"), Defendants, each and every one of them, have continued their pattern and practice of illegally and unconstitutionally spying on millions of Americans, and Plaintiffs, in violation of Section 702 of the Foreign Intelligence Surveillance Act ("FISA"). The Order is attached hereto as Exhibit A. Indeed, as recently as October 24, 2016, by its own admission, "the government orally apprised

---

[4] John Solomon, *President Obama's Team Sought NSA Intel on Thousands of Americans During the 2016 Election*, Circa News, May 4, 2017, available at: http://circa.com/politics/president-obamas-team-sought-nsa-intel-on-thousands-of-americans-during-the-2016-election
[5] *Id.*
[6] *Id.*

to Court of significant non-compliance with the NSA's minimization procedures involving questions of data acquired under Section 702 using U.S. person identifiers." Order at 4. In particular, the FBI - under the orders and direction of Defendant Comey and those acting in concert with him– were gross offenders of the FISA, as the Order "chronicles nearly 10 pages listing hundreds of violations of the FBI's privacy-protecting minimization rules that occurred on [Defendant] Comey's watch."[7] "The behavior the FBI admitted to a FISA judge just last month ranged from illegally sharing raw intelligence with unauthorized third parties to accessing intercepted attorney-client privileged communications without proper oversight the bureau promised was in place years ago."[8] Accordingly the FISC took Defendant Comey and the FBI to task in the Order, finding that:

> The Court is nonetheless concerned about the FBI's apparent disregard of minimization rules and whether the FBI may be engaging in similar disclosures of raw Section 702 information that have not been reported. Order at 87.

Defendants, each and every one of them, in concert and as part of their ongoing conspiracy, have used the fruits of their illegal, unconstitutional surveillance not only to serve their own interests, but to cover-up and thus obstruct justice concerning the ongoing surveillance by coordinating "leaks" of sensitive information pertaining to those who may dare to oppose them or reveal their illegal, unconstitutional activities. For example, President Donald J. Trump ("President Trump") credibly accused Defendant Brennan, who worked with Defendant Clapper, the DNI at the time, of leaking false news reports and classified information to the media in an attempt to undermine him.[9] President Trump wrote, "'Outgoing CIA Chief, John Brennan, blasts Pres-Elect Trump on Russia threat. Does not fully understand.' Oh really, couldn't do…much

---

[7] Solomon, supra note 1
[8] Id.
[9] Ryan Saavedra, *Trump Slams Failed CIA Chief*, Gateway Pundit, Jan. 15, 2017, available at:
http://www.thegatewaypundit.com/2017/01/trump-blasts-outgoing-cia-chief-john-brennan-leaker-fake-news/.

worse – just look at Syria (red line), Crimea, Ukraine and the build-up of Russian nukes. Not good! Was this the leaker of Fake News?"[10] Plaintiffs here also fall squarely within the locus of those targeted by Defendants, since Plaintiff Montgomery is a whistleblower and Plaintiff Klayman the attorney who represents him.

Indeed, Plaintiffs Montgomery and Klayman have worked visibly, in the public eye, to raise awareness of, and demand an investigation into, Defendant Comey's illegal obstruction of justice and the FBI's concerted illegal actions in conjunction with the CIA, NSA and DNI, and their respective leaders and directors, to cover up evidence of mass illegal and unconstitutional spying and surveillance. Plaintiff Klayman has met and communicated with the House Intelligence Committee, the Senate Intelligence Committee, the House Judiciary Committee and the Senate Judiciary Committee and their members and staffs regarding to the illegal and unconstitutional spying and surveillance at issue, and on behalf of Plaintiff Montgomery and himself, asked them to investigate Defendant Comey and the FBI's cover-up, and related matters involving Defendants' illegal and unconstitutional surveillance. Since Plaintiff Klayman has begun representing Plaintiff Montgomery in his whistleblowing attempts, Plaintiff Klayman has noticed objectively verifiable signals that he has been the subject of ongoing illegal surveillance, as set forth in detail below. Plaintiff Montgomery too has been the subject of ongoing illegal surveillance, including but not limited to, attempts to hack his personal computer. Defendants are continuing to conduct illegal and unconstitutional surveillance of Plaintiffs as part of their cover-up because they are afraid that Plaintiff Montgomery will reveal their ongoing conspiracy to the public and that Plaintiff Klayman will continue to push for an investigation by congressional committees and other authorities, as well as to pursue court litigation. Indeed, as the Honorable

---

[10] Eli Watkins, *Donald Trump Slams CIA Director Brennan Over Plea for 'Appreciation' of Intel Community*, CNN, Jan. 16, 2017, available at: http://www.cnn.com/2017/01/15/politics/john-brennan-cia-donald-trump/

Richard J. Leon of the U.S. District Court for the District of Columbia stated on the record in a related matter, "…the almost-Orwellian technology that enables the Government to store and analyze the phone metadata of every telephone user in the United States is unlike anything that could have been conceived in 1979." *Klayman v. Obama,* 957 F. Supp. 2d 1, 29 (D.D.C. Dec. 16, 2013). Outrageously – but not surprisingly – Defendants have continued to illegally and unconstitutionally use their "Orwellian" tactics and technologies to engage in ongoing, massive illegal and unconstitutional surveillance of millions of Americans, including Plaintiffs Montgomery and Klayman.

