**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                                          )
**DENNIS MONTGOMERY, et al.,**          )
                                                          )
      **Plaintiffs,**                                )
                                                          )
**v.**                                                     )          **Civil Action No. 1:17-cv-1074-RJL**
                                                          )
**JAMES COMEY, et al.,**                       )
                                                          )
      **Defendants.**                              )
———————————————————————)

**DEFENDANTS' BRIEF IN OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ANALYSIS ............................................................................................................................... 5

    A.  No Discovery Should Proceed Against Any Defendant Until the Court Resolves the
        Threshold Issue of Qualified Immunity. ........................................................................... 6

    B.  Plaintiffs Have Failed to Demonstrate That Good Cause Exists to Conduct Discovery
        at this Very Early Stage in the Litigation ........................................................................... 8

CONCLUSION ......................................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*ACLU v. NSA*,
   493 F.3d 644 (6th Cir. 2007) ................................................. 13

*Al-Aulaqi v. Obama*,
   727 F. Supp. 2d 1 (D.D.C. 2010) .......................................... 14

*Al-Haramain Islamic Found., Inc. v. Bush*,
   507 F.3d 1190 (9th Cir. 2007) ............................................... 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................. 1, 2, 5, 7

*Attkisson v. Holder*,
   113 F. Supp. 3d 156 (D.D.C. 2015) ......................... 8, 9, 11, 12

*Bank of Am. v. FDIC*,
   908 F. Supp. 2d 60 (D.D.C. 2012) ........................................... 9

*Cheney v. U.S. Dist. Court*,
   542 U.S. 367 (2004) ............................................................ 14

*CIA v. Sims*,
   471 U.S. 159 (1985) ............................................................ 13

*Clapper v. Amnesty International, USA*,
   133 S. Ct. 1138 (2013) ........................................................ 13

*Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
   96 F.R.D. 619 (D.D.C. 1983) ............................................... 15

*Disability Rights Council of Greater Washington v. WMATA*,
   234 F.R.D. 4 (D.D.C. 2006) ................................................... 8

*FC Inv. Grp., LC v. IFX Markets, Ltd.*,
   529 F.3d 1087 (D.C. Cir. 2008) ........................................... 13

*Freeman v. Seligson*,
   405 F.2d 1326 (D.C. Cir. 1968) ........................................... 14

*Frontier Found. v. Dep't of Justice*,
   No. 11-5221, 2014 WL 3945646 (N.D. Cal. Aug. 11, 2014) ................ 13

*Guttenberg v. Emery*,
   26 F. Supp. 3d 88 (D.D.C. 2014) .................................... passim

*Halkin v. Helms*,
  598 F.2d 1 (D.C. Cir. 1979) ............................................................................................. 13

*Halkin v. Helms,*
  690 F.2d 977 (D.C. Cir. 1982) ......................................................................................... 13

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ........................................................................................................... 6

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ......................................................................................... 14

*Linden v. NSA*,
  94 F.3d 693 (D.C. Cir. 1996) ........................................................................................... 14

*Malibu Media, LLC v. Doe*,
  109 F. Supp. 3d 165 (D.D.C. 2015) ................................................................................... 7

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ........................................................................................................... 6

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010) ......................................................................................... 13

*Salisbury v. United States*,
  690 F.2d 966 (D.C. Cir. 1982) ......................................................................................... 13

*Siegert v. Gilley*,
  500 U.S. 226 (1991) ........................................................................................................... 6

*True the Vote, Inc. v. Internal Revenue Serv.*,
  No. 13-734, 2014 WL 4347197 (D.D.C. Aug. 7, 2014) ................................................. 6, 9, 12

*United Presbyterian Church of the USA v. Reagan*,
  738 F.2d 1375 (D.C. 1984) ............................................................................................... 13

*United States v. Reynolds*,
  345 U.S. 1 (1953) ............................................................................................................. 14

*Wuterich v. Murtha*,
  562 F.3d 375 (D.C. Cir. 2009) ....................................................................................... 6, 12

Statutes

50 U.S.C. § 3024(i) ............................................................................................................. 14

50 U.S.C. § 3605(a) ............................................................................................................. 14

Rules

Fed. R. Civ. P. 26(d)(1)............................................................................................................... 5

