**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
DENNIS MONTGOMERY, *et al.*,              )
                                                          )
      Plaintiffs,                                )
                                                          )
v.                                                        )          Civil Action No. 1:17-cv-1074-RJL
                                                          )
JAMES COMEY, *et al.*,                          )
                                                          )
      Defendants.                              )
_____)

**GOVERNMENT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTIONS TO DISMISS AND FOR PARTIAL SUMMARY
JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..........................................................................................................1

SUMMARY OF PLAINTIFFS' ALLEGATIONS .......................................................5

ARGUMENT ..............................................................................................................7

I.    COUNTS THREE, FIVE, SEVEN, AND EIGHT SHOULD BE DISMISSED UNDER
      RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION.........................9

      A.    Plaintiffs Have Not Plausibly Alleged that They Are the Subjects of
            Government Surveillance, and Thus Count Three Should Be Dismissed
            Because They Lack Standing to Challenge Such Surveillance ..............................9

            1.    To Survive Dismissal, Plaintiffs Must Make Plausible,
                  Non-Conclusory Allegations That They Are or Will Be the
                  Subject of Government Surveillance ........................................................10

            2.    Plaintiffs Fail to Allege Any Facts Showing Their Communications
                  Are Being or Will Be Collected under PRISM, a Program that Does
                  Not Target U.S. Persons............................................................................13

            3.    Plaintiffs Do Not Plausibly Allege that Bulk Collection of
                  Telephony Metadata Has Been Reestablished In Contravention
                  of the USA FREEDOM Act of 2015, or, Even It Had, That Their
                  Communications Would Be Collected By It .............................................17

            4.    Plaintiffs' Allegations that They Are the Targets of Surveillance
                  Using CIA "Malware" Are Frivolous .......................................................20

      B.    Counts Five and Seven Should Be Dismissed for Lack of Subject-Matter
            Jurisdiction Because Plaintiff Montgomery Has Brought Those
            Common-Law Tort Claims Against the Wrong Parties........................................23

      C.    Plaintiff Montgomery's Eighth Count, for Damages Against the FBI for
            a "Raid" of Plaintiff Montgomery's Home, Is Barred by Sovereign
            Immunity, or, Alternatively, By the Statute of Limitations, and Must Be
            Dismissed for Lack of Subject-Matter Jurisdiction. .............................................25

II.   COUNT FOUR SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE
      TO STATE A CLAIM .....................................................................................................28

i

III.    THE COURT SHOULD GRANT THE GOVERNMENT DEFENDANTS' MOTION
        FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT SIX ...................................31

IV.     PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER
        AND PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE
        PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS AND NOR
        ARE THEY LIKELY TO SUFFER IRREPARABLE HARM ........................................35

        A.      Legal Standard ......................................................................................36

        B.      The Court Should Deny Plaintiffs' Motion to the Extent It Is Premised
                on Count Three of the Complaint Because They Lack Standing to Seek
                an Injunction Against Any Alleged Government Surveillance ............................38

        C.      The Court Should Deny Plaintiffs' Motion to the Extent It Is Premised
                on Counts Five and Seven Because They Must Be Dismissed for Lack
                of Subject Matter Jurisdiction; the Motion Should Also Be Denied to
                the Extent It is Premised on Count Six Where Summary Judgment Is
                Appropriate ............................................................................................40

CONCLUSION ...........................................................................................................42

# TABLE OF AUTHORITIES

**CASES**                                            **PAGE(S)**

*Abdullah v. Obama,*
753 F.3d 193 (D.C. Cir. 2014) .......... 36

*Advance Am. v. Fed. Deposit Ins. Corp.,*
2017 WL 2869918 (D.D.C. July 5, 2017) .......... 29

*Ali v. Rumsfeld,*
649 F.3d 762 (D.C. Cir. 2011) .......... 25

*Am. Fed'n of Gov't Employees, AFL-CIO v. Reagan,*
870 F.2d 723 (D.C. Cir. 1989) .......... 14

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .......... 32

*In re Application of the FBI,*
2013 WL 5741573 (Aug. 29, 2013) .......... 20

*Ark. Dairy Coop. Ass'n v. Dep't of Agric.,*
573 F.3d 815 (D.C. Cir. 2009) .......... 37

*Arpaio v. Obama,*
797 F.3d 11 (D.C. Cir. 2015), *cert. denied,* 136 S. Ct. 900 (2016), *reh'g denied,*
136 S. Ct. 1250 (2016) .......... 12, 19

*Ashcroft v.* Iqbal,
556 U.S. 662 (2009) .......... passim

*Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.,*
564 F.3d 462 (D.C. Cir. 2009) .......... 39

*Banneker Ventures, LLC v. Graham,*
798 F.3d 1119 (D.C. Cir. 2015) .......... 29

*Bayer HealthCare, LLC v. FDA,*
942 F. Supp. 2d 17 (D.D.C. 2013) .......... 37

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......... 12

*Benoit v. U.S. Dep't of Agric.,*
608 F.3d 17 (D.C. Cir. 2010) .......... 25

*Best v. Kelly,*
    39 F.3d 328 (D.C. Cir. 1994) ..................................................................... 12

*Bickford v. Gov't of U.S.,*
    808 F. Supp. 2d 175 (D.D.C. 2011) ............................................................ 9

In re *Bituminous Coal Operators' Ass'n, Inc.,*
    949 F.2d 1165 (D.C. Cir. 1991) ............................................................ 29, 31

*Bivens* v. *Six Unknown Named Agents,*
    403 U.S. 388 (1971) ............................................................................. 23, 26

*Boehm v. FBI,*
    948 F. Supp. 2d 9 (D.D.C. 2013) .............................................................. 34

*Cacchillo v. Insmed, Inc.,*
    638 F.3d 401 (2d Cir. 2011) ..................................................................... 38

*Campbell v. Brender,*
    2010 WL 4363396 (N.D. Tex. Oct. 25, 2010) ......................................... 22

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .................................................................................. 32

*City of New York v. N.Y. Pizzeria Delicatessen, Inc.,*
    2006 WL 2850237 (S.D.N.Y. Sept. 29, 2006) ......................................... 14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ........................................................................... passim

*Coal. for Mercury-Free Drugs v. Sebelius,*
    671 F.3d 1275 (D.C. Cir. 2012) ................................................................ 11

*Cobell v. Norton,*
    237 F. Supp. 2d 71 (D.D.C. 2003) ............................................................ 30

*Colo. Wild Horse v. Jewell,*
    130 F. Supp. 3d 2015 (D.D.C. 2015) .................................................. 36, 37

*Cooper v. United States Office of Personnel Management,*
    219 F. Supp. 3d 160 (D.D.C. 2016) .......................................................... 28

*Coulibaly v. Kerry,*
    213 F. Supp. 3d 93 (D.D.C. 2015) ............................................................ 26

*Cox v. Secretary of Labor,*
    739 F. Supp. 28 (D.D.C. 1990) ........................................................... 24

*Curran v. Holder,*
    626 F. Supp. 2d 30 (D.D.C. 2009) ...................................................... 22

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ........................................................................... 10

*Debrew v. Atwood,*
    792 F.3d 118 .......................................................................................... 26

*Doe v. FBI,*
    936 F.2d 1346 (D.C. Cir. 1991) ......................................................... 34

*Dominguez v. Dist. of Columbia,*
    536 F. Supp. 2d 18 (D.D.C. 2008) ...................................................... 38

*Dorman v. Thornburgh,*
    740 F. Supp. 875 (D.D.C. 1990) ......................................................... 24

*Dubois v. Washington Mut. Bank,*
    2010 WL 3463368 (D.D.C. Sept. 3, 2010), *aff'd*, 492 F. App'x 117 (D.C. Cir. 2012) ........... 12

*Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the
    Performing Arts, Inc. v. United States,*
    32 F. Supp. 3d 35 (D.D.C. 2014) ........................................................ 14

*Elec. Privacy Info. Cntr. v. FTC,*
    844 F. Supp. 2d 98 (D.D.C. 2012) ................................................ 37, 41

*FDIC v. Meyer,*
    510 U.S. 471 (1994) ........................................................................ 4,26

*Federal Fire Protection Corp. v. J.A. Jones/Tompkins Builders, Inc.,*
    267 F. Supp. 2d 87 (D.D.C. 2003) ...................................................... 23

*FiberLight, LLC v. Washington Metro. Area Transit Auth.,*
    2017 WL 2544131 (D.D.C. June 12, 2017) .......................................... 29

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs,*
    873 F. Supp. 2d 363 (D.D.C. 2012) ................................................. 9, 27

*Food & Water Watch, Inc. v. Vilsack,*
    79 F. Supp. 3d 174 (D.D.C. 2015) ...................................................... 38

*Ghent v. U.S. Dep't of Justice*,
   1997 WL 22895 (D.D.C. Jan. 15, 1997) ................................................................................. 14

*Gonzalez v. City of Fresno*,
   2012 WL 174959 (E.D. Cal. Jan. 20, 2012) ........................................................................... 22

*Hagans v. Lavine*,
   415 U.S. 528 (1974) ................................................................................................................. 11

*Hedrick v. FBI*,
   216 F. Supp. 3d 84 (D.D.C. 2016) ......................................................................................... 33

*Impro Products, Inc. v. Block*,
   722 F.2d 845 (D.C. Cir. 1983) ................................................................................................ 27

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
   933 F. Supp. 2d 58 (D.D.C. 2013) ......................................................................................... 37

*Johnson v. Veterans Affairs Med. Ctr.*,
   133 F. Supp. 3d 10 (D.D.C. 2015) ......................................................................................... 24

*Jones v. United States*,
   949 F. Supp. 2d 50 (D.D.C. 2013) ......................................................................................... 25

*Klayman v. Obama*,
   142 F. Supp. 3d 172 (D.D.C. 2015) ....................................................................................... 18

*Klayman v. Obama*,
   957 F. Supp. 2d 1 (D.D.C. 2013), *vacated and remanded on other grounds*,
   800 F.3d 559 (D.C. Cir. 2015) ....................................................................................... passim

*Laird v. Tatum*,
   408 U.S. 1 (1972) ..................................................................................................................... 17

*Latif v. Obama*,
   677 F.3d 1175 (D.C. Cir. 2012) .............................................................................................. 14

*Leonard v. U.S. Dep't of*,
   *Def.*, 598 F. App'x 9 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 261 (2015) .......................... 11

*Lewis v. Bayh*,
   577 F. Supp. 2d 47 (D.D.C. 2008) ......................................................................................... 22

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ................................................................................................................... 11

*Loughlin v. United States*,
   230 F. Supp. 2d 26 (D.D.C. 2002) ....................................................... 12

*Loumiet v. United States*,
   828 F.3d 935 (D.C. Cir. 2016) ............................................................ 26

*Lugo v. U.S. Dep't of Justice*,
   214 F. Supp. 3d 32 (D.D.C. 2016) ...................................................... 32

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................... 10, 11, 38

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ........................................................................... 39

*Madrigal Audio Labs., Inc. v. Cello, Ltd.*,
   799 F.2d 814 (2d Cir. 10986) ....................................................... 30, 31

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ........................................................................... 36

*Mendoza v. Perez*,
   754 F.3d 1002 (D.C. Cir. 2014) .......................................................... 28

*Mobley v. CIA*,
   924 F. Supp. 2d 24 (D.D.C. 2013), *aff'd* 806 F.3d 568 (D.C. Cir. 2015) ............................... 33

*Montgomery v. eTreppid Tech., LLC*,
   2009 WL 910739 (D. Nev. Marc. 31, 2009) ......................................... 27

*Montgomery v. eTreppid Technologies, LLC*,
   2010 WL 1416771 (D. Nev. Apr. 5, 2010) ...................................... 27, 40

*Montgomery v. Risen*,
   197 F. Supp. 3d 219 (D.D.C. 2016) .................................................... 40

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
   785 F.3d 684 (D.C. Cir. 2015) ............................................................ 11

