## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DENNIS MONTGOMERY, et al

                Plaintiffs,

v.

JAMES COMEY, et al

                Defendants.

**Case No: 17-cv-1074**

## PLAINTIFFS' OPPOSITION TO GOVERNMENT DEFENDANTS' MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs Dennis Montgomery and Larry Klayman ("Plaintiffs" unless individually named) hereby submit the following in opposition to Government Defendants' Motion to Dismiss, Motion for Partial Summary Judgment and in response to Opposition to Motion for Temporary Restraining Order. Because the Government Defendants filed identical briefs for all three documents, Plaintiffs will respond to each of the Government Defendants' briefs with this memorandum of law.

Dated: August 17, 2017

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
D.C. Bar No. 334581
2020 Pennsylvania Ave NW #800
Washington, DC, 20006
Tel: (561)-558-5536
Email: leklayman@gmail.com

Attorney for Plaintiffs

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

LEGAL STANDARD.............................................................................................................10

THE LAW..............................................................................................................................11

    Plaintiffs Have Standing Be Because They Have Plausibly Pled That They Are the Subject of Illegal and Unconstitutional Government Surveillance .........................................................11

        Plaintiffs Have Standing to Challenge the Defendants' Illegal and Unconstitutional Conduct Whether it Falls Under FISA Section 702 or Section 215 of the USA Freedom Act.......................................................................................................................................16

            PRISM Collection................................................................................17

            Section 215..........................................................................................19

            Plaintiffs' Substantiated Allegations of Surveillance Using CIA Malware Are Clearly Not Frivolous ...........................................................................................20

    Plaintiffs Do Not Need to Exhaust Administrative Remedies Because Doing So Would be Futile .................................................................................................................................22

    The Court Must Appoint a Special Master to Conduct an Investigation into Defendants' Illegal Activity ...................................................................................................................23

    Defendant FBI Must Comply with the Privacy Act and Provide Plaintiff Montgomery with his Requested 302 Reports.................................................................................................25

    Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction should be Granted, as Plaintiffs Have Shown the Likelihood of Success on the Merits and Irreparable Harm .................................................................................................................................28

        Plaintiffs Have Shown That They Have Standing in this Action for the Illegal and Unconstitutional Spying Conducted by Defendants...........................................................28

        Defendants' Arguments against Plaintiff's Preliminary Injunction Fail, as Plaintiffs Have Shown a Likelihood of Success on the Merits and Irreparable Harm ..............................30

            Plaintiffs Have Shown a Likelihood of Success on the Merits...................................30

Plaintiffs Have Shown the Likelihood of Irreparable Harm ........................................31

CONCLUSION.............................................................................................................................33

## <u>TABLE OF AUTHORITIES</u>

### <u>STATUTES</u>

5 U.S.C. §552a(j)(2)................................................................................................25, 26

50 U.S.C § 1881a(a) ...............................................................................................17

50 U.S.C. § 1881a(b) ..............................................................................................17

Fed. R. Civ. P. 53 ....................................................................................................23

Fed. R. Civ. P. 56(a) ...............................................................................................11

### <u>CASES</u>

*Am. Friends Serv. Comm. v. Webster,* 485 F. Supp. 222 (D.D.C. 1980)......................................31

*Citizens for Responsibility & Ethics in Washington v. Exec. Office of the President*, Civ. No. 07–1707 (D.D.C. Oct. 19, 2007)..........................................................................................31

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (U.S. 2013).........................................................11

*Davis v. FEC*, 554 U.S. 724 (U.S. 2008) .....................................................................................11

*Hanover Ins. Co. v. Emmaus Mun. Auth.*, 38 F.R.D. 470 (E.D. Pa. 1965)..................................24

*In re African–American Slave Descendants' Litigation*, 2003 WL 24085346 (N.D. Ill. July 15, 2003) ............................................................................................................................................32

*Johnson v. District of Columbia*, 368 F. Supp. 2d 30 (D.D.C. 2005)....................................22, 23

*Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C) ..........................................................................18

*Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009).....................................................33

*Monsanto Co. v. Geertson Seed Farms*, 177 L. Ed. 2d 461 (U.S. 2010) ......................................11

*Mountain States Legal Found. v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996).........................11, 12

*Sieverding v. U.S. Dep't of Justice,* 693 F. Supp. 2d 93 (D.D.C. 2010) .......................................25

*Skinner v. Aluminum Co. of Am.*, 95 F. Supp. 183 (W.D. Pa. 1951) ............................................24

*Tamayo v. U.S. Dep't of Justice*, 932 F. Supp. 342 (D.D.C. 1996)..................................................25

*Taylor v. U.S. Dep't of Justice*, 257 F. Supp. 2d 101 (D.D.C. 2003) .............................................25

*Tex. Alliance for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76 (D.D.C. Sept. 9, 2011).......10

*Younger v. D.C. Pub. Sch.*, 2017 U.S. Dist. LEXIS 113580 (D.D.C. July 21, 2017)....................11

**INTRODUCTION**

The Government Defendants are right – the Court <u>has</u> heard this story before! It would, however, appear that the Government Defendants have conveniently forgotten the outcome of the previous related cases[1] in this matter, where this Court issued preliminary injunctions against them preventing engaging the in the exact misconduct – mass scale illegal unconstitutional surveillance – that is again at issue now.[2] This case is based on a continuation of the Government Defendants' ongoing and continued pattern and practice of conducting mass-scale illegal and unconstitutional surveillance of millions of Americans, including, but not limited to Plaintiffs Dennis Montgomery and Larry Klayman ("Plaintiffs" unless individually named). As this Court has undeniably already recognized, this is again the case at the pinnacle of national importance, perhaps <u>even more so</u> than in *Klayman I and Klayman II*, given the fact that the Government Defendants simply gone about continuing their massive illegal and unconstitutional surveillance, despite the enactment of the USA Freedom Act. Thus, it is abundantly clear that the Government Defendants have no regard for this Court's previous orders, the Constitution, or the law. It is therefore incumbent upon this Court to, once again, as it has done in the past, "remind" the Government Defendants that they are not above the law and that there will be repercussions to their willful disregard of the Constitution. As such, preliminary injunctive relief is absolutely necessary – once again – so that this Court may persevere the status quo of simply obeying the law and monitor the conduct of Defendants and hold them in contempt for any further violations,

---

[1] *Klayman v. Obama*, 13-cv-851 (D.D.C) ("*Klayman I*); *Klayman v. Obama*, 13-cv-881 ("*Klayman II*").

[2] The injunctions issued previously by this Court were only mooted out by the passage of the USA Freedom Act, which purportedly outlawed the Government Defendants' illegal and unconstitutional surveillance. However, as has been recently revealed, the passage of the USA Freedom Act has done virtually nothing to stem the Government Defendants' illegal and unconstitutional surveillance practices. Unfortunately, this comes as no surprise, given the Government Defendants' apparent belief that they are above the law.

should they choose to continue their lawless behavior. Simply put, the Defendants are not above the law!

As Plaintiff Klayman argued in front of this Court on November 18, 2013 in *Klayman I*, "[w]e have never seen in the history of this country this kind of violation of the privacy rights of the American citizens. We live in an Orwellian state." *Klayman I*, ECF No. 41 at 17. This Court concurred, finding, "…the almost-Orwellian technology that enables the Government to store and analyze the phone metadata of every telephone user in the United States is unlike anything that could have been conceived in 1979." *Klayman I*, ECF No. 48 at 49. *See also id.* at 41 ("…empower the government to conduct wide-ranging 'DNA dragnets' that raise justifiable citations to George Orwell"). Now, the "almost-Orwellian" state contemplated by this Court just four years ago has come to near fruition, given that new and uncontroverted reports regarding the massive extent Government's illegal and unconstitutional surveillance schemes are emerging nearly every single day and implicating more and more people and agencies. For instance, as detailed in Plaintiffs' Supplement to Reply to Defendants' Opposition to Motion for Expedited Discovery, filed on July 31, 2017, it was revealed by Circa News that James Baker – general counsel for Defendant FBI – whom Plaintiffs had been personally assured by that Defendant Comey would be taking 'hands on' supervision and conducting the FBI's Montgomery investigation, given its importance," Comp. at 4, was himself implicit and engaged in Defendants' ongoing pattern and practice of conducting illegal, unconstitutional surveillance and subsequently lying and violating privacy rights to cover up their gross misconduct.

Regrettably, the gross misconduct and illegality that has been revealed recently is nothing new. The Government Defendants have been engaged in this exact type of illegal and unconstitutional behavior for years, completely undeterred by - and defiantly thumbing their

noses at - court orders, the law, or any other purported restriction. For instance, in 2014, the Honorable Reggie Walton ("Judge Walton"), who is also a member of this Court, wrote a scathing opinion and order, accusing intelligence agencies of callous and lawless disregard for the truth and the law, while he was part of the Foreign Intelligence Services Court. ("FISC"). *Klayman I*, ECF No. 182 Ex. A (the "Walton Order"). Judge Walton scrutinized the blatant misrepresentations by the NSA and other intelligence agencies, to the FISC court regarding whether certain parties had made requests to have their collected metadata preserved for litigation. Despite the fact that the parties, Jewel and First Unitarian, had contacted the government and made a "specific request" that the government inform the FISC of their existence, the government lies in a later pleading, stating that the parties "did not make a 'specific request' that the government inform this Court about the preservation orders…." Walton Order at 7. Judge Walton finds scathingly about the Department of Justice's deception, stating that, "[a]s the government is aware, it has a heightened duty of candor to the Court in *ex parte* proceedings. Regardless of the government's perception of the materiality of the preservation orders in Jewel and Shubert to its February 25 Motion, the government was on notice, as of February 26, 2014, that the plaintiffs in Jewel and First Unitarian believed that orders issued by the U.S. District Court for the Northern District of California required the preservation of the FISA telephony metadata at issue in the government's February 25 Motion." Walton Order at 8.

