**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
DENNIS MONTGOMERY, *et al.*,            )
                                        )
                    Plaintiffs,         )
                                        )
          v.                            )          Civil Action No. 1:17-cv-1074-RJL
                                        )
JAMES COMEY, *et al.*,                  )
                                        )
                    Defendants.         )
                                        )
_____)

**GOVERNMENT DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTIONS TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT**

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Senior Counsel

JULIA A. BERMAN
CAROLINE J. ANDERSON
TIMOTHY A. JOHNSON
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Rm 7322
Washington, D.C.  20001
Phone: (202) 514-1359
Fax: (202) 616-8470
E-mail:  timothy.johnson4@usdoj.gov

Counsel for the Government Defendants

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................4

I.     COUNTS THREE, FIVE, SEVEN, AND EIGHT SHOULD BE DISMISSED
UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION..........4

     A.     Plaintiffs Make No Well-Pled, Non-Conclusory Allegations That They
Are the Subjects of Government Surveillance, and Thus Count Three
Should Be Dismissed ............................................................................................4

          1.     Plaintiffs Advance No Allegations or Arguments Plausibly
Demonstrating That the Government Conducts Surveillance of
Their Communications in Violation of Express Statutory
Prohibitions ............................................................................................5

          2.     Plaintiffs' Claims that They Have Been Targeted for Unspecified
"Hacking" by CIA Malware Are Entirely Speculative and
Insubstantial ............................................................................................9

     B.     Plaintiffs Effectively Concede that Counts Five and Seven Must Be
Dismissed for Lack of Subject-Matter Jurisdiction ..............................................12

     C.     Plaintiffs Have Conceded That They Are Not Entitled To Relief Under
Count Eight ............................................................................................................15

II.     COUNT FOUR, SEEKING APPOINTMENT OF A SPECIAL MASTER,
SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO
STATE A CLAIM ............................................................................................................16

III.     THE GOVERNMENT DEFENDANTS ARE ENTITLED TO SUMMARY
JUDGMENT AS TO COUNT SIX ................................................................................18

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**CASES**                                                                **PAGE(S)**

*In re Application of the FBI,*
  2009 WL 9150914 (F.I.S.C. Sept. 3, 2009) ................................................. 8

*In re Application of the FBI,*
  No. BR 14-01, Op. & Order (F.I.S.C. Mar. 21, 2014) ............................... 8

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.,*
  297 F.Supp.2d 165 (D.D.C. 2003) .............................................................. 13

*Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.,*
  564 F.3d 462 (D.C. Cir. 2009) .................................................................... 20

*Bivens v. Six Unknown Named Agents,*
  403 U.S. 388 (1971) ...................................................................................... 13

*Boehm v. FBI,*
  948 F. Supp. 2d, 9 (D.D.C. 2013) .............................................................. 19

*Calvetti v. Antcliff,*
  346 F. Supp. 2d 92 (D.D.C. 2004) .............................................................. 13

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 568 U.S. 398 (2013) ...................................................................... 6

*Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia,*
  819 F.3d 476 (D.C. Cir. 2016) .................................................................... 15

*Ctr. for Law & Educ. v. Dep't of Educ.,*
  396 F.3d 1152 (D.C. Cir. 2005) .................................................................. 6

*Curran v. Holder,*
  626 F. Supp. 2d 30 (D.D.C. 2009) .............................................................. 10

*Doe v. Cheney*
  885 F.2d 898 (D.C. Cir. 1989) .................................................................... 18

*Dorman v. Thornburgh,*
  740 F. Supp. 875 (D.D.C. 1990) ................................................................ 12

*Henthorn v. Dep't of Navy,*
  29 F.3d 682 (D.C. Cir. 1994) ...................................................................... 11

*Holy Land Found. For Relief & Dev. V. Ashcroft,*
  333 F.3d 156 (D.C. Cir. 2003) .................................................................... 18

*Hunter v. Rice*,
    531 F. Supp. 2d 185 (D.D.C. 2008) ............................................................ 13

*Johnson v. Dist. of Columbia*,
    368 F. Supp. 2d 30 (D.D.C. 2005) ............................................................. 14

*Johnson v. Veterans Affairs Med. Ctr.*,
    133 F. Supp. 3d 10 (D.D.C. 2015) ............................................................. 12

*Klayman v. Obama*,
    957 F. Supp. 2d 1 (D.D.C. 2013) ............................................................ 6, 8

*Latif v. Obama*,
    677 F.3d 1175 (D.C. Cir. 2012) .................................................................. 7

*Lewis v. Bayh*,
    577 F. Supp. 2d 47 (D.D.C 2008) ............................................................... 9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................. 18

*Madrigal Audio Labs., Inc. v. Cello, Ltd.*,
    799 F.2d 814 (2d Cir. 1986) ...................................................................... 16

*Mountain States Legal Foundation v. Glickman*,
    92 F.3d 1228 (D.C. Cir. 1996) .................................................................... 6

*In re Navy Chaplaincy*,
    850 F. Supp. 2d 86 (D.D.C. 2012) ............................................................. 7

*NRDC v. EPA*,
    464 F.3d 1 (D.C. Cir. 2006) ....................................................................... 6

*Obama v. Klayman*,
    800 F.3d 559 (D.C. Cir. 2015) .................................................................... 6

*In re Prod. of Tangible Things from [Redacted]*,
    2009 WL 9150913 (F.I.S.C. Mar. 2, 2009) ................................................. 8

*[Redacted]*,
    2011 WL 10945618 (F.I.S.C. Oct. 3, 2011) ............................................... 8

*[Redacted]*,
    2011 WL 10947772 (F.I.S.C. Nov. 30, 2011) ............................................ 8

*Simpkins v. D.C. Gov't*,
    108 F.3d 366 (D.C. Cir. 1997) .................................................................. 14

*Skinner v. Aluminum Co. of Am.*,
   95 F. Supp. 183 (W.D. Pa. 1951) ............................................................................. 17

*Smith v. Clinton*,
   --- F. Supp. 3d ---, 2017 WL 2312863 (D.D.C. May 26, 2017) ............................... 14

