**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                                )
**DENNIS MONTGOMERY, et al.,**                )
                                                                )
      **Plaintiffs,**                                )
                                                                )
**v.**                                                          )     **Civil Action No. 1:17-cv-1074-RJL**
                                                                )
**JAMES COMEY, et al.,**                             )
                                                                )
      **Defendants.**                              )
_____)

**MEMORANDUM IN SUPPORT OF
<u>INDIVIDUAL-CAPACITY DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ANALYSIS ................................................................................................................. 3

I.    The Plaintiffs Have Not Sufficiently Alleged Their Standing ............................... 4

II.   This Is Not An Appropriate Case To Extend *Bivens* ............................................ 5

      A.   This Case Would Require Extending *Bivens* To A New Context ...................... 7

      B.   Several Special Factors Counsel Against A *Bivens* Remedy In This Case ...................... 10

           1.   Alternative Process ..................................................................................... 10

           2.   Other Special Factors ................................................................................. 16

III.  Qualified Immunity Bars Counts One And Two .................................................. 21

      A.   The Plaintiffs Have Not Sufficiently Pled The Individual-Capacity
           Defendants' Personal Involvement ................................................................... 22

      B.   The Plaintiffs Have Not Sufficiently Pled A Constitutional Violation ............................. 24

      C.   The Plaintiffs Have Not Pled A Clearly Established Constitutional Violation ................. 27

IV.   Absolute Presidential Immunity Bars All Claims Against Former President
      Obama In His Personal Capacity ........................................................................... 30

V.    Former President Obama Should Be Dismissed For Insufficient Service Of Process ........ 32

VI.   Former FBI Director Comey Has Not Been Sued In His Individual
      Capacity In Counts Five And Seven, And Would Enjoy Absolute Immunity
      From Such Claims In Any Event ........................................................................... 34

CONCLUSION ........................................................................................................... 36

# TABLE OF AUTHORITIES

Cases

*American Civil Liberties Union v. Clapper*,
    804 F.3d 617 (2d Cir. 2015) ........................................................................... 10

*American Civil Liberties Union v. Clapper*,
    959 F. Supp. 2d 724 (S.D.N.Y. 2013),

    *aff'd in part, vacated in part*, 785 F.3d 787 (2d Cir. 2015) ...................................... 28

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009) ......................................................................... passim

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015) ............................................................................ 26

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) ............................................................................. 21, 22, 29

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. passim

*Bame v. Dillard*,
    637 F.3d 380 (D.C. Cir. 2011) ......................................................................... 29

*Beattie v. Boeing Co.*,
    43 F.3d 559 (10th Cir. 1994) ........................................................................... 20

*Bell v. Wolfish*,
    441 U.S. 520 (1979) ...................................................................................... 29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................. 24, 26, 32

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) ........................................................................................ 1

*Carlson v. Green*,
    446 U.S. 14 (1980) ......................................................................................... 8

*Chong v. U.S. Drug Enforcement Admin.*,
    929 F.2d 729 (D.C. Cir. 1991) ................................................................. 11, 12, 14

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...................................................................................... 10

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001) .................................................................................... passim

*Dalia v. United States*,
    441 U.S. 238 (1979) ...................................................................................... 10

*Davis v. Passman*,
    442 U.S. 228 (1979) ........................................................................................ 8

*Doe v. Rumsfeld*,
   683 F.3d 390 (D.C. Cir. 2012) ................................................................. 7, 17

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ............................................................................... 22

*Hettinga v. United States*,
   677 F.3d 471 (D.C. Cir. 2012) ................................................................. 6

*Hunter v. Rice*,
   531 F. Supp. 2d 185 (D.D.C. 2008) ........................................................ 35

*In re Application of FBI*,
   No. BR 14-01, 2014 WL 5463097 (FISC Mar. 20, 2014) ...................... 28

*In re Application of the United States for Historical Cell Site Data*,
   724 F.3d 600 (5th Cir. 2013) ................................................................... 11

*In re Askin*,
   47 F.3d 100 (4th Cir. 1995) ..................................................................... 11

*In re Sealed Case*,
   310 F.3d 717 (FISA Ct. of Rev. 2002) .................................................... 31

*Jackson v. Donovan*,
   844 F. Supp. 2d 74 (D.D.C. 2012) .......................................................... 24

*Kelley v. FBI*,
   67 F. Supp. 3d 240 (D.D.C. 2014) .................................................... 13, 14

*Klayman v. Obama*,
   142 F. Supp. 3d 172 (D.D.C. 2015) .................................................. 12, 18

*Klayman v. Obama*,
   957 F. Supp. 2d 1 (D.D.C. 2013), *vacated*, 800 F.3d 559 (D.C. Cir. 2015) ............................ 28

*Latif v. Obama*,
   677 F.3d 1175 (D.C. Cir. 2012) ............................................................. 25

*Lebron v. Rumsfeld*,
   670 F.3d 540 (4th Cir. 2012) ............................................... 17, 18, 19, 21

*Lewis v. Bayh*,
   577 F. Supp. 2d 47 (D.D.C 2008) ........................................................... 26

*Light v. Wolf*,
   816 F.2d 746 (D.C. Cir. 1987) ................................................................ 34

*Mann v. Castiel*,
   681 F.3d 368 (D.C. Cir. 2012) ..................................................... 32, 33, 34

*Marcavage v. Nat'l Park Serv.*,
   666 F.3d 856 (3d Cir. 2012) .................................................................... 30

*Meshal v. Higgenbotham*,
   804 F.3d 417 (D.C. Cir. 2015), *cert. denied*, 137 S. Ct. 2325 (2017) ................ 6, 9, 20

*Minneci v. Pollard*,
  565 U.S. 118 (2012)................................................................................................. 16

*Morris v. United States Sentencing Comm'n*,
  62 F. Supp. 3d 67 (D.D.C. 2014).......................................................................... 24

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344 (1999)................................................................................................. 32

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982).................................................................................... 30, 31, 32

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
  484 U.S. 97 (1987)................................................................................................... 32

*Osborn v. Haley*,
  549 U.S. 225 (2007)................................................................................................. 36

*Plumhoff v. Rickard*,
  134 S. Ct. 2012 (2014)............................................................................................ 22

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ................................................................. 11, 12, 14

*Schweiker v. Chilicky*,
  487 U.S. 412 (1988)....................................................................................... 7, 13, 14

*Simpkins v. Dist. of Columbia Gov't*,
  108 F.3d 366 (D.C. Cir. 1997)............................................................................... 33

*Smith v. Maryland*,
  442 U.S. 735 (1979)................................................................................................. 28

*Smith v. Obama*,
  24 F. Supp. 3d 1005 (D. Idaho 2014), *vacated as moot*, 816 F.3d 1239 (9th Cir. 2016) ......... 28

*Spagnola v. Mathis*,
  859 F.2d 223 (D.C. Cir. 1988)............................................................................... 15

*United States v. Cox*,
  449 F.2d 679 (10th Cir. 1971) ............................................................................... 11

*United States v. Gordon*,
  Crim. No. 09-153-02, 2012 WL 8499876 (D.D.C. Feb. 6, 2012) ........................... 28

*United States v. Graham*,
  824 F.3d 421 (4th Cir. 2016) ................................................................................. 11

*United States v. Graham*,
  846 F. Supp. 2d 384 (D. Md. 2012)...................................................................... 28

*United States v. Miller*,
  425 U.S. 435 (1976)................................................................................................. 28

*United States v. Moalin*,
  Crim. No. 10-4246, 2013 WL 6079518 (S.D. Cal. Nov. 18, 2013)........................... 28

*United States v. Stewart*,
   590 F.3d 93 (2d Cir. 2009) ........................................................... 10, 12, 14

*United States v. United States Dist. Court for E. Dist. of Mich.*,
   407 U.S. 297 (1972)................................................................................ 31

*United States v. Yunis*,
   867 F.2d 617 (D.C. Cir. 1989)................................................................. 18

*Vanderklok v. United States*,
   No. 16-3422, 2017 WL 3597711 (3d Cir. Aug. 22, 2017) ................. 17, 19

*Venus v. Goodman*,
   556 F. Supp. 514 (W.D. Wis. 1983) ......................................................... 15

*Wilkie v. Robbins*,
   551 U.S. 537 (2007)................................................................... 10, 14, 15

*Wilson v. Layne*,
   526 U.S. 603 (1999)................................................................................ 29

*Wilson v. Libby*,
   535 F.3d 697 (D.C. Cir. 2008)............................................... 14, 15, 20, 21

*Wilson v. U.S. Park Police*,
   300 F.R.D. 606 (D.D.C. 2014)................................................................. 33

*Wood v. Moss*,
   134 S. Ct. 2056 (2014)............................................................................ 30

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017)...................................................................... passim


Statutes

18 U.S.C. §§ 2510-2522 ............................................................................. 11

18 U.S.C. § 2520............................................................................. 13, 14, 15

18 U.S.C. §§ 2701-2712 ............................................................................. 12

18 U.S.C. § 2707............................................................................. 13, 14, 15

28 U.S.C. § 2679....................................................................................... 35, 36

42 U.S.C. § 1983........................................................................................... 7

50 U.S.C. §§ 1801-1885c............................................................................. 11

50 U.S.C. § 1810............................................................................. 13, 14, 15

50 U.S.C. § 1861............................................................................. 12, 24, 28

50 U.S.C. § 1881a............................................................................. 4, 12, 23, 25

USA FREEDOM Act, Pub L. No. 114-23 §§ 101, 103, 109, 129 Stat. 268-70,
   272, 276 ............................................................................. 12, 23, 25

Section 215 of the USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat 272 (2001) ..................... 25

FISA Amendments Act of 2008, Pub. L. No. 110-261, 122 Stat. 2436 ....................................... 12

Rules

Fed. R. Civ. P. 4 ..................................................................................................................... 33

Other Authorities

S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112 ............................................ 11

**INTRODUCTION**

By now the Court is all too familiar with the allegations in this case—allegations that are, in the plaintiffs' own words, a "continuation" of three lawsuits making the "exact" same allegations that Larry Klayman filed more than four years ago in this Court. Pls.' Opp'n to Government Defs.' Mot. to Dismiss and Mot. for Partial Summ. J. and Resp. to Opp'n to Mot. for TRO, ECF No. 32, at 1 (Aug. 17, 2017) ("Pls.' Opp'n to Gov't Defs.' Mot."); *see Klayman v. Obama*, 13-cv-851 (*Klayman I*); *Klayman v. Obama*, 13-cv-881 (*Klayman II*); *Klayman v. Obama*, No. 14-cv-92 (*Klayman III*). Such serial litigation of the "exact" same allegations wastes this Court's and the parties' time and resources, and should be put to an end forthwith. That is particularly true of the plaintiffs' attempt to levy a damages award against the personal assets of several high-ranking Executive Branch officials.