## II.   JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction).

2.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship).

3.      This Court has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367.

4.      Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3) in that Defendants reside here and are subject to personal jurisdiction in this District.

## III.   PARTIES

### Plaintiff

5.      Dennis Montgomery is an individual, natural person who is a citizen of the state of Washington.

6.      Larry Klayman is an individual, natural person who is a citizen of the state of Florida.

**Defendants**

7.      Defendant Comey is an individual and is being sued individually under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ("*Bivens*") and is being sued in his official capacity as Director of the FBI. Defendant Comey served as Director of the FBI from September 4, 2013 until May 9, 2017. During this time span, Defendant Comey oversaw and ordered the illegal and/or unconstitutional actions of the FBI as set forth herein and then covered them up. At all material times, Defendant Comey was and is a citizen of the state of Virginia.

8.      Defendant FBI is a federal agency that is headquartered in Washington, D.C.

9.      Defendant Rogers is an individual and is being sued individually under *Bivens* and in his official capacity as Director of the NSA. Defendant Rogers became NSA Director on April 3, 2014 and still holds this position. During this time span, Defendant Rogers oversaw and ordered the illegal and/or unconstitutional actions of the of NSA and covered them up. At all material times, Defendant Rogers was and is a citizen of the state of Virginia.

10.      Defendant NSA is a federal agency that is headquartered in Fort Meade, Maryland.

11.      Defendant Brennan is an individual and is being sued individually under *Bivens* and in his official capacity as the former Director of the CIA. Defendant Brennan served as CIA director from March 8, 2013 until January 20, 2017. During this time span, and thereafter through surrogates in the "Deep Obama State," Defendant Brennan and the other Defendants oversaw and ordered the illegal and/or unconstitutional actions of the CIA and the other Defendants and covered them up. At all material times, Defendant Brennan was and is a citizen of the state of Virginia.

12.     Defendant Pompeo is an individual and is being sued individually under *Bivens* and in his official capacity as Director of the CIA. Pompeo became CIA director on January 23, 2017 and still holds this position. Defendant Pompeo is a former congressman from Kansas. During this time span, Pompeo oversaw and ordered the illegal and/or unconstitutional actions of the CIA and covered them up. At all material times, Defendant Pompeo was and is a citizen of the state of Virginia.

13.     Defendant CIA is a federal agency that is headquartered in Langley, Virginia.

14.     Defendant Clapper is an individual and is being sued individually under *Bivens* and in his official capacity as the former DNI. Defendant Clapper served as the DNI from August 9, 2010 until January 20, 2017. During this time span, Defendant Clapper oversaw and ordered the illegal and/or unconstitutional actions of the DNI and covered them up. Defendant Clapper has gone so far as to brazenly lie and perjure himself in front of Congress regarding the NSA's and the other Defendants' pattern and practice of running rampant through the constitutional rights of Americans and illegally conducting massive spying operations.[11] Such a blatant and brazen lie under oath is indicative of Defendants' pattern and practice of dishonest behavior, which has led for critics, such as Sen. Rand Paul to call for Defendant Clapper's resignation over the incident, which "amounts to perjury."[12] At all material times, Defendant Clapper was and is a citizen of the state of Virginia.

15.     Defendant Coats is an individual and is being sued individually under *Bivens* and in his official capacity as the DNI. Defendant Coats became the DNI on March 16, 2017 and still holds this position. During this time span, Defendant Coats oversaw and ordered the illegal

---

[11] Julian Hattem, *Attorney: Spy Chief Had 'Forgotten' About NSA Program When he Mislead Congress*, The Hill, May 8, 2015, available at: http://thehill.com/policy/technology/241508-spy-head-had-absolutely-forgotten-about-nsa-program
[12] *Id*.

and/or unconstitutional actions of the DNI and covered them up. At all material times, Defendant Coats was and is a citizen of the state of Virginia.

16.     Defendant Obama is an individual and is being sued individually under *Bivens* and in his official capacity as the former President of the United States. Defendant Obama served as President of the United States from January 20, 2009 until January 20, 2017. During this time span, Defendant Obama oversaw and ordered the illegal and/or unconstitutional actions of the CIA, FBI, NSA, and DNI and covered them up. At all material times, Defendant Comey was and is a citizen of the District of Columbia.

## IV.    STANDING

17.     Plaintiffs have standing to bring this action because they have been directly affected and victimized by the unlawful and unconstitutional conduct complained herein. Their injuries are proximately related to the conduct of Defendants, each and every one of them.

## V.    FACTS

18.     Defendants have continued to engage in ongoing illegal, unconstitutional surveillance of millions of Americans, including prominent Americans such as the chief justice of the U.S. Supreme Court, other justices, 156 judges, prominent businessmen and others such as Donald J. Trump, as well as Plaintiffs themselves.

19.     Defendants Comey, Rogers, Pompeo, Coats, Obama, Clapper, and Brennan acted outside the scopes of their employment, in their personal capacities, to illegally and unconstitutionally spy on millions of Americans, including Plaintiffs, without probable cause or a warrant, and continue to do so through surrogates in the Obama Deep State.