Fed. R. Civ. P. 12(a)(3)............................................................................................................... 5, 9

## INTRODUCTION

This Court has stated in no uncertain terms that "expedited discovery is not the norm." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). That admonition is particularly relevant to the Plaintiffs' Motion for Expedited Discovery (cited throughout as "Pls.' Mot."). Contrary to the Plaintiffs' characterization of their discovery requests as "narrow and carefully tailored," their motion actually seeks "*any* documents or correspondence relating to the Defendants' unconstitutional and warrantless spying on Plaintiffs' cellular phone metadata, internet, and social media activity," as well as the depositions of Rule 30(b)(6) witnesses from three different federal agencies on that same subject. Pls.' Mot. at 4 (emphasis added). The Plaintiffs further seek to depose a former Director of National Intelligence ("DNI"), a former Director of the Central Intelligence Agency ("CIA"), and a former Director of the Federal Bureau of Investigation ("FBI"), all three of whom have been sued in their personal capacity and are entitled to assert the defense of qualified immunity. Yet all of these discovery requests are based on nothing but pure speculation that the Plaintiffs were surveilled, that any of the Individual-Capacity Defendants were personally involved in "order[ing] surveillance on Plaintiffs," *id.*, and that the discovery Plaintiffs seek would lead to evidence supporting their barebones and fanciful allegations.

As set forth below, Plaintiffs' motion for expedited discovery should be denied for two reasons. First, as a threshold matter, the Plaintiffs' failure to plead "sufficient factual matter" that any of the seven individually-named defendants, "through the official's own individual actions," were personally responsible for the alleged violation of the Plaintiffs' constitutional rights is a pleading deficiency that, among many others, entitles the individual defendants to qualified immunity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676, 678 (2009). Because the Supreme Court has instructed that discovery against individual-capacity defendants—and even against

other defendants in the same lawsuit who are not asserting qualified immunity—should not proceed until the threshold qualified immunity issue is resolved, *see id.* at 685-86, this Court should deny the Plaintiffs' expedited discovery motion on that basis alone.

Second, as we explain below, the factors that courts typically consider under the "reasonableness" or "good-cause approach" to deciding motions for expedited discovery weigh decisively against Plaintiffs' request.  Plaintiffs make broad discovery requests seeking all documents, as well as testimony from seven current and former Government officials (including the former heads of three federal agencies), on what they maintain is the central issue of the case: whether Plaintiffs have been the subjects of surveillance by the Intelligence Community.  Yet the Plaintiffs can show no genuine need for such discovery, urgent or otherwise, where their claims are unaccompanied by any cogent allegations or evidence of surveillance giving rise to a reasonable expectation that discovery would uncover facts to support them.  Moreover, information concerning whether any particular individual has been subjected to surveillance by the Intelligence Community is subject to a claim of privilege on national security grounds, and it is wholly improper to commence a burdensome discovery process that could implicate such privileged information where threshold dispositive motions have already been scheduled (or are soon contemplated).  And all this in a case where Plaintiffs have done little more than recycle stale and highly speculative allegations of surveillance from other cases that have been pending before this Court for years.

For either or both of these reasons, the Court should deny Plaintiffs' motion to conduct expedited discovery.

## **BACKGROUND**

The Plaintiffs, Dennis Montgomery and Larry Klayman, filed this lawsuit on June 5, 2017, against three federal agencies (the FBI, the CIA, and the National Security Agency

("NSA")) and seven current and former government officials.[1]  Those officials are:  former President Barack Obama, DNI Daniel Coats, former DNI James Clapper, CIA Director Mike Pompeo, former CIA Director John Brennan, NSA Director Michael Rogers, and former FBI Director James Comey.  *See* Compl., ECF No. 1, at 1-2 (June 5, 2017).  The seven individual defendants have been sued in both their official and individual capacities.  *See id.* ¶¶ 7-16.[2]