*Munaf v. Geren*,
   553 U.S. 674 (2008) ........................................................................... 37

*Nader v. Allegheny Airlines, Inc.*,
   626 F.2d 1031 (D.C. Cir. 1980) .......................................................... 23

*Newburyport Water Co. v. Newburyport,*
   193 U.S. 561 (1904) ................................................................................. 11

*Nken v. Holder,*
   556 U.S. 418 (2009) ................................................................................. 37

*Obama v. Klayman,*
   800 F.3d 559 (D.C. Cir. 2015) ................................................................ 20

*Richards v. Duke University,*
   480 F. Supp. 2d 222 (D.D.C. 2007) ................................................... 9, 27

*Robinson v. United States,*
   2014 WL 5139832 (D.D.C. Jan. 24, 2014) ............................................ 11

*Sherley v. Sebelius,*
   644 F.3d 388 (D.C. Cir. 2011) ................................................................ 37

*Sierverding v. U.S. Dep't of Justice,*
   693 F. Supp. 2d 93 (D.D.C. 2010) .......................................................... 34

*Singh v. Carter,*
   185 F. Supp. 3d 11 (D.D.C. 2016) .......................................................... 37

*Smith v. EEOC,*
   2016 WL 6078259 (D.D.C. Oct. 17, 2016) ............................................ 26

*Springer v. Supreme Court of the United States*
   2004 WL 2348134  (D.C. Cir. Oct. 18, 2004) ........................................ 24

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ................................................................................. 11

*Tamayo v. U.S. Dep't of Justice,*
   932 F. Supp. 342, (D.D.C. 1996) ............................................................ 34

*Taylor v. U.S. Dep't of Justice,*
   257 F. Supp. 2d. 101 (D.D.C. 2003) ................................................ 34, 35

*Texas All. for Home Care Servs. v. Sebelius,*
   811 F. Supp. 2d 76 (D.D.C. 2011), *aff'd,* 681 F.3d 402 (D.C. Cir. 2012) .............................. 14

*Texas Indep. Producers & Royalty Owners Ass'n v. EPA,*
   410 F.3d 964 (7th Cir. 2005) ................................................................... 39

*Tooley v. Napolitano*,
   586 F.3d 1006 (D.C. Cir. 2009) ............................................................... 21

*Tri-State Hosp. Supply Corp. v. United States*,
   341 F.3d 571 (D.C. Cir. 2003) ................................................................ 26

*United Presbyterian Church in the USA v. Reagan*,
   738 F.2d 1375 (D.C. Cir. 1984) .............................................................. 17

*In re U.S. Dep't of*
   *Def.*, 848 F.2d 232 (D.C. Cir. 1988) ............................................. 29, 30, 31

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
   *454 U.S. 464 (1982)* ...................................................... 10, 11, 38

*Vasaturo v. Peterka*,
   203 F. Supp. 3d 42 (D.D.C. 2016), *aff'd sub nom.*, 2017 WL 2332615 (D.C. Cir.
   Feb. 6, 2017) .................................................................................. 22

*Wheeler v. CIA*,
   271 F. Supp. 2d 132 (D.D.C. 2003) ........................................................ 33

*Williams v. Lew*,
   77 F. Supp. 3d 129 (D.D.C. 2015) .......................................................... 10

*Wilson v. Libby*,
   535, F.3d 697 (D.C. Cir. 2008) .............................................................. 33

*Winter v. NRDC*,
   555 U.S. 7 (2008) ................................................................... 36, 37, 42

*Younger v. D.C. Pub. Sch.*,
   2017 WL 3129733 (D.D.C. July 21, 2017) ............................................... 32

## KLAYMAN LAW SUITS

*Klayman v. Obama*, 13-cv-851 ................................................................. 1
*Klayman v. Obama*, 13-cv-881 ................................................................. 1
*Klayman v. Obama*, 14-cv-092 ................................................................. 1

## STATUTES

5 U.S.C. § 552 .......................................................................................... 34
28 U.S.C. § 2401(a) .............................................................................. 4, 27
28 U.S.C. § 2675(a) .................................................................................. 25
28 U.S.C. § 1346(b) .................................................................................. 24

50 U.S.C. § 1861 ................................................................................................... 18
50 U.S.C. § 1881 ................................................................................................... 13
Pub L. No. 114-23 §§ 103, 109, 129 Stat. 268, 272, 276 ........................................ 18
Pub. L. No. 110-261, 122 Stat. 2436 ...................................................................... 13
Pub. L. No. 107-56, 115 Stat 272 (2001) ................................................................ 17

## FEDERAL RULE OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1) ................................................................................... passim
Fed. R. Civ. P. 12(b)(6) ...................................................... 8, 12, 14, 28, 42
Fed. R. Civ. P. 53(a) .................................................................................... 29
Fed. R. Civ. P. 56(a) .................................................................................... 29, 30

## REGULATIONS

28 C.F.R. § 16.96 ................................................................................................ 34, 35

## MISCELLANEOUS

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350
    (3d ed. 2004) ................................................................................................ 27

## INTRODUCTION

The Court has heard this story before.  Plaintiffs Larry Klayman and Dennis Montgomery allege that the Government (now through the "Obama Deep State") has continued a purported "pattern and practice of illegally and unconstitutionally spying on millions of Americans," including Plaintiffs.  Compl. at 6, ECF No. 1.  These allegations are the essence of three separate lawsuits filed by Plaintiff Klayman currently pending before the Court, *see Klayman v. Obama*, 13-cv-851 (*Klayman I*); *Klayman v. Obama*, 13-cv-881 (*Klayman II*); *Klayman v. Obama*, 14-cv-092 (*Klayman III*), a fact readily acknowledged by counsel for Plaintiffs at the status conference on June 23, 2017, when he observed that "there is a tremendous overlap in these cases." Transcript of Status Conference Hearing ("Tr.") at 25.  In all three previously filed cases, dispositive motions have been fully briefed and are ready for adjudication.

This fourth lawsuit adds little of any substance.  Most of the new allegations (and causes of action) spring from the addition of Dennis Montgomery as a plaintiff.  But he is no stranger to the related litigation either.  The plaintiffs in those three cases moved the Court to interview Mr. Montgomery in chambers and *ex parte* because they claimed he could testify about the alleged mass surveillance.  *See, e.g.*, *Klayman I*, ECF No. 129.  This Court denied that motion.  *See* Minute Entry Order (Feb. 11, 2016).  Now he is a plaintiff in this suit.  He claims to have "intimate knowledge" of this "mass surveillance," Compl. at 3, 4, and to have turned over "evidence" of that surveillance contained on hard drives to the Federal Bureau of Investigation ("FBI") "under the express promise that the FBI would conduct an investigation."  *Id.* ¶¶ 37–38. But, he incredibly alleges, the FBI, having taken the hard drives and interviewed him, has now

"buried" the investigation because "the FBI itself is involved in an ongoing conspiracy" and a "massive scheme to cover up" this "mass surveillance." *Id.* at 4; *id.* at ¶¶ 115–20.[1]

Based on the foregoing allegations, Plaintiffs purport to assert eight counts in their Complaint seeking declaratory, injunctive, and monetary relief against various current and former government officials (in both their personal and official capacities), as well as against government agencies, as set forth more fully below.[2]  Counts One and Two are made solely against the Individual-Capacity Defendants and are not addressed here.  This filing addresses Counts Three through Eight and is made on behalf of the Government Defendants in support of their motion to dismiss the Complaint for lack of subject matter jurisdiction, motion to dismiss for failure to state a claim, and motion for partial summary judgment; the brief also constitutes the Government Defendants' opposition to Plaintiffs' preliminary injunction motion in which they seek an order to enjoin the ongoing alleged surveillance of them and to prevent the destruction of the hard drives allegedly containing the evidence of the mass surveillance. Plaintiffs are not entitled to any relief, and their Complaint should be dismissed, and their motion denied, for the following reasons.

Count Three of the Complaint seeks declaratory and injunctive relief against the claimed "illegal[] and unconstitutional[] surveill[ance]."  Compl. ¶¶ 81–88.  Plaintiffs lack standing to seek such relief, however, because the Complaint contains no well-pled allegations showing that Plaintiffs themselves have been or likely will be targets of the claimed surveillance activities.

---

[1] Plaintiff Montgomery also alleges that the FBI has unlawfully searched his home and seized property.  *See* Compl. ¶¶ 115–20.

[2] To the extent the individual defendants are sued in their official capacity, these defendants, along with the three agency defendants, will be referred to as the "Government Defendants."  To the extent the individual defendants are sued in their personal capacity, they will be referred to as the "Individual-Capacity Defendants."

2

Surveillance under Section 702 of the Foreign Intelligence Surveillance Act ("FISA") is restricted to the targeting of non-U.S. persons located abroad to acquire foreign-intelligence information; Plaintiffs' claimed status as whistleblowers raising public awareness of Government surveillance does not meet these criteria.  Nor does the Complaint contain plausible allegations that the Government has quietly reconstituted a program of bulk telephony metadata collection under FISA that has been prohibited by statute.  Similarly, the Complaint contains no well-pled allegations that plausibly suggest the CIA is targeting Plaintiffs through an unspecified CIA "malware" program.  And the unadorned allegations of "hacking" of Plaintiffs' personal electronic devices are of an ilk that are routinely dismissed by courts as essentially frivolous. [3]

Count Four asks the Court to appoint a special master "to conduct a real and through [sic] investigation of the information [allegedly] contained" on Plaintiff Montgomery's hard drives and the alleged "hacks" into Plaintiffs' electronic devices.  Compl. ¶¶ 89–95.  This claim should be dismissed for failure to state a claim because special masters are not appointed for such tasks and to do so under the circumstances alleged here would exceed this Court's Article III jurisdiction.

In Counts Five and Seven, Plaintiffs seek to hold the FBI and former FBI Director James Comey liable, in his official capacity, for the common law torts of conversion and fraudulent misrepresentation.  Compl. ¶¶ 96–101, 109–114.  These claims must be dismissed for lack of subject-matter jurisdiction, however, because Plaintiff Montgomery has sued the wrong parties.

---

[3] Although, as noted above, this motion is brought only on behalf of the Government Defendants, the grounds for dismissing Count Three against the Government Defendants apply equally to Counts One and Two, which are brought solely against the Individual-Capacity Defendants.  That is because all three of those counts rely on the same allegations concerning Section 702, bulk telephony metadata collection, or alleged CIA "malware" and "hacking."  *See* Compl. ¶¶ 67-80.  Dismissal of Count Three for the reasons discussed herein therefore would necessitate the dismissal of Counts One and Two on the same basis.

Count Six seeks to compel the FBI to respond to Plaintiff Montgomery's March 27, 2017, Privacy Act request for all documents that refer or relate to his interview with the FBI conducted as part of its inquiry into his allegations of mass surveillance.  Compl. ¶¶ 40, 102–108; *see* 5 U.S.C. § 552a(d)(1) (requiring agencies on request, subject to certain exemptions, to provide individuals with copies of records or information pertaining to them contained in a system of records).  All of the records he seeks, however, are exempt from disclosure under the Privacy Act.

Count Eight seeks damages against the FBI for a "raid" of Plaintiff Montgomery's home conducted in claimed violation of the Fourth Amendment.  Compl. ¶¶ 34, 115–120.  Congress, however, has not waived the Government's sovereign immunity for constitutional tort claims for monetary relief against government agencies.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  Alternatively, given that Plaintiff Montgomery has previously sworn that the incident occurred in 2006, this claim would be barred, if sovereign immunity had been waived, by the statute of limitations, 28 U.S.C. § 2401(a).

And, finally, Plaintiffs' motion for a preliminary injunction stands or falls on the merits of Counts Three, Five and Seven, and none of them has any merit.  Count Three's allegations of unlawful surveillance underpins Plaintiffs' request for a preliminary injunction to stop the surveillance.  But, for the reasons set forth above, Plaintiffs cannot show either that they are likely to succeed on the merits or that they are likely to suffer irreparable harm in the absence of such extraordinary relief.