> The government, upon learning this information, should have made the FISC aware of the preservation orders and of the plaintiffs' understanding of their scope, regardless of whether the plaintiffs had made a "specific request" that the FISC be so advised. Not only did the government fail to do so, but the E-mail Correspondence suggests that on February 28, 2014, the government sought to dissuade plaintiffs' counsel from immediately raising this issue with the FISC or the Northern District of California.

Walton Order at 8-9 (emphasis added). Thus, as Judge Walton found, not only did the Department of Justice, in representing the intelligence agencies, blatantly attempt to deceive the court regarding its preservation obligations, it actively tried to cover up its deception by trying to "dissuade plaintiffs' counsel from immediately raising this issue." Walton Order at 9. This clearly demonstrates the lengths to which the intelligence agencies are willing to go to, in this case, destroy data that might be used as evidence of their illegal activities against them.

Incredibly, this was not even the first time that the Government Defendants were caught lying before Judge Walton. In an order issued on March 2, 2013, questioning the credibility, trustworthiness, and ability for Defendants to fully comply with court orders, Judge Walton held

> [I]n light of the scale of this bulk [telephone records] collection program, the Court must rely heavily on the government to monitor this program to ensure that it continues to be justified...and that it is being implemented in a manner that protects the privacy interests of U.S. persons as required by applicable minimization procedures. <u>To approve such a program, the Court must have every confidence that the government is doing its utmost to ensure that those responsible for implementation fully comply with the Court's orders. The Court no longer has such confidence</u>." (emphasis added)

*In Re Production of Tangible Things* [Redacted], Dkt. No: BR. 08-13 (FISA Ct. March 2, 2009).

The Government Defendants have not only attempted to deceive Judge Walton. The Honorable John Bates ("Judge Bates") further emphasized Defendant NSA's unlawful conduct and egregious and illicit surveillance tactics, by stating:

> The Court is troubled that the government's revelations regarding NSA's acquisition of Internet transactions mark the third instance in less than three years in which the government has disclosed a substantial misrepresentation regarding the scope of a major collection program. In March, 2009, the Court concluded that it s authorization of NSA's bulk acquisition of telephone call detail records from [redacted] in the so-called "big business records" matter "ha[d] been premised on a flawed depiction of how the NSA uses [the acquired] metadata," and that "[t]his misperception by the FISC existed from the inception of its authorized collection

in May 2006, buttressed by repeated inaccurate statements made in the government's submissions...[3]

It was even discovered that lower officials at Defendant NSA blatantly misused the NSA's incredibly surveillance power for their personal "benefit" to spy on their love interests. NSA Inspector General George Ellard admitted that since 2003, there have been "12 substantiated instances of intentional misuse" of "surveillance authorities." About all of these cases involved an NSA employee spying on a girlfriend, boyfriend, or some kind of love interest.[4] More concerning, if lower level employees are capable of such misuse of the agency's surveillance power, it is terrifying to even consider what the higher officials are capable of with access to such surveillance programs.

In 2014, Senator Dianne Feinstein accused Defendant CIA of removing documents from her offices, secretly searching her staff's computers and attempting to intimidate congressional investigators by requesting an FBI inquiry into their conduct.[5] An internal investigation by the CIA's inspector general, conducted while Defendant and former CIA Director John Brennan was in charge,  found that its officers indeed penetrated a computer network used by the Senate Intelligence Committee in preparing a report on the CIA's detention and interrogation program. The report by the agency's inspector general also found that CIA officers read the emails of the Senate investigators and sent a criminal referral to the Justice Department based on false

---

[3] Memorandum Opinion, *In re Government's Ex Parte Submission of Reauthorization Certification and Related Procedures, Ex Parte Submission of Amended Certifications, and Request for an Order Approving Such Certification and Amended Certification* (FISC Ct. Oct. 3. 2013) at fn. 14.

[4] Jake Gibson, *Too tempting? NSA watchdog details how officials spied on love interests*, Fox News, Sept. 27, 2013 available at: http://www.foxnews.com/politics/2013/09/27/too-tempting-nsa-details-how-officials- spied-on-love-interests.

[5] Alex Rogers, *The CIA Learns The Hard Way Not to Mess With Dianne Feinstein*, Time, March 12, 2014, available at: http://time.com/21854/cia-dianne-feinstein-john-brennan-senate/

information. One official with knowledge of the report's conclusions said the investigation also discovered that the officers created a false online identity to gain access on more than one occasion to computers used by the committee staff.[6]

Furthermore, Defendant Clapper, former Director of the Defense Intelligence Agency, has already gone so far as to brazenly lie in front of Congress regarding the NSA's pattern and practice of running rampant through the constitutional rights of Americans and illegally conducting massive spying operations.[7] Such a blatant and brazen lie under oath – otherwise known as perjury -- is indicative of the intelligence agencies' pattern and practice of dishonest and lying behavior, which has led for critics, such as Sen. Rand Paul to call for Clapper's resignation over the incident, which "amounts to perjury."[8]

Now, it has been confirmed that the Government Defendants have continued their pattern and practice of ignoring the Constitution, the law, and minimization procedures by using illegal wiretapping and surveillance by other nefarious means, and that such illegal and unconstitutional conduct is ongoing.

As recently as October 24, 2016, "the government orally apprised to Court of significant non-compliance with the NSA's minimization procedures involving questions of data acquired under Section 702 using U.S. person identifiers."

The FBI - under the direction of Defendant Comey and in conjunction with each and every Defendant – was found to be a gross offender of the FISA. The Order "chronicles nearly 10 pages listing hundreds of violations of the FBI's privacy-protecting minimization rules that occurred on [Defendant] Comey's watch." "The behavior the FBI admitted to a FISA judge just last month ranged from illegally sharing raw intelligence with unauthorized third parties to accessing

---

[6] Mark Mazzetti, Carl Hulse, *Inquiry by C.I.A. Affirms It Spied on Senate Panel*, The New York Times, July 31, 2014, available at: https://www.nytimes.com/2014/08/01/world/senate-intelligence-commitee-cia-interrogation-report.html

[7] Julian Hattem, *Attorney: Spy Chief Had 'Forgotten' About NSA Program When he Mislead Congress*, The Hill, May 8, 2015, available at: http://thehill.com/policy/technology/241508-spy-head-had-absolutely-forgotten-about-nsa-program

[8] *Id.*

intercepted attorney-client privileged communications without proper oversight the bureau promised was in place years ago."

Comp. ¶¶ 23-24 (internal citations omitted). Additionally, confirmed disclosures from various sources, including Circa News further reveal the massive extent of Defendants' illegal and unconstitutional surveillance programs:

The FBI has illegally shared raw intelligence about Americans with unauthorized third parties and violated other constitutional privacy protections, according to newly declassified government documents that undercut the bureau's public assurances about how carefully it handles warrantless spy data to avoid abuses or leaks….Once-top secret U.S. intelligence community memos reviewed by Circa tell a different story, citing instances of "disregard" for rules, inadequate training and "deficient" oversight and even one case of deliberately sharing spy data with a forbidden party…. The behavior the FBI admitted to a FISA judge just last month ranged from illegally sharing raw intelligence with unauthorized third parties to accessing intercepted attorney-client privileged communications without proper oversight the bureau promised was in place years ago.

The Justice Department inspector general's office declassified a report in 2015 that reveals the internal watchdog had concerns as early as 2012 that the FBI was submitting 'deficient" reports indicating it had a clean record complying with spy data gathered on Americans without a warrant. The FBI normally is forbidden from surveilling an American without a warrant. But Section 702 of the Foreign Surveillance Act, last updated by Congress in 2008, allowed the NSA to share with the FBI spy data collected without a warrant that includes the communications of Americans with "foreign targets." But the FISA court watchdogs suggest FBI compliance problems began months after Section 702 was implemented.

Amy Jeffress, the former top security adviser to former Attorney General Eric Holder, was appointed by the intelligence court in 2015 to give an independent assessment of the FBI's record of compliance. Jeffress concluded agents' searches of NSA data now extend far beyond national security issues and thus were "overstepping" the constitutional protections designed to ensure the bureau isn't violating Americans' 4th Amendment protections against unlawful search and seizure. "The FBI procedures allow for really virtually unrestricted querying of the Section 702 data in a way the NSA and CIA have restrained it through their procedures," she argued before the court in a sealed 2015 proceeding.

Comp. ¶ 25 (internal citations omitted)

As has been the Government Defendants' strategy throughout *Klayman I* and *Klayman II*, and now here, they rely on the fact that they do, in fact, "hold all of the cards," and therefore Plaintiffs and this Court - in their estimation at least - have no choice but to accept their what is apparent and false representations that they are not engaging in this illegality. While the Government Defendants may have had at least a shred of credibility back when *Klayman I* was filed, they certainly have lost any modicum of credibility now. Not only have they "thumbed their nose" as this Court's binding preliminary injunction in *Klayman I*, the specific, detailed, and substantiated factual allegations set forth in the Complaint clearly show that the Government Defendants' illegal and unconstitutional surveillance of millions of Americans, including but not limited to Plaintiffs, have brazenly and actually <u>increased</u> in scale. *See* Comp. ¶¶ 21-27; 63-65. It would be entirely inappropriate legally and equitably, and in fact, non-sensical, for the Government Defendants to now expect this Court and Plaintiffs to and merely take their word that Plaintiffs were not unconstitutionally and illegally surveilled, given their intelligence agencies' longstanding pattern and practice of illegal and unconstitutional behavior, and then repeatedly lying about it to Congress and the courts.