*Tooley v. Napolitano*,
   586 F.3d 1006 (D.C. Cir. 2009) ............................................................................ 5, 10

*Williams v. Lew*,
   819 F.3d 466 (D.C. Cir. 2016) ..................................................................................... 6

*Winston & Strawn, LLP v. McLean*,
   843 F.3d 503 (D.C. Cir. 2016) ................................................................................... 15

## STATUTES

5 U.S.C. § 552a ............................................................................................... 3, 19, 20, 21

28 U.S.C. § 2679 ........................................................................................................... 13

50 U.S.C. § 1861 ............................................................................................................. 5

50 U.S.C. § 1881a ........................................................................................................... 5

USA FREEDOM Act, Pub. L. No. 114-23, 129 Stat. 268 ............................................. 5

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12 .................................................................................................. *passim*

Fed. R. Civ. P. 53 ................................................................................................ 3, 16, 17

Fed. R. Civ. P. 56 ......................................................................................................... 15

## INTRODUCTION

A lengthy series of conclusory allegations and implausible claims form the basis of Plaintiffs' Opposition to the Government Defendants' Motion to Dismiss and Motion for Partial Summary Judgment ("Plaintiffs' Opposition"), ECF No. 32, just as they form the basis of Plaintiffs' Complaint, ECF No. 1.  Evidently, Plaintiffs Larry Klayman and Dennis Montgomery hope that, if they repeat their baseless assertions of a Government conspiracy to conduct illegal surveillance against them enough times, across multiple filings and cases, the endless repetition alone will eventually make their claims for relief seem plausible.  Instead, the combination of repetition with Plaintiffs' dogged refusal to acknowledge how the legal terrain has changed since Plaintiff Klayman originally filed his related lawsuits,[1] merely serves to emphasize how untethered Plaintiffs' Complaint is to either well-pled fact or law.

This lawsuit adds little to those prior lawsuits, as noted in the Government Defendants' Memorandum of Points and Authorities in Support of Their Motions to Dismiss and for Partial Summary Judgment, ECF No. 26-1 ("Government Defendants' Memorandum").  Thus, it should come as no surprise that Plaintiffs' Opposition makes few arguments not already made in those prior cases, and to which the Government Defendants have not already responded there.

Plaintiffs' Complaint asserts six counts, Counts Three through Count Eight, against the Government Defendants.[2]  The Government Defendants have moved to dismiss Counts Three, Five, Seven, and Eight under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  As the Government Defendants' Memorandum demonstrated, Count Three, alleging unconstitutional mass surveillance by the Government, should be dismissed because

---

[1] *Klayman v. Trump*, 13-cv-851 ("*Klayman I*"); *Klayman v. Trump*, 13-cv-881 ("*Klayman II*"); and *Klayman v. Trump*, 14-cv-092 ("*Klayman III*").

[2] Counts One and Two are asserted solely against the Individual-Capacity Defendants and thus not subject to the Government Defendants' motions.

Plaintiffs have failed to allege sufficient facts to support a plausible conclusion that the Government, in violation of express statutory prohibitions, has conducted surveillance of their communications.  The additional allegations that the Government has "hacked" their personal electronic devices (in a manner that they still have not specified) are of an order routinely dismissed as insubstantial.  In response, Plaintiffs continue to assert systemic Government lawlessness and deception, purportedly undermining any presumption that the Government abides by legal restrictions on its surveillance authority, and claim that Mr. Montgomery possesses the technical expertise required to trace attempted "hacks" on his computers to not just one but multiple Government intelligence agencies.  As discussed below, however, Plaintiffs' accusations of Government malfeasance and deceit are baseless, and involve circumstances that bear no resemblance to the conduct alleged here.  Their claims regarding Mr. Montgomery's purported expertise are themselves conclusory, and also add nothing to the factual basis of Plaintiffs' claim that they have been subjected to illegal Government surveillance.

Plaintiffs' Opposition fares no better with respect to Counts Five and Seven, Plaintiff Montgomery's common-law tort claims, which are governed by the Federal Tort Claims Act ("FTCA").  Far from articulating any basis on which those claims could proceed, Plaintiffs' Opposition effectively abandons them, conceding that Plaintiff Montgomery has failed to satisfy a basic jurisdictional requirement by failing to pursue—much less exhaust—any administrative remedies with respect to those claims.  Thus, even setting aside that the FTCA requires Mr. Montgomery to bring these claims against the United States *eo nomine* rather than an agency or officer of the Government, binding Circuit precedent requires that Counts Five and Seven be dismissed for lack of subject-matter jurisdiction.

And Plaintiffs have not even addressed the Government Defendants' point that Count Eight, Mr. Montgomery's Fourth Amendment claim for damages against the Federal Bureau of

Investigation ("FBI"), based on an alleged "raid" of his home, is barred both by sovereign immunity and by the applicable statute of limitations.  Thus, Counts Three, Five, Seven, and Eight should therefore be dismissed under Rule 12(b)(1) for a lack of subject-matter jurisdiction.

The Government Defendants have also shown that Count Six of Plaintiffs' Complaint, requesting appointment of a Special Master to "investigate" Plaintiffs' allegations of surveillance, should be dismissed under Rule 12(b)(6) for failure to state a claim.  Appointment of a Special Master would be improper here, and exceed the Court's authority, under Federal Rule of Civil Procedure 53.  Rule 53 limits the use of Special Masters to the circumstances specified therein, none of which is present here.  In response, Plaintiffs argue that this case presents an "exceptional condition" justifying appointment of a Master under Rule 53(a)(1)(B)(i), based on the asserted technical complexity of interpreting the information contained on Mr. Montgomery's hard drives.  That allegation is not only conclusory, but, as discussed below, cuts against appointment of a Special Master.  And even if an "exceptional condition" were presented here, Plaintiffs also fail to rebut the point that appointing a Master to conduct an open-ended investigation on their behalf, effectively litigating their case for them, would be beyond the Court's authority under Rule 53.  Accordingly, Count Four should be dismissed under Rule 12(b)(6).