In the current iteration, those officials are former President Barack Obama, current Director of National Intelligence ("DNI") Daniel Coats, former DNI James Clapper, current Director of the Central Intelligence Agency ("CIA") Mike Pompeo, former CIA Director John Brennan, current Director of the National Security Agency ("NSA") Michael Rogers, and former Director of the Federal Bureau of Investigation ("FBI") James Comey.[1] Invoking *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the plaintiffs seek to hold these seven defendants personally liable for violating their Fourth and First Amendments rights in Counts One and Two of the complaint, respectively. As we explain below, these claims fail as a matter of law for several reasons, and the Court should not let Mr. Klayman continue to

---

[1] To the extent these defendants are sued in their personal capacity, they are referred to as the "Individual-Capacity Defendants." To the extent they are sued in their official capacity, these defendants, along with the three agency defendants, are referred to as the "Government Defendants."

use the threat (no matter how baseless) of a personal damages award to distract and harass a former President and current and former cabinet members and agency heads.

First, the plaintiffs lack standing to bring their claims of unlawful surveillance in Counts One and Two.  Second, several special factors weigh heavily against an extension of the extremely limited *Bivens* remedy.  Third, all of the Individual-Capacity Defendants enjoy qualified immunity.  Finally, former President Obama should be dismissed for insufficient service of process and because he is entitled to absolute Presidential immunity.

## **BACKGROUND**

The plaintiffs allege that the defendants ("each and every one of them") have engaged in "ongoing illegal, unconstitutional surveillance of millions of Americans, including prominent Americans such as the chief justice [sic] of the U.S. Supreme Court, other justices, 156 judges, prominent businessmen and others such as Donald J. Trump, as well as Plaintiffs themselves." Compl. ¶ 18.  They further allege that all of the defendants intend to continue this pattern of illegal and unconstitutional mass surveillance "through surrogates in the Obama Deep State."  *Id.* ¶ 19.  The plaintiffs maintain that the surveillance is conducted "in numerous ways, including but not limited to, bulk telephony metadata collection similar to the now 'discontinued' Section 215 [program under] the USA PATRIOT ACT as well as targeted 'PRISM' collection under Section 702 of the Foreign [Intelligence Surveillance] Act [("FISA")]."  *Id.* ¶ 20.  Plaintiffs also allude to recent allegations that the CIA has developed "malware" capable of infecting a variety of cell phones and other consumer electronic devices to "turn [them] into recording and transmitting stations to spy on [CIA] targets."  *Id.* ¶¶ 63-64.

According to the plaintiffs, the defendants have "used the fruits" of the illegal surveillance to "serve their own interests" and to "cover-up" their wrongdoing by leaking

sensitive information about those who "dare to oppose them," including President Trump. *Id*. ¶¶ 28-29.  As part of the "cover up," the plaintiffs claim that the FBI, under former FBI Director Comey's direction, fraudulently induced Montgomery to turn over a set of 47 computer hard drives containing evidence of the illegal surveillance "under the express promise that the FBI would conduct an investigation into the . . . illegal, unconstitutional activity," when in fact the intent was to "bury" the evidence contained on the hard drives and ensure it "is not investigated or revealed to the public." *Id*. ¶¶ 37-39.

As evidence that the two plaintiffs themselves have been subjected to the alleged illegal surveillance, they assert that Montgomery, as a self-identified whistleblower, and Klayman, as his attorney, "have worked visibly, in the public eye, to raise awareness of, and demand an investigation into" the defendants' allegedly illegal activities, and thus "fall squarely within the locus of those targeted" for surveillance. *Id*. at 8-9; *see, e.g., id*. ¶¶ 30, 66.  They further assert that their personal and business computers and cell phones have been "hacked" in unspecified ways, and that Montgomery has been able to trace the alleged attacks on his computers to IP (Internet protocol) addresses he alleges are used by the CIA, the FBI, and the Department of Defense. *Id*. ¶¶ 43-48, 56-62.

## ANALYSIS

Counts One and Two suffer from numerous legal deficiencies.  To begin with, those two counts should be dismissed under Rule 12(b)(1) for lack of standing.  *See* Section I.  They also should be dismissed under Rule 12(b)(6) for several reasons:  (1) the unavailability of a *Bivens* remedy in the context of this case; (2) qualified immunity; and (3) absolute Presidential immunity.  *See* Sections II, III, IV.  Former President Obama also should be dismissed under Rule 12(b)(5) because the plaintiffs have not personally served him.  *See* Section V.

## I.      The Plaintiffs Have Not Sufficiently Alleged Their Standing

Counts One and Two should be dismissed first and foremost under Rule 12(b)(1) for lack of standing.  The Government Defendants have thoroughly demonstrated that the plaintiffs have not sufficiently pled their standing to obtain equitable relief regarding the alleged surveillance activities, and that Count Three should be dismissed for that reason.  *See* Government Defs.' Memo. of Points and Authorities in Support of Their Motions to Dismiss and for Partial Summ. J. and in Opp'n to Pls.' Mot. for TRO and Prelim. Inj., ECF No. 26-1, at 9-23 (Aug. 1, 2017) ("Gov't Defs.' Memo."); Government Defs.' Reply Br. in Support of Their Motions to Dismiss and for Partial Summ. J., ECF No. 35, at 4-16 (Aug. 25, 2017) ("Gov't Defs.' Reply").  And as the Government Defendants further point out, that same standing argument compels the dismissal of Counts One and Two as well, because the same allegations underlie all three counts. *See* Gov't Defs.' Memo. at 23 n.11; *see also* Gov't Defs.' Reply at 12 n.6.  So rather than duplicate that discussion, the Individual-Capacity Defendants respectfully refer the Court to the Government Defendants' briefs and fully incorporate their standing argument here.  We make only a few additional points to more specifically connect the Government Defendants' standing argument regarding Count Three to Counts One and Two.

The plaintiffs' Third Cause of Action seeks declaratory and injunctive relief against the Government Defendants for "illegal[] and unconstitutional[] surveill[ance]."  Compl. ¶¶ 81-88. While the plaintiffs do not specify how the government surveilled them, their surveillance allegations fall into three general categories:  (1) their electronic communications have been collected under the NSA's targeted "PRISM" program, which is authorized by Section 702 of FISA, 50 U.S.C. § 1881a; (2) telephony metadata pertaining to their calls has been collected as part of a resurrected NSA bulk collection program; and (3) their personal electronic devices have

been "hacked" to allow surveillance, supposedly through the clandestine installation of CIA "malware." *See* Gov't Defs.' Memo. at 9-10 (citing Compl. ¶¶ 20, 63). The plaintiffs refer to each of these categories in Count Three (some more vaguely than others). *See* Compl. ¶¶ 82-87.

By comparison, Counts One and Two appear to involve only the first two categories. *See id*. ¶ 69 (alleging that defendants "unreasonably searched and seized and continue to search Plaintiffs' phone and other records"); *id*. ¶ 71 (referring to Section 702); *id*. ¶ 76 (alleging that the plaintiffs are "in effect tapped and illegally surveyed [sic]"). But even if the Court were to assume that Counts One and Two encompass all three categories of the plaintiffs' surveillance allegations (and that is quite a charitable assumption), *none* of those allegations is sufficient to establish the plaintiffs' standing. As the Government Defendants have amply shown, the plaintiffs have advanced no non-conclusory and non-speculative allegations "that their communications have been collected by the Government in any way, be it through PRISM, a supposed resurrected bulk telephony metadata program, or purported CIA 'malware.'" Gov't Defs.' Memo. at 23; *see also* Gov't Defs.' Reply at 4-16.

Counts One and Two therefore should be dismissed for the same reason that Count Three should be dismissed. Regardless of who the defendants are or which capacity they are sued in, all three of those claims rely on the same fanciful allegations of government surveillance. Because the plaintiffs have not pled nearly enough "factual content" that they are or were the subjects of such surveillance, Counts One and Two (and Three) should be dismissed under Rule 12(b)(1) for lack of standing.