20.     On information and belief, Defendants' ongoing illegal, unconstitutional surveillance continues to occur in numerous ways, including but not limited to, bulk telephony

metadata collection similar to the now "discontinued" Section 215 of the USA PATRIOT ACT as well targeted "PRISM" collection under Section 702 of the Foreign Sovereignties Immunity Act. Additional, specific mechanisms employed by Defendants will be set forth in discovery.

21.     Indeed, a recently declassified order from FISC unsurprisingly revealed that Defendants have continued their pattern and practice of illegally and unconstitutionally spying on millions of Americans, in violation of Section 702 of FISA.

22.     As recently as October 24, 2016, "the government orally apprised to Court of significant non-compliance with the NSA's minimization procedures involving questions of data acquired under Section 702 using U.S. person identifiers." Order at 4.

23.     The FBI - under the direction of Defendant Comey and in conjunction with each and every Defendant – was found to be a gross offender of the FISA. The Order "chronicles nearly 10 pages listing hundreds of violations of the FBI's privacy-protecting minimization rules that occurred on [Defendant] Comey's watch."[13] "The behavior the FBI admitted to a FISA judge just last month ranged from illegally sharing raw intelligence with unauthorized third parties to accessing intercepted attorney-client privileged communications without proper oversight the bureau promised was in place years ago."[14]

24.     Accordingly, the FISC took Defendant Comey and the FBI to task in the Order, finding that "[t]he Court is nonetheless concerned about the FBI's apparent disregard of minimization rules and whether the FBI may be engaging in similar disclosures of raw Section 702 information that have not been reported." Order at 87.

25.     In an article from Circa News, it was revealed that:

> The FBI has illegally shared raw intelligence about Americans with unauthorized third parties and violated other constitutional privacy protections, according to

---

[13] Solomon, supra note 1

[14] Id.

newly declassified government documents that undercut the bureau's public assurances about how carefully it handles warrantless spy data to avoid abuses or leaks….Once-top secret U.S. intelligence community memos reviewed by Circa tell a different story, citing instances of "disregard" for rules, inadequate training and "deficient" oversight and even one case of deliberately sharing spy data with a forbidden party…. The behavior the FBI admitted to a FISA judge just last month ranged from illegally sharing raw intelligence with unauthorized third parties to accessing intercepted attorney-client privileged communications without proper oversight the bureau promised was in place years ago. [15]

The Justice Department inspector general's office declassified a report in 2015 that reveals the internal watchdog had concerns as early as 2012 that the FBI was submitting 'deficient" reports indicating it had a clean record complying with spy data gathered on Americans without a warrant. The FBI normally is forbidden from surveilling an American without a warrant. But Section 702 of the Foreign Surveillance Act, last updated by Congress in 2008, allowed the NSA to share with the FBI spy data collected without a warrant that includes the communications of Americans with "foreign targets." But the FISA court watchdogs suggest FBI compliance problems began months after Section 702 was implemented. [16]

Amy Jeffress, the former top security adviser to former Attorney General Eric Holder, was appointed by the intelligence court in 2015 to give an independent assessment of the FBI's record of compliance. <u>Jeffress concluded agents' searches of NSA data now extend far beyond national security issues and thus were "overstepping" the constitutional protections designed to ensure the bureau isn't violating Americans' 4th Amendment protections against unlawful search and seizure.</u> "The FBI procedures allow for really virtually unrestricted querying of the Section 702 data in a way the NSA and CIA have restrained it through their procedures," she argued before the court in a sealed 2015 proceeding.[17]

26.     Circa News also revealed that Defendant Obama was involved and "distribut[ed]

thousands of intelligence reports across government with the unredacted names of U.S. residents

during the midst of a divisive 2016 presidential election." [18]

The data, made available this week by the Office of the Director of National Intelligence, provides the clearest evidence to date of how information accidentally collected by the NSA overseas about Americans was subsequently

---

[15] John Solomon, Sara Carter, *Declassified Memos Show FBI Illegally Shared Spy Data On Americans With Private Parties*, Circa, May 25, 2017, available at: http://circa.com/politics/declassified-memos-show-fbi-illegally-shared-spy-data-on-americans-with-private-parties.
[16] *Id*.
[17] *Id*. (emphasis added)
[18] Solomon, <u>supra</u> note 4.

searched and disseminated after President Obama loosened privacy protections to make such sharing easier in 2011 in the name of national security….The revelations are particularly sensitive since the NSA is legally forbidden from directly spying on Americans and its authority to conduct warrantless searches on foreigners is up for renewal in Congress later this year. And it comes as lawmakers investigate President Trump's own claims that his privacy was violated by his predecessor during the 2016 election. In all, government officials conducted 30,355 searches in 2016 seeking information about Americans in NSA intercept metadata, which include telephone numbers and email addresses. The activity amounted to a 27.5 percent increase over the prior year and more than triple the 9,500 such searches that occurred in 2013, the first year such data was kept. The government in 2016 also scoured the actual contents of NSA intercepted calls and emails for 5,288 Americans, an increase of 13 percent over the prior year and a massive spike from the 198 names searched in 2013.[19]

Among those whose names were unmasked in 2016 or early 2017 were campaign or transition associates of President Trump as well as members of Congress and their staffers, according to sources with direct knowledge.[20]

27.     The NSA even published on its own website, in 2014, a report detailing instances of its own unauthorized and illegal surveillance practices.[21] These forced admissions of illegality are clearly only the "tip of the iceberg" when it comes to the Defendants' pattern and practice of conducting illegal and unconstitutional surveillance on Americans.