Plaintiffs allege that the defendants ("each and every one of them") have engaged in "ongoing, illegal, unconstitutional surveillance of millions of Americans, including prominent Americans such as the chief justice [sic] of the U.S. Supreme Court, other justices, 156 judges, prominent businessmen and others such as Donald J. Trump, as well as Plaintiffs themselves." *Id.* ¶¶ 17, 18.  The Plaintiffs further allege that the defendants intend to continue this pattern of illegal and unconstitutional mass surveillance "through surrogates in the Obama Deep State." *Id.* ¶ 19.  They maintain that the surveillance is conducted "in numerous ways, including but not limited to, bulk telephony metadata collection similar to the now 'discontinued' Section 215 [program under] the USA PATRIOT ACT as well as targeted 'PRISM' collection under Section 702 collection of the Foreign [Intelligence Surveillance] Act [("FISA")]." *Id.* ¶ 20.  The Plaintiffs also allude to recent allegations that the CIA has developed "malware" capable of infecting a variety of cell phones and other consumer electronic devices to "turn [them] into recording and transmitting stations to spy on [CIA] targets." *Id.* ¶¶ 63-64.

---

[1]  Additional background information on Plaintiff Montgomery is set forth in the Government Defendants' Opposition to Plaintiffs' Motion for In Chambers and Ex Parte Interview of Witness Dennis Montgomery, *Klayman v. Obama*, 13-cv-881 (D.D.C.), ECF No. 94, at 4-7.  This Court denied plaintiffs' request for the Court to conduct an *ex parte* interview of Mr. Montgomery.  *See* Minute Order (Feb. 11, 2016).

[2]  To the extent the individual defendants are sued in their official capacity, these defendants, along with the three agency defendants, will be referred to as the "Government Defendants."  To the extent the individual defendants are sued in their personal capacity, they will be referred to as the "Individual-Capacity Defendants."

According to the Plaintiffs, the defendants have "used the fruits" of the illegal surveillance to "serve their own interests" and to "cover-up" their wrongdoing by leaking sensitive information about those who "dare to oppose them," including President Trump. *Id.* ¶¶ 28-29. As part of the "cover up," the Plaintiffs claim that the FBI, under Mr. Comey's direction, fraudulently induced Mr. Montgomery to turn over a set of 47 computer hard drives containing evidence of the illegal surveillance "under the express promise that the FBI would conduct an investigation into the . . . illegal, unconstitutional activity," when in fact the intent was to "bury" the evidence contained on the hard drives and ensure it "is not investigated or revealed to the public." *Id.* ¶¶ 37-38.

As evidence that the two Plaintiffs themselves have been subjected to the alleged illegal surveillance, they assert that Mr. Montgomery, as a whistleblower, and Mr. Klayman, as his attorney, "have worked visibly, in the public eye, to raise awareness of, and demand an investigation into" the defendants' allegedly illegal activities, and thus "fall squarely within the locus of those targeted" for surveillance. *Id.* at 8-9; *see, e.g., id.* ¶¶ 30, 66. They further assert that their personal and business computers and cell phones have in unspecified ways been "hacked," and that Mr. Montgomery has been able to trace the alleged attacks on his computers to IP (Internet protocol) addresses he alleges are used by the CIA, the FBI, and the Department of Defense. *Id.* ¶¶ 43-48, 56-62.

Two weeks after they filed their complaint, the Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. *See* ECF No. 7 (June 19, 2017). Such relief was necessary, the Plaintiffs argued, to prevent the defendants "from (1) illegally and unconstitutionally spying on and surveilling millions of Americans, including Plaintiffs, without probable cause or a warrant, and (2) destroying evidence of illegal and unconstitutional spying turned over to Defendant Comey and the FBI by Plaintiff Montgomery." *Id.* at 1. At the

scheduling conference held on June 23, 2017, the Court ordered the Government Defendants to submit a combined motion to dismiss and opposition to the Plaintiffs' motion for a preliminary injunction by August 1; the Plaintiffs to file a combined response to the Government Defendants' motion to dismiss and reply in support of their preliminary injunction motion by August 15; and the Government Defendants to file a reply in support of their motion to dismiss by August 22.