Similarly, Counts Five and Seven, which underpin the other component of Plaintiffs' motion, cannot sustain their request for a preliminary injunction to prevent the destruction of the hard drives and the video of the FBI interview of Plaintiff Montgomery.  Because both counts

4

must be dismissed for lack of subject-matter jurisdiction, Plaintiffs cannot show that they are likely to succeed on the merits.  Nor can they show they are likely to suffer irreparable harm where the Government has placed a litigation hold on both the hard drives and the video to prevent their destruction.

In sum, through this new case, Plaintiff Klayman is simply recycling a number of past claims already fully briefed (in multiple cases) and pending before this Court, garnishing them with a series of implausible, legally insufficient, and, in some instances, plainly frivolous allegations from Plaintiff Montgomery.  By multiplying such allegations, Plaintiffs attempt to create the appearance of substance and novelty where there is none.  The Court should recognize this attempt for what it is, and thus dismiss the new Complaint and deny Plaintiffs' motion for a preliminary injunction.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

Plaintiffs, Dennis Montgomery and Larry Klayman, filed this lawsuit on June 5, 2017, against three federal agencies:  the FBI, the Central Intelligence Agency ("CIA"), and the National Security Agency ("NSA"); as well as seven current and former government officials. Those officials are:  former President Barack Obama, Director of National Intelligence ("DNI") Daniel Coats, former DNI James Clapper, CIA Director Mike Pompeo, former CIA Director John Brennan, NSA Director Michael Rogers, and former FBI Director James Comey.  *See* Compl. at 1–2.  The seven individual defendants have been sued in both their official and individual capacities.  *See id.* ¶¶ 7–16.

Plaintiffs allege that the defendants ("each and every one of them") have engaged in "ongoing illegal, unconstitutional surveillance of millions of Americans, including prominent Americans such as the chief justice [sic] of the U.S. Supreme Court, other justices, 156 judges,

prominent businessmen and others such as Donald J. Trump, as well as Plaintiffs themselves." *Id.* ¶ 18.  Plaintiffs further allege that Defendants intend to continue this pattern of illegal and unconstitutional mass surveillance "through surrogates in the Obama Deep State." *Id.* ¶ 19. They maintain that the surveillance is conducted "in numerous ways, including but not limited to, bulk telephony metadata collection similar to the now 'discontinued' Section 215 [program under] the USA PATRIOT ACT as well as targeted 'PRISM' collection under Section 702 of the Foreign [Intelligence Surveillance] Act [("FISA")]." *Id.* ¶ 20.  Plaintiffs also allude to recent allegations that the CIA has developed "malware" capable of infecting a variety of cell phones and other consumer electronic devices to "turn [them] into recording and transmitting stations to spy on [CIA] targets." *Id.* ¶¶ 63–64.

According to Plaintiffs, Defendants have "used the fruits" of the illegal surveillance to "serve their own interests" and to "cover-up" their wrongdoing by leaking sensitive information about those who "dare to oppose them," including President Trump. *Id.*  ¶¶ 28–29.  As part of the "cover up," Plaintiffs claim that the FBI, under Mr. Comey's direction, fraudulently induced Mr. Montgomery to turn over a set of 47 computer hard drives containing evidence of the illegal surveillance "under the express promise that the FBI would conduct an investigation into the . . . illegal, unconstitutional activity," when in fact the intent was to "bury" the evidence contained on the hard drives and ensure it "is not investigated or revealed to the public." *Id.* ¶¶ 37–39.

As evidence that the two Plaintiffs themselves have been subjected to the alleged illegal surveillance, they assert that Mr. Montgomery, as a self-identified whistleblower, and Mr. Klayman, as his attorney, "have worked visibly, in the public eye, to raise awareness of, and demand an investigation into" the defendants' allegedly illegal activities, and thus "fall squarely within the locus of those targeted" for surveillance. *Id.* at 8–9; *see, e.g.*, *id.* ¶¶ 30, 66.  They

further assert that their personal and business computers and cell phones have in unspecified ways been "hacked," and that Mr. Montgomery has been able to trace the alleged attacks on his computers to IP (Internet protocol) addresses he alleges are used by the CIA, the FBI, and the Department of Defense. *Id.* ¶¶ 43–48, 56–62.

Two weeks after they filed their complaint, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. *See* Pls.' Mot. for TRO and Prelim. Inj. ("Pls.' PI Mot."), ECF No. 7 (June 19, 2017). Such relief was necessary, Plaintiffs argue, to prevent the defendants "from (1) illegally and unconstitutionally spying on and surveilling millions of Americans, including Plaintiffs, without probable cause or a warrant, and (2) destroying evidence of illegal and unconstitutional spying turned over to Defendant Comey and the FBI by Plaintiff Montgomery." *Id.* at 1.

<u>**ARGUMENT**</u>

The six counts of Plaintiffs' Complaint pled against the Government Defendants in which Plaintiffs seek declaratory, injunctive, and monetary relief, cannot survive the Government's dispositive motions, and thus there are no counts upon which the Court can issue Plaintiffs preliminary injunctive relief.

The first section of this Argument supports the Government Defendants' Rule 12(b)(1) motion to dismiss Counts Three, Five, Seven, and Eight for lack of subject matter jurisdiction. Specifically, Count Three should be dismissed because Plaintiffs have failed to plausibly allege that they were the subjects of such surveillance; Counts Five and Seven should be dismissed because Plaintiff Montgomery has sued the wrong parties; and Count Eight should be dismissed for the alternative reasons that the Government has not waived sovereign immunity for constitutional torts and, even if it had, the limitations period would have run.

The next section of the Argument supports the Government Defendants' Rule 12(b)(6) motion to dismiss Count Four for failure to state a claim.  Count Four, in which Plaintiffs seek the appointment of a Special Master, should be dismissed because such an appointment under the circumstances alleged here would be improper and outside of this Court's discretionary powers.

The following section then supports the Government Defendants' motion for partial summary judgment on Count Six of Plaintiffs' Complaint.  In that count, Plaintiffs seek to compel the FBI to comply with the terms of the Privacy Act by disclosing all documents that relate to the FBI FD-302s[4] of the interview of Plaintiff Montgomery.  Summary judgment is appropriate on that count because the requested documents fall within a specific exemption to disclosure in the Privacy Act.

Finally, the Argument section concludes with the Government Defendants' opposition to Plaintiffs' motion for a preliminary injunction.  In their motion, Plaintiffs seek to enjoin the Government from "spying" on them and millions of others in the country as well as to enjoin the Government from destroying Plaintiff Montgomery's hard drives and a video of his FBI interview.  For all of the reasons set forth in the dispositive motions arguments, Plaintiffs have not demonstrated a likelihood of success on the merits of the claims underpinning the motion for preliminary relief.  And, in light of the Government Defendants placing litigation holds on the materials in dispute, nor have Plaintiffs shown that that it is likely they will suffer irreparable harm.

---

[4] FD-302s are forms used by the FBI to, among other things, report and summarize interviews.

I.      **COUNTS THREE, FIVE, SEVEN, AND EIGHT SHOULD BE DISMISSED UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION.**

Federal Rule of Civil Procedure 12(b)(1) provides the mechanism by which a party may seek dismissal of a claim for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "In deciding whether subject matter jurisdiction exists, the Court may consider the complaint alone or may consider materials beyond the pleadings."  *Bickford v. Gov't of U.S.*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011) (citation omitted).  That is, a defendant may make a "facial attack" on the Court's subject matter jurisdiction "based solely on the complaint," *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012), or a "defendant may make a factual attack on the Court's subject matter jurisdiction," *id.*, by "look[ing] to material outside the pleadings."  *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 232 (D.D.C. 2007) (quotation omitted).  The Government Defendants raise a facial challenge on Counts Three, Five, and Seven, and, for Count Eight, raise both a facial and a factual challenge.  The different standards are set forth below in the context of the counts at issue.

A.      **Plaintiffs Have Not Plausibly Alleged that They Are the Subjects of Government Surveillance, and Thus Count Three Should Be Dismissed Because They Lack Standing to Challenge Such Surveillance.**

Plaintiffs' Complaint fails to plausibly allege that Plaintiffs are or likely will be targets of any claimed Government surveillance.  Thus, they lack standing to bring these claims and Count Three of the Complaint must be dismissed.

Plaintiffs' Complaint does not specify how they allegedly are or have been surveilled by the Government, but their surveillance claims appear to fall generally into three categories: (1) that their electronic communications have been collected under the NSA's "PRISM" program; (2) that telephony metadata pertaining to their calls has been collected as part of a

resurrected NSA bulk collection program; and (3) that their personal electronic devices have been "hacked" to allow surveillance, supposedly through the clandestine installation of alleged CIA "malware."  *See* Compl. ¶¶ 20, 63.  None of these claims is plausible.  Plaintiffs have advanced no non-conclusory allegations to support the claim that Plaintiffs themselves have been or likely will be the targets of the NSA's PRISM collection, where intentionally targeting them would violate the plain terms of the authorizing statute, or that the NSA's prior bulk telephony metadata program has been quietly resurrected in violation of the USA FREEDOM Act. Moreover, the factual allegations of "hacking" Plaintiffs present—malfunctioning cell phones, and unadorned claims of cyberattacks "traced" to Government agencies—are the sort of allegations courts commonly dismiss as fundamentally incredible.

> **1.  To Survive Dismissal, Plaintiffs Must Make Plausible, Non-Conclusory Allegations That They Are or Will Be the Subject of Government Surveillance.**

Plaintiffs are constitutionally required to show that they have standing to sue before they may bring suit in this Court.  "[T]he judicial power of the United States" is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies.'"  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).  And "a core element of Article III's case-or-controversy requirement is that a plaintiff have standing to sue."  *Williams v. Lew*, 77 F. Supp. 3d 129, 132 (D.D.C. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  To establish Article III standing, Plaintiffs must seek relief from an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).  The Supreme Court has emphasized that the standing inquiry must be "especially rigorous" when reaching the merits of a case would force a court to decide whether

10

actions taken by the other branches of the Federal Government, especially in the fields of intelligence gathering and foreign affairs, are unconstitutional.  *Id.*

Plaintiffs "bear[] the burden of showing that [they have] standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also, e.g.*, *Robinson v. United States*, 2014 WL 5139832, at *1 (D.D.C. Jan. 24, 2014) (Leon, J).  As to any claims for prospective relief, such as the injunction against Government surveillance Plaintiffs seek here, "it would not be enough . . . to demonstrate past harm"; instead, Plaintiffs must show they are "suffering an ongoing injury or face[] an immediate threat of injury."  *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 689 (D.C. Cir. 2015) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)); *see also Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1280 (D.C. Cir. 2012).  To meet that standard, "plaintiff[s] must show that there is a 'substantial risk' that the harm will occur," *Morgan Drexen, Inc.*, 785 F.3d at 689 (quoting *Amnesty Int'l*, 568 U.S. at 414 n.5), which is "not conjectural or hypothetical," *Coal. for Mercury-Free Drugs*, 671 F.3d at 1280 (quoting *Lujan*, 504 U.S. at 560).[5]

"Those who do not possess Art[icle] III standing may not litigate as suitors in the courts of the United States." *Valley Forge*, 454 U.S. at 475-76.  In addition, "the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'"  *Hagans v. Lavine,* 415 U.S. 528, 536–37 (1974) (quoting *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579 (1904)).  Thus, a

---

[5] This requirement of "sufficient immediacy and reality" applies to claims for declaratory and injunctive relief alike; for a plaintiff to have standing to pursue either form of relief, there must be "a present, live controversy."  *Lyons*, 461 U.S. at 104-05; *see also, e.g., Leonard v. U.S. Dep't of Def.*, 598 F. App'x 9, 10 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 261 (2015).

claim may also be dismissed under Rule 12(b)(1) for a lack of subject-matter jurisdiction if it is "patently insubstantial." *Best v. Kelly,* 39 F.3d 328, 330 (D.C. Cir. 1994).