The Government Defendants' strategy goes hand in hand with their steadfast refusal to allow Plaintiffs to take discovery into their gross illegality. Indeed, given that their strategy is to simply rely on the fact that they solely possess all evidence of their wrongdoing, it would clearly behoove them to vehemently oppose discovery and delay production of incriminating documents as long as possible in order to allow the cover-up to continue. However, given the fact that Plaintiffs have filed a motion for a preliminary injunction, with the hearing upcoming, this Court simply cannot allow the Government Defendants' stonewalling to continue. Should the Government Defendants refuse to allow for basic discovery, as set forth in previous pleadings,

then Plaintiffs must be permitted to call the Defendants as witnesses at the upcoming preliminary injunction hearing. Regardless of the mechanism employed by this Court, the Government Defendants' bad faith stonewalling must cease. Indeed, it is shocking that the Government Defendants are using taxpayer money to vehemently oppose a preliminary injunction that would simply require them to follow the law as written, as opposed to simply settling the matter and agreeing to obey the law. In essence, the Government Defendants are fighting for the ability to continue to break the law without this Court's oversight and any legal consequences. This raises a strong presumption that the Government Defendants are not obeying the law, nor do they plan to do so in the future. This is just one of many reasons why preliminary injunctive relief is required.

It is incumbent upon this Court to again stand as the last line of defense against the illegal and unconstitutional surveillance practices of the Government Defendants, something that other courts and members of congressional committees are either afraid or unwilling to do. Indeed, The Hill only recently reported that Defendant Clapper himself "issued revised procedures in 2013 that made it easer for executive branch officials [like Defendant Barack Obama ("Obama") to 'unmask' the names of lawmakers or congressional staffers caught up in intelligence intercepts overseas. ECF No. 25 Ex. A. The procedures instituted by Defendant Clapper allowed for a lawmaker or staffer to be unmasked merely if "'an executive branch recipient of intelligence' believed that learning 'the identity of the Member of Congress or the Congressional staff is necessary to understand and assess the associated intelligence and further a lawful activity of the recipient agency'…." *Id*. As a result of Defendant Clapper's procedures, the frequency of unmasking Capitol Hill figures has risen exponentially, from just a few per year to as often as once per month, which has "raised concerns in congressional circles." *Id*. "Two 2016

GOP presidential candidates, Sens. Rand Paul (Ky.) and Lindsey Graham (S.C.), have said they believe their identities were unmasked by Obama intelligence officials." *Id*. This explains why members of Congress have done nothing to stop Defendants'' illegal and unconstitutional misconduct—they are all, rightfully, scared of being surveilled, unmasked, and blackmailed and or having their personal lives and political careers destroyed by the the runaway Government Defendants. This is why it is imperative that this Court, as it has bravely done in the past, again truly the last line of defense against the Government Defendants illegal, unconstitutional, and frankly, tyrannical, misconduct.

## **LEGAL STANDARD**

The Government Defendants move to dismiss certain claims under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6). A 12(b)(1) motion challenges the subject matter jurisdiction of the Court. In evaluating a 12(b)(1) motion, "the Court must accept as true all of the factual allegations contained in the complaint…and should review the complaint liberally while accepting all inferences favorable to the plaintiff." *Tex. Alliance for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76, 86 (D.D.C. Sept. 9, 2011) (internal quotations and citations omitted). A Court may consider relevant materials outside of the pleadings in deciding a 12(b)(1) motion. *Id*.

A 12(b)(6) motion only "tests the legal sufficiency of a complaint." *Id*. "To satisfy this test, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Id*. (internal quotations and citations omitted). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint, and grant a plaintiff the benefit of all inferences that can be derived from the facts alleged." *Id*. (internal quotations and citations omitted).

Furthermore, the Government Defendants move for summary judgment on Plaintiffs' Sixth Cause of Action. A Court shall only grant summary judgment if "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. A nonmoving party, however, must establish more than the mere existence of a scintilla of evidence in support of its position." *Younger v. D.C. Pub. Sch.*, 2017 U.S. Dist. LEXIS 113580, *10 (D.D.C. July 21, 2017) (internal quotations and citations omitted).

## THE LAW

I.  **Plaintiffs Have Standing Because They Have Plausibly Pled That They Are the Subject of Illegal and Unconstitutional Government Surveillance**

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.' As we have explained, '[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (U.S. 2013). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Id*. at 1147. As the Supreme Court has held, the "imminence" requirement for future injury is an "elastic concept." *Id*. The Supreme Court has found Article III standing where a party merely shows a "reasonable probability that future harm will occur." *Monsanto Co. v. Geertson Seed Farms*, 177 L. Ed. 2d 461, 466 (U.S. 2010). *See also Davis v. FEC*, 554 U.S. 724, 734 (U.S. 2008) ("A plaintiff may challenge the prospective operation of a statute that presents a realistic and impending threat of direct injury.") "Moreover, courts have often found probabilistic injuries sufficient to support standing." *Amnesty Int'l USA*, 133 S. Ct. at 1162. Even

more, the U.S. Court of Appeals for the District of Columbia Circuit has found standing merely

upon just an increased risk of future injury. *See Mountain States Legal Found. v. Glickman*, 92

F.3d 1228 (D.C. Cir. 1996).

The Government Defendants falsely, and at a minimum disingenuously, contend that

Plaintiffs do not make plausible allegations that they are or will be the subject of government

surveillance. This predictable assertion by the ethically bereft Government Defendants actually

underscores exactly why this case must proceed and Plaintiffs be allowed to take discovery. As

has been their pattern and practice in *Klayman I*, *Klayman II*, and this instant matter, the

Government Defendants again attempt to capitalize on the fact that they "hold all the cards" and

that any evidence of wrongdoing is solely in their own possession – a convenient and

unbelievably arrogant "Catch 22" where they make the rules and this Court has no business

"butting in" and exposing their lies! From what they view as their position of strength, the

Government Defendants simply allege that no wrongdoing has occurred and expect Plaintiffs,

this Court, and the public at large to trust them and allow them to operate unchecked.

However, as pled in the Complaint, the Government Defendants have completely lost any

possible benefit of the doubt given the fact that substantial evidence of their illegal and

unconstitutional misconduct has been revealed to the public and continues to be revealed nearly

every day. These reports alone make it far more than "plausible" that the Government

Defendants are, indeed, illegally surveilling Plaintiffs, and therefore Plaintiffs clearly have

standing to bring this action. For instance:

> As recently as October 24, 2016, "the government orally apprised to Court of
> significant non-compliance with the NSA's minimization procedures involving
> questions of data acquired under Section 702 using U.S. person identifiers."

> The FBI - under the direction of Defendant Comey and in conjunction with each
> and every Defendant – was found to be a gross offender of the FISA. The Order

> "chronicles nearly 10 pages listing hundreds of violations of the FBI's privacy-protecting minimization rules that occurred on [Defendant] Comey's watch." "The behavior the FBI admitted to a FISA judge just last month ranged from illegally sharing raw intelligence with unauthorized third parties to accessing intercepted attorney-client privileged communications without proper oversight the bureau promised was in place years ago."

Comp. ¶¶ 23-24 (internal citations omitted). Additionally, confirmed disclosures and reports from various sources, including Circa News further reveal the massive extent of Defendants' illegal and unconstitutional surveillance programs:

> The FBI has illegally shared raw intelligence about Americans with unauthorized third parties and violated other constitutional privacy protections, according to newly declassified government documents that undercut the bureau's public assurances about how carefully it handles warrantless spy data to avoid abuses or leaks….Once-top secret U.S. intelligence community memos reviewed by Circa tell a different story, citing instances of "disregard" for rules, inadequate training and "deficient" oversight and even one case of deliberately sharing spy data with a forbidden party…. The behavior the FBI admitted to a FISA judge just last month ranged from illegally sharing raw intelligence with unauthorized third parties to accessing intercepted attorney-client privileged communications without proper oversight the bureau promised was in place years ago.
>
> The Justice Department inspector general's office declassified a report in 2015 that reveals the internal watchdog had concerns as early as 2012 that the FBI was submitting 'deficient" reports indicating it had a clean record complying with spy data gathered on Americans without a warrant. The FBI normally is forbidden from surveilling an American without a warrant. But Section 702 of the Foreign Surveillance Act, last updated by Congress in 2008, allowed the NSA to share with the FBI spy data collected without a warrant that includes the communications of Americans with "foreign targets." But the FISA court watchdogs suggest FBI compliance problems began months after Section 702 was implemented.
>
> Amy Jeffress, the former top security adviser to former Attorney General Eric Holder, was appointed by the intelligence court in 2015 to give an independent assessment of the FBI's record of compliance. <u>Jeffress concluded agents' searches of NSA data now extend far beyond national security issues and thus were "overstepping" the constitutional protections designed to ensure the bureau isn't violating Americans' 4th Amendment protections against unlawful search and seizure</u>. "The FBI procedures allow for really virtually unrestricted querying of the Section 702 data in a way the NSA and CIA have restrained it through their procedures," she argued before the court in a sealed 2015 proceeding.

13

Comp. ¶ 25 (internal citations omitted). Thus, at this point, given what has been disclosed to the public – and what continues to be disclosed nearly every day - it is impossible for the Governments Defendants to credibly assert that they have not engaged in a continued pattern and practice of conscious and willful disregard for constitutional and other rights of millions of Americans. The Government Defendants, whose claims of honesty have been shredded, therefore revert to the bizarre strategy of simply claiming that Plaintiffs have not that they have been personally surveilled. However, this argument unequivocally fails as well.