Finally, the Government Defendants are entitled to partial summary judgment with regard to Count Six, Mr. Montgomery's Privacy Act claim.  The Government Defendants have shown by declaration that the FBI records Mr. Montgomery seeks are exempt from disclosure under the Privacy Act, 5 U.S.C. § 552a, because they were compiled by the FBI for the purpose of a criminal investigation and are maintained in a system of records designated by the FBI as exempt from the Act's disclosure requirements.  Plaintiffs have responded with a supplemental affidavit from Plaintiff Montgomery purporting to contest the Government's showing, but his factual

allegations are largely immaterial to whether the records in question are exempt from disclosure under the Privacy Act, and in any event they lack a demonstrated basis in personal knowledge. Thus, Mr. Montgomery's affidavit does not raise any genuine issues of fact, and partial summary judgment for the Government is appropriate with regard to Count Six.

In short, Plaintiffs' Opposition fails to present any allegations, arguments, or evidence of substance that the Court has not already seen. Most are simply recycled from briefing in *Klayman I* and *II*, or the conclusory allegations of their Complaint. Plaintiffs' Opposition hence fails to offer any valid reason why the Court should not dismiss Counts Three, Four, Five, Seven, and Eight, and grant the Government partial summary judgment on Count Six.

## ARGUMENT

I.  **COUNTS THREE, FIVE, SEVEN, AND EIGHT SHOULD BE DISMISSED UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION.**

### A.  **Plaintiffs Make No Well-Pled, Non-Conclusory Allegations That They Are the Subjects of Government Surveillance, and Thus Count Three Should Be Dismissed.**

Count Three should be dismissed because Plaintiffs have failed to plausibly allege that they are or will be the subjects of Government surveillance, a conclusion Plaintiffs' Opposition does nothing to refute. Plaintiffs' claims that they are being subjected to Government surveillance fall generally into three categories: (1) that their electronic communications have been collected under the "PRISM" program of the National Security Agency ("NSA"); (2) that telephony metadata pertaining to their calls has been collected as part of a resurrected NSA bulk collection program; and (3) that their personal electronic devices have been "hacked" to allow surveillance, supposedly as part of an alleged clandestine Central Intelligence Agency ("CIA") "malware" program. *See* Compl. ¶¶ 20, 63.[3]  None of these claims is plausible.

---

[3]  In their Opposition, Plaintiffs argue that this formulation of their Complaint is too narrow and that they also allege that Government surveillance was conducted against them via

**1. Plaintiffs Advance No Allegations or Arguments Plausibly Demonstrating That the Government Conducts Surveillance of Their Communications in Violation of Express Statutory Prohibitions.**

As explained in the Government Defendants' Memorandum, both the surveillance of Plaintiffs' communications under PRISM, and the alleged bulk collection of telephony metadata, including records about Plaintiffs' calls, as alleged in the Complaint, would be barred by statute. *See* Gov't Defs.' Mem. at 13–20.  The NSA conducts PRISM collection pursuant to Section 702 of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1881a, which prohibits the Government from targeting any persons (including U.S. persons) known to be in the United States, or any U.S. persons located overseas. *Id*. § 1881a(b).  And bulk collection of telephony metadata under FISA is now specifically prohibited by the USA FREEDOM Act, Pub. L. No. 114-23 §§ 103, 109, 129 Stat. 268, 272, 276; 50 U.S.C. § 1861(c)(3).  Plaintiffs have not made any allegations that could overcome the presumption of regularity, *i.e.*, the presumption that Government officials follow these statutes and do not engage in the forms of unauthorized surveillance that Plaintiffs allege.  And even if Plaintiffs had plausibly alleged that the Government is engaged in such unlawful activities, they make no plausible allegations that they have been or imminently will be subjected to them.

Plaintiffs respond by reprising a series of arguments that Mr. Klayman and his other co-plaintiffs have already made in the related *Klayman* cases.  *Compare* Pls.' Opp'n, ECF No. 32, *with* Pls.' Opp'n, *Klayman I*, ECF No. 182.  The Government Defendants have already fully

---

other unnamed, unknown methods.  Pls.' Opp'n at 16–17.  Even if this characterization of the Complaint is correct, Plaintiffs have plainly failed to allege any facts tending to show that these unnamed surveillance programs exist or how they supposedly operate.  These generalized, conclusory allegations cannot support a plausible claim to relief, and ill-defined surveillance allegations of this kind are regularly dismissed as frivolous.  *See Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009) (noting that courts have regularly dismissed claims that a plaintiff "was subjected to a campaign of surveillance and harassment deriving from uncertain origins" for "patent insubstantiality").

responded to these arguments in prior briefing in support of their pending motion to dismiss in *Klayman I* and *II*, to which they respectfully refer the Court.  *See* Gov't Defs.' Reply, *Klayman I*, ECF No. 184.  But, for the Court's convenience, the Government Defendants will summarize the relevant points here.

First, Plaintiffs try to shirk their burden of pleading a "certainly impending" injury, as necessary to satisfy Article III's standing requirement.  *See* Gov't Defs.' Mem. at 10–12 (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013)); *see also, e.g.*, *Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016) ("Because [plaintiff] fails plausibly to allege that any future injuries are '*certainly impending* to constitute injury in fact,' he cannot rely on such injuries to establish Article III standing.").  Plaintiffs contend here, as in *Klayman I* and *II*, that they need only allege that their injury is "reasonably probable."  Pls.' Opp'n at 11–12.  But under D.C. Circuit precedent, the "increased risk" standard that Plaintiffs seek to invoke applies only to claims of increased health or environmental risk, injuries that "often are purely probabilistic," *NRDC v. EPA*, 464 F.3d 1, 5–6 (D.C. Cir. 2006), as in *Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996), the case upon which Plaintiffs rely.  "Outside of increased exposure to environmental [or health] harms," however, "hypothesized 'increased risk' has never been deemed sufficient 'injury.'"  *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005).  Since the injury alleged in this case fits neither of these categories, Plaintiffs must show that any alleged future harms are "certainly impending"—as this Court has previously determined.  *See Klayman v. Obama*, 957 F. Supp. 2d 1, 8 n.6 (D.D.C. 2013) (Leon, J.) ("certainly impending" standard is "squarely dictated by … *Amnesty International*"), *vacated and remanded on other grounds*, 800 F.3d 559 (D.C. Cir. 2015); *see also Obama v. Klayman*, 800 F.3d 559, 570 (D.C. Cir. 2015) (Sentelle, J.) (dissenting in part) (*Amnesty International's* "certainly impending" requirement is "fully applicable" to the claims of injury in *Klayman I* and

*II*).  Plaintiffs have failed to do so, offering no allegations that they have been, or more relevantly, are certainly likely to be, subject to Government surveillance.