## II.    This Is Not An Appropriate Case To Extend *Bivens*

We now turn to the numerous reasons why Counts One and Two should be dismissed under Rule 12(b)(6). Dismissal is required under Rule 12(b)(6) when a plaintiff fails to plead

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). A claim is "plausible" only when there is enough well-pled "factual content" for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In performing this analysis, a court should "not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).

The plaintiffs cannot state a claim upon which relief can be granted in Counts One and Two primarily because a *Bivens* cause of action is, under Supreme Court and D.C. Circuit precedent, not available in the circumstances of this case. Those two counts would require an extension of the extremely limited *Bivens* remedy to a context that is substantially different, in several meaningful ways, from any context in which the Supreme Court has ever recognized an implied constitutional tort action. And as the Supreme Court recently and emphatically stressed in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), any attempt to expand *Bivens* beyond its original factual setting almost always should be rejected. That is all the more true here, as Congress has legislated extensively on the subject of government surveillance and created several alternative processes to protect a plaintiff's interests, at least one of which the plaintiffs have actually invoked in this very case. In addition, core separation-of-powers concerns—namely, those touching on national security, classified information, and intelligence-gathering—strongly counsel against the creation of a novel *Bivens* remedy.

"Federal tort causes of action are ordinarily created by Congress, not by the courts." *Meshal v. Higgenbotham*, 804 F.3d 417, 420 (D.C. Cir. 2015), *cert. denied*, 137 S. Ct. 2325 (2017). While Congress has created such a cause of action against state officials who violate the

Constitution under 42 U.S.C. § 1983, it has never "create[d] an analogous statute for federal officials." *Abbasi*, 137 S. Ct. at 1854. As such, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675), and "is not something to be undertaken lightly," *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012). This judicial reluctance is due in large part to the Supreme Court's ever-growing hostility to implied causes of action in the decades since *Bivens* was decided. *See Abbasi*, 137 S. Ct. at 1855, 1857 (recounting "notable change in the Court's approach to recognizing implied causes of action" and how "the arguments for recognizing implied causes of action for damages began to lose their force"); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001) (noting that Court has "retreated from [its] previous willingness to imply a cause of action where Congress has not provided one").

Under the "far more cautious course" that the Supreme Court now follows, "separation-of-powers principles are or should be central to" the question of "'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 137 S. Ct. at 1855, 1857. The answer to that question "most often will be Congress." *Id*. at 1857. That is because the "decision to recognize a damages remedy requires an assessment of its impact on governmental operations *systemwide*," and "involves a host of considerations that must be weighed and appraised." *Id*. at 1858 (emphasis added). Thus, "[i]n most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if 'the public interest would be served' by imposing a 'new substantive legal liability.'" *Id*. at 1857 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 426-47 (1988)).

A.     **This Case Would Require Extending *Bivens* To A New Context**

Whenever a plaintiff relies on *Bivens* to sue government employees in their personal capacity, the "first question a court must ask" is whether the "case presents a new *Bivens*

context." *Id*. at 1859, 1864.  The "proper test" for answering that question is this:  "If the case is different in a meaningful way from previous *Bivens* cases *decided by [the Supreme] Court*, then the context is new." *Id*. at 1859 (emphasis added).  In other words, the "new context" inquiry is strictly limited to the contexts presented in the only three cases where the Supreme Court itself has affirmatively approved of a *Bivens*-type remedy. *Id*. at 1860.  Those three cases are (1) *Bivens* itself, which involved a Fourth Amendment claim "against FBI agents for handcuffing a man in his own home without a warrant," (2) *Davis v. Passman*, 442 U.S. 228 (1979), which involved a Fifth Amendment gender discrimination claim "against a Congressman for firing his female secretary," and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which involved an Eighth Amendment claim "against prison officials for failure to treat an inmate's asthma." *Abbasi*, 137 S. Ct. at 1860.  The *Abbasi* Court also gave several non-exclusive examples of how a given case "might differ in a meaningful way" from *Bivens*, *Davis*, and *Carlson*, many of which apply here. *Id*.  Such "meaningful" differences may be "small, at least in practical terms," but "even a modest extension is still an extension." *Id*. at 1864, 1865.

     As in *Abbasi*, a number of differences materially distinguish this case from *Bivens*, *Davis*, and *Carlson*, and the "new-context inquiry is easily satisfied" here. *Id*. at 1865.  Unlike any of those cases, the plaintiffs seek to challenge the constitutionality of what they speculate is a massive, government-wide conspiracy to conduct illegal intelligence surveillance on "millions of Americans." Compl. ¶ 18; *see Abbasi*, 137 S. Ct. at 1860 (stating that meaningful differences can include "the generality or specificity of the official action, … the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider").  The plaintiffs also have sued, to the exclusion of any other

individual defendant, current and former government officials at the highest levels of the

Executive Branch, including a former President, current and former cabinet members (DNI Coats

and former DNI Clapper), and current and former agency heads (CIA Director Pompeo, former

CIA Director Brennan, former FBI Director Comey, and NSA Director Rogers). *See Abbasi*,

137 S. Ct. at 1860 (stating that "rank of the officers involved" can be a meaningful difference);

*Malesko*, 534 U.S. at 68 (stating that Supreme Court has "consistently refused to extend *Bivens*

liability to any new context or new category of defendants"). Furthermore, the plaintiffs partly

rely on constitutional rights that the Supreme Court has not previously recognized in *Bivens*,

*Davis*, or *Carlson*, *i.e.*, those under the First Amendment. *See Abbasi*, 137 S. Ct. at 1860 (noting

that "the constitutional right at issue" can be a meaningful difference); *Iqbal*, 556 U.S. at 675

(noting that Court has "declined to extend *Bivens* to a claim sounding in the First Amendment");

Compl. ¶¶ 74-80. And even the plaintiffs' Fourth Amendment claim arises in the factual setting

of an alleged nationwide surveillance program that is vastly different than "handcuffing a man in

his own home without a warrant," which was the Fourth Amendment claim in the original *Bivens*

case. *Abbasi*, 137 S. Ct. at 1860; *see Meshal*, 804 F.3d at 423 (explaining that "even if the

plaintiff alleges the same type of constitutional violation" permitted in one context, that "does

not automatically" carry over to a different context). Finally, and as we discuss below, the

plaintiffs have available to them several alternate means of protecting their constitutional rights

that were not considered in any of the Supreme Court's previous *Bivens* cases. The *Bivens*

claims in this case thus "bear little resemblance to the three *Bivens* claims the [Supreme] Court

has approved in the past," and the numerous foregoing differences are more than "meaningful

enough to make" the context of this case a novel one. *Abbasi*, 137 S. Ct. at 1859, 1860.

**B.      Several Special Factors Counsel Against A *Bivens* Remedy In This Case**

Having established that this case arises in a radically "new context," the next step is to examine the special factors implicated by the plaintiffs' claims.  *See id*. at 1860.  Those special factors are plentiful here and compellingly "show that whether a damages action should be allowed is a decision for the Congress to make, not the courts."  *Id*.

**1.      Alternative Process**

To begin, the plaintiffs have available to them several "alternative, existing process[es] for protecting" their "constitutionally recognized interest[s]."  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).  "And when alternative methods of relief are available, a *Bivens* remedy usually is not."  *Abbasi*, 137 S. Ct. at 1863.

Chief among those "alternative methods of relief" are three statutory remedies that Congress has created and are relevant to the plaintiffs' allegations in this case, one of which the plaintiffs repeatedly mention by name in their complaint:  FISA, the Wiretap Act, and the Stored Communications Act.  *See* Compl. at 5-7, ¶¶ 20-25, 71 (referring to FISA).  "In 1978, after years of debate, Congress enacted [FISA] to authorize and regulate certain governmental electronic surveillance of communications for foreign intelligence purposes."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013).  This "comprehensive legislation," *American Civil Liberties Union v. Clapper*, 804 F.3d 617, 619 (2d Cir. 2015), strikes "a constitutionally adequate balancing of the individual's Fourth Amendment rights against the nation's need to obtain foreign intelligence information."  *United States v. Stewart*, 590 F.3d 93, 126 (2d Cir. 2009) (internal quotations and citation omitted).

The Wiretap Act (often referred to as "Title III") is an equally "comprehensive scheme for the regulation of [domestic] electronic surveillance."  *Dalia v. United States*, 441 U.S. 238,

249 (1979).  Like FISA, the provisions of Title III "represent a comprehensive statutory scheme dedicated to preserving personal privacy by sharply limiting the circumstances under which surveillance may be undertaken and its fruits disclosed."  *Chong v. U.S. Drug Enforcement Admin.*, 929 F.2d 729, 733 (D.C. Cir. 1991); *see In re Askin*, 47 F.3d 100, 101 (4th Cir. 1995) ("Title III represents a comprehensive effort by Congress to strike a careful balance between rights of personal privacy and the needs of law enforcement."); *United States v. Cox*, 449 F.2d 679, 683 (10th Cir. 1971) (noting that Title III has a "dual purpose":  "'(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized'") (quoting S. Rep. No. 90-1097, at 66 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2153).

Then there is the Stored Communications Act ("SCA").  In enacting the SCA, Congress "crafted a thorough statutory framework limiting the government's ability to gather wire and electronic communication data from communications service providers."  *United States v. Graham*, 824 F.3d 421, 438 (4th Cir. 2016).  The SCA not only "conforms to existing Supreme Court Fourth Amendment precedent," *In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600, 614 (5th Cir. 2013), it also "creates a set of Fourth Amendment-like privacy protections by statute, regulating the relationship between government investigators and service providers in possession of users' private information."  *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).