28.     Defendants, each and every one of them, as part of their ongoing conspiracy, have used the fruits of their illegal, unconstitutional surveillance set forth above not only to serve their own interests, but to cover-up the ongoing surveillance by coordinating "leaks" of sensitive information pertaining to those who may dare to oppose them or reveal their illegal, unconstitutional activities.

29.     For instance, President Donald J. Trump credibly accused outgoing CIA Chief, Defendant Brennan, who worked with Defendant Clapper, the former DNI, of leaking false news

---

[19] *Id*.

[20] *Id*.

[21] Kukil Bora, *NSA Reports Show Agency May Have Violated Laws For a Decade by Spying on Americans*, IBT, Dec. 25, 2014, available at: http://www.ibtimes.com/nsa-reports-show-agency-may-have-violated-laws-decade-spying-americans-1767104

reports and classified information to the media in an attempt to undermine him.[22] Trump wrote, "'Outgoing CIA Chief, John Brennan, blasts Pres-Elect Trump on Russia threat. Does not fully understand.' Oh really, couldn't do…much worse – just look at Syria (red line), Crimea, Ukraine and the build-up of Russian nukes. Not good! Was this the leaker of Fake News?"[23]

30.     Plaintiffs Montgomery and Klayman fall squarely within the locus of those targeted by Defendants, since Plaintiff Montgomery is a whistleblower and Plaintiff Klayman the attorney who represents him.

31.     Both Plaintiffs Klayman and Montgomery have, at all material times, made international phone calls and exchanged correspondence with individuals located in foreign nations within the past two years.

32.     As an attorney, Plaintiff Klayman has, in particular, suffered a chilling effect in his First Amendment rights, as Plaintiff Klayman and his clients, including Plaintiff Montgomery are afraid to speak over the phone and communicate otherwise for fear of being surveilled by Defendants. Plaintiff Klayman's attorney-client privilege that he enjoys with his clients has been compromised.

33.     Plaintiff Montgomery is a former NSA, CIA, and DNI contractor and whistleblower regarding Defendants' longstanding pattern and practice of conducting illegal, unconstitutional surveillance on millions of Americans, which continues to this day. Plaintiff Montgomery suffered a brain aneurysm and continues to suffer from the potentially fatal physical symptoms associated with it.

34.     The FBI maliciously and egregiously violated Plaintiff Montgomery's Fourth Amendment rights by illegally and unconstitutionally raiding Plaintiff Montgomery's house,

---

[22] Saavedra, supra note 9.
[23] Watkins, supra note 10.

tying Plaintiff Montgomery to a tree, threatening him and his family, and searching and seizing Plaintiff Montgomery's property without a valid warrant or probable cause.

35.     The FBI was aware that Plaintiff Montgomery was of poor health as a result of his brain aneurysm and egregiously and maliciously violated Plaintiff Montgomery's Fourth Amendments rights not only to illegally and unconstitutionally search and seize his property, but also to cause him severe emotional distress and potentially cause a fatal brain aneurysm, given Plaintiff Montgomery's physically weakened state.

36.     Defendant Comey and the FBI, and the other Defendants, have continued to harass Plaintiff Montgomery and has, on information and belief, fed misleading and false information about him to journalists such as James Risen to smear Plaintiff Montgomery's name and destroy Plaintiff Montgomery's reputation in order to render him an ineffective whistleblower with regard to Defendants' ongoing illegal, unconstitutional mass surveillance.

37.     On August 19, 2015, Plaintiff Montgomery turned over 47 hard drives – valued in excess of $50,000 dollars - of evidence of the aforementioned illegal, unconstitutional activity.

38.     Plaintiff Montgomery was induced by the FBI, under the direction of Defendant Comey, to turn over 47 hard drives under the express promise that the FBI would conduct an investigation into the evidence of the aforementioned illegal, unconstitutional activity contained therein.

39.     However, Defendant Comey and the FBI never conducted the investigation as promised, and instead has, effectively through fraud and other elicit means, seized Plaintiff Montgomery's hard drives without remuneration to ensure that the evidence contained therein is not investigated or revealed to the public and prosecuted as part of the FBI's  and the other Defendants' cover up of Defendants' ongoing conspiracy.

40.     On or around December 21, 2015, Plaintiff Montgomery was interviewed under oath at the FBI field office in Washington, D.C. There, over the course of a three-hour interview, recorded on video, with agents Walter Giardina and William Barnett, Plaintiff Montgomery meticulously laid out the NSA, CIA, and DNI's pattern and practice of conducting illegal, unconstitutional surveillance against millions of Americans, including prominent Americans such as the chief justice of the United States Supreme Court, other justices, 156 judges, prominent businessmen and others such as Donald J. Trump, as well as Plaintiffs themselves.

41.     Plaintiff Klayman has contacted the FBI's General Counsel, James Baker, numerous times to obtain an update on the Montgomery investigation, but has been ignored each time.