In the meantime, the Plaintiffs have personally served some of the Individual-Capacity Defendants:  NSA Director Rogers, CIA Director Pompeo, DNI Coats, former DNI Clapper, and former FBI Director Comey.  Based on the various dates that they were served, and pursuant to Federal Rule of Civil Procedure 12(a)(3), these defendants' motions to dismiss are currently due between August 18 and September 5.  To our knowledge, former President Obama and former CIA Director Brennan have not been personally served in this matter yet.[3]

## ANALYSIS

Under the Federal Rules of Civil Procedure, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."  Fed. R. Civ. P. 26(d)(1). This moratorium on discovery may be lifted only by local rule, court order, or agreement of the parties.  Id.  Here, Plaintiffs ask for a court order to lift this moratorium, but their motion fails to support a departure from the norm, see Guttenberg, 26 F. Supp. 3d at 97 ("expedited discovery is not the norm"), because expedited discovery is not appropriate when the Individual-Capacity

---

[3]  Insofar as they are sued in their personal capacity, this brief is submitted on behalf of only those Individual-Capacity Defendants who are, as of today's date, represented by the Torts Branch of the Department of Justice's ("DOJ") Civil Division and for whom we have confirmation of personal service in this matter:  NSA Director Rogers, DNI Coats, former DNI Clapper, and CIA Director Pompeo.  Insofar as they are sued in their official capacity, this brief is submitted on behalf of all of the individually-named defendants (all of whom are represented in their official capacity, together with the agency defendants, by the Civil Division's Federal Programs Branch).  All that said, the reasons discussed in this brief for denying the plaintiffs' motion for expedited discovery necessarily would apply to all of the Individual-Capacity Defendants.

Defendants will raise a qualified immunity defense, and when, in addition, Plaintiffs have failed

to carry their burden of establishing "good cause" to conduct such discovery now.

**A.   No Discovery Should Proceed Against Any Defendant Until the Court Resolves
the Threshold Issue of Qualified Immunity.**

Among other things, the Plaintiffs have requested the expedited depositions of former

DNI Clapper, former CIA Director Brennan, and former FBI Director Comey.  Pls.' Mot. at 4, 7.

Yet all three of these defendants, along with all of the other Individual-Capacity Defendants,

anticipate raising a qualified immunity defense in this case.  As this Court has explained, this is a

significant consideration in denying a motion for expedited discovery:

> [B]ecause discovery is sought from the individual defendants, the discovery is
> much broader than legally permissible at this point, because the individual
> defendants have all asserted qualified immunity defenses in their pending motions
> to dismiss.  The Supreme Court has clearly instructed that '[o]nce a defendant
> pleads a defense of qualified immunity, . . . the judge appropriately may
> determine, not only the currently applicable law, but whether that law was clearly
> established at the time an action occurred' and '[u]ntil this threshold immunity
> question is resolved, discovery should not be allowed.'  *Siegert v. Gilley*, 500 U.S.
> 226, 231 (1991) (citation and quotation marks omitted).

*True the Vote, Inc. v. Internal Revenue Serv.*, No. 13-734, 2014 WL 4347197, at *7

(D.D.C. Aug. 7, 2014).[4]

This analysis applies with added force here for at least two reasons.  First, the Individual-

Capacity Defendants have not even had a chance to assert their qualified immunity defense.

---

[4]  *See also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Moreover, because the
entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly
have stressed the importance of resolving immunity questions at the earliest possible
stage in litigation.") (citation and quotation marks omitted); *Mitchell v. Forsyth*, 472 U.S.
511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly
established law, a defendant pleading qualified immunity is entitled to dismissal before
the commencement of discovery."); *Wuterich v. Murtha*, 562 F.3d 375, 382 (D.C. Cir.
2009) (defense of qualified immunity "entitles government officials not merely to avoid
standing trial, but also to avoid the burdens of such pretrial matters as discovery . . . , as
[i]nquiries of this kind can be particularly disruptive of effective government") (internal
quotations and citation omitted).

That is because their sixty days to respond to the complaint will not expire until August 18 at the earliest—and for former President Obama and former CIA Director Brennan, that sixty-day clock has not even begun (inasmuch as, to our knowledge, those two defendants have not been personally served).  The Plaintiffs' motion for expedited discovery thus contravenes core qualified immunity principles to a far greater degree than in *True the Vote*, where the defendants at least were able to raise their qualified immunity defense before the plaintiffs sought expedited discovery from them.