Where a party makes a facial attack to jurisdiction based on the complaint alone, as Defendants do with Count Three, "the Court considers the factual allegations of the complaint in the light most favorable to the non-moving party." *Loughlin v. United States*, 230 F. Supp. 2d 26, 35 (D.D.C. 2002). This standard, however, does not diminish a plaintiff's obligation to make well-pled—not conclusory—factual allegations that plausibly demonstrate that they have standing to bring their claims. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 900 (2016), *reh'g denied*, 136 S. Ct. 1250 (2016) ("[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of standing that is plausible on its face.") (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Indeed, "the Court may give a plaintiff's factual allegations closer scrutiny in resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction than a 12(b)(6) motion for failure to state a claim." *Dubois v. Wash. Mut. Bank*, 2010 WL 3463368, at *2 (D.D.C. Sept. 3, 2010) (Leon, J.), *aff'd*, 492 F. App'x 117 (D.C. Cir. 2012).

Because Plaintiffs' Complaint fails to present well-pled, non-conclusory factual allegations that they are being or imminently will be subject to Government surveillance, the Complaint fails to meet these standards, and Count Three of the Complaint should be dismissed under Rule 12(b)(1).

**2.   Plaintiffs Fail to Allege Any Facts Showing Their Communications Are Being or Will Be Collected under PRISM, a Program that Does Not Target U.S. Persons.**

Plaintiffs allege they are subject to surveillance under the NSA's targeted "PRISM" collection of communications pursuant to FISA Section 702, 50 U.S.C. § 1881a.[6]  *See* Compl. ¶ 20; *see also* Tr. at 5–7, 25.  Plaintiffs' Complaint, however, offers no factual allegations that would support a claim that their electronic communications are or imminently will be subject to such PRISM collection.  Section 702 expressly prohibits the targeting of U.S. persons; and Plaintiffs' generic allegations that they make "international phone calls" and "exchange[] correspondence," Compl. ¶ 31, with foreign individuals abroad are insufficient to establish their standing because they offer no non-speculative basis for plausibly concluding that those foreign individuals were or are the targets of PRISM collection.  Thus, they lack standing to challenge PRISM.

Most fundamentally, Section 702, under which Plaintiffs allege PRISM collection is authorized, *see* Compl. ¶ 20, permits only the "targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information," 50 U.S.C.

---

[6] The FISA Amendments Act of 2008, Pub. L. No. 110-261, 122 Stat. 2436, added a new Section 702 to FISA, 50 U.S.C. § 1881a, which "supplement[ed] pre-existing FISA authority by creating a new framework under which the Government may seek the [Foreign Intelligence Surveillance Court's ("FISC's")] authorization of certain foreign intelligence surveillance targeting . . . non-U.S. persons located abroad," *Amnesty Int'l*, 568 U.S. at 404.  Section 702 provides that, upon the FISC's approval of a "certification" and the use of targeting and minimization procedures submitted by the Government, the Attorney General and DNI may jointly authorize, for a period of up to one year, the "targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information." 50 U.S.C. § 188la(a), (g). Section 702 acquisitions involve obtaining foreign intelligence information from or with the assistance of an electronic communication service provider.  *Id.* § 1881a(g)(2)(A)(vi).  Under the express terms of Section 702, the Government may not intentionally target a U.S. person overseas or persons (including U.S. persons) known to be in the United States.  *Id.* § 1881a(b).  The acquisition must also be "conducted in a manner consistent with the [F]ourth [A]mendment." *Id.*

§ 1881a(a), and forbids the Government from targeting U.S. persons overseas or any persons (including U.S. persons) known to be in the United States, *id*. § 1881a(b).  Plaintiffs are both U.S. persons, Compl. ¶¶ 5–6, and thus their communications could not have been intentionally targeted for collection under Section 702 except in violation of these express statutory limits.

The Complaint contains no well-pled allegations from which it plausibly can be concluded that the NSA has disregarded the clear legal limits on its authority to target Plaintiffs (or any other U.S. persons) for surveillance under Section 702.  Courts accord a "presumption of regularity" to the official acts of government agencies, "and, in the absence of clear evidence to the contrary . . . presume that they have properly discharged their official duties."  *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2012) (citation omitted).  Here, Plaintiffs have failed to plead any facts that would plausibly overcome the presumption that the Government complied with the limitations imposed by Section 702:  speculative or conclusory allegations of Government wrongdoing are insufficient to rebut the presumption of administrative regularity.  *Am. Fed'n of Gov't Empls. v. Reagan*, 870 F.2d 723, 728 (D.C. Cir. 1989) ("We cannot allow a breach of the presumption of regularity by an unwarranted assumption that the President was indifferent to the purposes and requirements of the Act, or acted deliberately in contravention of them.").[7]  Thus, Plaintiffs' vague, speculative allegations of a Government conspiracy to conduct

---

[7] *See also Texas All. for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76, 104 (D.D.C. 2011), *aff'd*, 681 F.3d 402 (D.C. Cir. 2012) (dismissing claim under Rule 12(b)(6) because plaintiff's allegations were "insufficient to overcome the presumption of agency regularity"); *Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 32 F. Supp. 3d 35, 43–44 (D.D.C. 2014) (concluding that, in light of the presumption of regularity, "[t]he Court will not impute wrongdoing to [a government agency] based on nothing more than the [plaintiff's] speculation that [government] agents acted improperly"); *Ghent v. U.S. Dep't of Justice*, 1997 WL 22895, at *2–3 (D.D.C. Jan. 15, 1997) (dismissing claimed violations of due process and equal protection where plaintiff failed to "allege[ ] sufficient facts in his complaint to overcome the 'presumption of regularity.'"); *City of New York v. N.Y. Pizzeria Delicatessen, Inc.*, 2006 WL 2850237, at *9 (S.D.N.Y. Sept. 29, 2006)

illegal surveillance do not suffice to support a claim that the Government violated the plain terms of Section 702 by targeting their communications under PRISM.

That conclusion is unaltered by Plaintiffs' allegations that as "whistleblower[s]" seeking "to raise awareness" of the Government's allegedly illegal activities they "fall squarely within the locus of those targeted" for surveillance.  Compl. ¶¶ 30, 66.  Even assuming (and a heroic assumption it is) that this allegation raises a "sheer possibility" that the NSA may have targeted Plaintiffs for unlawful surveillance, it is woefully insufficient to "allow[ ] [a] court to draw [a] reasonable inference" that the NSA actually has done so, as required to meet the plausibility standard of pleading under *Iqbal*, 556 U.S. at 678.  And that is all the more so given the presumption of regularity to which the agency is entitled.[8]

Plaintiffs' broad allegation that they have communicated with unnamed individuals in foreign nations, Compl. ¶ 31, is also plainly insufficient to establish standing to challenge PRISM.  Indeed, as this Court previously observed regarding similar allegations by Mr. Klayman, such a result is "squarely dictated by" the Supreme Court's decision in *Amnesty*

---

(invoking presumption of regularity to strike affirmative defense and noting "mere suspicions that something was improperly done [by the government], without stating the source of such information or factual grounds for such belief, is insufficient to maintain such an action as a matter of law.").

[8] Plaintiffs highlight a number of incidents in which the Government did not comply with procedures restricting access to and dissemination of communications collected by the NSA under a program not challenged here, Compl. ¶¶ 21–27; *see also* ECF No. 1-1, but such incidents provide absolutely no indication that the Government intentionally targeted U.S. persons, or Plaintiffs, for Section 702 surveillance.  The reported errors Plaintiffs cite all involve the mishandling of communications *after* they had already been collected, not the manner in which communications were targeted or collected.  *Id.*; *see also* Pls.' PI Mot., Ex. A (news article forming the primary basis of Plaintiffs' claims of mishandling Section 702 communications).  Thus, these incidents provide no reason to conclude that Plaintiffs' communications were ever collected in the first place.  Nor do they provide any basis for concluding—even assuming that any of Plaintiffs' communications have been collected by the NSA—that their communications were among those affected by the reported incidents of non-compliance.

*International*.  *Klayman v. Obama*, 957 F. Supp. 2d 1, 8 n.6 (D.D.C. 2013) (Leon, J.), *vacated and remanded on other grounds*, 800 F.3d 559 (D.C. Cir. 2015).  In that case, various human rights, labor, and media organizations asserted an "objectively reasonable likelihood" that their communications would be subject to Government surveillance because they communicated with persons who were "likely targets of surveillance."  *Amnesty Int'l*, 568 U.S. at 401, 406.  Specifically, in that case, the plaintiffs attested that they communicated with individuals "located in geographic areas that are a special focus of the Government's counterterrorism or diplomatic efforts" and with individuals they asserted the Government believed were "associated with terrorist organizations."  *Id.* at 406.  The Supreme Court concluded, however, that the plaintiffs' evidence was insufficient to demonstrate standing, because in the absence of information about the Government's "targeting practices," it was "speculative whether the Government [would] imminently target communications to which [the plaintiffs] [we]re parties."  *Id.* at 411.  Rather, the Court held that the plaintiffs' asserted injury rested on a "speculative chain of possibilities," including that "the Government [would] target the communications of non-U.S. persons with whom they communicate," that the Government would succeed in intercepting those communications, and that the plaintiffs would "be parties to the particular communications that the Government intercepts."  *Id.* at 410–14.  This "speculative chain of possibilities," *id.* at 414, the Court found, did "not satisfy the requirement that [the] threatened injury must be certainly impending."  *Id.* at 410.

So too here.  The most Plaintiffs can do—and they have not even explicitly done that—is to speculate that the unidentified individuals in unnamed foreign countries with whom they communicate are NSA targets under PRISM.  Compl. ¶ 31.  And, even if Plaintiffs could plausibly plead that their foreign-based, non-U.S. correspondents were PRISM targets, they

16

could only speculate that the Government would succeed in intercepting those targets' communications and that Plaintiffs would be parties to the communications that the Government successfully intercepted.  Accordingly, as this Court has already found, Plaintiffs "lack standing" to challenge PRISM, "as squarely dictated by" *Amnesty International*.  *See Klayman*, 957 F. Supp. 2d at 8 n.6.[9]

Therefore, Plaintiffs have not plausibly alleged that their communications have been intentionally targeted or otherwise collected under PRISM, and hence they lack standing to challenge allegedly illegal surveillance occurring under that program.

> **3.  Plaintiffs Do Not Plausibly Allege that Bulk Collection of Telephony Metadata Has Been Reestablished In Contravention of the USA FREEDOM Act of 2015, or, Even If It Had, That Their Communications Would Be Collected By It.**

Plaintiffs also cannot establish standing by invoking a purported, unidentified program of bulk telephony metadata collection allegedly "similar" to the former bulk collection program under Section 215 of the USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat 272 (2001).  Indeed,

---

[9] Plaintiffs' stray allegations that PRISM "chills" their First Amendment rights of free speech and association—supposedly preventing attorney-client communications between Mr. Klayman and Mr. Montgomery for fear of being surveilled, Compl. ¶¶ 32, 75–76, 78—cannot breathe jurisdictional life into their challenge to that program.  Given that Plaintiffs have not shown that their communications have been or imminently will be subject to PRISM collection, their allegations of "chill" reflect only subjective fears on their part.  Such subjective fears are insufficient to establish a cognizable injury for purposes of standing.  *See Amnesty Int'l*, 568 U.S. at 418 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.") (citation omitted); *Laird v. Tatum*, 408 U.S. 1, 10, 14 (1972) (holding that "[a]llegations of a subjective 'chill'" arising from plaintiffs' knowledge of the existence of "a governmental investigative and data-gathering activity," without "any specific action of the [Government] against them," were "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"); *United Presbyterian Church in the USA v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) (chilling effect produced by unsubstantiated fear of surveillance is an insufficient basis for standing under *Laird*).

their allegations about this claimed program are so insubstantial and speculative as to be essentially frivolous.