Both Plaintiff Montgomery and Plaintiff Klayman "fall squarely within the locus of those targeted by Defendants, since Plaintiff Montgomery is a whistleblower and Plaintiff Klayman the attorney who represents him." Comp. ¶ 30. Plaintiff Montgomery is a "former NSA, CIA, and DNI contractor and whistleblower regarding Defendants' longstanding pattern and practice of conducting illegal, unconstitutional surveillance on millions of Americans, which continues to this day." Comp. ¶ 33. Plaintiff Klayman has "brought many lawsuits that have attracted national attention, including one against the NSA and others, among other defendants, for illegally and unconstitutionally spying on millions of Americans." Comp. ¶ 53. Furthermore, Plaintiff Klayman has "has been publicly trying to raise awareness of, and demand an investigation into, Defendants' ongoing illegal and unconstitutional surveillance of millions of Americans, as well as to prosecute wrongdoers" and even "met with House Intelligence Committee, the Senate Intelligence Committee, the House Judiciary Committee and the Senate Judiciary Committee and its members and staff with regard to the illegal and unconstitutional spying and surveillance at issue." Comp. ¶¶ 54-55. Thus, given the fact that both Plaintiffs are playing a pivotal role in

exposing and seeking redress to prevent the Government Defendants' continuing massive, illegal and unconstitutional scheme to perform warrantless surveillance on millions of Americans, it is far more than simply "plausible" that they are personally the targets of this scheme – it is certain, given Plaintiffs experiences of late, as detailed in the Complaint and supporting documentation and affidavits.

As set forth in great detail in the Complaint, Plaintiffs have personally experienced tell-tale signs of Defendants' illegal and unconstitutional surveillance, despite the Government Defendants' disingenuous and predictable attempts to marginalize them. Plaintiff Klayman, almost immediately after corresponding with Rep. Devin Nunes, chairman of the House Intelligence Committee, experienced several abnormalities with his mobile phone, including but not limited to (1) fake "software updates" which Plaintiff Klayman confirmed with  Verizon that were not initiated on their end, (2) battery draining at an exponential rate, and (3) files erasing and downloading automatically without Plaintiff Klayman's consent, and (4) numerous other abnormalities. Comp. ¶¶ 57-62. The Government Defendants attempt to explain away these events as simple phone malfunction (which is improper at the motion to dismiss stage), but the timing of these abnormalities and the fact that these issues have persisted to the point where Plaintiff Klayman has had to visit three different Verizon Wireless stores and even switch phones cannot be explained away so easily. Indeed, the probability that Plaintiff Klayman would experience the same issues after actually changing phones by pure happenstance are slim to none. Even Plaintiff Montgomery "confirmed that battery drainage is a tell-tale sign that the Defendants have successfully hacked into a cellular phone and that Defendants often insert

malware onto recipients' phones using fake 'software updates.'" Comp. ¶ 60. Plaintiff Montgomery himself detailed in the Complaint numerous instances of hacking attempts by Defendants, which upon tracing the IP addresses of the origination points, confirmed to have originated from the FBI, Department of Defense and the CIA. Comp. ¶¶ 44-47.

Given the specific instances of illegal and unconstitutional surveillance personally experienced by Plaintiffs, as detailed above, the Government Defendants' meritless claim that Plaintiffs do not plausibly plead that they were surveilled must fail, and is frankly insulting. Plaintiffs have far exceeded the minimum threshold to establish standing to challenge the Government Defendants' illegal and unconstitutional surveillance on them and, as such, must be allowed to proceed to discovery, the preliminary injunction hearing, and trial.

**A.**     **Plaintiffs Have Standing to Challenge the Defendants' Illegal and Unconstitutional Conduct Whether it Falls Under FISA Section 702 or Section 215 of the USA Freedom Act**

The Government Defendants attempt to pigeonhole Plaintiffs' claims into either Section 702 of the Foreign Intelligence Surveillance Act ("PRISM") or Section 215 of the USA FREEDOM ACT ("Section 215") despite the fact that the Complaint expressly sets forth that:

> Defendants' ongoing illegal, unconstitutional surveillance continues to occur in numerous ways, **including but not limited t**o, bulk telephony metadata collection similar to the now "discontinued" Section 215 of the USA PATRIOT ACT as well targeted "PRISM" collection under Section 702 of the Foreign Sovereignties Immunity Act. **Additional, specific mechanisms employed by Defendants will be set forth in discovery.**

Comp. ¶ 20. Indeed, it at least appears that the Government Defendants are attempting to divert this Court's and Plaintiffs' attention from any other illegal and unconstitutional surveillance

schemes apart from violations for Section 215 and PRISM, which also perhaps also explains their strong efforts to prevent Plaintiffs from taking discovery. However, as described above, at a minimum, Plaintiffs have established standing to challenge Defendants' illegal and unconstitutional surveillance on them, regardless of what program or form it may take. Yet, even if Plaintiffs claims were limited to PRISM and Section 215 (they are not), Plaintiffs still have standing to challenge these provisions specifically.

### 1.    PRISM Collection

Under the terms of PRISM, the Government may not intentionally target a U.S. person overseas or persons known to be in the United States. 50 U.S.C. § 1881a(b).  In theory, PRISM is meant for the "targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information," *id*. § 1881a(a), and must comply with the terms of the Fourth Amendment. *Id*. § 1881a(b). However, as set forth previously in detail, what is supposed to happen in theory differs greatly from what Defendants actually do.

Indeed, the Government Defendants argue that courts must accord a "'presumption of regularity' to the official acts of government agencies, 'and, in the absence of clear evidence to the contrary…presume that they have properly discharged their official duties.'" Def's. Br. at 25. It would appear, therefore, that the Government Defendants have again reverted to their tried and true strategy of presuming that this Court, Plaintiffs, and the American public will simply take their self-serving assertions that they are not engaging in any misconduct at face value. However Defendants should have lost this benefit of the doubt given the preliminary injunction issued by this Court in *Klayman I* years ago. Even so, Defendants now are <u>absolutely</u> not entitled to any

presumption of truth now, or for that matter at any time, given the avalanche of reports that they are <u>still</u> engaged in the same illegal and unconstitutional surveillance enjoined in *Klayman I*! As laid out in detail in Comp. ¶¶ 21- 27, it is beyond dispute that this illegal and unconstitutional activity is ongoing. Thus, the Government Defendants clearly are not entitled to any "presumption of regularity." This concept is a shop worn vestige of the past, when government was more honest (sic!) than it is today and does not apply in any event in this serious case at the pinnacle of national importance for not just Plaintiffs, but the American people.

Even more, Plaintiffs have pled that they "at all material times, made phone calls and exchanged correspondence with individuals located in foreign nations within the past two years."[9] Comp. ¶ 31. This places them within the group of persons reasonably and plausibly targeted under PRISM at the motion to dismiss stage. Recognizing this, the Government Defendants argue that Plaintiffs have no standing because they do not allege the specific countries and persons overseas that they communicated with. This is a carefully crafted "catch-22" by the Government Defendants – they disingenuously assert that Plaintiffs lack standing but then hide behind "national security" and "confidentiality" when asked about their targeting practices under PRISM. Indeed, it is not knowable to Plaintiffs or this Court <u>right now</u> whether the Government intercepted Plaintiffs' communications <u>because the Government Defendants hold all of the evidence of their wrongdoing</u>. This "catch 22" exemplifies exactly why this matter

---

[9] The Government Defendants falsely assert that this Court finding in *Klayman I* that Plaintiffs lacked standing to challenge PRISM is controlling here. However, the Government Defendants omit this Court's specific finding previously that the lack of standing was because "plaintiffs here have not even alleged that they communicate with anyone outside the United States at all…." Klayman v. Obama, 957 F. Supp. 2d 1, 8 n.6 (D.D.C). This is not the case here.

must be allowed to proceed and Plaintiffs be permitted to take discovery.

### 2.   Section 215

The Government Defendants essentially repeat their argument set forth pertaining to PRISM, and rest on the discredited "presumption of regularity" that they falsely and arrogantly claim they are afforded.  Indeed, despite the extensive allegations of continued and ongoing illegality arising from Defendants' conscious and willful disregard for the Constitution and the laws of the land set forth in the Complaint, Comp. ¶¶ 21-27, each of which are supported by Orders of the FISC Court, reputable news outlets and their confirmed and uncontroverted disclosures, and/or Defendants' own admissions, the Government Defendants still somehow assert that Plaintiffs have not "made any factual allegations…that could conceivably overcome the presumption of regularity to be accorded here…." Def's Br. at 30. Plaintiff go far beyond merely "assum[ing] that the Government is flouting express legal limits on its surveillance authority." *Id*. Plaintiffs have pled facts expressly confirming that the Government is flouting express legal limits on its surveillance authority. The Government Defendants' apparent strategy here is to arrogantly claim with Plaintiffs and the Court, "head I win tails you lose." Essentially, the Government Defendants' argument boils down to: we, the so-called government can do what we want and we don't have to answer to anyone or any judge for our actions; nor do we have to submit to discovery – we are above the law and benefit from what is a dual system of justice – one for the elites and another for the public.

Furthermore, the Government Defendants again attempt to create a "catch-22" for Plaintiffs by alleging that Plaintiffs "have not made any factual allegations from which the Court

plausibly could conclude that their communications are being or will be collected under such a supposed program." Def's Br. at 30. Indeed, the Government Defendants can only make this assertion given their relative position of strength insofar as they, as this Court has repeatedly observed and commented on,  "hold all the cards" and solely possess all evidence of their wrongdoing. What is not disputable, as set forth in the Complaint, is that the Government Defendants <u>are</u> engaging in cover-up of a massive unconstitutional and illegal surveillance of millions of Americans. Plaintiffs have also pled substantial facts that show exactly why they are firmly within the locus of persons surveilled by Defendants. As such, it is entirely legally inappropriate  to even entertain a motion to dismiss. Plaintiffs must be allowed to proceed to discovery and the preliminary injunction hearing, and then trial.