Second, contra Plaintiffs' Opposition, it is "well settled" that a court must "presume that government officials will conduct themselves properly and in good faith." *In re Navy Chaplaincy*, 850 F. Supp. 2d 86, 94 (D.D.C. 2012).  In light of Plaintiffs' failure to plead any factual allegations that would plausibly suggest otherwise, the Court should presume that Government officials have abided by the clear legal limits on their authority, and have not engaged in surveillance of Plaintiffs' communications that is prohibited by statute.  Gov't Defs.' Mem. at 14–15, 18–19.  For their part, Plaintiffs invite the Court to jettison the presumption of regularity—characterizing it as both a "shop worn vestige of the past" and inapplicable to any case of "national importance."  Pls.' Opp'n at 18.  Plaintiffs cite no authority for either of these propositions, however, which ignore recent precedent in which the presumption was applied as a matter of routine.  *See, e.g.*, *Latif v. Obama*, 677 F.3d 1175, 1778 (D.C. Cir. 2012) (applying presumption that government officials "have properly discharged their official duties" in habeas corpus case brought by Guantanamo Bay detainee (citation omitted)); Gov't Defs.' Mem. at 14.

Plaintiffs also try to overcome the presumption of regularity by again pointing to certain incidents—reported by the Government itself to the Foreign Intelligence Surveillance Court ("FISC")—in which the Government failed to comply with minimization procedures restricting access to and dissemination of communications collected by the NSA under a program not at issue here.  *See* Pls.' Opp'n at 12–14, *citing* Compl. ¶¶ 23–25.  As discussed in the Government Defendants' Memorandum, however, those incidents provide absolutely no indication that the Government intentionally targeted U.S. persons, or Plaintiffs, for Section 702 surveillance (or any other form of surveillance).  The reported errors Plaintiffs cite all involved the mishandling of communications after they had already been collected, not the manner in which

7

communications were targeted or collected.  Compl. ¶¶ 21–27.  Thus, these incidents provide no

basis for concluding that Plaintiffs' communications (or metadata about Plaintiffs'

communications) ever have been or will be collected in the first place.

Plaintiffs' Opposition also discusses a number of other incidents of alleged Government

noncompliance with legal limits on its surveillance authority.  As in *Klayman I* and *II*, the

principal incidents to which Plaintiffs refer concern (1) the NSA's "alert list" system, used from

2006 to 2009 in conjunction with the former Section 215 telephony metadata program, and

(2) the handling of "multi-communication transactions" acquired by the NSA using its

"Upstream" Internet collection technique.  *See [Redacted],* 2011 WL 10945618, at *6 & n.14

(F.I.S.C. Oct. 3, 2011); *Klayman*, 957 F. Supp. 2d at 18.  Both matters came to light as a result of

NSA internal oversight and inter-agency reviews of the programs, and once discovered they were

promptly reported to the FISC and Congress.  *See [Redacted]*, 2011 WL 10945618, at *2; *In re*

*Prod. of Tangible Things from [Redacted]*, 2009 WL 9150913, at *2 (F.I.S.C. Mar. 2, 2009).

The FISC made no findings of intent by the Government to mislead the court or evade legal

requirements; and, in both cases, the NSA also took prompt corrective action, after which the

FISC reauthorized both programs.  *[Redacted]*, 2011 WL 10947772 (F.I.S.C. Nov. 30, 2011); *In*

*re Application of the FBI*, 2009 WL 9150914 (F.I.S.C. Sept. 3, 2009).  Far from exhibiting deceit

or disregard for the law, these episodes illustrate the great lengths to which the Government goes

to detect, disclose, and correct its mistakes in implementing FISC-supervised intelligence

programs.[4]  Thus, these unrelated incidents do nothing to overcome the presumption that the

---

[4]  In addition, Plaintiffs cite a 2014 FISC opinion as evidence of "government lies."  Pls.'
Opp'n at 3–4, *citing In re Application of the FBI*, No. BR 14-01, Op. & Order (F.I.S.C. Mar. 21,
2014) (*Klayman I*, ECF No. 182, Ex. A).  In that case, the Government had sought leave to
preserve certain metadata that FISC orders required it to destroy, because of the data's potential
relevance in cases challenging the Section 215 program.  *Klayman I*, ECF No. 182, Ex. A at 2–3.
When the FISC initially rejected that request, *id.* at 3–4, the Government filed notices advising
the plaintiffs in those cases that it would destroy the metadata in question, per FISC orders,

Government conducts its intelligence-gathering programs in good faith with intent to follow the

law.  And, more importantly, they provide no reason to believe that Plaintiffs were subject to any

Government surveillance.

### 2. Plaintiffs' Claims that They Have Been Targeted for Unspecified "Hacking" by CIA Malware Are Entirely Speculative and Insubstantial.

Plaintiffs' allegations that the CIA is surveilling them using "malware," installed without

their knowledge on their personal electronic devices, should also be dismissed.  As the

Government Defendants noted in their opening brief, these are claims of a sort that courts

regularly dismiss as frivolous.  *See* Gov't Defs.' Mem. at 21–23, *citing, e.g.*, *Lewis v. Bayh*, 577

F. Supp. 2d 47, 54 (D.D.C 2008) ("Courts have held that claims, alleging without any evidence,

that the defendants hacked a plaintiff's computer … are frivolous.").