FISA, the Wiretap Act, and the SCA are dispositive for precluding a new *Bivens* remedy here for two principal reasons.  First are the elaborate procedures and limitations that these three statutes place on the government's ability to conduct electronic surveillance and collect electronic communications.  *See generally* 50 U.S.C. §§ 1801-1885c (FISA); 18 U.S.C. §§ 2510-

2522 (Wiretap Act); 18 U.S.C. §§ 2701-2712 (SCA).  Those statutory schemes are the result of a delicate congressional balancing of interests, with an emphasis placed on safeguarding an individual's privacy interests.  *See Stewart*, 590 F.3d at 126; *Chong*, 929 F.2d at 733; *Sams*, 713 F.3d at 1179.

That balancing is ongoing in ways that are directly pertinent to this case.  For example, Congress amended FISA in 2008 to add, among other things, Section 702—the very same statutory section that the plaintiffs cite throughout their complaint.  *See* Compl. at 5-7, ¶¶ 20-25, 71; FISA Amendments Act of 2008, Pub. L. No. 110-261, 122 Stat. 2436, *codified at* 50 U.S.C. § 1881a.  Section 702 expressly prohibits the targeting thereunder of U.S. persons, *see* 50 U.S.C. § 1881a(b), permits only the "targeting of [non-U.S.] persons reasonably believed to be located outside the United States to acquire foreign intelligence information," *id.* § 1881a(a), and requires that any acquisition be "conducted in a manner consistent with the [F]ourth [A]mendment," *id.* § 1881a(b)(5).  Congress amended FISA again in 2015 when it prohibited the bulk collection of telephony metadata under Section 215 of the USA PATRIOT Act and replaced it with a new mechanism for targeted production of call-detail records by telecommunications service providers, pursuant to court order.  *See* USA FREEDOM Act, Pub L. No. 114-23 §§ 101, 103, 109, 129 Stat. 268-70, 272, 276; 50 U.S.C. § 1861(c)(3); *Klayman v. Obama*, 142 F. Supp. 3d 172, 177 (D.D.C. 2015) (Leon, J.) ("[T]he USA FREEDOM Act specifically prohibits the bulk collection of telephony metadata [as of] November 29, 2015."), *vacated*, 2016 U.S. App. LEXIS 6190 (D.C. Cir. Apr. 4, 2016).  As with Section 702, the plaintiffs specifically cite Section 215 in their complaint as part of their speculative and baseless allegation that the government continues to operate a similar bulk collection program in direct violation of the new statutory limitations.  *See* Compl. ¶ 20.  Frivolous as that allegation is, the point remains that

both major amendments to FISA that Congress passed in the last ten years have been protective

of individual privacy rights vis-à-vis the very types of surveillance activities alleged here (albeit

without any factual support).

This case thus unquestionably "involve[s] policy questions in an area that [has] received

careful attention from Congress." *Chilicky*, 487 U.S. at 423.  Because "the Legislature is far

more competent than the Judiciary to carry out the necessary balancing," courts may not

substitute their own judgment for that of Congress and disrupt the careful balance that Congress

has struck by injecting an implied, *non*-statutory private right of action for damages into the mix.

*Id*. (internal quotations and citation omitted).

Second, the need for such judicial restraint becomes even stronger when considering that

FISA, the Wiretap Act, and the SCA each already authorize certain private rights of action for

damages in appropriate circumstances (including that the plaintiff be an "aggrieved person").

*See* 50 U.S.C. § 1810 (FISA); 18 U.S.C. § 2520(b) (Wiretap act); 18 U.S.C. § 2707(a) (SCA).

Such rights of action are designed to provide redress for the very types of injuries that the

plaintiffs have pled in Counts One and Two, namely, those arising from unlawful government

surveillance, wiretapping, and collection of electronic records.  *See* Compl. ¶¶ 67-80.

With many of these same concerns in mind, this Court has held that the SCA, on its own,

precludes a *Bivens* action.  *See Kelley v. FBI*, 67 F. Supp. 3d 240, 270-72 (D.D.C. 2014).  In

*Kelley*, the Court explained that the "policy interests underlying the [Fourth] [A]mendment and

the [SCA] are the same:  to protect an individual's right to privacy."  *Id.* at 271.  As the SCA

authorizes a civil cause of action for equitable and monetary relief for violations of the statute,

*see id*. (citing 18 U.S.C. §§ 2707(a)-(b), 2712), "[a]ny harms to the interests protected by the

Fourth Amendment that would arise from the government's unlawful search and seizure of

emails would also be redressible under the SCA." *Id*. at 271.  The same is equally true of FISA and the Wiretap Act with respect to the government's surveillance of a person's communications, as all three statutes were designed to incorporate Fourth Amendment privacy expectations *and* provide a plaintiff with the means and a forum to air his or her constitutional grievances regarding such surveillance.  *See Stewart*, 590 F.3d at 126; *Chong*, 929 F.2d at 733; *Sams*, 713 F.3d at 1179.  Indeed, the three statutory schemes and *Bivens* use the *same* robust process to protect a plaintiff's constitutional interests, *i.e.*, a civil action in federal court.

As in *Kelley*, FISA, the Wiretap Act, and the SCA create equitable and monetary remedies in certain circumstances "for the same conduct that serves as the basis of plaintiffs' Fourth [and First] Amendment *Bivens* claim[s]—that the individual defendants unlawfully searched and seized their emails," phone calls, and other electronic communications.  *Kelley*, 67 F. Supp. 3d at 270; *see* Compl. ¶¶ 67-80.  Because those statutes provide a "comprehensive remedial scheme that enables plaintiffs to redress the alleged violation of their Fourth [and First] Amendment rights, … it would be improper to imply a *Bivens* remedy in this case."  *Kelley*, 67 F. Supp. 3d at 270.[2]

In fact, FISA, the Wiretap Act, and the SCA have the potential to provide more relief than *Bivens* itself.  Each of those statutes authorizes the recovery of liquidated damages if any actual damages proven at trial are less than the statutory minimum.  *See* 50 U.S.C. § 1810(a) (FISA); 18 U.S.C. § 2520(c) (Wiretap Act); 18 U.S.C. § 2707(c) (SCA).  All three statutes

---

[2]  The Supreme Court and the D.C. Circuit have made it clear that an alternative *process* to vindicate a plaintiff's constitutional interests is a sufficient basis to reject a new *Bivens* remedy, even in the absence of an alternative *remedy*.  *See Wilkie*, 551 U.S. at 550-54; *Chilicky*, 487 U.S. at 423-24; *Wilson v. Libby*, 535 F.3d 697, 709 (D.C. Cir. 2008) ("The special factors analysis does not turn on whether the statute provides a remedy to the particular plaintiff for the particular claim he or she wishes to pursue.").

further permit an award of punitive damages, costs, *and* the plaintiff's attorney's fees, the last of

which are not available in a *Bivens* action per the "American rule."  *See* 50 U.S.C. § 1810(b)-(c)

(FISA); 18 U.S.C. § 2520(b)(2)-(3) (Wiretap Act); 18 U.S.C. §§ 2707(b)(3), (c) (SCA); *Venus v.*

*Goodman*, 556 F. Supp. 514, 520-21 (W.D. Wis. 1983) (*Bivens*).  Congress thus built into FISA,

the Wiretap Act, and the SCA far greater deterrence against unlawful electronic surveillance and

collection of electronic records than a court could impose through an implied *Bivens* remedy.[3]

  In addition to those three statutory schemes, the possibility of injunctive relief also

weighs heavily against a judicially-created damages remedy.  *See Abbasi*, 137 S. Ct. at 1862.

That consideration is particularly relevant here because the plaintiffs are challenging "large-scale

policy decisions" that have "attract[ed] the attention of Congress," *id.*, and that, according to the

plaintiffs' own theory of their case, affects "millions of Americans."  Compl. ¶¶ 18, 19, 21; *see*

*Abbasi*, 137 S. Ct. at 1862 (disallowing *Bivens* action in part because plaintiffs were challenging

"large-scale policy decisions concerning the conditions of confinement imposed on hundreds of

prisoners").  The plaintiffs plainly understand this point, as they are seeking injunctive relief in

Count Three based on the same allegations underlying Counts One and Two.  *See* Compl. ¶¶ 67-

88.  And as this Court is well aware, the plaintiffs have actually filed a motion for a preliminary

---

[3]  The foregoing discussion notwithstanding, the plaintiffs could not plead viable claims against
the Individual-Capacity Defendants under FISA, the Wiretap Act, or the SCA.  Apart from any
defenses or arguments that are unique to each statute, many of the defenses to the plaintiffs'
*Bivens* claims discussed in this brief would be equally applicable to any statutory claims,
including a lack of standing, qualified immunity, and absolute Presidential immunity.  Those
three statutes nevertheless remain "alternative, existing process[es] for protecting" the plaintiffs'
"constitutionally recognized interest[s]" that are more than sufficient to foreclose a *Bivens*
remedy in this case.  *Wilkie*, 551 U.S. at 550; *see Wilson*, 535 F.3d at 709 ("The special factors
analysis does not turn on whether the statute provides a remedy to the particular plaintiff for the
particular claim he or she wishes to pursue.  In *Spagnola* [*v. Mathis*, 859 F.2d 223, 228 (D.C.
Cir. 1988) (en banc)], we held that a comprehensive statutory scheme precludes a *Bivens* remedy
even when the scheme provides the plaintiff with no remedy whatsoever.") (internal quotations
and citation omitted).

injunction in this case that is now fully briefed.  *See* ECF Nos. 7, 28, 32.  To be sure, the plaintiffs' request for injunctive relief should be denied for the reasons discussed by the Government Defendants.  *See* Gov't Defs.' Memo. at 35-42.  But that does not change the fact that injunctive relief, rather than a *Bivens* remedy, is the proper legal means to "challenge large-scale policy decisions," such as an alleged nation-wide government surveillance program affecting millions of Americans.  *Abbasi*, 137 S. Ct. at 1862; *see Malesko*, 534 U.S. at 74 (holding that *Bivens* is not "a proper vehicle for altering an entity's policy"); *Arar v. Ashcroft*, 585 F.3d 559, 579 (2d Cir. 2009) (en banc) (stating that "*Bivens* has never been approved as a *Monell*-like vehicle for challenging government policies").