42.     Plaintiff Klayman has advised Defendants Comey and the FBI through its General Counsel, James Baker, to not destroy the evidence contained on Plaintiff Montgomery's hard drives and of Plaintiff Montgomery's oral testimony under oath, as it may be used for investigation or criminal prosecution.

43.     Plaintiff Montgomery has since been the victim of multiple hacking attempts against his home and business computers from Defendants, each and every one of them.

44.     Upon tracing the IP addresses of the origination of the hacking attempts, Plaintiff Montgomery discovered that numerous attempts also came from the FBI's Criminal Justice Information Systems office in Clarksburg, West Virginia.

45.     Upon tracing the IP addresses of the origination of the hacking attempts, Plaintiff Montgomery discovered that numerous attempts also came from the the Department of Defense's Network Information Center in Columbus, Ohio.

46.     Upon tracing the IP addresses of the origination of the hacking attempts, Plaintiff Montgomery discovered that numerous attempts also came from the the CIA in Washington, DC.

47.     In March of 2017, Plaintiff Montgomery was also notified that his Apple account was hacked. Upon tracing the IP addresses of the origination of the hacking attempts, Plaintiff Montgomery discovered that the attempt came from the CIA in Langley, Virginia.

48.     On March 27, 2017, Plaintiff Montgomery sent a Privacy Act of 1974 request to the FBI pursuant to 5 U.S.C § 552a(d)(1) to obtain a copy of "any and all documents that refer or relate in any way to any and all 302 reports of the interview in which Plaintiff Montgomery participated in with Special Agents Walter Giardina and William Barnett." Exhibit B.

49.     On March 30, 2017, the FBI sent Plaintiff Montgomery a request for additional documentation.

50.     On April 12, 2017, Plaintiff Montgomery faxed the requested documentation – a Certification of Identity form -  to the FBI.

51.     On May 1, 2017, the FBI confirmed receipt of Plaintiff Montgomery's complete request, but to date, the FBI has refused to comply with the law as mandated by the Privacy Act of 1974 and has failed to produce any documents to Montgomery, given Defendant Comey and the FBI's coverup

52.     Defendant Comey and the FBI has obstructed justice and engaged in illegal conduct by sweeping Plaintiff Montgomery's interview "under the rug." Thus, the FBI, under the leadership of, and at the direction of Defendant Comey, and the other Defendants, have engaged a massive scheme to cover up the fact that Defendants NSA, CIA and DNI and their respective directors and leaders, as well as Defendants Obama, Brennan, Clapper, Rogers, and Coats have continued to engage in ongoing, unlawful, and unconstitutional mass surveillance. In short, the

FBI, under Defendant Comey, itself collaborates with the Defendant spy agencies to conduct illegal surveillance.

53.     Plaintiff Klayman is a prominent public interest attorney who was the founder of Judicial Watch, Inc. and now Freedom Watch Inc. Plaintiff Klayman has brought many lawsuits that have attracted national attention, including one against the NSA and others, among other defendants, for illegally and unconstitutionally spying on millions of Americans.

54.     Plaintiff Klayman has been publicly trying to raise awareness of, and demand an investigation into, Defendants' ongoing illegal and unconstitutional surveillance of millions of Americans, as well as to prosecute wrongdoers.

55.     Plaintiff Klayman has met with House Intelligence Committee, the Senate Intelligence Committee, the House Judiciary Committee and the Senate Judiciary Committee and its members and staff with regard to the illegal and unconstitutional spying and surveillance at issue.

56.     Indeed, almost immediately after Plaintiff Klayman sent the attached letter to Rep. Devin Nunes, chairman of the House Intelligence Committee, Exhibit C, regarding the FBI cover-up of evidence submitted by Montgomery, Plaintiff Klayman received a purported "software update" on his Samsung Galaxy S7 Edge Verizon cellular phone.

57.     After installing the software update, Plaintiff Klayman's phone began acting abnormally, including but not limited to the battery draining at an exponential rate as well as numerous other abnormalities.

58.      Plaintiff Klayman took his phone in to two different Verizon Wireless stores, where technicians confirmed to him that the effects from the purported "software update" were

not normal and highly suspect. Plaintiff Montgomery informed Plaintiff Klayman that this is the way that Defendants install malware used in spying in the phones of surveilled persons.

59.     Indeed, Plaintiff Klayman contacted Samsung and his wireless carrier and confirmed that neither party had initiated the "software update."

60.     Plaintiff Montgomery has confirmed that battery drainage is a tell-tale sign that the Defendants have successfully hacked into a cellular phone and that Defendants often insert malware onto recipients' phones using fake "software updates."

61.     As a result of Defendants' multiple hacking attempts, Plaintiff Klayman was forced to purchase a new Samsung Galaxy S8 phone.

62.     As recent as May of 2017, Plaintiff Klayman's Verizon Wireless Samsung Galaxy S8 phone began acting abnormally again, including but not limited to the battery draining at an exponential rate, as well as erasing and downloading files on its own and without Plaintiff Klayman's consent. Plaintiff Klayman took his phone in to another Verizon Wireless store where technicians confirmed that the phone was not acting normally.