Second, "[m]ere conjecture or speculation is not enough to justify" expedited discovery. *Malibu Media, LLC v. Doe*, 109 F. Supp. 3d 165, 168 (D.D.C. 2015) (internal quotations and citation omitted).  Yet mere conjecture and speculation is the only thing that the Plaintiffs have to suggest that the former Director of National Intelligence, the former CIA Director, and the former FBI Director all personally ordered unlawful surveillance of Mr. Montgomery and Mr. Klayman specifically.  The Plaintiffs' complaint contains zero well-pled factual allegations that would allow the Court to "draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  As such, the Plaintiffs' bald and unfounded speculation is not sufficient to overcome the Individual-Capacity Defendants' right to qualified immunity, *see id.* at 680-84; it thus certainly is not sufficient to require that the former Director of National Intelligence, the former CIA Director, and the former FBI Director be made to sit for depositions—on an expedited basis, no less—on the Plaintiffs' fanciful conspiracy theory that these Defendants personally ordered unlawful surveillance on these two particular Plaintiffs.

Indeed, the need to resolve qualified immunity before allowing discovery to proceed is so compelling that the Supreme Court has instructed lower courts not to permit discovery against any other defendants—even those who cannot assert a qualified immunity defense—until the court has resolved the qualified immunity issue. *See id.* at 685-86.  This is necessary because,

"when discovery as to the other parties proceeds," the Individual-Capacity Defendants and their counsel would have "to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position." *Id*. at 685.  That goes double here, as the Plaintiffs are seeking documents from, and Rule 30(b)(6) depositions of witnesses who work at, the very agencies that the Individual-Capacity Defendants were or are in charge of.

Accordingly, for this reason alone, the Court should deny Plaintiffs' motion for expedited discovery.

### B.   Plaintiffs Have Failed to Demonstrate That Good Cause Exists to Conduct Discovery at this Very Early Stage in the Litigation.

Even if the question of qualified immunity did not compel denial of Plaintiffs' request for expedited discovery, Plaintiffs have not made the showing required before expedited discovery can be allowed.  District courts within the D.C. Circuit apply a "good cause" or "reasonableness" test to determine if expedited discovery is appropriate.  *See Guttenberg*, 26 F. Supp. 3d at 98; *Disability Rights Council of Greater Washington v. WMATA*, 234 F.R.D. 4, 6-7 (D.D.C. 2006). Under that test, a court considers the "reasonableness of the request in light of all of the surrounding circumstances, which include:  (1) whether a preliminary injunction [motion] is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made."  *Guttenberg*, 26 F. Supp. 3d at 98 (internal quotations and citations omitted).  "Courts are not limited to these factors, but [they] provide 'guidelines for the Court's discretion.'"  *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015).

Taken together, these factors weigh strongly in favor of denying Plaintiffs' request to conduct overly broad and burdensome discovery on an expedited basis.  First, the timing of the Plaintiffs' motion for expedited discovery weighs heavily against granting the motion.  "Because

discovery typically occurs after the resolution of motions to dismiss, presenting a motion for expedited discovery prior to rulings on motions to dismiss is often disfavored." *Id.* at 165 (internal citation omitted); *see also Guttenberg*, 26 F. Supp. 3d at 99 (denying expedited discovery motion in part because it was filed while motions to dismiss were pending and was thus "well in advance of typical discovery") (internal quotations and citation omitted); *True the Vote*, 2014 WL 4347197, at *8 ("Typically, discovery begins upon the resolution of any motions to dismiss."); *Bank of Am. v. FDIC*, 908 F. Supp. 2d 60, 83-84 (D.D.C. 2012) ("[A] motion to dismiss is brought during the initial stages of a case, before discovery has commenced . . ."). Indeed, the pendency of a motion to dismiss is often one of the "most important" considerations in analyzing a request for expedited discovery. *Guttenberg*, 26 F. Supp. 3d at 99.