First, and most importantly, bulk collection of telephony metadata under FISA is now specifically prohibited by the USA FREEDOM Act, Pub L. No. 114-23 §§ 103, 109, 129 Stat. 268, 272, 276; 50 U.S.C. § 1861(c)(3).[10]  As this Court is aware, from May 2006 to November 2015, the FISC authorized the NSA to collect telephony metadata in bulk pursuant to authority conferred by Section 215 of the USA PATRIOT Act, *see* 50 U.S.C. § 1861; *Klayman*, 957 F. Supp. 2d at 15.  On June 2, 2015, however, Congress enacted the USA FREEDOM Act, which now prohibits the bulk collection of telephony metadata under FISA, *see* Pub L. No. 114-23 §§ 103, 109, 129 Stat. 268, 272, 276; 50 U.S.C. § 1861(c)(3), and in its place authorized a new mechanism for targeted production of call-detail records by telecommunications service providers, pursuant to FISC order.  *See id.* § 101, 129 Stat. 269-70.

Thus, following a 180-day transition period which ended on November 28, 2015, statutory authority (and FISC authorization) to collect telephony metadata in bulk ended.  *See* USA FREEDOM Act of 2015, Pub L. No. 114-23 §§ 103, 109, 129 Stat. 268, 272, 276; *see also Klayman*, 142 F. Supp. 3d at 177 ("[T]he USA FREEDOM Act specifically prohibits the bulk collection of telephony metadata [as of] November 29, 2015."); *see also In re Application of the Federal Bureau of Investigation for an Order Requiring the Production of Tangible Things*, Dkt. No. 15-99, at 1 (noting that the FISC had authorized bulk collection of telephony metadata under Section 2015 only until 11:59 p.m. on November 28, 2015), available at

---

[10] Given the Court's familiarity with the now-discontinued bulk telephony metadata program, conducted pursuant to Section 215 of the USA PATRIOT Act, *see Klayman v. Obama*, 142 F. Supp. 3d 172, 181 (D.D.C. 2015); *Klayman*, 957 F. Supp. 2d at 11–19, the Government Defendants need not retread that ground here.

http://www.fisc.uscourts.gov/sites/default/files/BR%2015-99%20Opinion%20and%20Order.pdf.
Accordingly, the Government cannot legally reinstate the bulk collection of telephony metadata
under FISA absent a significant change in the law.

Therefore, as with their PRISM allegations, Plaintiffs' claim of surveillance under a
purported bulk collection program necessarily assumes that the Government is flouting express
legal limits on its surveillance authority.  Plaintiffs have not made any factual allegations,
however, that could conceivably (much less plausibly) overcome the presumption of regularity to
be accorded here—that government officials follow the USA FREEDOM Act in good faith and
thus do not engage in the bulk collection of telephony metadata in violation of that statutory
prohibition.  Indeed, aside from the naked assertion that the alleged illegal surveillance
"occur[s]" in part through bulk telephony metadata collection, Compl. ¶ 20, Plaintiffs make no
factual allegations about this supposed program of bulk collection at all, much less any from
which a court could plausibly conclude that such a program even exists. Thus, Plaintiffs have not
plausibly alleged injury from such a program that would confer standing on them to sue.  *Iqbal*,
556 U.S. at 678; *Arpaio*, 797 F.3d at 19.

Indeed, even if Plaintiffs had adequately pled that some sort of resurrected Section 215
bulk collection program existed, they still have not made any factual allegations from which the
Court plausibly could conclude that their communications are being or will be collected under
such a supposed program.  Plaintiffs make no allegations, for example, regarding the purported
scope of the alleged program except that that it involves "bulk" collection of telephony metadata
through "spy[ing]" on "millions of Americans," Compl. ¶¶ 19, 20.  Such conclusory allegations
lack "sufficient factual matter," *Arpaio*, 797 F.3d at 19, so as to plausibly conclude that
Plaintiffs' communications have been or will be collected under this alleged program.  *Cf.*

*Obama v. Klayman*, 800 F.3d 559, 565–66 (D.C. Cir. 2015) (Williams, J.) ("[A]n inference [that communications were collected] from the existence of the bulk program itself" is too speculative to support standing.); *see id*. at 569 (Sentelle, J.).

Finally, Plaintiffs' allegations that their electronic devices were "hacked" in some unspecified manner do not support a conclusion that metadata about their calls have been collected or that a new bulk telephony metadata program even exists.  Plaintiffs claim that this bulk collection occurs under a program "similar" to the discontinued NSA bulk telephone metadata collection program.  Compl. ¶ 20.  But when the Government collected call detail records in bulk under Section 215, it obtained them from certain telecommunications service providers themselves, not from "hacking" the phones or other electronic devices of individuals. *See, e.g.*, *Klayman*, 957 F. Supp. 2d at 15; *In re Application of the FBI*, 2013 WL 5741573, at *1. Thus, even if Plaintiffs had plausibly pled that their cellphones or other electronic devices have been hacked, such allegations would not indicate that metadata about their calls have been collected as part of any program similar to the prior Section 215 bulk collection of telephony metadata.

In sum, then, the Complaint provides no plausible allegations that the Government, in purported violation of the USA FREEDOM Act, maintains a clandestine program engaged in the bulk collection of Americans' telephony metadata, or—even if it did—that Plaintiffs' communications were subject or could be subject to collection under such a program.  Thus, Plaintiffs lack standing to challenge such a supposed program.

### 4.  Plaintiffs' Allegations that They Are the Targets of Surveillance Using CIA "Malware" Are Frivolous.

Finally, Plaintiffs also appear to associate their allegations that their computers and cellphones were "hacked" with allegations of CIA "malware" installed on personal electronic

devices to "turn [them] into recording and transmitting stations to spy on [CIA] targets."  Compl. ¶¶ 20, 43–47, 56–64.

Plaintiffs have not plausibly alleged any claims related to an alleged and so-called CIA "malware" program because the Complaint contains solely conclusory allegations that such a program exists and that plaintiffs are targets of it.  *See* Compl. ¶ 64 (describing malware as means of "spy[ing] on [CIA] targets").  As in *Amnesty International*, Plaintiffs present no allegations or information about the CIA's supposed "targeting practices," 568 U.S. at 411, and the allegation that as "whistleblower[s]" they "fall squarely within the locus of those targeted" for surveillance, Compl. ¶¶ 30, 66, does not plausibly support a conclusion that the CIA has targeted Plaintiffs for malware attacks any more than it supports a conclusion that they are targets of PRISM surveillance.  *See supra*, at 14-17; *Iqbal*, 556 U.S. at 678.

Moreover, such hacking allegations have repeatedly been dismissed by other courts as basically frivolous.  *See, e.g.*, *Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009) ("[T]he allegations appear similar to those in a number of cases that district courts have dismissed for patent insubstantiality:  that plaintiff was subjected to a campaign of surveillance and harassment deriving from uncertain origins.").  Plaintiff Klayman alleges that, after receiving "software updates" on his cellphones, they began behaving abnormally—most notably by draining their batteries at alleged "exponential rate[s]."  Compl. ¶¶ 56–62.  These allegations do not form the basis of a plausible claim of Government surveillance.  General technical problems with communications equipment cannot support claims of Government surveillance, as any alleged link between such problems and purported surveillance is inherently far too speculative to plausibly allege surveillance.  *See Tooley*, 586 F.3d at 1007–10 (holding allegations of "problematic phone connections, including telltale intermittent clicking noises"

were "patently insubstantial" and failed to support claims of surveillance); *Curran v. Holder*, 626 F. Supp. 2d 30, 34 (D.D.C. 2009) (allegation that plaintiff's "computer frequently malfunctions" failed to make claim of surveillance "anything more than fanciful").

For his part, Plaintiff Montgomery says his personal and business computers were the targets of numerous hacking attempts and that he traced those attempts to IP addresses used by the CIA, FBI, and the Department of Defense, but nowhere pleads any facts from which it could be plausibly concluded that these bare bones allegations are true.  Compl. ¶¶ 43–47.  As online interactions become an ever greater part of Americans' lives, unsubstantiated claims of such hacking have multiplied, and courts have been appropriately skeptical of these claims.  "Courts have held that claims alleging, without any evidence, that the defendants hacked a plaintiff's computer . . . are frivolous."  *Lewis v. Bayh*, 577 F. Supp. 2d 47, 54 (D.D.C. 2008); *accord Vasaturo v. Peterka*, 203 F. Supp. 3d 42, 44–45 (D.D.C. 2016), *aff'd sub nom.*, 2017 WL 2332615 (D.C. Cir. Feb. 6, 2017) (dismissing *sua sponte* plaintiff's claim that the CIA had repeatedly hacked his computer as not "remotely plausible"); *Gonzalez v. City of Fresno*, 2012 WL 174959, at *3 (E.D. Cal. Jan. 20, 2012) (concluding allegation that computer software had detected hacking attempt was insufficient to make hacking claim anything more than frivolous); *Campbell v. Brender*, 2010 WL 4363396, at *2 (N.D. Tex. Oct. 25, 2010) (concluding plaintiffs' hacking claims were "precisely the sort of fanciful, delusional claims that merit dismissal").

Plaintiff Montgomery's allegations of Government hacking here are of a similar ilk.  And his unadorned allegation that he was able to trace the supposed hacking attempts on his computers to Government IP addresses, Compl. ¶¶ 44–47, does nothing to render his claims of hacking less frivolous.  Such conclusory allegations, utterly unsupported by any specific allegations as to how this was accomplished, are little more than window-dressing.  Plaintiffs'

claims of hacking are ultimately no different from the allegations of hacking commonly dismissed by courts as frivolous.

*   *   *

Plaintiffs, therefore, have failed to plausibly allege that their communications have been collected by the Government in any way, be it through PRISM, a supposed resurrected bulk telephony metadata program, or purported CIA "malware."  Their Complaint thus fails to properly plead standing to challenge Government surveillance, and Count Three of the Complaint should be dismissed under Rule 12(b)(1) for a lack of subject-matter jurisdiction.[11]

## B. Counts Five and Seven Should Be Dismissed for Lack of Subject-Matter Jurisdiction Because Plaintiff Montgomery Has Brought Those Common-Law Tort Claims Against the Wrong Parties.

Plaintiffs' Complaint sets forth two tort claims, one for conversion and the other for fraudulent misrepresentation,[12] which Plaintiff Montgomery brings against Defendants FBI and former FBI Director James Comey, in his official capacity.[13]  *See* Compl. ¶¶ 96–101; 109–114 (Counts Five and Seven).  Both counts arise out of Plaintiff Montgomery's allegations that the FBI and then-Director Comey "induced" Plaintiff Montgomery to "turn over" to them "47 hard

---

[11] As noted above, the same allegations regarding PRISM, a supposed resurrected bulk telephony metadata program, and purported CIA "malware" also underlie Counts One and Two against the Individual-Capacity Defendants.  *See* Compl. ¶¶ 67-80.  Because, as we have shown, these allegations are insufficient to establish Plaintiffs' standing for purposes of Count Three, the Court should dismiss Counts One and Two for the same reason.

[12] *See Nader v. Allegheny Airlines, Inc.*, 626 F.2d 1031, 1036 (D.C. Cir. 1980) (tort of fraudulent misrepresentation); *Federal Fire Protection Corp. v. J.A. Jones/Tompkins Builders, Inc.*, 267 F. Supp. 2d 87, 92 (D.D.C. 2003) (conversion is a tort).