## 2.   Plaintiffs' Substantiated Allegations of Surveillance Using CIA Malware Are Clearly Not Frivolous

Despite the detailed factually supported allegations set forth in the Complaint, the Government Defendants somehow incredulously assert that Plaintiffs' claims involving computer and cell phone hacking are "frivolous." The Government Defendants falsely claim that "Plaintiffs have not plausibly alleged any claims related to an alleged and so-called CIA 'malware' program because the Complaint contains solely conclusory allegations that such a program exists and that plaintiffs are the target of it." Def's Br. at 32. This false assertion completely ignores the revelations set forth by WikiLeaks, and confirmed and  reported on by the media, that are detailed in the Complaint. For instance:

> Indeed, WikiLeaks recently revealed that Defendants, including the CIA, "developed malware -- bearing names such as "Assassin" and "Medusa" - intended to target iPhones, Android phones, smart TVs and Microsoft, Mac and

Linux operating systems, among others. An entire unit in the CIA is devoted to inventing programs to hack data from Apple products."

According to the WikiLeaks leaks, "[s]ome of the remote hacking programs can allegedly turn numerous electronic devices into recording and transmitting stations to spy on their targets, with the information then sent back to secret CIA servers." "One document appears to show the CIA was trying to 'infect' vehicle control systems in cars and trucks for unspecified means." "WikiLeaks hinted that the capabilities revealed in Tuesday's disclosure could have even darker utility than simply spying. 'It would permit the CIA to engage in nearly undetectable assassinations….'"

Furthermore, "'[a]s an example, specific CIA malware revealed in 'Year Zero' is able to penetrate, infest and control both the Android phone and iPhone software that runs or has run presidential Twitter accounts,' the WikiLeaks release stated.

Comp. ¶¶ 63-65. Thus, it is far more than "plausible" that these malware programs exist. These assertions are factually substantiated by credible sources.

Moreover, as pled in the Complaint, and discussed previously in *supra* section (I), both Plaintiff Montgomery and Plaintiff Klayman have personally experienced telltale signs of the Government's surveillance on their personal electronic devices, despite the Government Defendants' dishonest and disingenuous attempts to try to explain they away as mere general technical problems. Plaintiff Klayman had to go to three different Verizon Wireless stores after receiving a fake software update on his Android device, which is in line with the WikiLeaks report of the CIA developing malware to target Android phones. Plaintiff Montgomery personally traced the IP addresses of hacking attempts back to the Government on numerous occasions. These go far beyond mere "technical problems," as the Government Defendants would have this Court believe. Indeed, the Government Defendants attempt to even factually discredit Plaintiff Montgomery's ability to trace an IP address, which is entirely improper on a motion to dismiss. Even so, given the fact that Plaintiff Montgomery is a former "NSA, CIA, and DNI contractor," Comp. ¶ 33, it is, frankly, not plausible that he would <u>not</u> know how to conduct

an IP trace. Plaintiff Montgomery was a top-level contractor for the intelligence agencies, who routinely performed the type of technical work involved in tracing IP addresses. Clearly, given the fact that Plaintiff Montgomery was a whistleblower on the Government Defendants' illegal and unconstitutional surveillance practices, whose claims have been substantiated at every turn, the only logical conclusion is that Plaintiff Montgomery engaged in surveillance work and therefore has the requisite skillset to trace an IP address.   Thus, the Government Defendants' attempt to outrageously paint Plaintiffs' allegations as "frivolous," despite the abundant facts pled in the Complaint, is nothing more than a transparent, albeit again dishonest, diversionary tactic that this Court must ignore.

## II.   Plaintiffs Do Not Need to Exhaust Administrative Remedies Because Doing So Would be Futile

The Government Defendants assert that Plaintiffs' tort claims for conversion and fraudulent misrepresentation must be dismissed for lack of subject matter jurisdiction as it pertains to Defendant FBI and Defendant Comey, in his official capacity. Defendant Comey is also being sued for conversion and fraudulent misrepresentation in his individual capacity, which will purportedly be addressed by Defendant Comey in a separate brief, but is not at issue here.

 To the extent that the Government Defendants claim that Plaintiffs' claims for conversion and fraudulent misrepresentation should have been brought against the United States, pursuant to the Federal Tort Claims Act ("FTCA"), the United States should simply substitute in as a Defendant in the interest of judicial efficiency. Indeed, should the Government Defendants refuse to do so, Plaintiffs request leave to amend in this regard.

The Government Defendants also falsely assert that Plaintiffs' claims under the FTCA must fail because Plaintiffs have not exhausted administrative remedies. However, well settled case law squarely dictates that "an 'exception to the exhaustion requirement … is where any

resort to [administrative remedies] would have been futile.' *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 49 (D.D.C. 2005) (internal citations omitted). "The D.C. Circuit explains that the resort to administrative remedies is 'futile,' for the purposes of this exception, where there is 'certainty of an adverse decision; from the administrative agency." *Id.* (internal citations omitted). Indeed, given the fact that the Government Defendants have exhibited a clear, willful disregard for the law and the Constitution, and have then repeatedly lied about it, and have gone to extreme lengths to cover up their gross illegal and unconstitutional conduct, it is absolutely futile for Plaintiffs to "exhaust administrative remedies." Requiring Plaintiffs to do so will only serve to delay justice and allow the Government Defendants more time to potentially cover up their illegality.

## III.    The Court Must Appoint a Special Master to Conduct an Investigation into Defendants' Illegal Activity

In their Complaint, Plaintiffs ask the court to "appoint a Special Master with the appropriate security clearance to conduct a real and [thorough] investigation of [1] the information contained on [Montgomery's confiscated] hard drives" and [2] "Defendants' attempts to and/or actual hacks of Plaintiff Klayman's Verizon Wireless cellular phone and Plaintiff Montgomery's computer. Comp. ¶¶ 89-95 Predictably, however, in furtherance of their attempt to prevent and/or unjustly delay discovery – to which Plaintiffs are legally entitled -- the Government Defendants falsely claim that the appointment of a Special Master lies would exceed the powers of the court.

Under the Federal Rules of Civil Procedure, Special Masters may be appointed by the court "when such an appointment is warranted by an exceptional condition." Fed. R. Civ. P. 53. Here, the items in question are complex and potentially contain classified materials, as the Government Defendants have asserted. An analysis of Montgomery's confiscated hard drives

and Defendants' hacking attempts may require advanced technical knowledge to interpret, which may be outside the familiarity of this court. Thus, the exceptional conditions involved here clearly warrant the appointment of a Special Master. 1 A.L.R. Fed. 922; *See Skinner v. Aluminum Co. of Am.*, 95 F. Supp. 183, 184 (W.D. Pa. 1951) (Holding that the issues of laches and estoppel were sufficiently complex as to warrant the reference to a Special Master); *see also Hanover Ins. Co. v. Emmaus Mun. Auth.*, 38 F.R.D. 470, 473 (E.D. Pa. 1965) ("a reference [to a Special Master] can be justified when the matter is complex").

Furthermore, the seriousness and gravity of the Government Defendant's illegal and unconstitutional actions qualify as an exceptional condition that necessitates the appointment of a special master by the Court. Defendants have violated the constitutional rights of millions of Americans, including but not limited to Plaintiffs, through their illegal and unconstitutional massive surveillance scheme. Given the significant ongoing and anticipated harms to Plaintiffs in this case, it necessary to appoint a Special Master to delve into and analyze Montgomery's confiscated hard drives and Defendants' hacking attempts on Plaintiffs. The investigation of these matters is needed to develop the record and assist this Court's consideration of the key issues, especially in light of the upcoming preliminary injunction hearing.

Should this Court decide not to appoint a special master in this case, Plaintiffs request that it fashion an alternative method to allow examination of the requested items. This Court may review the classified information *in camera*, as it possesses the necessary security clearance. This allows Defendants to preserve the confidentiality of certain documents - where genuinely required - while preventing them from merely asserting "classification" as a means to evade proper discovery. In addition, Plaintiffs are willing to apply for the appropriate security clearances needed to examine the information themselves as a last resort. Plaintiff Klayman is a

former Department of Justice attorney and has possessed security clearances in the past while working in the Antitrust Division, which would make it easier for him to obtain such a clearance now. Plaintiff Montgomery says he currently still holds the highest security clearances and should be allowed to review any classified documents, which previously had been in his possession in any event before they were turned over to Defendant Comey and the FBI in any event.

## IV.   Defendant FBI Must Comply with the Privacy Act and Provide Plaintiff Montgomery with his Requested 302 Reports

In its sixth cause of action, Plaintiffs request injunctive relief to require Defendant FBI to fulfill its obligations to comply with Plaintiff Montgomery's Privacy Act request for "any and all documents that refer or relate in any way and all 302 reports of the interview in which Plaintiff Montgomery participated in with Special Agents Walter Giardina and William Barnett." Comp. ¶ 103. In their Partial Motion for Summary Judgment, the Government Defendants falsely assert that the documents that Plaintiffs seek are exempt from disclosure under the Privacy Act, 5 U.S.C. §552a(j)(2), since they are contained in a system of records maintained by an agency which performs the enforcement of criminal law as its principal function and consists of information compiled for the purpose of a criminal investigation. Def's Br. at 43-44.[10] However,

_____

[10] The three cases that Defendant FBI uses to support their notion that Plaintiff Montgomery's 302 request is exempt from the Privacy Act are completely distinguishable from the matter at hand. The Privacy Act request in *Sieverding v. U.S. Dep't of Justice* related to the plaintiff's record concerning her own arrest and imprisonment for civil contempt. 693 F. Supp. 2d 93, 102–03 (D.D.C. 2010), aff'd, No. 13-5060, 2013 WL 6801184 (D.C. Cir. Dec. 11, 2013), and aff'd, No. 13-5060, 2013 WL 6801184 (D.C. Cir. Dec. 11, 2013). Similarly, in *Taylor v. U.S. Dep't of Justice*, the plaintiff was incarcerated and sought record relating to his own criminal case. 257 F. Supp. 2d 101, 103 (D.D.C. 2003). In *Tamayo v. U.S. Dep't of Justice*, no details about the plaintiffs Privacy Act request are given, although a related FOIA request was denied based on the protection of the Treasury Enforcement Communication system and Drug Enforcement Agency program codes. 932 F. Supp. 342, 344 (D.D.C. 1996). Plaintiff Montgomery is seeking a 302 request that relates to his December 2015 interview with the FBI,

the Government Defendants conveniently fail to mention that in order to qualify for §552a(j)(2) exemption, the information in the records must:

> [consist] of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision

5 U.S.C. §552a(j)(2). The 302 reports and related documentation requested by Plaintiff Montgomery pertain only to his interview with Special Agents Water Giardina and William Barnett. Comp. ¶¶ 103. The only relevant information contained in those reports would be statements made by Plaintiff Montgomery to the FBI. Exhibit A; Supplemental Affidavit of Dennis Montgomery ¶ 16. ("Supp. Aff."). Therefore, the FBI lacks any logical basis to try to withhold Plaintiff Montgomery's own testimony from himself, as the exemptions are put in place to protect the disclosure of sensitive information unknown to the subject of an ongoing criminal investigation. Supp. Aff. ¶ 15-20.   It is telling that Comey and the FBI never even responded to Plaintiff Montgomery's multiple requests for his 302 reports, before this litigation was necessarily filed as a result of their ignoring the law, much less professional courtesy. Supp. Aff. ¶ 9-14.   Again, Defendants apparently believe that they are accountable to no one, and are above the law.