Plaintiffs present a number of responses, none of them availing.  First, Plaintiffs point to

allegations by Wikileaks that the CIA has developed malware programs supposedly capable of

altering the electronic devices of targeted individuals to record and transmit information to the

CIA.  Pls.' Opp'n at 20–21, *citing* Compl. ¶¶ 63–65.  Plaintiffs argue these allegations show that

"these malware programs exist."  Pls.' Opp'n at 21.  But even if Wikileaks' allegations were

adequate to plead the existence of CIA malware programs, Plaintiffs still have not alleged facts

---

absent a (district) court order to the contrary.  *See id.* at 5; *Klayman I*, ECF No. 94 (Ex. 1, thereto).  When some of those plaintiffs obtained an order prohibiting such destruction, the Government so informed the FISC, and requested leave from the FISC to maintain the bulk metadata at issue as the district court's order required.  *See Klayman I*, ECF No. 182, Ex. A, at 5–6.  The FISC questioned why the Government had not explained, when it first sought leave to retain these data, that these plaintiffs believed the data were relevant and subject to a pre-existing preservation order in their case.  *See id.* at 8–9.  As the Government explained, based on the nature of the plaintiffs' claims, it had always understood them to not include FISA-based activities such as the Section 215 program.  *In re Application of the FBI*, ECF BR 14-01, U.S. Resp. to the Court's Mar. 21, 2014, Op. & Order (Apr. 2, 2014) (http://www.fisc.uscourts.gov/public-filings/governments-response-courts-march-21-2014-opinion-and-order).

plausibly showing that the CIA has ever deployed malware, or will ever do so, to conduct surveillance against Plaintiffs themselves.

Plaintiffs' attempts in their Opposition to show that they are targets of the alleged "malware" surveillance, as in the Complaint itself, are entirely speculative and so lacking in substance as to be frivolous.  Plaintiff Klayman again simply points to allegations that his cell phone was behaving abnormally, and speculates (wildly) that his phone's supposed performance problems must be tell-tale signs of CIA hacking.  Pls.' Opp'n at 21.  But, as already noted in the Government Defendants' Memorandum, technical difficulties with personal electronic devices, even if unexplained or "suspicious," do not plausibly support a claim that a plaintiff actually has been surveilled by a particular defendant—courts hold that the connection between the alleged technical problems and a claim of surveillance are far too tenuous to support standing.  *See, e.g., Tooley*, 586 F.3d at 1007–10 (holding that allegations of "problematic phone connections, including telltale intermittent clicking noises" were "patently insubstantial" and failed to support claims of surveillance); *Curran v. Holder*, 626 F. Supp. 2d 30, 34 (D.D.C. 2009) (allegation that plaintiff's "computer frequently malfunctions" failed to make claim of surveillance "anything more than fanciful").

Plaintiff Montgomery attempts to tie his claims of hacking more directly to the Government Defendants, but this effort also fails.  He alleges that his personal and business computers were the targets of numerous "hacking" attempts by the CIA, FBI, and the Department of Defense, but nowhere pleads a sufficient factual basis to support that conclusion. *See* Compl. ¶¶ 43–47.  In particular, the Complaint nowhere explains how Plaintiff Montgomery was supposedly able to track these alleged hacking attempts to Internet Protocol ("IP") addresses used by various Government intelligence agencies.  In their Opposition, Plaintiffs claim that Mr. Montgomery has an "extensive history" as an intelligence contractor and an "expert of the

highest level in this field," and that these purported qualifications make his allegations of Government "hacking" into his computers sufficiently plausible to plead standing.  Pls. Opp'n at 21–22, 29.

But Plaintiffs' argument suffers from at least two fundamental defects.  First, as noted, courts are rightly skeptical of increasingly common "hacking" allegations, dismissing conclusory allegations of hacking as frivolous and requiring plaintiffs to plead a specific, plausible factual basis on which to conclude that hacking actually took place.  *See* Gov't Defs.' Mem. at 22 (collecting cases).  Second, Plaintiffs' claim that Mr. Montgomery is an "expert" capable of tracking hacking attempts by U.S. Government intelligence agencies to IP addresses used by those agencies for covert surveillance purposes is itself conclusory.  Plaintiffs' Complaint alleges that Montgomery was once a contractor of some sort with several Government agencies, Compl. ¶ 33, but makes no factual allegations about his education, experience, or the nature of his duties as a Government contractor that would support the conclusion that he is in fact an "expert" or otherwise qualified to accurately trace suspected "hacking" back to a specific IP address or determine that Government surveillance had taken place.[5]

Plaintiffs, then, have not pled any plausible, non-conclusory facts showing that they have been or likely will be subjects of Government surveillance, be that via PRISM, bulk collection of telephony metadata, CIA malware, or any other means.  Plaintiffs' Complaint accordingly fails

---

[5]  Plaintiffs' Opposition includes a new affidavit from Plaintiff Montgomery in which he claims his knowledge of such matters comes from "hack[ing] computers for the government." Pls.' Opp'n, Ex. A., ¶ 23.  Of course, this allegation is not part of the Complaint, and thus is irrelevant to whether Plaintiffs' have adequately alleged standing.  *Cf. Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) (factual allegations outside the complaint should not be considered when deciding a Rule 12(b)(6) motion).  Even if such a vague allegation were included in the Complaint, it would not support the conclusion that Plaintiff Montgomery is an expert in these matters or that he was the subject of Government surveillance.

to properly plead standing to challenge any Government surveillance, and Count Three of the

Complaint should be dismissed under Rule 12(b)(1) for a lack of subject-matter jurisdiction.[6]

**B. Plaintiffs Effectively Concede that Counts Five and Seven Must Be Dismissed for Lack of Subject-Matter Jurisdiction.**

The Government Defendants have identified two reasons why Plaintiff Montgomery's

tort claims against the FBI and former FBI Director Comey, Counts Five and Seven of the

Complaint, should be dismissed for lack of subject-matter jurisdiction. *See* Gov't Defs.' Mem.

at 23–25.  First, the Government Defendants explained that, under the FTCA, the "exclusive

remedy" for these claims is an action against the United States, and the "[f]ailure to name the

United States as the defendant in an FTCA action requires dismissal." *See id.* at 23–24 (quoting

*Dorman v. Thornburgh*, 740 F. Supp. 875, 879 (D.D.C. 1990), and *Johnson v. Veterans Affairs*

*Med. Ctr.*, 133 F. Supp. 3d 10, 17 (D.D.C. 2015)).  Second, the Government Defendants

explained that Mr. Montgomery's failure to plead that he has pursued—much less exhausted—

administrative remedies in connection with his tort claims constitutes an independent basis for

dismissal. *See id.* at 24–25 (citing case law).  Plaintiffs' responses to these points only confirm

that the Court lacks subject-matter jurisdiction to hear Mr. Montgomery's tort claims. *See* Pls.'