Parties in the plaintiffs' shoes thus have available to them multiple channels for exposing the same alleged constitutional injuries that make up the plaintiffs' *Bivens* claims.  The plaintiffs are actively using one of those channels (injunctive relief), and have mentioned another one (FISA), in this case.  *See* Compl. at 5-7, ¶¶ 20-25, 71, 81-88.  "So long as the plaintiff[s] [have] an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability."  *Malesko*, 534 U.S. at 69.  The Court should dismiss Counts One and Two on this basis alone.

### 2.      Other Special Factors

This Court need not look beyond the numerous, and dispositive, alternative means available to the plaintiffs to vindicate their constitutional rights to conclude that their *Bivens* claims cannot proceed.  *See supra* Section II(B)(1); *Minneci v. Pollard*, 565 U.S. 118, 126- 31 (2012) (rejecting *Bivens* claim based solely on existence of alternative process).  Even so, several more special factors strongly counsel against the creation of a *Bivens* remedy in the novel context of this case.

      **a.**     First, the plaintiffs' *Bivens* claims, if allowed to proceed, would implicate matters of national security, intelligence-gathering, and classified information. Because the Constitution reserves such matters for the political branches, those claims raise core separation-of-powers concerns. *See* U.S. Const. art. I, § 8 (giving Congress the power to provide for the common defense); *id*. art. II, § 2, cl. 1 (designating President as Commander in Chief). All of these are subjects that courts, including the D.C. Circuit, have consistently held are inappropriate to litigate through a *Bivens* action. *See Doe*, 683 F.3d at 394 ("The Supreme Court has never implied a *Bivens* remedy in a case involving the military, national security, or intelligence."); *accord Lebron v. Rumsfeld*, 670 F.3d 540, 549 (4th Cir. 2012) (withholding *Bivens* remedy in deference to the "Constitution's parallel commitment of command responsibility in national security and military affairs to the President as Commander in Chief"); *Vanderklok v. United States*, No. 16-3422, 2017 WL 3597711, *11 (3d Cir. Aug. 22, 2017) (collecting circuit court cases that "have relied on the hesitancy of the Supreme Court to intrude on national security matters in refusing to imply *Bivens* actions").

      "The Supreme Court has expressly counseled that matters touching upon foreign policy and national security fall within an area of executive action in which courts have long been hesitant to intrude absent congressional authorization." *Arar*, 585 F.3d at 575 (internal quotations, citation, and emphasis omitted). Such matters are more likely to involve classified or otherwise-restricted information, and the risk of "inadvertent disclosure may jeopardize future acquisition and maintenance of the sources and methods of collecting intelligence." *Lebron*, 670 F.3d at 554. As a result, "when Congress deems it necessary for the courts to become involved in [such] sensitive matters, … it enacts careful statutory guidelines to ensure that litigation does not come at the expense of national security concerns." *Id.* at 555. Congress did just that in

creating the special Foreign Intelligence Surveillance Court ("FISC") as part of FISA "to consider wiretap requests in the highly sensitive area of" foreign-intelligence investigations.  *Id.* It similarly enacted the Classified Information Procedures Act, 18 U.S.C. App. at 860, to regulate the use and disclosure of sensitive information in criminal cases.  *See generally United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989).  In "stark contrast," a judicially-implied *Bivens* remedy would confer "unencumbered" and "broad discretionary powers on all Article III courts in matters trenching on important national security concerns."  *Lebron*, 670 F.3d at 554-55.

Litigation of the plaintiffs' *Bivens* claims in this case, insofar as they might depend on inquiring into the scope and operational details of the government's foreign intelligence surveillance activities, unquestionably would trench on important national security concerns, highly-classified material, and intelligence sources and methods.  This Court itself has recognized the "significant national security interests at stake" in addressing Klayman's previous challenges to the very same purported intelligence activities at issue here.  *Klayman*, 142 F. Supp. 3d at 181 (internal quotations and citation omitted).  And in *this* case, which the plaintiffs describe as merely a "continuation" of *Klayman I* and *Klayman II*, Pls.' Opp'n to Gov't Defs.' Mot. at 1, the plaintiffs have moved for expedited discovery to obtain, in their own words: "(1) any documents or correspondence relating to" the alleged "warrantless spying on Plaintiffs' cellular phone metadata, internet, and social media activity"; (2) depositions of former FBI Director Comey, former CIA Director Brennan, and former DNI Clapper on "whether they ordered surveillance on Plaintiffs"; and (3) Rule 30(b)(6) depositions of the FBI, CIA, and NSA on the subject of the same alleged "warrantless spying."  Pls.' Mot. for Expedited Disc., ECF No. 15, at 4 (July 6, 2017) ("Pls.' Disc. Mot.").  While the plaintiffs' expedited discovery motion should be denied for all of the reasons set out in the defendants' opposition to that motion, *see*

Defs.' Br. in Opp'n to Pls.' Mot. for Expedited Disc., ECF No. 22 (July 20, 2017), the plaintiffs' discovery request is proof positive of their general desire to learn about the sources, methods, and targets of the government's foreign intelligence surveillance activities.  Worse yet, they seek to do so, in part, by deposing three defendants in this case—a former cabinet member and two former agency heads—who have been sued in their personal capacity.

Whether there ever may be appropriate circumstances or an appropriate procedural vehicle in a civil action for conducting the type of discovery that the plaintiffs seek is perhaps debatable.  But the one thing not debatable under the case law is whether a *Bivens* action is such a vehicle:  "The hesitancy to imply a *Bivens* remedy in a case with national security implications must be particularly 'pronounced when the judicial inquiry comes in the context of a claim seeking money damages rather than a claim seeking injunctive or other equitable relief.'" *Vanderklok*, 2017 WL 3597711 at *12 (quoting *Abbasi*, 137 S. Ct. at 1861).  "National-security policy is the prerogative of the Congress and the President," and "the risk of personal damages liability is more likely to cause an official to second-guess difficult but necessary decisions concerning national-security policy." *Abbasi*, 137 S. Ct. at 1861; *see Lebron*, 670 F.3d at 551 ("It takes little enough imagination to understand that a judicially devised damages action" in a matter such as this would improperly "expose past executive deliberations affecting sensitive matters of national security to the prospect of searching judicial scrutiny.").  Lawsuits implicating national-security policies also run the serious risk of "graymail," or the filing of a lawsuit to induce the government to settle a case "out of fear that any effort to litigate the action would reveal classified information." *Arar*, 585 F.3d at 578-79.  This is a related special factor counseling against a *Bivens* remedy because the "plaintiff could in effect pressure the individual defendants until the *government* cries uncle." *Id.* at 579.

When confronted with these special factors in analogous contexts, the D.C. Circuit and other courts have consistently refused to recognize a *Bivens* action.  *See Meshal*, 804 F.3d at 420-29 (rejecting *Bivens* claim because "tort remedies in cases involving matters of national security and foreign policy are generally left to the political branches"); *Libby*, 535 F.3d at 710 (rejecting *Bivens* claims that would "inevitably require judicial intrusion into matters of national security and sensitive intelligence information"); *accord Arar*, 585 F.3d at 575 ("A suit seeking a damages remedy against senior officials who implement an extraordinary rendition policy would enmesh the courts ineluctably in an assessment of the validity and rationale of that policy and its implementation in this particular case, matters that directly affect significant diplomatic and national security concerns."); *Beattie v. Boeing Co.*, 43 F.3d 559, 565 (10th Cir. 1994) (rejecting *Bivens* claim challenging denial of security clearance because the "Executive Branch has constitutional responsibility to classify and control access to information bearing on national security") (internal quotations and citation omitted). This Court should do the same.

      **b.**      Exacerbating the plaintiffs' attempt to litigate national security and intelligence-gathering issues through an implied damages remedy is the fact that it "would call into question the formulation and implementation of a general policy." *Abbasi*, 137 S. Ct. at 1860; *see Arar*, 585 F.3d at 574 ("Although this action is cast in terms of a claim for money damages against the defendants in their individual capacities, it operates as a constitutional challenge to policies promulgated by the executive.").  As the Supreme Court reiterated in *Abbasi*, "a *Bivens* action is not a 'proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860 (quoting *Malesko*, 534 U.S. at 74).  Yet the plaintiffs' *Bivens* claims would ultimately require this Court to pass on the constitutionality of (imagined) "large-scale policy decisions," *id.* at 1862, made at the highest levels of government, involving multiple intelligence agencies, and

affecting, according to the plaintiffs, "millions of Americans," Compl. ¶ 18.  For a court to do

that in the context of a request for injunctive relief, which again the plaintiffs have actually made

in this case regarding the very same allegations, is one thing.  *See Malesko*, 534 U.S. at 74

(stating that "injunctive relief has long been recognized as the proper means for preventing

entities from acting unconstitutionally").  But this is precisely the sort of "intrusive" judicial

examination of Executive Branch policy-making that the Supreme Court has said is off-limits in

a *Bivens* suit, and is another special factor counseling against an implied damages remedy here.