63.     Indeed, WikiLeaks recently revealed that Defendants, including the CIA, "developed malware -- bearing names such as "Assassin" and "Medusa" - intended to target iPhones, Android phones, smart TVs and Microsoft, Mac and Linux operating systems, among others. An entire unit in the CIA is devoted to inventing programs to hack data from Apple products."[24]

64.     According to the WikiLeaks leaks, "[s]ome of the remote hacking programs can allegedly turn numerous electronic devices into recording and transmitting stations to spy on their targets, with the information then sent back to secret CIA servers." "One document appears

---

[24] Cody Derespina, *WikiLeaks Releases 'Entire Hacking Capacity of the CIA'*, Fox News, Mar. 7, 2017, available at: http://www.foxnews.com/us/2017/03/07/wikileaks-releases-entire-hacking-capacity-cia.html

to show the CIA was trying to 'infect' vehicle control systems in cars and trucks for unspecified means." "WikiLeaks hinted that the capabilities revealed in Tuesday's disclosure could have even darker utility than simply spying. 'It would permit the CIA to engage in nearly undetectable assassinations….'"[25]

65.     Furthermore, "'[a]s an example, specific CIA malware revealed in 'Year Zero' is able to penetrate, infest and control both the Android phone and iPhone software that runs or has run presidential Twitter accounts,' the WikiLeaks release stated.[26]

66.     Defendants have targeted Plaintiffs Klayman and Montgomery, and have conducted illegal and unconstitutional surveillance and spying on Plaintiffs, without probable cause or a warrant because they are afraid that Plaintiff Montgomery will reveal their ongoing conspiracy to the public and that Plaintiff Klayman will continue to push for an investigation.

**FIRST CAUSE OF ACTION**
**Fourth Amendment Violation –** *Bivens*
**Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama**

67.     Plaintiffs repeat and reallege all of the previous allegations of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein.

68.     The Fourth Amendment to the U.S. Constitution provides in pertinent part that people have a right to be secure in their persons against unreasonable searches and seizures, that warrants shall not be issued but upon probable cause, and that the place of search must be described with particularity.

69.     Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, acting in their official capacities and personally, violated the Fourth Amendment to the U.S.

---

[25] *Id.*
[26] *Id.*

Constitution when they unreasonably searched and seized and continue to search Plaintiffs' phone and other records, including on the internet and social media, and millions of innocent U.S. citizens' records without reasonable suspicion or probable cause.

70.     Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, acting in their official capacity and personally, violated the Fourth Amendment by not describing with particularity the place to be searched or the person or things to be seized.

71.     As per the recently declassified Order, Defendants, including the FBI under the direction of Defendant Comey, and in conjunction and in concert with each and every named Defendant, have continued to violate the minimization procedures mandated by Section 702 of FISA and have continued to illegally and unconstitutionally spy on millions of Americans, including Plaintiffs Klayman and Montgomery.

72.     By reason of the wrongful conduct of Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, Plaintiffs suffered and continue to suffer from severe emotional distress and physical harm, pecuniary and economic damage, loss of services, and loss of society accordingly.

73.     These violations are compensable under *Bivens*. As a direct and proximate result of the intentional and willful actions of Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, Plaintiffs respectfully request that judgment be entered against Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, each and every one of them, jointly and severally, including an award of compensatory and actual damages in excess of $5,000,000, punitive damages in excess of $90,000,000, equitable relief, reasonable attorney's fees, pre-judgment interest, post-interest and costs, and such other relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION
### First Amendment Violation – *Bivens*
### Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama

74.    Plaintiffs repeat and reallege all of the previous allegations of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein.

75.    Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, acting in their official capacity and personally, abridged and violated Plaintiffs' First Amendment right of freedom of speech and association by significantly minimizing and chilling Plaintiffs' freedom of expression and association.

76.    Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama's acts chill, if not "kill," speech by instilling in Plaintiffs and over a hundred million of Americans the fear that their personal and business conversations and communications with other U.S. citizens and foreigners are in effect tapped and illegally surveyed.

77.    In addition, Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, acting in their official capacity and personally, violated and continue to violate Plaintiffs' right of freedom of association by making them and others weary and fearful of contacting other persons and entities via cell phone, on the internet, and through social media, out of fear of the misuse of government power and retaliation against these persons and entities who challenge the misuse of government power.

78.    As an attorney, Plaintiff Klayman has, in particular, suffered a chilling effect in his First Amendment rights, as Plaintiff Klayman and his clients, including Plaintiff Montgomery are afraid to speak over the phone and communicate otherwise for fear of being surveilled

illegally and unconstitutionally by Defendants. Plaintiff Klayman's attorney-client privilege that he enjoys with his clients has been compromised.

79.     By reason of the wrongful conduct of Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, Plaintiffs suffered and continue to suffer from severe emotional distress and physical harm, pecuniary and economic damage, loss of services, and loss of society accordingly.

80.     These violations are compensable under *Bivens*. As a direct and proximate result of the intentional and willful actions of Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, Plaintiffs respectfully request that judgment be entered against Defendants Comey, Rogers, Brennan, Pompeo, Clapper, Coats, and Obama, each and every one of them, jointly and severally, including an award of compensatory and actual damages in excess of $5,000,000, punitive damages in excess of $90,000,000, equitable relief, reasonable attorney's fees, pre-judgment interest, post-interest and costs, and such other relief as the Court may deem just and proper.

## THIRD CAUSE OF ACTION
### Injunctive Relief
### Each and Every Named Defendant

81.     Plaintiffs repeat and reallege all of the previous allegations of the entirety of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein again at length.