In this respect, Plaintiffs' motion for expedited discovery is especially premature, as it was filed before the Defendants' motions to dismiss are due. This Court has specifically given the Government Defendants until August 1 to file a combined motion to dismiss and response to Plaintiffs' motion for preliminary injunction. *See* Minute Order (June 27, 2017). The Individual-Capacity Defendants then have several weeks after August 1 to file their own motions to dismiss. *See* Fed. R. Civ. P. 12(a)(3).[5]

Once they actually file their motions to dismiss, the Government Defendants and the Individual-Capacity Defendants anticipate raising numerous reasons why this case should be dismissed in its entirety. Those include a lack of standing, sovereign immunity, qualified

---

[5] The expedited discovery request is so premature in fact that the Plaintiffs, by their own admission, still have not personally served all of the Individual-Capacity Defendants, namely, former President Obama. *See* Pls.' Mot. at 2. Also, while the Plaintiffs claim that they have personally served former CIA Director Brennan, *id.*, they have offered no proof of such service, and the undersigned is not aware of any such service on Mr. Brennan. Either way, the fact that the "parties appear still to dispute even whether the plaintiffs have properly served the defendants" only proves that the Plaintiffs' expedited discovery motion is untimely. *Attkisson*, 113 F. Supp. 3d at 166.

immunity, the unavailability of an implied damages remedy against the Individual-Capacity

Defendants, and absolute Presidential immunity, to name just a few.  Thus, "if the Court were to

grant plaintiffs' discovery motion, and then grant defendants' motion to dismiss . . . , defendants

would have been forced to expend significant resources responding to discovery requests in a

case where plaintiffs" could not survive a motion to dismiss.  *Guttenberg*, 26 F. Supp. 3d at 99.

Under these circumstances, "[a]t the very least, reasonableness dictates that the Court consider

defendants' motion[s] to dismiss before requiring extensive and expensive"—and extremely

intrusive—discovery.  *Id.*  That is a particularly reasonable course here given that the Court, in

the face of the Plaintiffs' motion for a temporary restraining order and preliminary injunction,

already chose to set out a specific schedule for the Government Defendants to file a motion to

dismiss in combination with a response to the preliminary injunction request.

      <u>Second</u>, notwithstanding that Plaintiffs have moved for preliminary injunctive relief, they

have not demonstrated an urgent need for discovery on an expedited basis.  "When the plaintiff

will be irreparably harmed without expedited discovery, this factor weighs in favor of granting a

motion for expedited discovery."  *Id.* at 164.  None of Plaintiffs' submissions to date, however,

contains any plausible allegations or evidence of surveillance on which to anticipate that

discovery (expedited or otherwise) will lead to documents or information supportive of their

claims.  *See supra*, at 3-4.  They do not claim to be or to communicate with non-U.S. persons,

located abroad, who have been targeted for foreign-intelligence purposes under the NSA's

PRISM program, *see* Compl. ¶ 20; they have offered no evidence to support their allegation of a

revived bulk telephony-metadata program, *see id.*; and they do not tenably explain why they

would be targeted for surveillance using alleged CIA "malware," *see id.* ¶¶ 63-64.  Plaintiffs who

seek license to conduct expedited discovery must predicate a claim of "need," at the least, on a

colorable claim of injury warranting judicial relief, and such is lacking here.

Moreover, many of the allegations of surveillance in this case also form the basis of three

other lawsuits filed by Mr. Klayman that have been pending before this Court for three to four

years, and in which the Court has discerned no justification for conducting discovery.  *Compare*

*Montgomery v. Trump*, No. 17-cv-1074, ECF No. 1 ¶ 20 ("bulk telephony metadata collection"

and "targeted 'PRISM' collection under Section 702 of the Foreign [Intelligence Surveillance]

Act"), *with Klayman v. Trump* (*Klayman I*), No. 13-cv-851, ECF No. 145-1 ¶¶ 1, 51, 54, 60, 67

(bulk telephony metadata collection), *and Klayman v. Trump* (*Klayman II*), No. 13-cv-881, ECF

No. 106-1 ¶¶ 1-3, 10, 58, 63-64, 70, 73 (*inter alia*, bulk telephony metadata collection and

PRISM), *and Klayman v. Trump* (*Klayman III*), No. 14-cv-92, ECF No. 1 (same allegations as

*Klayman II*).  In those cases, the Court has consistently denied plaintiffs' many requests to begin

the discovery process.  *See*, *e.g.*, *Klayman I*, Minute Order (July 30, 2014); Minute Order (Apr.