[13] Plaintiffs sue former FBI Director Comey in his individual capacity as well as in his official capacity.  *See* Compl. ¶ 7.  Plaintiffs' Complaint asserts individual-capacity claims against former FBI Director Comey under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in Counts One and Two, and purports to assert official capacity claims against him in Counts Three, Five, and Seven.

drives" owned by Plaintiff Montgomery, which had a "value in excess of $50,000," by "falsely represent[ing]" to him "that the FBI would conduct an investigation" of the alleged surveillance contained on the hard drives.  *See id.* ¶¶ 97, 98, 110.  Plaintiff Montgomery seeks the return of the hard drives, actual damages in excess of $3 million, and punitive damages in excess of $25 million.  *See id.* ¶¶ 101, 114.

The tort claims against the FBI and then-FBI Director Comey in his "official capacity" are improper, however.  The Federal Tort Claims Act ("FTCA"), which waives the United States' sovereign immunity for certain common-law tort claims, *see* 28 U.S.C. §§ 1346(b)(1), "directs that the exclusive remedy" for such common law tort claims "is an action against the United States rather than against the individuals or the particular government agencies." *Dorman v. Thornburgh*, 740 F. Supp. 875, 879 (D.D.C. 1990); *see also* 28 U.S.C. §§ 2671–2680 (FTCA provisions); *Springer v. Supreme Court of the United States*, 2004 WL 2348134, at *1 (D.C. Cir. Oct. 18, 2004) (per curiam) ("[T]he United States is the only proper defendant in an [FTCA] action."); *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 16 (D.D.C. 2015) ("Under the FTCA, the United States is the only proper party defendant.").

Where, as here, common-law tort claims are asserted directly against a federal agency and federal officers or employees in their official capacities, those claims must be dismissed for lack of subject matter jurisdiction.  *See Johnson*, 133 F. Supp. 3d at 17 ("Failure to name the United States as the defendant in an FTCA action requires dismissal for lack of subject-matter jurisdiction."); *Cox v. Secretary of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990) (tort suit against head of agency in official capacity must be dismissed for lack of subject-matter jurisdiction).

Moreover, even if the FBI and former Director Comey in his official capacity were proper defendants (and they are not), or if Plaintiff Montgomery were to amend the Complaint to

24

sue the United States instead, these common law tort claims would still need to be dismissed for

lack of subject-matter jurisdiction.  This is so because, to maintain an FTCA claim, Plaintiff

Montgomery must "first present[] the claim to the appropriate Federal agency and [have his]

claim . . . finally denied by the agency in writing," or wait six months without having received an

agency disposition.  *See* 28 U.S.C. § 2675(a); *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20-21

(D.C. Cir. 2010); *Jones v. United States*, 949 F. Supp. 2d 50, 53 (D.D.C. 2013) (Leon, J.).

Here, neither requirement has been pled.  Plaintiff Montgomery has not alleged in any

way that he has pursued, much less exhausted, his administrative remedies under the FTCA.

And, because the FTCA's exhaustion requirement is "a jurisdictional prerequisite to bringing an

FTCA claim," *Jones*, 949 F. Supp. 2d at 53, Plaintiff's fifth and seventh counts would have to be

dismissed for lack of subject-matter jurisdiction.  *See Ali v. Rumsfeld*, 649 F.3d 762, 775 (D.C.

Cir. 2011); *Jones*, 949 F. Supp. 2d at 53.

> **C. Plaintiff Montgomery's Eighth Count, for Damages Against the FBI for a "Raid" of Plaintiff Montgomery's Home, Is Barred by Sovereign Immunity, or, Alternatively, By the Statute of Limitations, and Must Be Dismissed for Lack of Subject-Matter Jurisdiction.**

Count Eight of Plaintiffs' Complaint seeks damages against the FBI for a "raid" of his

home conducted in asserted violation of the Fourth Amendment, where the FBI allegedly "t[ied]

Plaintiff Montgomery to a tree, threaten[ed] him and his family," and "searched and seized" his

property "without probable cause or a warrant."  Compl. ¶¶ 34, 115–120.  For injuries allegedly

suffered, Plaintiff Montgomery seeks "an award of compensatory and actual damages in excess

of" $3.0 million and "punitive damages in excess of" $30.0 million.  *See id.* ¶ 120.  This count is

barred and should be dismissed for two distinct and independently sufficient reasons.

First, Count Eight should be dismissed, pursuant to the law governing a facial challenge

to the Court's jurisdiction, *see supra*, at 9, because Plaintiff has not pled an applicable waiver of

sovereign immunity.  "It is well established that 'absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'"  *Debrew v. Atwood*, 792 F.3d 118, 124 (D.C. Cir. 2015) (quoting *Meyer*, 510 U.S. at 475).  "[T]he question of whether sovereign immunity exists is 'jurisdictional in nature," *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) (citing *Meyer*, 510 U.S. at 475), and, "[a] party bringing suit against the United States bears the burden of proving that the government has unequivocally waived its immunity."  *Id.*

Plaintiff alleges that he is entitled to damages against the FBI for the violation of Plaintiff Montgomery's Fourth Amendment rights, yet he has identified no waiver of sovereign immunity permitting constitutional tort claims for money damages against a government agency.  This is not surprising because the Supreme Court has held that there is no waiver of sovereign immunity for damages claims for constitutional torts against the United States or its agencies.  *See Meyer*, 510 U.S. at 477; *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 154 (D.D.C. 2015).  Rather, "[f]ederal constitutional claims for damages are cognizable only under *Bivens* [*v. Six Unknown Named Agents*, 403 U.S. 388 (1971)], which runs against individual governmental officials personally." *Loumiet v. United States*, 828 F.3d 935, 945 (D.C. Cir. 2016) (citing *Meyer*, 510 U.S. at 482, 485–86).  Because it is black letter law that sovereign immunity bars such claims, Plaintiff Montgomery's damages claim under the Fourth Amendment must be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1).  *See Tri-State Hosp. Supply Corp.*, 341 F.3d at 575; *see also, e.g.*, *Smith v. EEOC*, 2016 WL 6078259, at *3 (D.D.C. Oct. 17, 2016).

26

Second, alternatively, Count Eight should be dismissed, pursuant to a factual challenge to the Court's jurisdiction,[14] because it would be time-barred.  Had the Government waived its sovereign immunity for this claim (which it has not), the statute of limitations that would apply provides that "every civil action commenced against the United States[15] shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  Plaintiffs' Complaint omits any date on which Plaintiff Montgomery asserts that the incident occurred.  But, according to Plaintiff Montgomery's own declaration, filed in the District of Nevada in a private-party action in 2007, he attested that the same alleged raid of his home occurred in 2006.  *See* Declaration of Dennis Montgomery, No. 3:06-cv-0056-PMP-VPC, at ¶ 4, ECF No. 228, attached as Exhibit A ("The Government took my computers during it's [sic] raid on my home and storage facility on March 1 and March 3, 2006."); *Montgomery v. eTreppid Tech., LLC*, 2009 WL 910739, at *3 (D. Nev. Mar. 31, 2009), *overruled in part on other grounds by Montgomery v. eTreppid Tech., LLC*, 2010 WL 1416771 (D. Nev. Apr. 5, 2010); *see also* Gov't Defs.' Opp'n to Pls.' Mot. for In Chambers and Ex Parte Interview of Witness Dennis Montgomery, 1:13-cv-0881-RJL, at 4, ECF No. 94, attached as Exhibit B.

---

[14] "[W]hen a court is reviewing a complaint under factual attack for lack of jurisdiction, no presumption of truthfulness applies to the factual allegations." *Richards*, 480 F. Supp. 2d at 232 (quotation omitted).  Rather, the court "may look to material outside the pleadings, *id.*, including "affidavits and other additional matter" such as the Government offers here, *see Finca Santa Elena, Inc.*, 873 F. Supp. 2d at 368 (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004)).  Indeed, the Court has "broad discretion to consider relevant and competent evidence," *id.*, and "is not obliged to accept the plaintiff's allegations as true and may examine evidence to the contrary and reach his or her own conclusion[s] on the matter." *Id.*

[15] The D.C. Circuit has long held that § 2401(a) applies to both the United States and its agencies.  *See, e.g.*, *Impro Prods., Inc. v. Block*, 722 F.2d 845, 850 n.8 (D.C. Cir. 1983) (applying the six-year statute of limitations established by § 2401(a) to a challenge to an action taken by the Department of Agriculture).  Accordingly, the fact that Count Eight is directed at the FBI, rather than the United States, is of no moment.

Because Plaintiff Montgomery's claim under Count Eight constitutes a civil action against an agency of the United States filed more than eleven years after the right of action first accrued, this Court lacks subject matter jurisdiction over his claim for damages under the Fourth Amendment against the FBI, and the claim must be dismissed for lack of subject matter jurisdiction.[16]

## II.   COUNT FOUR SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

Count Four should be dismissed for failure to state a claim because the appointment of a Special Master to investigate Plaintiffs' own claims would be improper under the Federal Rules of Civil Procedure and would exceed the limits of this Court's discretion.  Count Four of Plaintiffs' Complaint asks this Court to appoint a Master "to conduct a real and through [sic] investigation of the information [allegedly] contained" on Mr. Montgomery's hard drives and the alleged "hacks" into Plaintiffs' electronic devices.  Compl. ¶¶ 89–95.  Plaintiffs' claim, however, betrays a serious misunderstanding of the purposes for which Masters are appointed. Accordingly, Plaintiffs' claim that a Special Master should be appointed must be dismissed under Rule 12(b)(6).

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation omitted).  Mere "labels and conclusions," and "naked assertion[s] devoid of

---

[16] The D.C. Circuit has concluded that the statute of limitations defined in § 2401(a) is jurisdictional in nature, *Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir. 2014) ("We have long held § 2401(a) 'creates a jurisdictional condition attached to the government's waiver of sovereign immunity.'"), such that dismissal under Rule 12(b)(1) is appropriate here.  *See, e.g.*, *Cooper v. U.S. Office of Personnel Mgmt.*, 219 F. Supp. 3d 160, 165 (D.D.C. 2016) (concluding that plaintiff's claims are barred under § 2401(a) and must be dismissed for lack of subject matter jurisdiction).

further factual enhancement," *id.*, are not sufficient.  Rather, considering only the well-pleaded, non-conclusory allegations of a complaint, and "assum[ing] their veracity," the court must determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 678–79 (internal quotations omitted).  To reach the level of plausibility, the well-pleaded facts must demonstrate "'more than a sheer possibility that a defendant has acted unlawfully.'" *Advance Am. v. Fed. Deposit Ins. Corp.*, 2017 WL 2869918, at *3 (D.D.C. July 5, 2017) (quoting *Iqbal*, 556 U.S. at 678); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).  Facts that "are merely consistent with" a defendant's liability "stop[ ] short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678; *FiberLight, LLC v. Wash. Metro. Area Transit Auth.*, 2017 WL 2544131, at *11 (D.D.C. June 12, 2017) (internal citation omitted).

Consistent with the Federal Rules, the D.C. Circuit sanctions the appointment of Masters only in a limited set of circumstances, and once appointed, their authority must be carefully cabined.  *See In re Bituminous Coal Operators' Ass'n*, 949 F.2d 1165, 1168 (D.C. Cir. 1991); *In re U.S. Dep't of Def.,* 848 F.2d 232, 236 (D.C. Cir. 1988).  Under Rule 53(a)(1) of the Federal Rules of Civil Procedure, unless a statute provides otherwise, Masters may only be appointed by courts to: (A) "perform duties consented to by the parties;" (B) "hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury," when such an appointment is warranted by (i) an "exceptional condition" or (ii) when the court "need[s] to perform an accounting or resolve a difficult computation of damages"; or (C) to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."  Fed. R. Civ. P. 53.