---

implicating the NSA, CIA, DNI's pattern and practice of conducting illegal, unconstitutional surveillance against millions of Americans. All the relevant information in the report is information that Plaintiff Montgomery himself divulged to the FBI. Unlike the cases that Defendant FBI cites, Plaintiff Montgomery is not facing criminal charges; instead, his interview was given in full cooperation with the FBI in order to shed light on illegal activity of the NSA, CIA, and DNI.

Additionally, Plaintiff Montgomery gave his testimony to Defendant FBI in December 2015. Supp. Aff. ¶ 4.   Since then, no actual steps have been taken to conduct a criminal investigation based on Plaintiff Montgomery's claims or to prosecute the parties implicated by Plaintiff Montgomery's testimony. Supp. Aff. ¶ 18.   Thus, Defendant FBI cannot "have its cake and eat it too" by disingenuously claiming that this is an actual ongoing criminal investigation, when in actuality, the FBI, on Defendant Comedy's orders, buried the FBI's investigation because the FBI itself is involved in an ongoing conspiracy and their own acts to not only conduct the aforementioned illegal, unconstitutional surveillance, but to cover it up as well. Supp. Aff. ¶ 19.

Plaintiff Montgomery requires the 302 reports in order to establish if the information set forth in his interview with Special Agents Giardina and Barnett was recorded truthfully. Supp. Aff. ¶ 10.   The notion that Defendant FBI is trying to withhold information from Plaintiff Montgomery that was given directly to them by Plaintiff Montgomery, is illogical and defies the very purpose of the Privacy Act. Supp. Aff. ¶¶ 15, 16, 20.   Absolutely no harm would occur if Defendant FBI released Plaintiff Montgomery's own statements back to him, and Defendant FBI fails to allege what, if any, harm could occur. Supp. Aff. ¶ 16. Thus, the Government Defendants' Partial Motion for Summary Judgment must be summarily denied.   As a final aside, Defendants Comey and the FBI have no problem illegally leaking classified information contained in his FBI government memos to trigger a Special Counsel appointment as payback to the president who fired him, but will not provide 302 reports to Plaintiff Montgomery which must be produced as a matter of the law.

///

**V.     Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction should be Granted, as Plaintiff Have Shown the Likelihood of Success on the Merits and Irreparable Harm**

Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction to enjoin Defendants from "(1) illegally and unconstitutionally spying on and surveilling millions of Americans, including Plaintiffs, without probable cause or a warrant, and (2) destroying evidence of illegal and unconstitutional spying turned over to Defendant Comey and the FBI by Plaintiff Montgomery." ECF No. 7. It bears repeating that the preliminary injunction sought by Plaintiffs is merely to restore the status quo by forcing the Government Defendants to simply obey the law. The fact that they are using taxpayer funds to fight tooth and nail for what can only be described as the continued right to break the law without this Court's oversight is, frankly, mind-boggling. This raises a clear presumption that the Government Defendants simply have no interest in obeying the Constitution or the law in general.

**A.     Plaintiffs Have Shown That They Have Standing in this Action for the Illegal and Unconstitutional Spying Conducted by Defendants**

To the extent that the Government Defendants assert that Plaintiffs do not have standing to bring a motion for preliminary injunction for Defendants' illegal and unconstitutional surveillance, Plaintiffs have already shown such an assertion to be false in *supra* section I. The Government Defendants state that Plaintiffs' affidavits fail to state specific facts demonstrating that they have genuine, personal knowledge that they were subject to Government Surveillance. Def's Br. at 50. However, Plaintiffs clearly put forth the requisite facts needed in not just the Complaint but also in their affidavits to show injury and have a valid claim for standing.

In his affidavit, Plaintiff Montgomery details how he discovered Defendants' indisputable involvement in his illegal surveillance by tracing the IP addresses of the origination of the hacking attempts on his home and business computers. *See* ECF No. 9; Montgomery Aff.

¶¶ 18-23. Plaintiff Montgomery discovered that the IP addresses of the hacking attempts belonged to the FBI's Criminal Justice Information Systems office in Clarksburg, West Virginia, the Department of Defense's Network Information Center in Columbus, Ohio, and the CIA in Washington D.C. Montgomery Aff. ¶¶ 19-21. Plaintiff Montgomery was also able to trace a hack of his Apple account to the CIA in Langley, Virginia. Montgomery Aff. ¶¶ 22-23. Defendants claims that Plaintiff Montgomery fails to explain how his experience as a contractor working on surveillance programs with the NSA, CIA, and DNI would allow him to require the knowledge he claims to have about current Government surveillance programs. Firstly, no further qualification of Plaintiff Montgomery's experience is either allowed or needed. As set forth previously, it is disingenuous at best, and frankly, ridiculous and false for the Government Defendants to question Plaintiff Montgomery's ability to trace an IP address given his extensive history as a former CIA, NSA, and DNI contractor and an expert of the highest level in this field. Secondly, Plaintiff's Montgomery's sworn statements regarding the tracing of the government's hacking attempts to their very own headquarters does not require any more detail into his knowledge of current Government surveillance programs. Plaintiff Montgomery caught the FBI, Department of Defense, and CIA, conjunction with the other defendants, red-handed in their illegal surveillance attempts through tracking the IP addresses of their hacking attempts. Plaintiff Montgomery is expert in this.

Plaintiff Klayman stated in both his Complaint and affidavit that he noticed objectively verifiable signals that he has been the subject of ongoing illegal surveillance since he began representing Plaintiff Montgomery in his whistleblowing attempts. ECF No. 8; Klayman Aff. at ¶¶ 9-18. This included unprompted "software updates" on his cellular phone, which Verizon Wireless confirmed they did not initiate. Klayman Aff. at ¶¶ 12-13. Montgomery, who has

extensive experience with government surveillance programs, informed Plaintiff Klayman, his lawyer, that the symptoms of his malfunctioning device implicate malware spying by the government. Klayman Aff. at ¶¶ 14-15. Montgomery himself is a qualified expert on inserting malware into electronic devices, as he commenced such actions during his time working for the government. Verizon employees were also able to confirm that the activity on Plaintiff Klayman's cellular phone was abnormal, even after he replaced the device. Klayman Aff. at ¶¶ 17-18.

Defendants also hold evidence of their wrongdoing in this case, as they are the ones conducting the illegal and unconstitutional surveillance on Plaintiffs' devices and then subsequently covering them up. It is therefore unrealistic and disingenuous for the Government Defendants to expect Plaintiffs to set forth additional factual detail without the benefit of discovery and/or testimony at the preliminary injunction hearing, given the fact that they "hold all the cards."

**B. Defendants' Arguments against Plaintiff's Preliminary Injunction Fail, as Plaintiffs Have Shown a Likelihood of Success on the Merits and Irreparable harm**

**1. Plaintiffs Have Shown a Likelihood of Success on the Merits**

Defendants claim that Plaintiffs are "not likely to succeed on the merits of Counts Five, Six or Seven, which underpin the relief sought in the motion [for Preliminary Injunction]." Def's Br. at 41. As to Counts Five and Seven, Defendant FBI claims that Plaintiffs Motion should be denied because Plaintiff Montgomery sued the wrong parties for his tort claims for conversion and fraudulent misrepresentation. Def's Br. at 51. Plaintiffs have already addressed Government Defendant's false assertions, supra. *See supra* section II.

As to Count Six, Defendant FBI claims that Plaintiffs' Motion should be denied to the extent it is premised on their Privacy Act request because Plaintiff Montgomery's request is exempt under 5 U.S.C. §552a(j)(2). Def's Br. at 51-52. However, Defendant FBI's argument fails, as the disclosure of Plaintiff Montgomery's own 302 reports containing his own interview are not exempt under the Privacy Act. *See supra* section IV.