Opp'n at 22–23.

To begin with, Plaintiffs effectively acknowledge that Counts Five and Seven are not

properly asserted against the FBI and former Director Comey in his official capacity, making no

argument in support of those claims. *See id.* at 22.  Instead, Plaintiffs contends that "Defendant

Comey is also being sued [in tort] in his individual capacity." *Id.*  But Plaintiffs tellingly do not

cite any passage in their Complaint to support that assertion. *See id.*  Indeed, to the contrary, the

---

[6] As noted in the Government Defendants' Memorandum, the same allegations also underlie Counts One and Two against the Individual-Capacity Defendants, *see* Compl. ¶¶ 67–80, and thus Counts One and Two must also be dismissed.

Complaint explicitly pleads that former Director Comey "is being sued individually under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)." Compl. ¶ 7. Plaintiffs' *Bivens* claims are set forth in Counts One and Two of the Complaint. *Id.* ¶¶ 67–80. Otherwise, the Complaint states that Mr. Comey "is being sued in his official capacity as Director of the FBI." Compl. ¶ 7; *see also id.* ¶¶ 81–88, 96–101, 109–114.[7] Although, to be sure, Plaintiffs are the masters of their complaint, they "may not amend [their] complaint through responsive pleadings." *Hunter v. Rice*, 531 F. Supp. 2d 185, 192 (D.D.C. 2008); *see also, e.g.*, *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (plaintiffs' attempt, "through their pleadings … to amend their complaint to properly allege a claim of conversion … is clearly impermissible"). "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citation omitted). Accordingly, Counts Five and Seven, as pled, must be dismissed.

Plaintiffs contend that, instead of dismissal on the grounds that these claims are brought against the wrong parties, "the United States should simply substitute in as a Defendant in the interest of judicial efficiency," or, alternatively, that the Court should grant Plaintiffs leave to amend the Complaint to make that substitution. Pls.' Opp'n at 22. Plaintiffs' suggestion that the United States should "simply substitute in" seems to refer to a certification pursuant to the Westfall Act, 28 U.S.C. § 2679. But such a certification is proper only where a suit is brought against a Government official in his personal capacity, and not where, as here, Plaintiffs plead only official capacity claims, *see supra* 12–13. *See* 28 U.S.C. § 2679(b)(1) (identifying claims in which the United States may be substituted as a defendant as suits for money damages against

---

[7] Indeed, as Plaintiff Montgomery asserts Claims Five and Seven against the agency itself, based on actions former Director Comey allegedly took as the head of the agency, the claims against former Director Comey logically could be only official capacity claims, as Plaintiff Montgomery has pled them here.

the employee or the employee's estate).  And, in any event, these arguments ignore that the Court lacks subject-matter jurisdiction to hear these claims in the first instance.

As noted above, the Government Defendants have moved to dismiss Claims Five and Seven, not only on the grounds that they are brought against the wrong parties, but also because Plaintiff Montgomery has failed to fulfill the basic jurisdictional requirement of alleging that he has exhausted (or even pursued) administrative remedies as to these claims.  *See* Gov't Defs.' Mem. at 25.  In response, Plaintiff Montgomery does not contend that he has pursued administrative remedies, but instead argues that his failure to do so should be excused on the basis of futility.  *See* Pls.' Opp'n at 22–23.

As this Court only recently held, this argument "fails[] because the FTCA's exhaustion requirement is jurisdictional and cannot be excused."  *Smith v. Clinton*, --- F. Supp. 3d ---, 2017 WL 2312863, at *9 (D.D.C. May 26, 2017), *appeal docketed* No. 17-5133 (D.C. Cir. June 5, 2017).  The Court in that case explained:  "[t]he D.C. Circuit has 'treated the FTCA's requirement of filing an administrative complaint with the appropriate agency prior to instituting an action as jurisdictional.'"  *Id.* at *9 (quoting *Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997).[8]  Where, as here, a plaintiff "concede[s] that [he] failed to exhaust administrative remedies, the Court has no power to hear the claims against the United States at all."  *Id.*  Thus, even if Plaintiffs had asserted their claims against the proper party or the substitution that

---

[8]  *Johnson v. District of Columbia*, 368 F. Supp. 2d 30 (D.D.C. 2005), the only case that Plaintiffs cite in support of their position that alleged futility should excuse Mr. Montgomery's failure to exhaust administrative remedies, *see* Pls.' Opp'n at 22–23, did not involve a claim under the FTCA.  *See* 368 F. Supp. 2d at 37 (explaining that *Johnson* presented claims under the District of Columbia Comprehensive Merit Personnel Act).  *Johnson* therefore can offer no guidance as to the issue before this Court:  whether the failure to exhaust may be excused as to Plaintiff Montgomery's claims under the FTCA.

Plaintiffs propose were available, Counts Five and Seven would nonetheless be subject to dismissal because there is no subject-matter jurisdiction to hear these claims.

### C. Plaintiffs Have Conceded That They Are Not Entitled To Relief Under Count Eight.

Plaintiffs' Opposition does not address at all the Government Defendants' point that Count Eight must be dismissed for lack of subject-matter jurisdiction, because Mr. Montgomery's Fourth Amendment claim for damages against the FBI, based on an alleged "raid" of his home, is barred by sovereign immunity, and by the applicable statute of limitations. *See* Gov't Defs.' Mem. at 25–28.  Although recent decisions of the D.C. Circuit suggest that a court should not reflexively treat dispositive motions as conceded solely because the nonmoving party failed to respond to them, *see Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016), and *Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 484 (D.C. Cir. 2016),[9] they also make clear that a court, upon assessing the merits of the moving party's arguments, may enter judgment based on those arguments where appropriate.  *See Winston & Strawn, LLP*, 843 F.3d at 508; *Cohen*, 819 F.3d at 482–83.  For the undisputed reasons stated in the Government Defendants' Memorandum, Count Eight should be dismissed for lack of subject-matter jurisdiction.  *See* Gov't Defs.' Mem. at 25–28.