*Abbasi*, 137 S. Ct. at 1860-61; *see Lebron*, 670 F.3d at 552 ("The fact that [the plaintiff]

disagrees with policies allegedly formulated or actions allegedly taken does not entitle him to

demand the blunt deterrent of money damages under *Bivens* to promote a different outcome.");

*Arar*, 585 F.3d at 578 (holding that *Bivens* claims which "challenge policies promulgated and

pursued by the executive branch, not simply isolated actions of individual federal employees,"

would involve "extension of *Bivens*" that "is without precedent and implicates questions of

separation of powers as well as sovereign immunity").

 All of the foregoing special factors, combined with the alternative channels available to

and used by the plaintiffs to litigate their constitutional claims, *see* Section II(B)(1), are more

than sufficient "reason[s] for [the Court] to abstain from creating *Bivens* remedies."  *Wilson*, 535

F.3d at 708-09.  Counts One and Two therefore should be dismissed on this ground.

## III. Qualified Immunity Bars Counts One And Two

 Not only do the plaintiffs lack a cause of action under *Bivens*, but they also cannot

overcome qualified immunity.  Designed to "give[] government officials breathing room to make

reasonable but mistaken judgments," *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), qualified

immunity protects all public officials from civil liability so long as "their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To defeat qualified immunity at the motion to dismiss stage, a plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735. A necessary predicate of the first prong is that a plaintiff must allege sufficient facts that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. With respect to the second prong, the contours of the right must be "sufficiently definite," so "that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). The *Bivens* claims in this case do not satisfy either prong.

### A.   The Plaintiffs Have Not Sufficiently Pled The Individual-Capacity Defendants' Personal Involvement

As an initial matter, the Individual-Capacity Defendants enjoy qualified immunity because the plaintiffs seek to hold them vicariously liable, and do so using only conclusory allegations. It is axiomatic in a *Bivens* action that a plaintiff "must at least allege that the defendant federal official was personally involved in the illegal conduct," and that such claims "cannot rest merely on respondeat superior." *Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997). Thus, to survive a motion to dismiss, a plaintiff must plead enough "factual content" for the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 676, 678. "[M]ere conclusory statements" or "bare assertions" will not "unlock the doors of discovery." *Id.* at 679, 681.

Yet "mere conclusory statements" are all that the plaintiffs offer with respect to the Individual-Capacity Defendants. They have sued those defendants in their personal capacity

based solely on the positions they held at the highest levels of the Executive Branch, ranging

from the President of the United States, to cabinet members (the Director of National

Intelligence), to various agency heads (the Directors of the FBI, NSA, and CIA).  Compl.

¶¶ 7-16.  For every one of those defendants, the plaintiffs have pled the exact same boilerplate

conclusion:  that these defendants "oversaw and ordered the illegal and/or unconstitutional

actions … and then covered them up."  *Id.* ¶¶ 7, 9, 11, 12, 14, 15, 16.  With respect to the alleged

surveillance activities at issue in Counts One and Two, that is the sum total of the plaintiffs'

attempt to tie the Individual-Capacity Defendants personally to those activities.[4]

As such, the plaintiffs' allegations are woefully inadequate to impose personal liability.

Their "bare assertions" that these high-ranking government officials "oversaw and ordered" the

government to conduct unlawful surveillance on "millions of Americans" are the very sort of

conclusory and "formulaic recitation of the elements of a constitutional [search and seizure]

claim" that are not entitled to the presumption of truth.  *See Iqbal*, 556 U.S. at 680-81 (internal

quotations and citations omitted) (disregarding conclusory allegations that Attorney General was

the "principal architect" of, and that FBI Director was "instrumental" in adopting and executing,

allegedly discriminatory policy).  Making the plaintiffs' allegations all the more implausible is

the fact that such surveillance is expressly barred by statute.  *See* Gov't Defs.' Memo. at 13-20

(citing 50 U.S.C. § 1881a and USA FREEDOM Act, Pub L. No. 114-23 §§ 103, 109, 129 Stat.

---

[4]  The plaintiffs also speculate, partly through hearsay no less, that former FBI Director Comey
took "'hands on' supervision" and personally "conduct[ed] the FBI's Montgomery
investigation," and that he later personally ordered the "Montgomery investigation" to be
"buried."  Compl. at 3-4.  Apart from their inadmissibility and conjectural nature, these
assertions are irrelevant to Counts One and Two, which focus only on the alleged surveillance
activities.  *Id.* ¶¶ 67-80.  Other counts in the complaint, not pled against the Individual-Capacity
Defendants, seek relief related to the "Montgomery investigation."  *Id.* ¶¶ 89-114.

268, 272, 276; 50 U.S.C. § 1861(c)(3)); Gov't Defs.' Reply at 5-9.  And even more to the point,

the complaint contains no well-pled factual allegations that any of the Individual-Capacity

Defendants personally ordered the FBI, the NSA, or the CIA to conduct surveillance on, or

"hack" the electronic devices of, Montgomery and Klayman specifically.  *See*, *e.g.*, *Morris v.*

*United States Sentencing Comm'n*, 62 F. Supp. 3d 67, 75 (D.D.C. 2014) (observing that "high-

level officials, such as [the] Attorney General [], typically are not subject to *Bivens* liability since

they do not routinely participate personally in decisions about a particular individual at a

particular location"); *Jackson v. Donovan*, 844 F. Supp. 2d 74, 78 (D.D.C. 2012) (dismissing

*Bivens* claim because plaintiff "stated no facts establishing Secretary [of Housing and Urban

Development] Donovan's personal involvement in the alleged wrongdoing").  Because the

plaintiffs have pled zero plausible, factual allegations to show that any of the Individual-Capacity

Defendants personally, "through the official's own individual actions, has violated the

Constitution," *Iqbal*, 556 U.S. at 676, as to either of the plaintiffs, the plaintiffs' *Bivens* claims

must be dismissed.

### B.    The Plaintiffs Have Not Sufficiently Pled A Constitutional Violation

For largely the same reason, the plaintiffs also have not plausibly pled an actual

constitutional violation in Counts One and Two.  The Government Defendants have

demonstrated that the plaintiffs' allegations are insufficient to establish their standing to bring

their surveillance claims.  *See* Gov't Defs.' Memo. at 9-23; Gov't Defs.' Reply at 4-16.  That

same analysis further shows that the plaintiffs' allegations are far too conjectural, conclusory,

and implausible to "raise a right to relief above the speculative level" for qualified immunity

purposes.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The plaintiffs' first type of surveillance claim is that the government is collecting their communications under the NSA's targeted "PRISM" program pursuant to Section 702 of FISA. *See* Compl. ¶ 20.  But as the Government Defendants have shown, the complaint offers no "factual content" that would allow the Court "to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that the NSA, FBI, and CIA (much less that the Individual-Capacity Defendants personally) are violating the clear legal limits of Section 702.  *See* Gov't Defs.' Memo. at 13-17; Gov't Defs.' Reply at 5-9.  Those limits include the prohibition on targeting U.S. persons such as the plaintiffs, and the requirement that the FISC approve a certification and the use of targeting and minimization procedures under Section 702 to ensure consistency with FISA and the Fourth Amendment.  *See* Compl. ¶¶ 5-6; 50 U.S.C. §§ 1881a(a), (b)(5), (i).  The plaintiffs' speculative and conclusory allegations of a government conspiracy are especially implausible in light of the presumption of regularity afforded to official acts of government agencies.  *See Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2012); Gov't Defs.' Memo. at 14 n.7 (collecting cases).  This aspect of the plaintiffs' complaint thus fails to plausibly plead that any defendant has violated the Constitution (or even Section 702 itself).

Much the same can be said of the plaintiffs' claim that the government is collecting their bulk telephony metadata under a program "similar" to the discontinued program under Section 215 of the USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat 272 (2001).  The bulk collection of telephony metadata is, as the Government Defendants have explained, now prohibited by the USA FREEDOM Act, Pub L. No. 114-23 §§ 103, 109, 129 Stat. 268, 272, 276; 50 U.S.C. § 1861(c)(3).  And the plaintiffs once again have not pled any *facts* to overcome the presumption of regularity and show that the government is disregarding express legal limits on its surveillance authority.  *See* Gov't Defs.' Memo. at 17-20; Gov't Defs.' Reply at 5-9.  Indeed, the plaintiffs

have made no factual allegations from which a court could reasonably conclude that such a clandestinely-resurrected program even exists.  All they allege is that the government's supposed surveillance of the plaintiffs "occur[s]" in part through bulk telephony metadata collection. Compl. ¶ 20.  This naked assertion is far too vague and conclusory to state a constitutional violation.  *See Iqbal*, 556 U.S. at 678; *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

Finally, the plaintiffs' allegations that the government, and the CIA in particular, has "hacked" their cellphones and other electronic devices with "malware," Compl. ¶¶ 20, 43-47, 56-64, are so incredible that they cannot nudge the plaintiffs' constitutional claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  The Government Defendants have reviewed those allegations in detail, and have collected numerous cases dismissing similar allegations for "patent insubstantiality."  *Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009); *see, e.g., Lewis v. Bayh*, 577 F. Supp. 2d 47, 54 (D.D.C 2008) ("Courts have held that claims alleging, without any evidence, that the defendants hacked a plaintiff's computer … are frivolous."); *see* Gov't Defs.' Memo. at 20-23 (collecting cases); Gov't Defs.' Reply at 9-12. These allegations are, in short, so lacking in substance as to be frivolous and cannot state a plausible claim upon which relief can be granted.  *See Iqbal*, 556 U.S. at 679 (holding that, to survive motion to dismiss, plaintiffs must plead enough facts to "permit the court to infer more than the mere possibility of misconduct").