82.     The Fourth Amendment to the U.S. Constitution provides in pertinent part that people have a right to be secure in their persons against unreasonable searches and seizures, that warrants shall not be issued but upon probable cause, and that the place of search must be described with particularity.

83.     Defendants, acting in their individual capacities and in concert with each and every other named Defendant as part of the ongoing conspiracy, violated the Fourth Amendment to the U.S. Constitution when they illegally and unconstitutionally, without probable cause and without any legal basis, wiretapped and surveilled Plaintiffs

84.     Defendants, acting in concert, have illegally and unconstitutionally surveilled millions of Americans, including Plaintiff Klayman and Plaintiff Montgomery in plain violation of their Fourth Amendment rights.

85.     Defendants, acting in concert with each and every other named Defendant as part of the ongoing conspiracy, have illegally and unconstitutionally spied on and surveilled on Plaintiff Klayman, without probable cause or a warrant. Instances of this illegal surveillance include, but are not limited to, on information and belief, a fake "software update" on Plaintiff Klayman's Samsung cellular phones.

86.     Defendants, acting in concert with each and every other named Defendant as part of the ongoing conspiracy, have illegally and unconstitutionally spied on and surveilled Plaintiff Montgomery without probable cause or a warrant. Plaintiff Montgomery has been the victim of multiple hacking attempts against his home and business computers from Defendants since he began filing whistleblower complaints in 2013.

87.     In March of 2017, Plaintiff Montgomery was also notified that his Apple account was hacked. Upon tracing the IP addresses of the origination of the hacking attempts, Plaintiff Montgomery discovered that the attempt came from the CIA in Langley, Virginia.

88.     Plaintiffs will suffer irreparable harm as a result of the illegal and unconstitutional surveillance by Defendants. Plaintiffs respectfully request both preliminary injunctive relief as

well as permanent injunctive relief and such other relief that this Court may deem necessary and proper.

## FOURTH CAUSE OF ACTION
### Appointment of a Special Master
### Each and Every Named Defendant

89.     Plaintiffs repeat and reallege all of the previous allegations of the entirety of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein again at length.

90.     Plaintiff Montgomery was illegally and fraudulently induced to turn over personal hard drives containing evidence of Defendants' pattern and practice of illegally spying and surveillance of Americans to the FBI.

91.     Since the hard drives were turned over to Defendant Comey and the FBI, no investigation has been undertaken and nothing has been done.

92.     The Defendants have buried the information contained on the hard drives and the testimony which Plaintiff Montgomery provided under oath, in an attempt to "save their own skin" from prosecution for their illegal and criminal surveillance and spying on millions of Americans.

93.     Plaintiff Montgomery has never received back the actual hard drives that the information was contained in, as these hard drives were misappropriated.

94.     Plaintiffs request that this Court also appoint a Special Master with the appropriate security clearance to conduct a real and through investigation of the information contained on the hard drives.

95.     Plaintiffs respectfully request that this Court appoint a Special Master with the appropriate security clearance to conduct a real and through investigation of the Defendants'

attempts to and/or actual hacks of Plaintiff Klayman's Verizon Wireless cellular phone and Plaintiff Montgomery's computer, as set forth previously and other such relief that this Court may deem necessary and proper.

### FIFTH CAUSE OF ACTION
**Conversion**
**Defendants Comey and FBI**

96.     Plaintiffs repeat and reallege all of the previous allegations of the entirety of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein again at length.

97.     Montgomery, a former contractor for the CIA, NSA, and DNI and a whistleblower who has revealed the grand scale of the illegal surveillance of the American people perpetrated by Defendants, was induced to turn over hard drives containing evidence of the ongoing illegal and unconstitutional surveillance to Defendant Comey and the FBI, but to date, no action has been taken.

98.     Plaintiff Montgomery was induced to turn over 47 hard drives with a value in excess of $50,000 which he has not received back.

99.     At all material times, the hard drives at issue were the property of Plaintiff Montgomery and Plaintiff Montgomery alone had rightful ownership of the hard drives.

100.     Defendants FBI and Comey exercised unlawful dominion and control over Plaintiff Montgomery's hard drives by refusing to return the hard drives to Montgomery.

101.     Plaintiff Montgomery respectfully requests that this Court order return of the hard drives to Plaintiff Montgomery or that Defendants FBI and Comey compensate Plaintiff Montgomery with the fair market value of the hard drives at the time of the conversion and any other such relief that this Court may deem necessary and proper.

## SIXTH CAUSE OF ACTION
**Injunctive Relief to Require FBI to Fulfill its Obligations Under the Privacy Act of 1974
Defendant FBI**

102.    Plaintiffs repeat and reallege all of the previous allegations of the entirety of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein again at length.

103.    On March 27, 2017, Plaintiff Montgomery sent a Privacy Act of 1974 request to the FBI pursuant to 5 U.S.C § 552a(d)(1) to obtain a copy of "any and all documents that refer or relate in any way to any and all 302 reports of the interview in which Plaintiff Montgomery participated in with Special Agents Walter Giardina and William Barnett." Exhibit B.