13, 2017).  Given that there was no urgency to begin the discovery process in those cases, there

can be "no urgency in conducting discovery" regarding the stale allegations of similar

surveillance in this case.  *See Attkisson*, 113 F. Supp. 3d at 164.  Accordingly, "this factor

weighs against granting expedited discovery."  *Id.*[6]

Third, while the Plaintiffs assert, in conclusory fashion and without elaboration, that "the

breadth of the discovery request is defined and limited," Pls.' Mot. at 7, the requests themselves

belie that assertion.  Plaintiffs are seeking discovery from at least seven different sources.  They

seek all documents relating to the alleged "warrantless spying on Plaintiffs' cellular phone

metadata, internet, and social media activity"; depositions of the former FBI Director, the former

---

[6] Indeed, Plaintiffs' litigation of this suit to date undermines any argument they might
make as to their urgent need for discovery to avoid irreparable harm.  Plaintiffs filed their
Complaint on June 5, 2017, ECF No. 1, and then waited two weeks before filing a motion for a
temporary restraining order and a preliminary injunction, without, at that time, seeking
discovery.  *See* ECF No. 7.  Plaintiffs then waited more than two weeks again—a full month
after filing their Complaint—to move for expedited discovery.  *See* ECF No. 15.  This
inexcusable delay does not evidence an urgent need for discovery.

CIA Director, and the former Director of National Intelligence on "whether they ordered surveillance on Plaintiffs"; and also Rule 30(b)(6) depositions of the FBI, CIA, and NSA on the subject of the same allegedly "warrantless spying." *Id.* By the very nature of these requests, Plaintiffs' proposed discovery is "not narrowly tailored" but rather seeks "relatively broad discovery" on what they contend is "the central issue in this case," *Guttenberg*, 26 F. Supp. 3d at 98: whether the Government conducted unlawful surveillance on the Plaintiffs. When the proposed discovery would go to the "heart of the case," then "a request for expedited discovery is inappropriate." *Attkisson*, 113 F. Supp. 3d at 163.

Finally, in these circumstances, Plaintiffs' expedited discovery requests would place a significant burden on Defendants. As to the Individual-Capacity Defendants, it bears repeating that they anticipate raising a qualified immunity defense. And "settled law 'entitles government officials not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery' until those defenses have been addressed." *True the Vote*, 2014 WL 4347197, at *8 (quoting *Wuterich*, 562 F.3d at 382).

As for the Government Defendants, they too would be unnecessarily and unduly burdened by commencing an expedited discovery process here in light of the thin reed upon which Plaintiffs' claims of alleged surveillance are based. At bottom, Plaintiffs' document and deposition requests seek to answer the question whether or not they have been the subjects of surveillance by U.S. intelligence agencies. *See* Pls.' Mot. at 4. And it is well-established that whether or not an individual has been the target or subject of intelligence-gathering activities is national security information that the Government may legitimately protect from disclosure in litigation.[7] *See Halkin v. Helms,* 690 F.2d 977, 993 & n.57 (D.C. Cir. 1982); *Halkin v. Helms,*

---

[7] Plaintiffs "anticipat[ed]" that Defendants would assert "that all or some of the responsive documentation is 'classified,'" and so they suggested that the Court could "review such documentation *in camera*" and thus resolve the issue in that manner. *See* Pls.' Mot. at 8.

598 F.2d 1, 9 (D.C. Cir. 1979). *See also Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070,

1086 (9th Cir. 2010); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1202-03 (9th

Cir. 2007); *ACLU v. NSA*, 493 F.3d 644, 656, 690 (6th Cir. 2007). *Cf. CIA v. Sims*, 471 U.S. 159,

161-62, 173-74 (1985); *Salisbury v. United States*, 690 F.2d 966, 971 (D.C. Cir. 1982); *Elec.*

*Frontier Found. v. Dep't of Justice*, No. 11-5221, 2014 WL 3945646, at *5-7 (N.D. Cal. Aug.

11, 2014).

Expediting discovery in this case, where the information sought is subject to a claim of

privilege, would be particularly egregious given that there is not a shred of credible evidence to

support Plaintiffs' bare allegations that they are the targets of, or are otherwise subject to, the

surveillance they allege.  Plaintiffs merely assert in their motion that Defendants have engaged in

a "pattern and practice of illegally and unconstitutionally spying on millions of Americans" and

then conclude that "[i]t therefore follows logically that Plaintiffs are the targets" of this

surveillance because "Plaintiffs are clear threats to expose Defendants' illegal and

unconstitutional behavior."  Pls.' Mot. at 3.  This conjecture and speculation is insufficient to

allow Plaintiffs to unlock the doors to expedited discovery.  *Cf. FC Inv. Grp., LC v. IFX Markets,*

*Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008) (no jurisdictional discovery when request based on

"mere conjecture or speculation"); *United Presbyterian Church of the USA v. Reagan*, 738 F.2d

1375, 1383 (D.C. 1984) (jurisdictional discovery requests to uncover evidence of otherwise

unsubstantiated allegations of surveillance is "a 'fishing expedition' of the most obvious kind").