Plaintiffs have not pled, much less plausibly so, that any one of these circumstances is applicable here.  Defendants do not consent to the appointment of a Master, and this case is in

the initial stages of pretrial litigation such that the computation of damages provision is not

relevant, rendering Rule 53(a)(1)(A) and (B)(ii) inapplicable.  This leaves only Rule

53(a)(1)(B)(ii) and 53(a)(1)(C) as hypothetical bases for the appointment of a Master.  However,

neither the Federal Rules of Civil Procedure nor relevant case law lend any credence to the

proposition that the appointment of a Master to "conduct a real and through [sic] investigation,"

Compl. ¶ 95, is an appropriate application of either the "exceptional condition" criterion or the

sort of pretrial matter "that cannot be effectively and timely addressed by an available district

judge."  Fed. R. Civ. P. 53.[17]

Rather, the only form of investigation contemplated under Rule 53(a) pertains to post-

trial/post-judgment scenarios, such as investigating alleged violations of complex consent

decrees.  *See* Fed. R. Civ. P. 53 advisory comm. nn.; *see also Cobell v. Norton*, 237 F. Supp. 2d

71 (D.D.C. 2003) (Master appointed to investigate and report on whether individuals violated

Court's orders following a trial).  There is no suggestion in the rules that Masters may be

appointed to investigate private-party allegations of unlawful activity, or to litigate private

parties' claims for them at any stage of litigation, let alone at the pre-trial stage.[18]

---

[17] Indeed, even if conducting free-wheeling, open-ended investigations were the proper
purview of a Master, Plaintiffs do not plausibly allege why this Court is ill-equipped to
"effectively and timely" address this issue or why any exceptional condition is present.  *See* Fed.
R. Civ. P. 53(a)(1)(C).  "[T]he fact that the case involves complex issues of fact and law is no
justification for reference to a Master, but rather is a [com]pelling reason for trial before an
experienced judge."  *Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 821 n.2 (2d Cir.
1986) (internal quotations omitted).

[18] Courts occasionally appoint Masters to review classified documents in Freedom of
Information Act ("FOIA") cases, *see In re U.S. Dep't of Defense*, 848 F.2d at 238, but there is no
FOIA claim here.  Regardless, reviewing documents in the context of FOIA litigation is an
entirely different exercise from the sort of boundless investigation contemplated by Plaintiffs.

To appoint a Master to perform the duties Plaintiffs urge here would therefore "exceed [the] powers" of this Court, *Madrigal Audio Labs., Inc.*, 799 F.2d at 821, constituting the sort of appointment that is "outside of a trial court's discretion." *In re U.S. Dep't of Def.*, 848 F.2d at 236; *see also In re Bituminous Coal Operators' Ass'n*, 949 F.2d at 1168 (finding that "mandamus is an appropriate remedy" where a trial court appoints a Master to assume a function that "exceeds the limits of the district court's reference authority-limits impelled by the character of federal courts functioning under Article III of the Constitution").

Accordingly, this claim should be dismissed for failure to state a claim because it is not the business of a Special Master to "investigate" private-party allegations of unlawful activity, or to litigate private parties' claims for them.

## III.   THE COURT SHOULD GRANT THE GOVERNMENT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT SIX.

The Court should grant partial summary judgment to the Government Defendants on Count Six (Plaintiffs' Privacy Act claim), because the requested records are exempt from disclosure under 5 U.S.C. § 552a(j)(2).  In Count Six of the Complaint, Plaintiffs seek to compel the FBI to respond to Plaintiff Montgomery's March 27, 2017, Privacy Act request for all documents that refer or relate to his December 2015 interview with the FBI conducted as part of its inquiry into his allegations of mass surveillance.  Compl. ¶¶ 40, 102–108 (requesting that the Court order that the FBI "comply with the Privacy Act of 1974 and turn over any and all relevant documentation to Plaintiff Montgomery"); Declaration of David M. Hardy ("Hardy Decl.") ¶ 5, attached as Exhibit C; *see* 5 U.S.C. § 552a(d)(1) (requiring agencies on request, subject to certain exemptions, to provide individuals with copies of records or information pertaining to them

contained in a system of records).[19]  Because the requested records are exempt from disclosure

under the Privacy Act, however, summary judgment on Count Six is appropriate.

Summary judgment is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "A fact is 'material' if it is capable of affecting

the outcome of the litigation," and "[a] dispute is 'genuine' if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Lugo v. U.S. Dep't of Justice*,

214 F. Supp. 3d 32, 37 (D.D.C. 2016) (internal citation omitted).  Moreover, summary judgment

is properly granted against a party who "'fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial.'"  *Younger v. D.C. Pub. Sch.*, 2017 WL 3129733, at *3 (D.D.C. July 21,

2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In ruling on a motion for summary judgment, a court must draw all justifiable inferences

in the nonmoving party's favor and accept the nonmoving party's evidence as true; however, a

nonmoving party must establish more than "the mere existence of a scintilla of evidence" in

support of its position.  *Id.* (internal citation omitted).  If the evidence "is merely colorable, or is

not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50

(citations omitted).  Further, "it is well-established that 'the presumption of good faith' that

accompanies agency affidavits submitted in the Privacy Act or FOIA context cannot be rebutted

---

[19] Upon receiving Plaintiff Montgomery's Privacy Act request, the FBI confirmed receipt of the request and requested a completed Certification of Identity form from Plaintiff Montgomery on March 30, 2017.  Hardy Decl. ¶ 6.  Plaintiffs provided the completed form to the FBI on April 12, 2017, *id.* at ¶ 7, and on May 1, 2017 the FBI acknowledged receipt and advised Plaintiffs that the request had been received for processing.  *Id.* ¶ 8.

by purely speculative claims about the existence and discoverability of other documents."

*Hedrick v. FBI*, 216 F. Supp. 3d 84, 94–95 (D.D.C. 2016) (citation omitted).

The Privacy Act, 5 U.S.C. § 552a, "regulates the 'collection, maintenance, use and dissemination of information' about individuals by federal agencies." *Mobley v. CIA*, 924 F. Supp. 2d 24, 35 (D.D.C. 2013), *aff'd* 806 F.3d 568 (D.C. Cir. 2015), *citing Wilson v. Libby*, 535, F.3d 697, 707 (D.C. Cir. 2008). Under the statute, if a federal agency maintains a "system of records," it must "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." 5 U.S.C. § 552a(d)(1). A "system of records" is defined within the statute to mean "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5). The Privacy Act permits agencies to exempt certain systems of records from the requirements of § 552a(d), for instance, in furtherance of law enforcement activities. *See id.* § 552a(j)(2). When asserting such an exemption in a motion for summary judgment on the basis of a statutory exemption, the agency "bears the burden of sustaining its decision to claim an exemption from disclosure." *Mobley*, 924 F. Supp. 2d at 36 (citing *Wheeler v. CIA*, 271 F. Supp. 2d 132, 136 (D.D.C. 2003).

The FBI FD-302 reports and related documents Plaintiffs seek are exempt from disclosure under § 552a(j)(2). "Exemption j(2) applies if: (1) the records are stored in a system of records that has been designated by the agency to be exempt from the Privacy Act's disclosure requirements, and (2) the system of records is 'maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal

law[s]' and consists of 'information compiled for the purpose of a criminal investigation.'"
*Boehm v. FBI*, 948 F. Supp. 2d 9, 18 (D.D.C. 2013) (citing 5 U.S.C. § 552a(j)(2)).

As the Declaration of David M. Hardy explains, any FD-302 reports and any related documents are maintained by the FBI—an agency which performs as its principal function activities pertaining to the enforcement of criminal laws—and are expected to be contained within its Central Records System, an exempted system of records compiled for the purpose of a criminal investigation pursuant to § 552a(j)(2).  *See* Hardy Decl. ¶ 22. The FD-302 is an internal form used by the FBI to document interviews conducted in law enforcement investigations, and because Plaintiffs' request seeks information relating to "302 reports" of an interview of Mr. Montgomery by FBI Special Agents, the requested records constitute law enforcement records within the meaning of the statute.  *Id.*  It is well-established that law enforcement records contained within the FBI's Central Records Systems are generally exempt from disclosure under Privacy Act exemption (j)(2).  *See, e.g.*, *Sierverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93, 103 (D.D.C. 2010) ("[T]he FBI has promulgated a rule . . . that exempts its [Central Records System] to the fullest permissible extent from the requirements of 5 § U.S.C. 552a(d)."), *quoting Doe v. FBI*, 936 F.2d 1346, 1351 (D.C. Cir. 1991); *Tamayo v. U.S. Dep't of Justice*, 932 F. Supp. 342, 344 (D.D.C. 1996) ( "[T]he Privacy Act confers no right of access to the records at issue, as they have been exempted from disclosure pursuant to subsection (j)(2) . . . as implemented by 28 C.F.R. § 16.96 . . . as to the FBI[.]").  Indeed, courts have held that the (j)(2) exemption applies specifically to FBI FD-302 reports.  *See Taylor v. U.S. Dep't of Justice*, 257 F. Supp. 2d. 101,

34

107 (D.D.C. 2003) (FD-302 reports requested under the Privacy Act exempt from disclosure

under exemption (j)(2)).[20]

Because Plaintiffs' Privacy Act request seeks documents exempt from the Privacy Act's

access provision, and for the reasons stated in the Declaration of David Hardy, partial summary

judgment should be granted in favor of the Government Defendants with respect to Plaintiff

Montgomery's Privacy Act claim.[21]

### IV.    PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS AND NOR ARE THEY LIKELY TO SUFFER IRREPARABLE HARM.

Plaintiffs have moved for a temporary restraining order and preliminary injunction in

which they seek to enjoin the Government Defendants from "(1) illegally and unconstitutionally

spying on and surveilling millions of Americans, including Plaintiffs, without probable cause or

a warrant, and (2) destroying evidence of illegal and unconstitutional spying turned over to

Defendant Comey and the FBI by Plaintiff Montgomery." Pls.' PI Mot. at 1.[22]

---

[20] As the *Taylor* court explained, the FBI's systems of records have also been exempted by the Department of Justice in regulations found at 28 C.F.R. § 16.96. *Taylor*, 257 F. Supp. 2d at 107 n.12.

[21] In order to provide maximum transparency, it is the policy of the FBI to process such Privacy Act requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in addition to the Privacy Act. *See* Hardy Decl. ¶ 6 n.1. When the FBI processes a Privacy Act request under both statutes, no information is withheld unless it is exempt from disclosure under both statutes. *Id.* The FBI's processing of Plaintiff's request under the FOIA is ongoing. However, Plaintiffs Complaint does not assert a FOIA claim, so the Government Defendants address only the Privacy Act claim raised in Count Six of the Complaint.

[22] In its Minute Entry Order, dated June 27, 2017, the Court ordered the Government Defendants to file an opposition to the motion for a preliminary injunction without mentioning briefing on a temporary restraining order. This is consistent with the Court's comments at the status hearing on June 23, 2017. *See* Tr. at 18 ("I'm struggling to see how this could be even fairly considered a TRO application. They sometimes just refer to it generally as TRO/PI. It seems like more of a PI- than TRO-type case.").

Plaintiffs' preliminary injunction motion against the Government Defendants is premised on Counts Three, Five, Six, and Seven of the Complaint.  Count Three alleges that the Government is "surveill[ing] millions of Americans," including Plaintiffs, *see* Compl. ¶ 84, whereas Counts Five, Six, and Seven seek, among other things, a "copy of all documents" relating to FBI reports of an interview with Plaintiff Montgomery, as well the "return of the hard drives" allegedly "containing evidence" of the alleged "surveillance."  Compl. ¶¶ 97, 101, 103. Plaintiffs' motion for a preliminary injunction rests on the viability of these counts, and, as explained above, they are not viable.  None of the exhibits Plaintiffs append to their motion breathe new life into these counts where they must, as a matter of law, be dismissed for lack of subject matter jurisdiction.  Plaintiffs' motion for a preliminary injunction must also be denied where they cannot show a likelihood of success on the merits, or that they are likely to suffer irreparable harm without such an extraordinary remedy.

## A.  Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).  The movant bears the burden of demonstrating "by a clear showing" that the remedy is necessary and that the prerequisites for issuance of the relief are satisfied.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014).