### 2.      Plaintiffs Have Shown the Likelihood of Irreparable Harm

Plaintiffs' Motion for Preliminary Injunction is clearly and unequivocally not "based on the mere 'possibility of irreparable harm'", as Defendants claim. Def's Br. at 53. Allowing the FBI to destroy this evidence would serve irreparable harm to Plaintiffs, as it is direct proof of Defendants' actions, on which this complaint is based. Preservation of Plaintiff Montgomery's hard drives and video interviews with the FBI are crucial in proving Defendants' illegal conduct and unconstitutional spying of millions of Americans. "Destruction of evidence may also rise to the level of irreparable harm", *see also Am. Friends Serv. Comm. v. Webster,* 485 F. Supp. 222, 233 (D.D.C. 1980) (finding that the plaintiff "will suffer significant, irreparable injury if defendants' continuing destruction of FBI files [in accordance with its record destruction program] is not enjoined"); *see also Citizens for Responsibility & Ethics in Washington v. Exec. Office of the President*, Civ. No. 07–1707 (D.D.C. Oct. 19, 2007) (JMF/HHK), Report and Recommendation at 3 ("[I]f, as [the plaintiff] contends, the e-mails have been deleted, then the backup media are the only place where they may be and the obliteration of this backup media obviously threatens [the plaintiff] with irreparable harm. Indeed, the threat of such obliteration is a text book example of irreparable harm.") The danger of the FBI destroying this evidence is imminent and a true concern, regardless of the so-called "litigation holds" that they placed on the hard drives and interview tapes in question. Def's. Br.

at 53. Counsel for the Government Defendants, James Gilligan, Esq., claims the hard drives are "in a secure facility with the [I]ntelligence [C]ommunity's Office of Inspector General" and that there is "'no risk" that the hard drives were 'going to be destroyed anytime soon" Def's Br. at 53. Yet, Mr. Gilligan's unwillingness to enter the hard drives and interview tapes into the record raises major red flags as to his clients' intentions. <u>Exhibit B</u>. Mr. Gilligan's refusal to cooperate reflects a high likelihood that the items in question will be destroyed by his clients who have a penchant of not just lying to courts and Congress but likely also their legal counsel; these materials need to be put into the custody of the Court immediately to ensure their preservation. Furthermore, neither Plaintiffs nor this Court have not received any confirmation from the Inspector General to corroborate Government Defendants' claim that these items are indeed secured, and as set forth previously at length, it is impossible to that the Government Defendants' word at anything. Indeed, this is not the first time that the government has engaged in the unconstitutional surveillance of millions of Americans, nor is it their first attempt at hiding their actions from the American people. Because of the magnitude, severity and legal consequences of Defendants' constitutional violations, the court should exercise its discretion in mandating the preservation of key evidence. *In re African–American Slave Descendants' Litigation*, 2003 WL 24085346, *2 (N.D. Ill. July 15, 2003) ("The court has broad discretion when determining whether to order a party to preserve evidence.") Counsel for Defendants, Mr. Gilligan, while saying in emails that the video of Plaintiff Montgomery's interview with the FBI is secure, as well as the 302 reports of this, has refused to inform the Court about his claim and more importantly put this on the record. Attached as ---- are this email exchange between Mr. Gilligan and Mr. Klayman, from which it can be gleaned that even Defendants' own counsel does not want to vouch for their actions and does not want his neck on the legal line for their

dishonesty and illegal acts. <u>Exhibit B</u>.

Furthermore, as mentioned earlier, it has long been established that the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury", and the ongoing illegal surveillance by Defendants certainly qualify as violation of Plaintiff's constitutional rights. *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). Thus, the court should grant Plaintiffs' motion and enter a preliminary injunction to restrain the Defendants from violating the law and the Fourth Amendment and to ensure that they do not continue to violate constitutional rights, and to exercise continuing jurisdiction over such illegal surveillance to ensure compliance. To simply preserve the "status quo" to obey the law and the Constitution, would do no irreparable harm to Defendants but simply concretize and insure what should be occurring, but which is presently not happening in any event, and would provide this Court the means to take strong remedial action if they continue to violate the law and the Constitution as this case proceeds to trial. This is not too much to ask under these compelling factual and legal circumstances

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny the Government Defendant's Motion to Dismiss and Partial Motion for Summary Judgment and grant Plaintiffs' Motion for Preliminary Injunction. It has long been established that the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury", and the ongoing illegal surveillance by Defendants certainly qualify as violation of Plaintiff's constitutional rights. *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009). Defendants' illegal and unconstitutional surveillance has been ongoing for

years now, and continues to occur. It is once again, up to this Court to stand up the Defendants and "remind" them that they are not above the law or the Constitution, which the Government Defendants have repeatedly shown a callous disregard for.

Dated: August 17, 2017                    Respectfully submitted,

                                          */s/ Larry Klayman*
                                          Larry Klayman, Esq.
                                          KLAYMAN LAW GROUP, P.A.
                                          D.C. Bar No. 334581
                                          2020 Pennsylvania Ave NW #800
                                          Washington, DC, 20006
                                          Tel: (561)-558-5536
                                          Email: leklayman@gmail.com

                                          Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on August 17, 2017.

*/s/ Larry Klayman*
Larry Klayman, Esq.

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN, *et al.,*

                    Plaintiffs,

v.

JAMES COMEY, et al.*,*

                    Defendants.

Case No: 17-cv-1074

## SUPPLEMENTAL AFFIDAVIT OF DENNIS MONTGOMERY

1.      My name is Dennis Montgomery. I am over 18 years old. I am an adult citizen of the United States and I am the Plaintiff in the above stated case. I have personal knowledge of the facts stated in this declaration.

2.      I am a former National Security Agency ("NSA"), Central Intelligence Agency ("CIA"), and Director of National Intelligence ("DNI") contractor and whistleblower.

3.      I have intimate knowledge of Defendants', each and every one them, acting individually and in concert, longstanding pattern and practice of conducting illegal, unconstitutional surveillance on millions of Americans.

4.      On December 21, 2015, I was interviewed under oath at the FBI Field Office in Washington, D.C. The FBI offered me immunity in exchange for my evidence and testimony.

5.      There, over the course of an over three-hour interview, recorded on video, with Special Agents Walter Giardina and William Barnett, I described the NSA, CIA, DNI's, and the other Defendants'—particularly Defendants Clapper and Brennan's— pattern and practice of conducting illegal, unconstitutional surveillance against millions of Americans, including

prominent Americans such as the chief justice of the U.S. Supreme Court, other justices, 156 judges, prominent businessmen, and others such as Donald J. Trump, as well as Plaintiffs themselves.

6.     I was assured that the FBI, under Defendant Comey, would conduct a full investigation into the grave instances of illegal and unconstitutional activity set forth by the information I provided.

7.     However, the FBI, on Defendant Comey's orders, buried the FBI's investigation because the FBI itself is involved in an ongoing conspiracy to not only conduct the aforementioned illegal, unconstitutional surveillance, but to cover it up as well.

8.     I do not pose any threat to national security, nor do I have any ties to terrorism. I am a former contractor for the NSA, CIA, and the DNI who still has a security clearance.

9.     On March 27, 2017, I submitted a Privacy Act Request to the FBI through my counsel, Larry Klayman, seeking "any and all documents that refer or relate in any way to [ ] any and all 302 reports of the interview in which Montgomery participated in with Special Agents Walter Giardina and William Barnett"

10.     I require the 302 reports in order to establish if the information set forth in his interview with Special Agents Giardina and Barnett was recorded truthfully.

11.     On March 30, 2017, the FBI sent me a request for additional documentation.

12.     On April 12, 2017, I faxed the requested documentation, through my counsel – a Certification of Identity form –  to the FBI.

13.     On May 1, 2017, the FBI confirmed receipt of my complete request, but to date, the FBI has refused to comply with the law as mandated by the Privacy Act of 1974 and has failed to produce any documents to me.

14.     My counsel, Larry Klayman, has contacted the FBI's General Counsel, James Baker, on my behalf numerous times to obtain an update on my investigation, but has been ignored each time, as well as my request for my 302 reports.

15.     The 302 reports and related documentation I requested in my Privacy Act request pertain only to my interview with Special Agents Water Giardina and William Barnett.

16.     There is no sensitive information in the 302 reports that should be withheld from me for security purposes, as the only relevant information contained in those reports would be statements I made to the FBI.

17.     I am currently not under criminal investigation by the FBI and the FBI bestowed me immunity in exchange for my evidence testimony on December 21, 2015.

18.     Since I gave my testimony to the FBI on December 21, 2015, no actual steps have been taken to conduct a criminal investigation based on my claims or to prosecute the parties implicated by my testimony.

19.     Therefore, the FBI cannot claim to that this is an actual ongoing criminal investigation, when in actuality, the FBI, on Defendant Comey's orders, buried the FBI's investigation because the FBI itself is involved in an ongoing conspiracy to not only conduct the aforementioned illegal, unconstitutional surveillance, but to cover it up as well.

20.     As such, the FBI lacks any logical basis to try to withhold my own testimony from myself.

21.     Since the December 21, 2015 interview with the FBI, I have been the victim of multiple hacking attempts against my home and business computers from Defendants.

22.     I recognized that there have been hacking attempts on my computer because of the skills and knowledge that I have obtained over my years as a computer expert, including my time

working for the NSA, CIA, and DNI.

23.     I have hacked computers for the government during my time as a government contractor for the NSA, CIA, and DNI and am able to recognize when my own computer is being hacked.

24.     I was able to trace the IP addresses of the origination of the hacking attempts.

25.     I discovered that numerous attempts also came from the FBI's Criminal Justice Information Systems office in Clarksburg, West Virginia.

26.     Upon tracing the IP addresses of the origination of the hacking attempts, I discovered that numerous attempts also came from the Department of Defense's Network Information Center in Columbus, Ohio.

27.     Upon tracing the IP addresses of the origination of the hacking attempts, I discovered that numerous attempts also came from the CIA in Washington, DC.

28.     In March 2017, I was also notified that my Apple account was hacked.

29.     Upon tracing the IP addresses of the origination of the hacking attempts, I discovered that the attempt came from the CIA in Langley, Virginia.