---

[9] It is not clear that the reasoning of those cases would apply to a motion brought under Rule 12(b)(1), such as the Government Defendants' motion with respect to Count Eight here. *Winston & Strawn* and *Cohen* dealt, respectively, with whether motions under Rule 56 and Rule 12(b)(6) may be treated as conceded if the nonmoving party fails to respond.  In holding that the entry of summary judgment or dismissal with prejudice was not appropriate, the Court of Appeals expressed concerns that such a result, in both cases, effectively shifted the burden from the moving party, to the nonmoving party, contrary to the framework of Rules 56 and 12(b)(6). *See Winston & Strawn, LLP*, 843 F.3d at 505, 507; *Cohen*, 819 F.3d at 481.  By contrast, the burden of establishing jurisdiction already rests with the plaintiff, and, thus, treating an unanswered argument in a motion to dismiss under Rule 12(b)(1) as conceded by a plaintiff would not raise the same concerns about burden-shifting.

## II.    COUNT FOUR, SEEKING APPOINTMENT OF A SPECIAL MASTER, SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

Plaintiffs concede that the "exceptional condition" criterion identified in Federal Rule of Civil Procedure 53 is the only potential basis upon which this Court would have authority to appoint a Special Master. *See* Fed. R. Civ. P. 53(a)(1)(B)(i); Pls.' Opp'n at 23. However, Plaintiffs have not adequately alleged that the circumstances of this case amount to an exceptional condition within the meaning of Rule 53. Moreover, even if an exceptional condition were present, "conduct[ing] a real and through [sic] investigation of the information [allegedly] contained" on Mr. Montgomery's hard drives, and of the alleged "hacks" into Plaintiffs' electronic devices, Compl. ¶¶ 89–95, would not be an appropriate function for which a Special Master may be appointed.

Plaintiffs first argue that an exceptional circumstance justifying the appointment of a Master exists because the matters in question "are complex and potentially [involve] classified materials," and that an analysis of these materials "may require advanced technical knowledge to interpret." Pls.' Opp'n at 23–24. But as the Government Defendants have previously pointed out, "the fact that the case involves complex issues of fact … is no justification for reference to a Master, but rather is a [com]pelling reason for trial before an experienced judge." *Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 821 n.2 (2d Cir. 1986) (internal quotations omitted). And beyond suggesting that information contained on the hard drives may be classified, Pls.' Opp'n at 23, Plaintiffs offer no detail as to the sort of information allegedly to be found in Mr. Montgomery's hard drives that requires technical understanding. Plaintiffs' conclusory assertions, devoid of factual support, offer no basis for appointment of a Master.

The fifty-plus year old cases Plaintiffs cite in support of their assertion that the complexity of the materials at issue amounts to an exceptional condition under Rule 53 cannot rescue their argument, Pls.' Opp'n at 24, as those cases rely upon a previous, substantively

distinct iteration of Rule 53. *Compare, e.g., Skinner v. Aluminum Co. of Am.*, 95 F. Supp. 183, 184 (W.D. Pa. 1951) (quoting the contemporaneous version of Rule 53, which states that "a reference [to a Master] shall be made only when the issues are complicated") *with* Fed. R. Civ. P. 53 (omitting reference to the complexity of issues as a relevant consideration for reference to a Master). Plaintiff next argues that the "seriousness and gravity" of the Government Defendants' alleged "illegal and unconstitutional actions" somehow "qualify as an exceptional condition that necessitates the appointment of a special master by the Court." Pls.' Opp'n at 24. But Plaintiff has not pointed to any case suggesting that the presumed gravity of a plaintiff's allegations has any bearing whatsoever on the presence or absence of an exceptional condition for purposes of appointing a master.

Ultimately, even if the Court were to conclude that an exceptional condition within the meaning of Rule 53 were present here, for the reasons stated in the Government Defendants' opening brief—which have not been answered in Plaintiffs' Opposition—appointing a Master for the purpose of investigating private-party allegations of unlawful activity, or to litigate private parties' claims for them, would lie outside the authority conferred by the Rule. *See* Gov. Defs.' Mem. at 29–31. Rule 53(a)(1)(B) states that when an exceptional condition is present, a Master may be appointed "to hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury." It says nothing about "investigating" a plaintiff's claims.

In passing, Plaintiffs advance two additional arguments, but they are irrelevant to Plaintiffs' call for the appointment of a Special Master. Plaintiffs first suggest that in the event that the Court declines to appoint a Master, "[t]his Court may review the classified information [allegedly contained in Mr. Montgomery's hard drives] *in camera*, as it possesses the necessary security clearance." Pls.' Opp'n at 24. However, in much the same way that it is not the proper purview of a Master to litigate a private party's case for him, it is not this Court's responsibility

to conduct a free-wheeling investigation for the explicit purpose of developing Plaintiffs' case for them at any time, let alone at this early stage of litigation.  Rather, it is Plaintiffs' obligation first to make non-conclusory allegations of fact sufficient to support a plausible claim of cognizable injury for purposes standing, and then to marshal evidence in support of those allegations.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Second, Plaintiffs suggest that they are "willing to apply for the appropriate security clearances needed to examine the information themselves as a last resort."  Pls.' Opp'n at 24. However, Plaintiffs can claim no right of access to classified information allegedly contained on Mr. Montgomery's hard drives.  The Supreme Court and the courts of appeals, including the D.C. Circuit, have made it clear that civil litigants enjoy no right of access to national security information for purposes of prosecuting their claims.  *See Holy Land Found. For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (no due-process right of access to classified information on which the agency based plaintiff's designation as a foreign terrorist organization); *Doe v. Cheney*, 885 F.2d 898, 909–910 (D.C. Cir. 1989) ("no entitlement to access" classified information) (citation omitted).

In any event, neither of Plaintiffs' requests for "alternative method[s] to allow examination of the requested items," Pls.' Opp'n at 24, is germane to their request under Count Four for appointment of a Master, which must be dismissed for failure to state a claim.