The complaint in this case contains no factual allegations of unlawful surveillance sufficient to establish the plaintiffs' standing.  *See* Gov't Defs.' Memo. at 9-23; Gov't Defs.' Reply at 4-16.  By the same token, the plaintiffs have not pled any "facts plausibly showing" that their First or Fourth Amendment rights have been violated.  *Iqbal*, 556 U.S. at 682.  The Individual-Capacity Defendants are thus entitled to qualified immunity on this basis as well.

**C.      The Plaintiffs Have Not Pled A Clearly Established Constitutional Violation**

Both of the plaintiffs' constitutional tort claims fail the first part of the qualified immunity test for the reasons discussed above.  *See* Sections III(A), III(B).  They would fare still worse under the second step, were the Court inclined to reach it.

Reaching that second step would require the Court to indulge the plaintiffs' fanciful allegations and assume, without any factual basis, that the government has secretly reconstituted the statutorily-forbidden Section 215 telephony bulk metadata collection program, and that the government is unlawfully targeting the communications of these two particular plaintiffs, both of whom are U.S. citizens, under Section 702.  In this fictional universe, the plaintiffs also appear to assume that the FISC continues to authorize surveillance activities under Section 702 (as it is required to do).  *See* Compl. at 5-7, ¶¶ 21-24, Compl. Exh. 1-1 (Apr. 26, 2017 FISC opinion).[5] Under these assumptions, however, the Individual-Capacity Defendants would not be violating a clearly established constitutional right.

This Court has described, among other things, how the Section 215 bulk telephony metadata collection program depended on the government applying for authorization from the FISC, and how that application required the government to show "reasonable grounds" for the bulk metadata collection.  *Klayman v. Obama*, 957 F. Supp. 2d 1, 13 (D.D.C. 2013) (quoting 50 U.S.C. § 1861(b)(2)(A), *vacated*, 800 F.3d 559 (D.C. Cir. 2015).  The Court further has observed

---

[5]  Going down the plaintiffs' rabbit hole thus also seems to require the bizarre assumptions that the FISC would authorize another bulk telephony metadata collection program even though the USA FREEDOM Act expressly prohibits such a program, and that the FISC would approve of procedures permitting the targeting of two U.S. citizens, even though Section 702 expressly prohibits such targeting.  This only emphasizes the high degree of speculation, and implausibility, behind those allegations.  Speaking of which, we do not address the plaintiffs' allegations regarding CIA "malware" in this section because, as discussed above, those allegations do not appear to be included in Counts One and Two and because they are simply too frivolous to merit further discussion.  *See* Sections I, III(B).

that the FISC continuously renewed orders under Section 215 (while it was in effect) to collect telephony metadata in bulk, with "fifteen different FISC judges … issu[ing] thirty-five orders authorizing the program" between May 2006 and October 2013. *Id*. at 18.  Despite concluding in *Klayman I* that the Section 215 bulk telephony metadata collection program was likely unconstitutional, this Court also noted "the novelty of the constitutional issues" presented by that program, determined that prior precedent could not be used to "navigate these uncharted Fourth Amendment waters," and recognized that this Court's ruling "might appear to conflict … with longstanding doctrine that courts have applied in other contexts."  *Klayman*, 957 F. Supp. 2d at 37, 41, 43 (citing *Smith v. Maryland*, 442 U.S. 735, 741-46 (1979), and *United States v. Miller*, 425 U.S. 435, 443 (1976)).  The Court then candidly acknowledged that several other courts had found the Section 215 bulk telephony metadata collection program to be constitutional.  *See id.* at 41 (citing *United States v. Moalin*, Crim. No. 10-4246, 2013 WL 6079518, at *5-8 (S.D. Cal. Nov. 18, 2013); *United States v. Graham*, 846 F. Supp. 2d 384, 390-405 (D. Md. 2012); *United States v. Gordon*, Crim. No. 09-153-02, 2012 WL 8499876, at *1-2 (D.D.C. Feb. 6, 2012)).  Finally, after this Court issued its initial ruling in *Klayman I*, other courts, including the FISC itself, explicitly disagreed with this Court and found that the Section 215 program did not violate the Fourth or First Amendments under extant precedent.  *See American Civil Liberties Union v. Clapper*, 959 F. Supp. 2d 724 (S.D.N.Y. 2013), *aff'd in part, vacated in part*, 785 F.3d 787 (2d Cir. 2015); *Smith v. Obama*, 24 F. Supp. 3d 1005 (D. Idaho 2014), *vacated as moot*, 816 F.3d 1239 (9th Cir. 2016); *In re Application of FBI*, No. BR 14-01, 2014 WL 5463097 (FISC Mar. 20, 2014).

Turning to the targeted collection of communications under the "PRISM" program, Section 702 generally provides that, upon the issuance of an order by the FISC approving a

certification and the use of targeting and minimization procedures for an acquisition, the

Attorney General and the Director of National Intelligence may jointly authorize for up to one

year from the date of the authorization, the targeting of non-U.S. persons reasonably believed to

be located outside the United States to acquire foreign intelligence information.  50 U.S.C.

§ 188la(a); *see id*. § 1881a(g) (setting out certification requirements).  The FISC has thirty days

after the certification is submitted to complete its review of the certification.  *Id*. § 1881a(i).  By

statute, the government must certify, and the FISC must ensure, that the targeting and

minimization procedures are "consistent with the [F]ourth [A]mendment to the Constitution of

the United States."  *Id*. § 1881a(b)(5).

       For qualified immunity purposes, these facts should be dispositive.  With respect to the

plaintiffs' allegations about a resurrected bulk telephony metadata collection program, opinions

from several federal courts finding that such a program does not violate the Constitution are

more than enough to warrant qualified immunity.  *See Wilson v. Layne*, 526 U.S. 603, 618 (1999)

("If judges … disagree on a constitutional question, it is unfair to subject police to money

damages for picking the losing side of the controversy."); *al-Kidd*, 563 U.S. at 743 (finding that

Attorney General was entitled to qualified immunity "not least because eight Court of Appeals

judges agreed with his judgment in a case of first impression").  Likewise, reliance on a federal

judge's (hypothetical) order under Section 702, which would necessarily include the statutory

predicate that the collection at issue is constitutional, would be inherently reasonable.  *See Bame*

*v. Dillard*, 637 F.3d 380, 388 (D.C. Cir. 2011) (reversing denial of qualified immunity after

finding it would be "unfair to subject [the defendant] to money damages for having relied upon

the Supreme Court's decision in *Bell* [*v. Wolfish*, 441 U.S. 520 (1979)]"); *Marcavage v. Nat'l*

*Park Serv*., 666 F.3d 856, 859 (3d Cir. 2012) (agreeing that defendants were entitled to qualified

immunity because "the fact that two judges found no First Amendment violation [in the underlying criminal proceeding] indicates that Marcavage's constitutional right . . . was not clearly established.").  At a minimum, therefore, the Individual-Capacity Defendants are entitled to qualified immunity because no "reasonable officer in [their] position" would understand that the alleged surveillance activities would be unconstitutional.  *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (internal quotations and citation omitted).

## IV.    Absolute Presidential Immunity Bars All Claims Against Former President Obama In His Personal Capacity

Of all of the plaintiffs' claims, perhaps the most frivolous is their attempt to obtain a personal damages award from a former President of the United States based upon his official acts (as imagined by the plaintiffs).  *See* Compl. ¶¶ 16, 69-70, 75-77.  Binding Supreme Court precedent, establishing the doctrine of absolute Presidential immunity, squarely forecloses the plaintiffs' individual-capacity claims against former President Obama.

The Supreme Court has held categorically that "a former President of the United States[] is entitled to absolute immunity from damages liability predicated on his official acts."  *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982).  "Because of the singular importance of the President's duties," and to afford the President with the maximum amount of leeway "to deal fearlessly and impartially" with those duties, it has defined Presidential immunity in very generous terms.  *Id*. at 751-52 (internal quotations and citation omitted).  "[A]bsolute Presidential immunity from damages liability" extends to any "acts within the 'outer perimeter' of [the President's] official responsibility."  *Id*. at 756.  Under this formulation, allegations "that an action was unlawful" are irrelevant; a plaintiff cannot argue that a President acted "outside the outer perimeter of his duties," and thus skirt Presidential immunity, merely by pleading that the Constitution or a federal statute forbade the act in question.  *Id*.  As long as the challenged action falls within the

outer perimeter of the "discretionary responsibilities" that a President has "in a broad variety of areas," Presidential immunity will apply.  *Id.*  That is certainly the case here.