104.    On March 30, 2017, the FBI sent Plaintiff Montgomery a request for additional documentation.

105.    On April 12, 2017, Plaintiff Montgomery faxed the requested documentation – a Certification of Identity form -  to the FBI.

106.    On May 1, 2017, the FBI confirmed receipt of Plaintiff Montgomery's complete request, but to date, the FBI has refused to obey the law as mandated by the Privacy Act of 1974 and has failed to produce any documents to Montgomery. Defendant Comey has instructed the FBI to withhold documentation responsive to Plaintiff Montgomery's Privacy Act request.

107.    Plaintiff Montgomery will suffer irreparable harm as a result of the illegal and unconstitutional surveillance by Defendants.

108.    Plaintiff Montgomery respectfully requests that this Court order that the FBI comply with the Privacy Act of 1974 and turn over any and all relevant documentation to Plaintiff Montgomery and any other such relief that this Court may deem necessary and proper.

///

**SEVENTH CAUSE OF ACTION**
**Fraudulent Misrepresentation**
**Defendants Comey and FBI**

109.     Plaintiffs repeat and reallege all of the previous allegations of the entirety of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein again at length.

110.     The FBI, at the direction of and under the leadership of Defendant Comey, falsely represented to Plaintiff Montgomery that the FBI would conduct an investigation into the evidence of illegal, unconstitutional surveillance contained on Plaintiff Montgomery's hard drives and through oral testimony in order to induce Plaintiff Montgomery to turn over the hard drives and to testify under oath to the FBI.

111.     The FBI, under the direction of and under the leadership of Defendant Comey, made this false representation to Plaintiff Montgomery with knowledge of its falsity and with an intent to deceive Plaintiff Montgomery in order to fraudulently induce Plaintiff Montgomery to turn over his hard drives and provide oral testimony under oath.

112.     Defendant Comey and the FBI's fraudulent misrepresentations were material.

113.     Plaintiff Montgomery reasonably relied upon Defendant Comey and the FBI's misrepresentations, made under the direction of Defendant Comey, to turn over his hard drives to the FBI and to provide oral testimony under oath.

114.     Plaintiff Montgomery has been injured as a direct and proximate result of the intentional and willful actions of Defendants Comey and FBI. Plaintiff Montgomery respectfully request that judgment be entered against Defendants Comey and the FBI, including an award of compensatory and actual damages in excess of $3,000,000, punitive damages in excess of

$25,000,000, equitable relief, reasonable attorney's fees, pre-judgment interest, post-interest and costs, and such other relief as the Court may deem just and proper.

### EIGHTH CAUSE OF ACTION
**Fourth Amendment Violation**
**Defendant FBI**

115.    Plaintiffs repeat and reallege all of the previous allegations of the entirety of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein again at length.

116.    The Fourth Amendment provides in pertinent part that people have a right to be secure in their persons against unreasonable searches and seizures, that warrants shall not be issued but upon probable cause, and that the place of search must be described with particularity.

117.    The FBI violated Plaintiff Montgomery's Fourth Amendment rights when it raided Plaintiff Montgomery's house, tied Plaintiff Montgomery to a tree, threatened him and his family, and subsequently searched and seized Plaintiff Montgomery's property without probable cause or a warrant.

118.    The FBI was aware that Plaintiff Montgomery was of poor health as a result of his brain aneurysm and egregiously and maliciously violated Plaintiff Montgomery's Fourth Amendments rights not only to illegally and unconstitutionally search and seize his property, but also to cause him severe emotional distress, given Plaintiff Montgomery's physically weakened state to cause a severe brain aneurysm which could result in death.

119.    The FBI illegally and unconstitutionally seized Plaintiff Montgomery's property in violation of Plaintiff Montgomery's Fourth Amendment Rights.

120.    Plaintiff Montgomery has been injured as a direct and proximate result of the intentional and willful actions of Defendant FBI. Plaintiff Montgomery respectfully request that

judgment be entered against Defendant FBI, including an award of compensatory and actual damages in excess of $3,000,000, punitive damages in excess of $30,000,000, equitable relief, reasonable attorney's fees, pre-judgment interest, post-interest and costs, and such other relief as the Court may deem just and proper.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendant as follows:

(a) For equitable, declaratory, and injunctive relief that this Court deems proper;

(b) For general and compensatory damages in excess of $16,000,000;

(c) For punitive damages in excess of $235,000,000;

(d) For an order requiring Defendants to return Plaintiff Montgomery's hard drives or to pay Plaintiff Montgomery fair market value of the hard drives at the time of conversion and misappropriation

(e) For an order requiring that Defendants not destroy evidence contained on Plaintiff Montgomery's hard drives or of Plaintiff Montgomery's video of oral testimony under oath for investigation and possible criminal prosecution.

(f) For such other relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

**Plaintiffs demand a trial by jury on all counts as to all issues so triable.**

Dated: June 5, 2017                              Respectfully submitted,

                                                 */s/ Larry Klayman*
                                                 Larry Klayman, Esq.
                                                 KLAYMAN LAW GROUP, P.A.
                                                 D.C. Bar No. 334581
                                                 7050 W. Palmetto Park Rd, #15-287
                                                 Boca Raton, FL, 33433
                                                 Tel: (561)-558-5536
                                                 Email: leklayman@gmail.com

Attorney for Plaintiffs