---

However, that proposal is foreclosed by the Supreme Court's decision in *Clapper v. Amnesty International, USA*, 133 S. Ct. 1138 (2013).  There, too, it was suggested that the Government disclose evidence regarding whether the plaintiffs were subject to surveillance "through an *in camera* proceeding," but the Supreme Court flatly rejected the idea because, *inter alia*, any subsequent decision by the court based on the contents of the documents reviewed would effectively disclose the information reviewed in the *in camera* proceeding.  *See Amnesty Int'l*, 133 S. Ct. at 1149 n.4.  The same reasoning applies here and bars *ex parte* review of classified information for the purpose of ascertaining whether Plaintiffs were the subject of surveillance.

In addition, before reaching any need to address the state secrets privilege,[8] courts look favorably upon the consideration of alternative grounds for disposing of a case, such as deciding Defendants' forthcoming motions to dismiss, in order to avoid "forcing a showdown on the claim of privilege." *Reynolds*, 345 U.S. at 10-11; *cf. Cheney v. U.S. Dist. Court*, 542 U.S. 367, 390 (2004) (encouraging courts "whenever possible" to "explore other avenues" to avoid forcing an assertion of Executive privilege that may not be necessary); *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968) (matters of privilege should "appropriately be deferred"); *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 53-54 (D.D.C. 2010) (Bates, J.) (in granting motion to dismiss on other grounds, court noted that the Government "also correctly and forcefully observe[d] that this Court need not, and should not, reach their claim of state secrets privilege because the case can be resolved on the other grounds they have presented").[9]

---

[8] In addition to the state secrets privilege, discovery that seeks information about NSA intelligence-gathering programs, for example, are also subject to absolute protection from disclosure. Section 6 of the National Security Agency Act provides (with a narrow exception not pertinent here) that "nothing in this chapter [Title 50, U.S.C., ch. 47] or any other law … shall be construed to require the disclosure of … any function of the [NSA], or any information with respect to the activities thereof …." 50 U.S.C. § 3605(a). Congress thus enacted "a statutory privilege unique to the NSA," *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009), affording "absolute" protection to information about NSA intelligence programs. *See Linden v. NSA*, 94 F.3d 693, 698 (D.C. Cir. 1996). Discovery for the purpose of ascertaining whether the NSA conducted surveillance of Plaintiffs would necessarily contemplate access to information about NSA intelligence-collection activities, and would be barred by Section 6. *See also* 50 U.S.C. § 3024(i) ("The Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure.").

[9] And, if ultimately necessary, a "formal claim of [the state secrets] privilege [must be] lodged by the head of the department . . . after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7-8. But high-ranking Government officials should not be diverted from their critical law enforcement and national security duties to personally consider such issues unless, and not until, it becomes unavoidably necessary for purposes of the litigation. As other courts have recognized in other contexts, "public policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases. *Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983).

## **CONCLUSION**

For the reasons stated above, the Court should deny Plaintiffs' Motion for Expedited

Discovery.


Respectfully submitted this 20th day of July 2017,

CHAD A. READLER
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

/s/ *James R. Whitman*
JAMES R. WHITMAN (D.C. Bar No. 987694)
Senior Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4169
Fax: (202) 616-4314

Attorneys for Daniel Coats, James R. Clapper,
Michael S. Rogers, and Michael Pompeo,
solely in their individual capacity


ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

 /s/ *Rodney Patton*
RODNEY PATTON
Senior Counsel

JULIA A. BERMAN
CAROLINE J. ANDERSON
TIMOTHY A. JOHNSON
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7320
Washington, D.C.  20001
Phone: (202) 305-7919
Fax: (202) 616-8470
E-mail:  rodney.patton@usdoj.gov

Counsel for the Government Defendants