"[P]laintiff[s] seeking a preliminary injunction must establish that [they are] [1] likely to succeed on the merits, that [they are] [2] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and that [4] an injunction is in the public interest."  *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *Abdullah*, 753 F.3d at 197. The third and fourth factors "'merge when the Government is the opposing party.'"  *Colo. Wild*

*Horse v. Jewell*, 130 F. Supp. 3d 2015, 220–21 (D.D.C. 2015) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  "A positive showing on all four factors is required." *Bayer HealthCare, LLC v. FDA*, 942 F. Supp. 2d 17, 23 (D.D.C. 2013).[23]  "The likelihood of success requirement is the most important of these factors." *Elec. Privacy Info. Ctr. v. FTC*, 844 F. Supp. 2d 98, 101 (D.D.C. 2012). "When [a] plaintiff has failed to show a likelihood of success on the merits, the 'court need not proceed to review the other three preliminary injunction factors.'" *Id.* (quoting *Ark. Dairy Coop. Ass'n v. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009)).

Further, preliminary relief cannot issue based speculation or the mere "possibility of irreparable harm." *Winter*, 555 U.S. at 21–22.  A preliminary injunction should issue only upon a showing that irreparable harm is "likely in the absence of an injunction." *Id.* at 22; *see Sherley*, 644 F.3d at 392–93.  Finally, a court deciding a preliminary injunction motion "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," *Winter*, 555 U.S. at 24, and "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (citation omitted).

---

[23] Plaintiffs assume that these factors are assessed on a "continuum" or "sliding scale" basis, Pls.' PI Mot. at 10, but, as this Court noted, *see* 957 F. Supp. 2d at 25 n.31, the "continued viability" of the sliding-scale approach after *Winter* has been called into question by the D.C. Circuit and this Court.  *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011); *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F. Supp. 2d 58, 76 (D.D.C. 2013); *see also Singh v. Carter*, 185 F. Supp. 3d 11, 16 (D.D.C. 2016) ("The D.C. Circuit has, in the past, followed the 'sliding scale' approach to evaluating preliminary injunctions. . . . The continued viability of the sliding scale approach is highly questionable, however, in light of the Supreme Court's holding in *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008))."

**B. The Court Should Deny Plaintiffs' Motion to the Extent It Is Premised on Count Three of the Complaint Because They Lack Standing to Seek an Injunction Against Any Alleged Government Surveillance.**

As outlined above, "[t]he judicial power of the United States" is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies,'" *Valley Forge*, 454 U.S. at 471, and a demonstration of a party's standing to sue "is an essential and unchanging part of the case-or-controversy requirement," *Lujan*, 504 U.S. at 560. Standing is also an essential element of the "merits" on which parties seeking a preliminary injunction must show a substantial likelihood of success, *Klayman*, 800 F.3d at 565 (Williams, J.); *id.* at 569–70 (Sentelle, J.), because they "must have standing" for the court "to have subject matter jurisdiction over . . . [their] motion." *Dominguez v. Dist. of Columbia*, 536 F. Supp. 2d 18, 23–24 (D.D.C. 2008) (Leon, J.).

Because Plaintiffs must show that they have standing "with the manner and degree of evidence required at the successive stages of the litigation," *Lujan*, 504 U.S. at 561, they cannot now rely on mere allegations. Rather, at the preliminary injunction stage, their burden "[is] no less than that required on a motion for summary judgment," and they must set forth by affidavit or other evidence "specific facts" establishing their standing. *Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 186 (D.D.C. 2015); *see Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).

Plaintiffs have provided utterly no evidence of specific facts demonstrating that they were the subject of Government surveillance or that they otherwise possess standing. Plaintiffs' supposed evidence chiefly comes from their affidavits, ECF Nos. 8, 9,[24] but these affidavits

---

[24] Plaintiffs also rely on a number of news articles (and a related FISC opinion) reporting on specific incidents, which had been reported by the Government to the FISC, involving an intelligence-gathering program not challenged here. *See* Pls.' PI Mot. at 3–4. As described above, moreover, the incidents described involved actions by Government personnel after the

simply parrot the conclusory allegations of Plaintiffs' Complaint.  Even if the Complaint had

adequately alleged standing, "[r]epeating the conclusory allegations of a complaint [in an

affidavit] is not enough" to provide evidence of standing.  *Texas Indep. Producers & Royalty

Owners Ass'n v. EPA*, 410 F.3d 964, 973 (7th Cir. 2005); *accord Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871, 898 (1990) (affidavit devoid of specific facts failed to demonstrate standing).

Most crucially, Plaintiffs' affidavits fail to state specific facts demonstrating that they

have genuine, personal knowledge that they were subject to Government surveillance, and an

affidavit lacking such a basis has no evidentiary force whatsoever.  *Ass'n of Flight Attendants-

CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 466 (D.C. Cir. 2009) (holding that an "affidavit's

assertion of causation has no more force under the summary judgment standard we apply than if

it were alleged in a complaint" because there was "no basis in the affidavit—which itself

provide[d] no factual support for the asserted causation—to suppose that [affiant] had personal

knowledge of the cause or was otherwise competent to testify as to its nature.").  Plaintiffs'

affidavits are simply a series of broad conclusions without any specific factual support.

The only basis Plaintiffs do offer for their affidavits is the supposed experience and

expertise of Plaintiff Montgomery and unnamed others.  Specifically, Plaintiff Klayman's

affidavit depends entirely on hearsay statements from unnamed Verizon Wireless employees as

well as from Plaintiff Montgomery—whose own affidavit does not contain such statements—to

connect the alleged technical problems he has been having with his phone to government

surveillance.  *See* Klayman Aff. at ¶¶ 12, 14–15, 18, ECF No. 8.  Plaintiff Montgomery's

affidavit, however, provides no basis for concluding that he has any relevant knowledge

---

communications had already been collected, *see supra*, at 15 n.8, and thus they do nothing to
assist Plaintiffs' assertion that their communications were collected.

regarding ongoing Government surveillance or is otherwise qualified to testify on such issues. He states he is a former contractor with the NSA, CIA, and DNI and had worked on surveillance programs, Montgomery Aff. at ¶ 2, ECF No. 9, but does not explain how or in what capacity this would have allowed him to acquire the knowledge he claims to have about current Government surveillance programs, particularly the ones Plaintiffs purport to challenge.  Indeed, he fails to demonstrate any nexus whatsoever between his past work for the Government and his claims of ongoing Government surveillance in this case.  *Id*.  Similarly, Mr. Montgomery fails to offer any specific facts supporting his claims that he was able to trace purported hacking attempts against him back to the Government.  *Id*.  Mr. Montgomery, in sum, provides utterly no basis to credit as accurate the conclusory statements in his affidavit.[25]

Thus, Plaintiffs have failed to offer any evidence that they possess standing to challenge alleged Government surveillance, and Plaintiffs' Motion should be dismissed to the extent it is premised on Count Three of the Complaint.

**C.   The Court Should Deny Plaintiffs' Motion to the Extent It Is Premised on Counts Five and Seven Because They Must Be Dismissed for Lack of Subject Matter Jurisdiction; the Motion Should Also Be Denied to the Extent It is Premised on Count Six Where Summary Judgment Is Appropriate.**

In their motion for a preliminary injunction, Plaintiffs seek to enjoin the Government Defendants from "destroy[ing] the evidence contained on Plaintiff Montgomery's hard drives

---

[25]   Indeed, in another case recently decided by this Court, Judge Contreras found it "difficult to credit" Mr. Montgomery's "belated change in position," as set forth in a sworn affidavit, on the issue of whether he possessed the computer software that was central to his defamation suit.  *Montgomery v. Risen*, 197 F. Supp. 3d 219, 242 (D.D.C. 2016).  In an earlier case involving, among other things, disputes between Plaintiff Montgomery and his former partner and former counsel, a magistrate judge went further and imposed (and the district court upheld) sanctions on Mr. Montgomery for "perjuring himself" in a declaration.  *Montgomery*, 2010 WL 1416771, at *11, 18.

and the video recording of his interview" with the FBI.  Pls.' PI Mot. at 17.  The Motion should

be denied for two reasons.  First, Plaintiffs are not likely to succeed on the merits of Counts Five,

Six, or Seven, which underpin the relief sought in the motion.  As explained above, Counts Five

and Seven are tort claims for conversion and fraudulent misrepresentation relating to Plaintiff

Montgomery's hard drives and must be dismissed for lack of subject-matter jurisdiction because

Plaintiff Montgomery sued the wrong parties.  *See supra*, at 23-24.  As for Count Six in which

Plaintiff Montgomery seeks "all documents" relating to the FBI's interview of Plaintiff

Montgomery (presumably including the video of the interview), that count fails under the

Privacy Act because the requested documents are exempt from disclosure for the reasons set

forth above.  *See supra*, at 31-35.  As such, Plaintiff Montgomery has "failed to show a

likelihood of success on the merits" and thus the Court "need not proceed to review the other

three preliminary injunction factors." *Privacy Info. Ctr. v. FTC*, 844 F. Supp. 2d 98, 101 (D.D.C.

2012).

Second, Plaintiffs also have not shown that they are likely to suffer irreparable harm if

the Court does not enter an injunction to prevent the destruction of the hard drives or the video of

Plaintiff Montgomery's interview.  In support of their argument that they are likely to suffer

irreparable harm without preliminary injunctive relief, Plaintiffs assert that they have "repeatedly

asked for the return" of the hard drives and "been ignored each time," Pls.' PI Mot. at 17, and

that the FBI has also "ignored" their Privacy Act request for documents relating to the interview

of Plaintiff Montgomery.  *See id.*  This "stonewalling," Plaintiffs insist, "raises the strong

inference" that the FBI and former Director Comey are "hiding something," which "would lead

[them] to destroy the evidence." *Id.*  Indeed, Plaintiffs further hypothesize, this suit "very likely

served as the impetus for the FBI to actively destroy the evidence." *Id.*  Preliminary injunctive

relief, however, cannot be based on the mere "possibility of irreparable harm," *Winter*, 555 U.S. at 21–22, much less the rampant speculation Plaintiffs advance here.

Moreover, a preliminary injunction is not necessary here, in any event, because the Government Defendants have placed "litigation holds" on both the hard drives at issue and the video of the interview of Plaintiff Montgomery.  At the status conference hearing, counsel for the Government Defendants, James J. Gilligan, informed the Court that the "hard drives are in a secure facility with the [I]ntelligence [C]ommunity's Office of Inspector General" and have been there since August of 2016, Tr. at 19, and that there was "no risk" that the hard drives were "going to be destroyed anytime soon." *Id.* at 15.  The Department of Justice has also placed a litigation hold on the hard drives, so there is no need for a preliminary injunction to prevent their destruction.  Additionally, with regard to the video of the interview (as well as related FBI FD-302s), counsel for the Government Defendants suggested at the status conference hearing that he would put a litigation hold on them "so that there will be no question" about their destruction. *See id.* at 33.  The Court asked counsel to "go ahead and do that." *Id.* at 33.  That has been done, too.

As a result, there is no basis for the issuance of a preliminary injunction to prevent either the destruction of the hard drives or of the video of the FBI interview.  And thus Plaintiffs have provided utterly no reason for the Court to enter any preliminary injunction against the Government Defendants, and Plaintiffs' Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Counts Three, Five, Seven, and Eight under Rule 12(b)(1) for a lack of subject-matter jurisdiction; dismiss Count Four under Rule 12(b)(6) for failure to state a claim; grant the Government Defendants' partial summary

judgment as to Count Six; and deny Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

DATED:        August 1, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

*/s/ Rodney Patton*
RODNEY PATTON
Senior Counsel

JULIA A. BERMAN
CAROLINE J. ANDERSON
TIMOTHY A. JOHNSON
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Rm 7320
Washington, D.C.  20001
Phone: (202) 305-7919
Fax: (202) 616-8470
E-mail:  rodney.patton@usdoj.gov

Counsel for the Government Defendants