Sworn under penalty of perjury

Dated: August 17, 2017                              _____/s/ Dennis Montgomery_____
                                                    Dennis Montgomery

EXHIBIT B

 **Gmail**

**Sam S <sam.hs.fw@gmail.com>**

---

## Activity in Case 1:17-cv-01074-RJL MONTGOMERY et al v. COMEY et al Notice of Appearance

**Larry Klayman** <leklayman@gmail.com>                                         Thu, Aug 17, 2017 at 7:45 AM
To: Oliver Peer <oliver.peerfw@gmail.com>, Sam Sun <sam.hs.fw@gmail.com>, Dina James <daj142182@gmail.com>

---------- Forwarded message ----------
From: **Gilligan, Jim (CIV)** <James.Gilligan@usdoj.gov>
Date: Thu, Jul 6, 2017 at 7:54 AM
Subject: RE: Activity in Case 1:17-cv-01074-RJL MONTGOMERY et al v. COMEY et al Notice of Appearance
To: Larry Klayman <leklayman@gmail.com>
Cc: Oliver Peer <oliver.peerfw@gmail.com>, "Patton, Rodney (CIV)" <Rodney.Patton@usdoj.gov>, Sam Sun <sam.hs.fw@gmail.com>, Jonathon Moseley <moseley391@gmail.com>, "Berman, Julia (CIV)" <Julia.Berman@usdoj.gov>, Dina James <daj142182@gmail.com>, "Johnson, Timothy (CIV)" <Timothy.Johnson4@usdoj.gov>, "Anderson, Caroline J. (CIV)" <Caroline.J.Anderson@usdoj.gov>


It is your recollection, apparently, that is inaccurate.  However, if you want to make a record of our confirmation that the video of Mr. Montgomery's interview and the 302s are securely stored in the FBI's Washington Field Office, and that I instructed the FBI to place a litigation hold on them upon my return to the office following the June 23 status conference, then we have no objection to your doing so.


James J. Gilligan

Special Litigation Counsel

Civil Division, Federal Programs Branch

U.S. Department of Justice

P.O. Box 883

Washington, D.C.  20044


Tel:  202-514-3358


*The information in this transmittal (including attachments, if any) is intended only for the recipient(s) listed above and may contain information that is privileged and confidential. Any review, use, disclosure, distribution, or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately and destroy all copies of the transmittal. Your cooperation is appreciated.*


**From:** Larry Klayman [mailto:leklayman@gmail.com]
**Sent:** Wednesday, July 05, 2017 4:52 PM
**To:** Gilligan, Jim (CIV) <JGilliga@CIV.USDOJ.GOV>
**Cc:** Oliver Peer <oliver.peerfw@gmail.com>; Patton, Rodney (CIV) <RPatton@CIV.USDOJ.GOV>; Sam Sun <sam.hs.fw@gmail.com>; Jonathon Moseley <moseley391@gmail.com>; Berman, Julia (CIV) <juberman@CIV.USDOJ.GOV>; Dina James <daj142182@gmail.com>; Johnson, Timothy (CIV) <timjohns@CIV.USDOJ.GOV>; Anderson, Caroline J. (CIV) <canderso@CIV.USDOJ.GOV>

**Subject:** RE: Activity in Case 1:17-cv-01074-RJL MONTGOMERY et al v. COMEY et al Notice of Appearance

This is not accurate. I want ur representations on the record. Judge Leon accepted that for his taking custody. If you don't put it on the record I will so you may as well do it and accept responsibility.

Larry Klayman

On Jul 5, 2017 1:06 PM, "Gilligan, Jim (CIV)" <James.Gilligan@usdoj.gov> wrote:

You asked Judge Leon to require that we make such a record at the June 23 scheduling conference. Judge Leon did not find it necessary to do so, in light of my representation that I would ask the FBI to put a litigation hold on the materials in question, which I have done.

In addition, you already have a record of the materials' whereabouts and safe-keeping in my e-mail below.

James J. Gilligan

Special Litigation Counsel

Civil Division, Federal Programs Branch

U.S. Department of Justice

P.O. Box 883

Washington, D.C. 20044

Tel: 202-514-3358

*The information in this transmittal (including attachments, if any) is intended only for the recipient(s) listed above and may contain information that is privileged and confidential. Any review, use, disclosure, distribution, or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately and destroy all copies of the transmittal. Your cooperation is appreciated.*

**From:** Larry Klayman [mailto:leklayman@gmail.com]
**Sent:** Monday, July 03, 2017 11:22 AM
**To:** Gilligan, Jim (CIV) <JGilliga@CIV.USDOJ.GOV>
**Cc:** Dina James <daj142182@gmail.com>; Patton, Rodney (CIV) <RPatton@CIV.USDOJ.GOV>; Berman, Julia (CIV) <juberman@CIV.USDOJ.GOV>; Johnson, Timothy (CIV) <timjohns@CIV.USDOJ.GOV>; Anderson, Caroline J. (CIV) <canderso@CIV.USDOJ.GOV>; Oliver Peer <oliver.peerfw@gmail.com>; Sam Sun <sam.hs.fw@gmail.com>; Jonathon Moseley <moseley391@gmail.com>
**Subject:** RE: Activity in Case 1:17-cv-01074-RJL MONTGOMERY et al v. COMEY et al Notice of Appearance

Please put this on the record with the Court. Thank you and have a nice 4th. Larry

On Jul 3, 2017 7:36 AM, "Gilligan, Jim (CIV)" <James.Gilligan@usdoj.gov> wrote:

The video and the 302s are being maintained in a secure manner by the FBI's Washington Field Office.

James J. Gilligan

Special Litigation Counsel

Civil Division, Federal Programs Branch

U.S. Department of Justice

P.O. Box 883

Washington, D.C.  20044

Tel:  202-514-3358

*The information in this transmittal (including attachments, if any) is intended only for the recipient(s) listed above and may contain information that is privileged and confidential. Any review, use, disclosure, distribution, or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately and destroy all copies of the transmittal. Your cooperation is appreciated.*

**From:** Larry Klayman [mailto:leklayman@gmail.com]
**Sent:** Friday, June 30, 2017 4:23 PM
**To:** Gilligan, Jim (CIV) <JGilliga@CIV.USDOJ.GOV>
**Cc:** Patton, Rodney (CIV) <RPatton@CIV.USDOJ.GOV>; Berman, Julia (CIV) <juberman@CIV.USDOJ.GOV>; Johnson, Timothy (CIV) <timjohns@CIV.USDOJ.GOV>; Anderson, Caroline J. (CIV) <canderso@CIV.USDOJ.GOV>; Dina James <daj142182@gmail.com>
**Subject:** RE: Activity in Case 1:17-cv-01074-RJL MONTGOMERY et al v. COMEY et al Notice of Appearance

Please respond whether they have it and where it is now. This is not sufficient. That u ask for a hold means little to nothing. It's needs to be secured and the court needs to know how and where.

On Jun 30, 2017 11:52 AM, "Gilligan, Jim (CIV)" <James.Gilligan@usdoj.gov> wrote:

What I advised the Court is that I would ask the FBI to place a litigation hold on the video of Mr. Montgomery's interview and the 302s.  I did so upon my return to the office following last week's scheduling conference.

James J. Gilligan

Special Litigation Counsel

Civil Division, Federal Programs Branch

U.S. Department of Justice

P.O. Box 883

Washington, D.C.  20044

Tel: 202-514-3358

*The information in this transmittal (including attachments, if any) is intended only for the recipient(s) listed above and may contain information that is privileged and confidential. Any review, use, disclosure, distribution, or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately and destroy all copies of the transmittal. Your cooperation is appreciated.*

**From:** Larry Klayman [mailto:leklayman@gmail.com]
**Sent:** Thursday, June 29, 2017 11:35 AM
**To:** Gilligan, Jim (CIV) <JGilliga@CIV.USDOJ.GOV>
**Subject:** Fwd: Activity in Case 1:17-cv-01074-RJL MONTGOMERY et al v. COMEY et al Notice of Appearance

Why have you not gotten back to the court on the whereabouts and custody of the video of Montgomery' s FBI interview and the 302's? What is the delay?

Larry KLAYMAN

---------- Forwarded message ----------
From: <DCD_ECFNotice@dcd.uscourts.gov>
Date: Jun 26, 2017 3:20 PM
Subject: Activity in Case 1:17-cv-01074-RJL MONTGOMERY et al v. COMEY et al Notice of Appearance
To: <DCD_ECFNotice@dcd.uscourts.gov>
Cc:

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Columbia**

**Notice of Electronic Filing**

The following transaction was entered by Gilligan, James on 6/26/2017 at 6:19 PM and filed on 6/26/2017

**Case Name:**     MONTGOMERY et al v. COMEY et al

**Case Number:**     1:17-cv-01074-RJL

**Filer:**     CENTRAL INTELLIGENCE AGENCY

      DAN COATS

      FEDERAL BUREAU OF INVESTIGATION

NATIONAL SECURITY AGENCY

MIKE POMPEO

MICHAEL S. ROGERS

**Document Number:** 11

**Docket Text:**
**NOTICE of Appearance by James J. Gilligan on behalf of CENTRAL INTELLIGENCE AGENCY, DAN COATS, FEDERAL BUREAU OF INVESTIGATION, NATIONAL SECURITY AGENCY, MIKE POMPEO, MICHAEL S. ROGERS (Gilligan, James)**

**1:17-cv-01074-RJL Notice has been electronically mailed to:**

James J. Gilligan &nbsp &nbsp james.gilligan@usdoj.gov

Larry E. Klayman &nbsp &nbsp leklayman@gmail.com, daj142182@gmail.com, klayman.ecf.notifications@gmail.com, moseley391@gmail.com, oliver.peerfw@gmail.com, sam.hs.fw@gmail.com

**1:17-cv-01074-RJL Notice will be delivered by other means to::**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=6/26/2017] [FileNumber=5135298-0]
[519828b13bf383c1efea6bc7e979c539fbcbe5f262214e5135427fa0a183278ad4dd
97329619229a2e1bc5e4fc1a4b916d87c1f44e3f82bc5649ebf8ae8e8635]]