## III.   THE GOVERNMENT DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT SIX.

Plaintiffs have advanced no evidence or argument sufficient to defeat the Government's entitlement to judgment on Mr. Montgomery's Privacy Act claim.  As explained in the Government Defendants' Memorandum, the relevant inquiry when an agency asserts that requested records are exempt from disclosure under the Act is whether:  "(1) the records are stored in a system of records that has been designated by the agency to be exempt from the

Privacy Act's disclosure requirements, and (2) the system of records is 'maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal law[s]' and consists of 'information compiled for the purpose of a criminal investigation.'"  *Boehm v. FBI*, 948 F. Supp. 2d. 9, 18 (D.D.C. 2013) (citing 5 U.S.C. § 552a(j)(2)); *see also* Gov't Defs.' Mem. at 33–34.  For the reasons stated in the Declaration of David M. Hardy, the FD-302 reports in question satisfy the above criteria because they are stored in a system of records designated by the FBI as exempt from the Privacy Act's disclosure requirements, the FBI's principal function pertains to the enforcement of criminal law, and the information in question was compiled for the purpose of a criminal investigation.  *See* Hardy Decl. ¶ 22; 5 U.S.C. § 552a(j)(2)(B).

Plaintiffs seek to contest this conclusion on the basis of a supplemental affidavit submitted by Mr. Montgomery, but nothing said in his affidavit raises a genuine dispute as to any of these material facts.  First, Mr. Montgomery's statements as to the content of the information contained in the FD-302 reports, *see* Pls.' Opp'n, Ex. A ("Supp. Montgomery Aff.") at ¶¶ 5, 15–16 (describing the information as pertaining "only to [his] interview with Special Agent Water [sic] Giardina and William Barnett"), are irrelevant to the question of whether the requested records are exempt from disclosure.   Mr. Montgomery's description of the substance of the FD-302 reports does not call into question Mr. Hardy's sworn testimony concerning the location of the records within a system of records designated as exempt from the Privacy Act's disclosure requirements, the FBI's principal function, or the purposes for which the information was compiled.  Thus it fails to raise a question of material fact.

Second, Mr. Montgomery's statements regarding the alleged status of the relevant FBI criminal investigation, *see id*. at ¶¶ 18–19 (claiming "no actual steps have been taken to conduct a criminal investigation")—amount to naked assertions unsupported by any evidence, in Mr.

19

Montgomery's affidavit or otherwise, demonstrating that he has actual personal knowledge of the matter. The statements are therefore inadmissible and do not create a genuine issue as to a material fact. *See Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 466 (D.C. Cir. 2009) (holding that an "affidavit's assertion of causation has no more force under the summary judgment standard we apply than if it were alleged in a complaint" because there was "no basis in the affidavit—which itself provide[d] no factual support for the asserted causation— to support that [affiant] has personal knowledge of the cause or was otherwise competent to testify to its nature.").

Plaintiffs' brief adds little to the unsupported statements of Mr. Montgomery's Supplemental Affidavit. For instance, Plaintiffs take issue with the cases relied upon by the Government Defendants on the basis that those cases dealt with Privacy Act requests brought by criminal defendants. *See* Pls.' Opp'n at 25–26 n.10. Because Plaintiff Montgomery is not facing criminal charges and "his interview was given in full cooperation with the FBI in order to shed light on illegal activity," Plaintiffs argue, the cited cases are "completely distinguishable." *Id.* However, 5 U.S.C. § 552a(j)(2) does not exempt from disclosure merely records requested by a requester facing criminal charges. Rather, the relevant provision of the Privacy Act explicitly contemplates exempting all "reports of informants and investigators," 5 U.S.C. § 552a(j)(2)(B). Plaintiffs' suggestion that facing criminal charges is somehow a prerequisite to the application of Exemption (j)(2) is incorrect as a matter of law.

Finally, Plaintiffs contend that "[a]bsolutely no harm would occur if Defendant FBI released Plaintiff Montgomery's own statements back to him, and Defendant FBI fails to allege what, if any, harm could occur." Pls.' Opp'n at 27. This too, is beside the point. A demonstration of harm is not a required element of an agency's Exemption (j)(2) assertion, and therefore Plaintiffs' complaint that Defendant FBI has not elucidated whether disclosure of the

20

requested records would result in harm is irrelevant to the adjudication of Plaintiffs' Privacy Act claim. *See* 5 U.S.C. § 552a(j)(2).[10]

## **CONCLUSION**

For the foregoing reasons and those in the Government Defendants' Memorandum, the Court should dismiss Counts Three, Five, Seven, and Eight under Rule 12(b)(1) for a lack of subject-matter jurisdiction; dismiss Count Four under Rule 12(b)(6) for failure to state a claim; and grant the Government Defendants partial summary judgment as to Count Six.

---

[10]  Plaintiffs state that "the FBI never even responded to Plaintiff Montgomery's multiple requests for his 302 reports before this litigation was necessarily filed." Pls.' Opp'n at 26.  This depiction of events is contradicted by the Declaration of David M. Hardy and by Plaintiff Montgomery's own supplemental affidavit.  As stated in the Declaration of David M. Hardy, *see* Gov't. Defs.' Mem., Ex. A, the FBI confirmed receipt of Plaintiff Montgomery's request and requested a completed Certification of Identity form from Plaintiff Montgomery on March 30, 2017.  Hardy Decl. ¶ 6; Supp. Montgomery Aff. ¶ 11.  Plaintiffs provided the completed form to the FBI on April 12, 2017, Hardy Decl. ¶ 17, Supp. Montgomery Aff. ¶ 12, and on May 1, 2017, the FBI acknowledged receipt and advised Plaintiffs that the request had been received for processing.  Hardy Decl. ¶ 8; Supp. Montgomery Aff. ¶ 13.

DATED:          August 25, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Senior Counsel

*/s/ Timothy A. Johnson*
JULIA A. BERMAN
CAROLINE J. ANDERSON
TIMOTHY A. JOHNSON
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Rm 7322
Washington, D.C.  20001
Phone: (202) 514-1359
Fax: (202) 616-8470
E-mail:  timothy.johnson4@usdoj.gov

Counsel for the Government Defendants