The plaintiffs in this case have sued former President Obama "in his official capacity as the former President of the United States … from January 20, 2009 until January 20, 2017." Compl. ¶ 16.  They further allege that, "[d]uring this time span, Defendant Obama oversaw and ordered the illegal and/or unconstitutional actions of the CIA, FBI, NSA, and DNI and covered them up."  *Id.*  In other words, the plaintiffs seek to hold former President Obama personally liable because, *as President*, they believe he ordered various federal agencies to engage in foreign intelligence surveillance activities under FISA.  *Id.* ¶ 20.  Putting aside the conclusory nature of these allegations, it is hard to imagine a more "highly sensitive," "far-reaching," and "discretionary responsibilit[y]" that a President has, and one which affects "countless people," than authorizing foreign intelligence surveillance activities.  *Nixon*, 457 U.S. at 752-53, 756. This is in fact an essential Executive function.  *See United States v. United States Dist. Court for E. Dist. of Mich.*, 407 U.S. 297, 310 (1972) (recognizing that "implicit" in the President's "fundamental duty, under Art. II, § 1, of the Constitution, to 'preserve, protect and defend the Constitution of the United States' . . . is the power to protect our Government against those who would subvert or overthrow it by unlawful means," and that in discharging that duty the President "may find it necessary to employ electronic surveillance to obtain intelligence information on the plans of those who plot unlawful acts against the Government"); *accord In re Sealed Case*, 310 F.3d 717, 742 (FISA Ct. of Rev. 2002) (noting that "all the … courts to have decided the issue [have] held that the President [has] inherent authority to conduct warrantless searches to obtain foreign intelligence information").  There thus can be no debate that authorizing foreign intelligence surveillance activities "lay[s] well within the outer perimeter of

[the President's] authority." *Nixon*, 457 U.S. at 757.  And even if the plaintiffs' baseless accusations that such authorization flagrantly flouted FISA itself are assumed to be true, former President Obama is still absolutely immune from suit.  *Id*. at 756.[6]

## V.      Former President Obama Should Be Dismissed For Insufficient Service Of Process

In addition to all of the other reasons necessitating a dismissal of Counts One and Two, the plaintiffs have not personally served former President Obama in this matter.  The Court therefore should dismiss him under Rules 4 and Rule 12(b)(5) as well—just as it dismissed all of the plaintiffs' individual-capacity claims for lack of service of process in *Klayman I* and *Klayman II*.  *See Klayman I*, Memorandum Order, ECF No. 175 (Sept. 20, 2016); *Klayman II*, Memorandum Order, ECF No. 120 (Sept. 20, 2016).

"'Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant.'"  *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (quoting *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)).  Federal courts therefore "lack the power to assert personal jurisdiction over a defendant unless the procedural requirements of effective service of process are satisfied."  *Id.* (internal quotations and citation omitted); *see Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

---

[6]  Elsewhere in their complaint, the plaintiffs float a conspiracy theory that the defendants "acted outside the scope of their employment" by using "surrogates still embedded in the Trump administration (the 'Obama Deep State')" to carry out the allegedly unlawful surveillance. Compl. at 3.  Needless to say, such unfounded allegations are far too speculative to state a plausible claim for relief, much less to deny absolute immunity to former President Obama.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

These principles apply equally when the defendant is a federal employee sued personally under *Bivens*.  *See* Fed. R. Civ. P. 4(i)(3); *Simpkins*, 108 F.3d at 369 (holding that *Bivens* defendants must be served as individuals pursuant to Rule 4(e)).  As this Court itself has said: "When an officer or employee of the government is sued in his or her individual capacity, as is the case here, personal service on the officer or employee is required."  *Wilson v. U.S. Park Police*, 300 F.R.D. 606, 608 (D.D.C. 2014) (Leon, J.).

"The plaintiff bears the burden of establishing that he has properly effectuated service on all defendants named in the complaint."  *Id.*; *see Mann*, 681 F.3d at 372 (stating that "plaintiff has the burden to demonstrate that the procedure employed to deliver the papers satisfies the requirements of the relevant portions of Rule 4.") (internal quotations and citation omitted).  "If the plaintiff fails to meet this burden, the court" not only "may dismiss the complaint for ineffective service of process," but "Rule 4 states that the court must dismiss an action when the plaintiff fails to serve the defendant within 120 [now 90] days [of] the complaint being filed."  *Wilson*, 300 F.R.D. at 608; *see* Fed. R. Civ. P. 4(m).

The plaintiffs have candidly admitted that they have not personally served former President Obama with a summons in this matter.  *See* Pls.' Disc. Mot. at 2.  To the undersigned's knowledge, that remains true to this day.  That is so despite the fact that we specifically noted the plaintiffs' failure to serve him in two different submissions in this case.  *See* Defs.' Br. in Opp'n to Pls.' Mot. for Expedited Disc., ECF No. 22, at 5 (July 20, 2017); Individual-Capacity Defs.' Mot. for Extension of Time, ECF No. 29, at 2 n.2 (Aug. 9, 2017).

The plaintiffs filed this action on June 5, 2017.  *See* ECF No. 1 (June 5, 2017).  Rule 4(m)'s ninety-day window has thus come and gone.  Unless the plaintiffs can submit proof that former President Obama was properly and personally served in this matter before September 5,

2017, the Court should dismiss him on this basis as well.  *See Mann*, 681 F.3d at 371, 373

(affirming dismissal on ground that plaintiffs "offered no evidence to the district court to show

that the three defendants had been served, much less properly served," even though defendants

"acknowledged receiving the summons and a copy of the complaint from 'some person' but

questioned whether they had been properly served"); *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir.

1987) (holding that, when a defendant challenges sufficiency of service, the plaintiff "must

demonstrate that the procedure employed satisfied the requirements of the relevant portions of

Rule 4 and any other applicable provision of law") (citations omitted).

**VI.     Former FBI Director Comey Has Not Been Sued In His
          Individual Capacity In Counts Five And Seven, And Would
          Enjoy Absolute Immunity From Such Claims In Any Event**

      This motion has not addressed Counts Five and Seven of the complaint, in which the

plaintiffs assert common law tort claims against former FBI Director Comey and the FBI for

conversion and fraudulent misrepresentation, respectively.  *See* Compl. ¶¶ 96-101, 109-14.  That

is because, as the Government Defendants have explained, the plaintiffs have pled those two

counts against Comey only in his (former) official capacity.  *See* Gov't Defs.' Memo. at 23-25;

Gov't Defs.' Reply at 12-15.  Although the plaintiffs, in their opposition to the Government

Defendants' motion to dismiss, suggest in passing that they also have pled these claims against

Comey in his individual capacity, the plaintiffs' own pleadings belie that suggestion.  *See* Pls.'

Opp'n to Gov't Defs.' Mot. at 22.  The plaintiffs specifically allege that they are suing Comey

"individually under *Bivens*" and, separately, "in his official capacity as Director of the FBI."

Compl. ¶ 7.  The only two *Bivens* claims (*i.e.*, constitutional tort claims) in the complaint are

Counts One and Two.  *Id*. ¶¶ 67-80.  Counts Five and Seven, on the other hand, are quite clearly

*not Bivens* claims, but instead are common law tort claims.  *Id*. ¶¶ 96-101, 109-14.  Since the

plaintiffs are, by their own terms, suing Comey in his personal capacity only under *Bivens*, they must be suing Comey for conversion and fraudulent misrepresentation only in his (former) "official capacity as Director of the FBI." *Id*. ¶ 7.  And as the Government Defendants have explained, the plaintiffs "may not amend [their] complaint through responsive pleadings." *Hunter v. Rice*, 531 F. Supp. 2d 185, 192 (D.D.C. 2008); *see* Gov't Defs.' Reply at 13.

Moreover, should the plaintiffs actually file a motion for leave to amend their complaint to bring Counts Five and Seven against Comey in his personal capacity (rather than improperly requesting leave to do so in their brief opposing the Government Defendants' motion to dismiss, *see* Pls.' Opp'n to Gov't Defs.' Mot. at 22), Comey would enjoy absolute immunity from such claims under the Westfall Act, 28 U.S.C. § 2679.  That statute grants federal employees immunity from common law tort claims arising out of acts within the scope of their federal employment.  *See id*. § 2679(b)(1).  The Westfall Act would plainly apply to Counts Five and Seven, as the plaintiffs allege that their conversion and fraudulent misrepresentation claims are based on actions that Comey supposedly took in his role as the FBI Director at the relevant time.  *See* Compl. ¶¶ 100, 110, 111.  Thus, were the Court to permit the plaintiffs to amend their complaint (through an actual motion to amend, not an opposition brief), we would promptly file a certification that former FBI Director Comey was acting within the scope of his federal employment at the time of the events giving rise to the plaintiffs' claims in Counts Five and Seven, with the United States substituted by operation of law as the proper party-defendant for those counts.  *See* 28 U.S.C. § 2679(b)(1); *Osborn v. Haley*, 549 U.S. 225, 230 (2007) ("Upon the Attorney General's certification, the employee is dismissed from the action ….").

## CONCLUSION

For the reasons stated above, the Court should grant the Individual-Capacity Defendants'

motion to dismiss, dismiss Counts One and Two of the plaintiffs' complaint, and dismiss all of

the Individual-Capacity Defendants from this lawsuit.


Respectfully submitted this 13th day of September 2017,

CHAD A. READLER
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

/s/ *James R. Whitman*
JAMES R. WHITMAN (D.C. Bar No. 987694)
Senior Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4169
Fax: (202) 616-4314

Attorneys for James Comey, Michael Rogers, John
Brennan, Mike Pompeo, James R. Clapper, Dan Coats,
and Barack Obama, solely in their individual capacity