**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
**DENNIS MONTGOMERY, et al.,**              )
                                                          )
     **Plaintiffs,**                            )
                                                          )
**v.**                                                  )     **Civil Action No. 1:17-cv-1074-RJL**
                                                          )
**JAMES COMEY, et al.,**                        )
                                                          )
     **Defendants.**                          )
_____)

**REPLY MEMORANDUM IN SUPPORT OF
<u>INDIVIDUAL-CAPACITY DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

ANALYSIS............................................................................................................. 2

    I.      Counts One And Two Should Be Dismissed For Lack Of Standing ...................... 2

    II.     The Court Should Not Imply A *Bivens* Remedy Here ............................................. 3

          A.      Counts One and Two Present a New *Bivens* Context .................................... 4

          B.      Several Special Factors Counsel Against A *Bivens* Remedy In This Case... 7

                1.    Alternative Process .............................................................................. 7

                2.    Other Special Factors........................................................................... 10

    III.    All Of The Individual-Capacity Defendants Enjoy Qualified Immunity From
           Counts One And Two........................................................................................ 13

          A.      The Plaintiffs Have Not Sufficiently Pled The Individual-Capacity
               Defendants' Personal Involvement ............................................................. 14

          B.      The Plaintiffs Have Not Sufficiently Pled A Constitutional Violation....... 17

          C.      The Plaintiffs Have Not Pled A Clearly Established Constitutional
               Violation..................................................................................................... 18

    IV.    Former President Obama Is Entitled To Absolute Presidential Immunity............. 21

    V.     The Plaintiffs Have Sued Former FBI Director
           Comey In His Individual Capacity Only In Counts One And Two ....................... 23

CONCLUSION....................................................................................................... 24

# TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Creighton*,
    483 U.S. 635 (1987)...............................................................................................1, 20

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009).......................................................................................13

*Arnold v. United States*,
    816 F.2d 1306 (9th Cir. 1987) ...................................................................................14

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011)...................................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................passim

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................15, 18, 22

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971).....................................................................................................1

*Bush v. Lucas*,
    462 U.S. 367 (1983).....................................................................................................5

*Cameron v. Thornburgh*,
    983 F.2d 253 (D.C. Cir. 1993)...................................................................................14

*Carlson v. Green*,
    446 U.S. 14 (1980).......................................................................................................4

*Chong v. U.S. Drug Enf't Admin.*,
    929 F.2d 729 (D.C. Cir. 1991).....................................................................................7

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001).......................................................................................................8

*Davis v. Passman*,
    442 U.S. 228 (1979).....................................................................................................4

*Doe v. Rumsfeld*,
    683 F.3d 390 (D.C. Cir. 2012) .............................................................................3, 11

*FDIC v. Meyer*,
    510 U.S. 471 (1994).....................................................................................................5

*Halperin v. Kissinger*,
    606 F.2d 1192 (D.C. Cir. 1979).................................................................................22

*Hope v. Pelzer*,
    536 U.S. 730 (2002)...................................................................................................19

*Jackson v. Donovan*,
    844 F. Supp. 2d 74 (D.D.C. 2012).............................................................................17

*Kelley v. FBI*,
    67 F. Supp. 3d 240 (D.D.C. 2014)...............................................................................8

*Klayman v. Obama*,
    957 F. Supp. 2d 1 (D.D.C. 2013)........................................................................11, 19

*Lebron v. Rumsfeld*,
    670 F.3d 540 (4th Cir. 2012) .....................................................................................13

*McKinney v. Whitfield*,
   736 F.2d 766 (D.C. Cir. 1984) ............................................................................. 14

*Meshal v. Higgenbotham*,
   804 F.3d 417 (D.C. Cir. 2015) .......................................................................... 5, 11

*Minneci v. Pollard*,
   565 U.S. 118 (2012) ........................................................................................... 10

*Morris v. United States Sentencing Comm'n*,
   62 F. Supp. 3d 67 (D.D.C. 2014) ........................................................................ 16

*NAACP v. Alabama ex rel. Patterson*,
   357 U.S. 449 (1958) ............................................................................................. 5

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982) ..................................................................................... 21, 22

*Pahls v. Thomas*,
   718 F.3d 1210 (10th Cir. 2013) ......................................................................... 15

*Peoples v. CCA Det. Ctrs.*,
   422 F.3d 1090 (10th Cir. 2005) ........................................................................... 9

*Reichle v. Howards*,
   132 S. Ct. 2088 (2012) ......................................................................................... 5

*Sams v. Yahoo! Inc.*,
   713 F.3d 1175 (9th Cir. 2013) ............................................................................. 7

*Schweiker v. Chilicky*,
   487 U.S. 412 (1988) ......................................................................................... 4, 8

*Simpkins v. D.C. Gov't*,
   108 F.3d 366 (D.C. Cir. 1997) ........................................................................... 14

*Trulock v. Freeh*,
   275 F.3d 391 (4th Cir. 2001) ........................................................................ 14, 16

*United States v. Stewart*,
   590 F.3d 93 (2d Cir. 2009) ................................................................................... 7

*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017) ............................................................................ 5, 11

*Wilkie v. Robbins*,
   551 U.S. 537 (2007) ............................................................................................. 8

*Willson v. Cagle*,
   711 F. Supp. 1521 (N.D. Cal. 1988) .................................................................. 14

*Wilson v. Layne*,
   526 U.S. 603 (1999) ........................................................................................... 19

*Wilson v. Libby*,
   498 F. Supp. 2d 74 (D.D.C. 2007) ....................................................................... 6

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ................................................................................ passim

## Statutes

18 U.S.C. § 2520(b) ................................................................................................... 8
18 U.S.C. § 2707(a) ................................................................................................... 8
18 U.S.C. §§ 2510-2522 ............................................................................................ 7
18 U.S.C. §§ 2701-2712 ............................................................................................ 7

28 U.S.C. § 2679 .................................................................................................................. 24

28 U.S.C. § 2679(b) ............................................................................................................. 14

42 U.S.C. § 1983 .................................................................................................................... 4

50 U.S.C. §1881a(b)(5) ....................................................................................................... 20

50 U.S.C. § 1810 ................................................................................................................... 8

50 U.S.C. § 1881a ............................................................................................................... 17

50 U.S.C. §§ 1801-1885c ...................................................................................................... 7

# INTRODUCTION

The Plaintiffs' Opposition to the Individual-Capacity Defendants' Motion to Dismiss, ECF No. 38 ("Pls.' Opp'n"), is essentially more of the same.  More red herrings, more hyperbole, more unfounded and frivolous conspiracy theories, more regurgitated argument from the plaintiffs' other briefs in this case and briefs in related litigation filed more than four years ago (including large swaths that are cut and pasted from the Plaintiffs' Opposition to the Government Defendants' Motion to Dismiss and Motion for Partial Summary Judgment, ECF No. 32 ("Pls.' Opp'n to Gov't Defs.' Mot.")), and more case law that does not stand for the proposition that the plaintiffs say it does or that has been overruled by the Supreme Court.

Needless to say, none of this legitimizes the plaintiffs' baseless attempt to impose personal damages liability against the Individual-Capacity Defendants (former President Barack Obama, current Director of National Intelligence ("DNI") Daniel Coats, former DNI James Clapper, current Director of the Central Intelligence Agency ("CIA") Mike Pompeo, former CIA Director John Brennan, current Director of the National Security Agency ("NSA") Michael Rogers, or former Director of the Federal Bureau of Investigation ("FBI") James Comey) under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[1]  *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) ("On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.").  The plaintiffs have pled no plausible factual basis, and have offered no valid

---

[1]  To the extent these defendants are sued in their personal capacity, they are referred to as the "Individual-Capacity Defendants."  To the extent they are sued in their official capacity, these defendants, along with the three agency defendants, are referred to as the "Government Defendants."

legal basis, to support their claims that a former President and six of the highest ranking members of the Intelligence Community were each personally responsible for "hacking and stealing data from" the phones and computers of Mr. Montgomery and Mr. Klayman.  Pls.' Opp'n at 21.  And as their opposition brief confirms, the plaintiffs have no real answers to the numerous grounds we raised for dismissing the *Bivens* claims in Counts One and Two of their complaint:  (1) the plaintiffs lack standing to pursue those claims; (2) a *Bivens* remedy is not available in the context of this case; (3) all of the defendants are entitled to qualified immunity; and (4) former President Obama is entitled to absolute Presidential immunity.  For all of these reasons, the Court should dismiss Counts One and Two, and dismiss the Individual-Capacity Defendants from this lawsuit.

## ANALYSIS

### I.     Counts One And Two Should Be Dismissed For Lack Of Standing

As a threshold matter, the Court lacks subject matter jurisdiction over the *Bivens* claims in Counts One and Two, and should dismiss them under Rule 12(b)(1) because the plaintiffs have not sufficiently pled their standing regarding the alleged surveillance activities that form the basis of those claims.  *See* Memo. in Support of Individual-Capacity Defs.' Mot. to Dismiss, ECF No. 36-1, at 4-5 (Sept. 13, 2017) ("Defs.' Memo.").  The plaintiffs' response to this argument consists of a near-verbatim reproduction of their response to the Government Defendants' standing argument as to Count Three.  *Compare* Pls.' Opp'n at 12-17 *with* Pls.' Opp'n to Gov't Defs.' Mot. at 11-16.  While this is hardly surprising, since we incorporated the Government Defendants' standing argument by reference, the Government Defendants have thoroughly refuted the plaintiffs' contentions on this topic.  *See* Government Defs.' Reply in Support of Their Motions to Dismiss and for Partial Summ. J., ECF No. 35, at 4-16 (Aug. 25,

2017) ("Gov't Defs.' Reply").  We therefore will not burden the Court by duplicating that discussion here.

We note only that the plaintiffs do not dispute the premise that Counts One, Two, and Three all rise or fall on the same (insufficient) allegations of unlawful surveillance.  *See* Defs.' Memo. at 4; Government Defs.' Memo. of Points and Authorities in Support of Their Motions to Dismiss and for Partial Summ. J. and in Opp'n to Pls.' Mot. for TRO and Prelim. Inj., ECF No. 26-1, at 23 n.11 (Aug. 1, 2017) ("Gov't Defs.' Memo.").  In other words, if and when the Court dismisses Count Three under Rule 12(b)(1) for lack of standing, the plaintiffs tacitly concede that Counts One and Two likewise must be dismissed for lack of standing.  And that is precisely what the Court should do for all of the reasons articulated by the Government Defendants.

## II.    The Court Should Not Imply A *Bivens* Remedy Here

Besides their jurisdictional defect, Counts One and Two fail to state claims upon which relief can be granted and should be dismissed under Rule 12(b)(6) as well.  First and foremost, a judicially-implied damages remedy is not appropriate in the novel context of this case.  That is because creating such a remedy would require a radical extension of the Supreme Court's *Bivens* jurisprudence beyond anything that Court has ever permitted, several alternative means are available to the plaintiffs to protect their constitutional interests, and other special factors strongly counsel against the creation of a *Bivens* remedy here.  *See* Defs.' Memo. at 7-21.

Before turning to each of those considerations, it bears repeating that implied causes of action are relics of the "*ancien regime*" when *Bivens* was decided in 1971.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).  Under current Supreme Court and D.C. Circuit precedent, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Id*. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)); *see Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012)

(recognizing new *Bivens* claim "is not something to be undertaken lightly").  It is so disfavored, and the Supreme Court's attitude towards *Bivens* has changed so drastically in the past forty-five years, that the Court has even suggested its analysis in *Bivens*, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980), which "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself," may well "have been different if they were decided today."  *Abbasi*, 137 S. Ct. at 1855, 1856.

The plaintiffs ignore all of these guiding principles in their opposition brief.  They instead seem to assume that a *Bivens* remedy is available whenever a plaintiff accuses a federal official of violating the Constitution.  *See* Pls.' Opp'n at 18.  That has never been the case because Congress has never codified the *Bivens* decision or otherwise created a statutory cause of action analogous to 42 U.S.C. § 1983.  *See Abbasi*, 137 S. Ct. at 1854.  And now, under the "far more cautious course" that the Supreme Court has charted in the years since it decided *Bivens*, *id.* at 1855, there is a definite presumption *against* the recognition of an implied constitutional tort remedy in any new context.  *See id.* at 1857 ("In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if 'the public interest would be served' by imposing a 'new substantive legal liability.'") (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 426-47 (1988)).

### A.    Counts One and Two Present a New *Bivens* Context

Against that backdrop, the "first question … is whether the claim arises in a new *Bivens* context."  *Id*. at 1864.  The plaintiffs answer that question by suggesting that their proposed *Bivens* claims "do[] not stray from" and involve the "exact same type of allegation" as the "original claims recognized by *Bivens*."  Pls.' Opp'n at 19-20.  They further argue that the "underlying violation," *i.e.*, an allegedly "illegal search and seizure," at issue in their Fourth

Amendment claim "is essentially the same" as the one at issue in *Bivens*.  *Id.* at 20.  These assertions are riddled with fallacies, both factual and legal.

To begin, one of the plaintiffs' two *Bivens* claims is based on the First Amendment.  *See* Compl. ¶¶ 74-80.  Apparently in support of that claim, the plaintiffs cite a Supreme Court case discussing the *Fourteenth* Amendment's right to freedom of association in the context of a request for *equitable* relief against *state* officials.  *See* Pls.' Opp'n at 19 (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958)).  But they do not, because they cannot, cite a single Supreme Court case allowing a *First* Amendment *Bivens* action for *damages* against a *federal* official to proceed.  *See* Defs.' Memo. at 9 (citing *Abbasi*, 137 S. Ct. at 1860 (noting that "the constitutional right at issue" can be a meaningful difference in determining if *Bivens* claim arises in a new context), and *Iqbal*, 556 U.S. at 675 (noting that Court has "declined to extend *Bivens* to a claim sounding in the First Amendment")); *see also Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012) (noting that Supreme Court has "*never* held that *Bivens* extends to First Amendment claims") (emphasis added); *Bush v. Lucas*, 462 U.S. 367, 378-90 (1983) (refusing to recognize First Amendment retaliation claim under *Bivens*); *Vanderklok v. United States*, 868 F.3d 189, 198-209 (3d Cir. 2017) (refusing, despite prior circuit precedent, to recognize *Bivens* action for First Amendment retaliation in light of *Abbasi*).

Yet even as to the plaintiffs' Fourth Amendment claim, the "new-context inquiry is easily satisfied" here.  *Abbasi*, 137 S. Ct. at 1865.  To show that their case arises in the same context as the original *Bivens* case, the plaintiffs must do more than merely allege a Fourth Amendment violation.  *See FDIC v. Meyer*, 510 U.S. 471, 484 n.9 (1994) (noting that "a *Bivens* action alleging a violation of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts, but not in others"); *Meshal v. Higgenbotham*, 804 F.3d 417, 423 (D.C. Cir. 2015),

*cert. denied*, 137 S. Ct. 2325 (2017) (explaining that "even if the plaintiff alleges the same type of constitutional violation" permitted in one context, that "does not automatically" carry over to another context); *Wilson v. Libby*, 498 F. Supp. 2d 74, 86 (D.D.C. 2007) ("*Bivens* actions are not recognized Amendment by Amendment in a wholesale fashion.  Rather, they are context-specific."), *aff'd*, 535 F.3d 697 (D.C. Cir. 2008).  As we have explained, a number of "meaningful" differences materially distinguish this case from *Bivens*.  *Abbasi*, 137 S. Ct. at 1859.  Those include:  (1) the "rank of the officers involved," *id.* at 1860, *i.e.*, a former President, current and former cabinet members, and current and former agency heads; (2) the "generality or specificity of the official action," *id.*, *i.e.*, an alleged massive, government- and nation-wide conspiracy to conduct illegal surveillance on every telephonic and electronic communication of "millions of Americans," Compl. ¶ 18; and (3) the existence of several alternative means of protecting the plaintiffs' constitutional rights that the Supreme Court has never considered in its previous *Bivens* cases, *i.e.*, the Foreign Intelligence Surveillance Act ("FISA"), the Wiretap Act, and the Stored Communications Act ("SCA").  *See* Defs.' Memo. at 8-9.

The plaintiffs are largely silent about these differences.  Their only response is to declare that the search of Webster Bivens' apartment is the same as alleging the "illegal search and seizure of Plaintiffs' computer data, phone data, and other forms of electronic data."  Pls.' Opp'n at 20.  It is not.  "[A] case can present a new context for *Bivens* purposes … if judicial precedents provide a less meaningful guide for official conduct."  *Abbasi*, 137 S. Ct. at 1864.  The plaintiffs themselves recognize a few sentences later in their opposition brief that the technology enabling the sort of electronic surveillance they have alleged in this case "was not even a remote possibility in 1971, when *Bivens* was authored."  Pls.' Opp'n at 20.  It thus cannot be seriously argued (and the plaintiffs do not even try to argue) that the analysis in *Bivens*, regarding the

physical search of a single apartment and the warrantless arrest of a single individual, provides a "meaningful guide" for a claim alleging that the government is secretly wiretapping and hacking "millions of Americans" with technology that did not even exist in 1971. *Abbasi*, 137 S. Ct. at 1864. As such, both *Bivens* claims in this case "bear little resemblance to the three *Bivens* claims the [Supreme] Court has approved in the past," and clearly arise in a new context. *Id*. at 1860.

### B. Several Special Factors Counsel Against A *Bivens* Remedy In This Case

We next turn to the numerous and dispositive special factors that preclude a novel *Bivens* action here. Once again, the plaintiffs' concessions by omission regarding these special factors are revealing and confirm that a *Bivens* remedy would be inappropriate.

### 1. Alternative Process

Far from being "outlandish," as the plaintiffs suggest, Pls.' Opp'n at 20, the Supreme Court has stated in no uncertain terms that "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863. In the context of this case, there are at least three key "alternative methods of relief": FISA, the Wiretap Act (or Title III), and the SCA. *See* Defs.' Memo. at 10-16. These statutory schemes were designed, and are regularly re-designed, to protect an individual's constitutionally-protected privacy rights against electronic surveillance and collection of electronic records. *See id.*; 50 U.S.C. §§ 1801-1885c (FISA); 18 U.S.C. §§ 2510-2522 (Wiretap Act); 18 U.S.C. §§ 2701-2712 (SCA); *United States v. Stewart*, 590 F.3d 93, 126 (2d Cir. 2009) (FISA); *Chong v. U.S. Drug Enf't Admin.*, 929 F.2d 729, 733 (D.C. Cir. 1991) (Wiretap Act); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (SCA). Even the plaintiffs recognize that these statutes "regulate the surveillance of individuals such as Plaintiffs." Pls.' Opp'n at 20. There thus can be no question that, in light of FISA, the Wiretap Act, and the SCA, this case "involve[s] policy questions in an area that [has] received

careful attention from Congress," which is reason enough to reject a proposed *Bivens* action. *Chilicky*, 487 U.S. at 423.

More than that, though, all three statutes authorize a private damages award, as well as the possibility of punitive damages and attorney's fees, in appropriate cases arising out of unlawful government surveillance, wiretapping, and collection of electronic records, by means of a civil action in federal court. *See* 50 U.S.C. § 1810 (FISA); 18 U.S.C. § 2520(b) (Wiretap act); 18 U.S.C. § 2707(a) (SCA). Because FISA, the Wiretap Act, and the SCA combine to provide a "comprehensive remedial scheme that enables plaintiffs to redress the alleged violation of their Fourth [and First] Amendment rights, … it would be improper to imply a *Bivens* remedy." *Kelley v. FBI*, 67 F. Supp. 3d 240, 271 (D.D.C. 2014).

The plaintiffs dispute none of this. They instead argue that these statutes are "entirely irrelevant" because, they baldly assert, the Individual-Capacity Defendants "have no regard—if not disdain for—the law." Pls.' Opp'n at 21. Such ad hominem attacks cannot substitute for actual legal analysis. And even if the plaintiffs had plausibly pled that the defendants violated FISA, the Wiretap Act, or the SCA, which they most certainly have not, it is the *existence of*, not the defendants' compliance with, a comprehensive statutory scheme that is determinative of the *Bivens* question. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) ("So long as the plaintiff[s] [have] an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability."); *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (holding that *Bivens* remedy may not be authorized if there is "any alternative, existing process for protecting the [plaintiff's] interest").

That is precisely what this Court held in *Kelley*. *See Kelley*, 67 F. Supp. 3d at 270-72. The plaintiffs nevertheless dismiss *Kelley* as the "only case" we have cited in support of this

argument, and as relying "only" on the SCA.  Pls.' Opp'n at 21.  Yet the plaintiffs have cited

*zero* cases permitting a *Bivens* action in the context of electronic surveillance or collection of

electronic records.  To be fair, *Kelley* is, to our knowledge, the only case to have addressed that

particular issue.  But the fact that *Kelley* relied "only" on the SCA to find that a *Bivens* remedy is

unavailable in this context actually makes its conclusion that much more compelling here.  The

plaintiffs all but admit that FISA, the Wiretap Act, and the SCA are *all* relevant to their claims of

unlawful electronic surveillance and collection of electronic records.  *See* Defs.' Memo. at 10-16;

Pls.' Opp'n at 20-21.  It therefore would be all the more improper to recognize a *Bivens* remedy

in a case where the plaintiffs have the possibility of *three* complementary remedial schemes to

redress the alleged violations of their constitutional rights (instead of just one, as in *Kelley*).  *See*

*Peoples v. CCA Det. Ctrs*., 422 F.3d 1090, 1102 (10th Cir. 2005) (holding that "the presence of

an alternative cause of action against individual defendants provides sufficient redress such that a

*Bivens* cause of action need not be implied").

Finally, the plaintiffs misunderstand the relevance of their request for injunctive relief to

the *Bivens* analysis.  The Supreme Court has made it clear that the possibility of equitable relief

also weighs heavily *against* an implied damages remedy.  *See Abbasi*, 137 S. Ct. at 1862.  The

plaintiffs and the Government Defendants have fully briefed the plaintiffs' motion for a

preliminary injunction in this case, a motion that is based on the same allegations underlying the

*Bivens* claims in Counts One and Two.  *See* Compl. ¶¶ 67-88; ECF Nos. 7, 28, 32.  Trying to

downplay the significance of that motion, the plaintiffs suggest that their proposed injunctive

relief pertains "only to themselves and not the public at large."  Pls.' Opp'n at 22.  The plaintiffs,

in other words, would like the Court to ignore their oft-repeated allegations that the supposed

surveillance activities affect "millions of Americans" when it suits their purpose.  *See* Compl.

¶¶ 18, 19, 21.  As we explain below, those allegations *are* relevant to, and actually support, the special factors analysis.  *See infra* Section II(B)(2).  But even if the inquiry is limited to just these two plaintiffs, the result is the same.  In *Abbasi*, the Supreme Court observed that the plaintiffs in that case could have filed petitions for habeas corpus, which necessarily would have been specific to them (although, as in this case, such equitable relief would have had the potential for much broader application).  *See Abbasi*, 137 S. Ct. at 1863.  The point remains that an injunction, when appropriate, provides "a faster and more direct route to relief than a suit for money damages," and is yet another reason a court should refrain from creating its own damages remedy under the Constitution.  *Id.*

Whether directly or indirectly, the plaintiffs concede (as they must) that they have "available to them 'other alternative forms of judicial relief,'" including injunctive relief and three different statutory causes of action.  *Id.* (quoting *Minneci v. Pollard*, 565 U.S. 118, 124 (2012)).  That by itself should be the end of their *Bivens* claims.  *See Minneci*, 565 U.S. at 126-31 (rejecting *Bivens* claim based solely on existence of alternate form of judicial relief).[2]

## 2.    Other Special Factors

In addition to the alternative forms of judicial relief discussed above, several other special factors further compel the Court to stay its *Bivens* hand in this case.  Those include core separation-of-powers concerns that implicate matters of national security, intelligence-gathering,

---

[2]  In passing, the plaintiffs "request leave to amend to pursue claims under the appropriate statutes" if the Court dismisses their *Bivens* claims.  Pls.' Opp'n at 22.  Besides being procedurally inappropriate, the plaintiffs' request would be futile for the reasons we already have outlined, and would flesh out further in response to a proper motion for leave to amend.  *See* Defs.' Memo. at 15 n.3.  Regardless, the plaintiffs' request does not change the fact (and, if anything, only confirms) that their *Bivens* claims should be dismissed due to the existence of those statutory remedies.

and classified information, as well as the impropriety of using a *Bivens* action to challenge an agency program or policy.  *See* Defs.' Memo. at 16-21.

It cannot be seriously disputed that litigating allegations about the government's foreign intelligence surveillance activities would necessarily raise national security concerns.  The plaintiffs, however, discount those concerns as "false" and "disingenuous" with little analysis.  Pls.' Opp'n at 22.  Nowhere do they acknowledge that this Court agreed there were "significant national security interests at stake" when it addressed Klayman's previous challenges to the very same purported intelligence activities at issue here.  *Klayman v. Obama*, 957 F. Supp. 2d 1, 43 (D.D.C. 2013), *vacated*, 800 F.3d 559 (D.C. Cir. 2015).  Nor do the plaintiffs acknowledge that they refer to this case as a mere "continuation" of *Klayman I*.  Pls.' Opp'n at 1.  Nor do the plaintiffs acknowledge that they have requested expedited discovery in this very case into the sources, methods, and targets of the government's foreign intelligence surveillance activities.  *See* Defs.' Memo. at 18-19; Pls.' Mot. for Expedited Disc., ECF No. 15, at 4 (July 6, 2017).  For the plaintiffs to argue that their *Bivens* claims do not raise national security concerns is thus untenable.  Because those claims clearly do raise such concerns, that is yet another reason they should not proceed.  *See Abbasi*, 137 S. Ct. at 1861; *Doe*, 683 F.3d at 394; *Meshal*, 804 F.3d at 420-29; *Libby*, 535 F.3d at 710; *Vanderklok*, 868 F.3d at 207.

That the plaintiffs wish to use their *Bivens* claims as a vehicle for disclosing classified information is still one more factor counseling hesitation here.  But it is no answer to that concern to blithely suggest, as the plaintiffs do, that such information can be filed under seal or reviewed *ex parte*.  *See* Pls.' Opp'n at 22.  While Congress provided for such procedures in criminal matters when it enacted the Classified Information Procedures Act, 18 U.S.C. App. at 860, the need to litigate over classified foreign intelligence programs as part of a *Bivens* claim is

itself a compelling reason to withhold a *Bivens* remedy in the first place. *See Libby*, 535 F.3d at 710 (rejecting *Bivens* claim in part because the "allegations would inevitably require an inquiry into classified information that may undermine ongoing covert operations") (internal quotations and citation omitted).

So too is the plaintiffs' attempt to use a *Bivens* action to "call into question the formulation and implementation of a general policy." *Abbasi*, 137 S. Ct. at 1860. Incredibly, the plaintiffs suggest that "nothing" in their complaint "could possibly result in altering an entity's policy." Pls.' Opp'n at 23 (internal quotations and citation omitted). Compare that with the first sentence of their motion for a temporary restraining order and preliminary injunction in this case: "Plaintiffs Dennis Montgomery and Larry Klayman … hereby file a motion for a temporary restraining order and preliminary injunction to … enjoin the [Government] Defendants [including the FBI, NSA, and CIA]… from … illegally and unconstitutionally spying on and surveilling millions of Americans, including Plaintiffs, …." Pls.' Mot. for TRO and Prelim. Inj., ECF No. 7, at 1 (June 19, 2017) ("Pls.' TRO Mot."); *see* Compl. at 4, 6 & ¶¶ 14, 21, 27. If that does not constitute a challenge to, and a request to alter, an alleged "mass-scale" government program, it is hard to imagine what would (never mind the completely speculative nature of the plaintiffs' allegations). *See* Defs.' Memo. at 25-26; Gov't Defs.' Memo. at 13-20.

It is for this same reason that the plaintiffs' effort to cabin their allegations as "pertaining only to themselves and not the public at large" does not withstand scrutiny. Pls.' Opp'n at 22. The plaintiffs do not claim that *only they* are the subjects of unlawful surveillance. They instead allege that they are two of "millions of Americans" who were subjected to unlawful surveillance. Compl. at 4, 6 & ¶¶ 14, 21, 27. And they specifically request injunctive relief against three federal agencies, on behalf of "millions of Americans." *See* Pls.' TRO Mot. at 1. The plaintiffs

- 12 -

are therefore, without question, challenging a "mass-scale" government program (albeit entirely imagined), which is something they may not do via a *Bivens* action.  *See Abbasi*, 137 S. Ct. at 1860; *see Lebron v. Rumsfeld*, 670 F.3d 540, 552 (4th Cir. 2012); *Arar v. Ashcroft*, 585 F.3d 559, 578 (2d Cir. 2009) (en banc).

Each of the foregoing special factors would be sufficient in their own right for this Court to withhold a *Bivens* remedy; in the aggregate, though, they overwhelmingly counsel against any such remedy.  The Court therefore should dismiss Counts One and Two on this basis.

### III.     All Of The Individual-Capacity Defendants Enjoy Qualified Immunity From Counts One And Two

Although the Court need not reach the issue, given the unavailability of a *Bivens* remedy in this case, *see supra* Section II, the Individual-Capacity Defendants are, in any event, entitled to qualified immunity from the constitutional tort claims in Counts One and Two.  That is because the plaintiffs:  (1) have not sufficiently pled each defendant's personal involvement; (2) cannot establish that their constitutional rights were violated; and (3) cannot show that the constitutional rights they invoke were clearly established.  *See* Defs.' Memo. at 22-30.  The plaintiffs have no effective response to any of these points.

Indeed, the plaintiffs devote a significant chunk of the qualified immunity section in their opposition brief to an irrelevant discussion about government officials' absolute immunity from common law tort claims, the discretionary function exception to the Federal Tort Claims Act ("FTCA"), and an Eleventh Circuit case involving school prayer and the Pledge of Allegiance. *See* Pls.' Opp'n at 24-29.  These topics obviously have nothing to do with the Individual-Capacity Defendants' right to *qualified* immunity from *constitutional* tort claims involving *electronic surveillance*.  (The cases that the plaintiffs cite regarding absolute immunity from common law tort claims are even further afield, as they all pre-date the 1988 passage of the

Westfall Act, which explicitly provides government officials with absolute immunity from all state and common law tort claims when they act within the scope of their employment. *See* 28 U.S.C. § 2679(b); Pls.' Opp'n at 24 (citing *Arnold v. United States*, 816 F.2d 1306 (9th Cir. 1987); *McKinney v. Whitfield*, 736 F.2d 766 (D.C. Cir. 1984); *Willson v. Cagle*, 711 F. Supp. 1521 (N.D. Cal. 1988)).

The plaintiffs do cite one case in this section of their brief, *Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001), that actually deals with qualified immunity in the context of a *Bivens* claim based on the First and Fourth Amendments. *See* Pls.' Opp'n at 25. But as we discuss below, *Trulock* only confirms that Counts One and Two should be dismissed on qualified immunity grounds because the plaintiffs have not adequately pled the personal involvement of each Individual-Capacity Defendant. *See infra* Section III(A). To that issue we now turn.

### A.    The Plaintiffs Have Not Sufficiently Pled The Individual-Capacity Defendants' Personal Involvement

"*Bivens* claims cannot rest merely on respondeat superior. *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993). The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997). A plaintiff therefore must plead "sufficient factual matter to show" that each defendant, "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 677. This the plaintiffs have not come close to doing. At best, they have pled (over and over) the same conclusory assertion that the Individual-Capacity Defendants "oversaw and ordered the illegal and/or unconstitutional actions," Compl. ¶¶ 7, 9, 11, 12, 14-16; at worst, they have pled *no* factual allegations that any of the Individual-Capacity Defendants personally ordered the FBI, the NSA, or the CIA to conduct surveillance on, or "hack" the electronic devices of, Montgomery and Klayman specifically. *See* Defs.' Memo. at 21-24.

The plaintiffs nevertheless seem to rely on the illusion that their complaint contains the "requisite specificity" by compiling all of their conclusory statements into a single, lengthy laundry list.  Pls.' Opp'n at 31.  For example, they quote their boilerplate allegation that the Individual-Capacity Defendants "unreasonably searched and seized Plaintiffs' phone and other records, violating the Fourth Amendment by not describing with particularity the place to be searched or the person or things to be seized."  *Id.* (citing Compl. ¶¶ 69-70).  But no matter how many times they repeat such an allegation, it remains the very definition of "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Ditto for the other barebones legal conclusions regurgitated in the plaintiffs' response brief.  *See* Pls.' Opp'n at 31 (repeating allegations that the defendants "have continued to violate the minimization procedures mandated by Section 702 of FISA and have continued to illegally and unconstitutionally spy on Plaintiffs and others," and have "abridged and violated Plaintiffs' First Amendment rights of freedom of speech and association by significantly minimizing and chilling Plaintiffs' freedom of expression and association").

Compounding this pleading deficiency, the plaintiffs lump all of the Individual-Capacity Defendants together as if they are completely interchangeable.  This does not satisfy the legal standards for imposing personal liability.  *See Iqbal*, 556 U.S. at 677 (stating that, under *Bivens*, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").  The seven Individual-Capacity Defendants held different positions at the highest levels of the Executive Branch at different agencies over a time period spanning eight years.  *See* Compl. ¶¶ 7, 9, 11, 12, 14-16.  With respect to their claims of unlawful surveillance, however, nowhere in their complaint do the plaintiffs assert that any particular defendant violated the constitutional right of any particular plaintiff with any particularity.  *See Pahls v. Thomas*, 718

F.3d 1210, 1225 (10th Cir. 2013) (stressing "the need for careful attention to particulars" in *Bivens* cases, "especially in lawsuits involving multiple defendants," and that "[i]t is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom* as distinguished from collective allegations") (internal quotations, citations, and alterations omitted).  In fact, other than former FBI Director Comey, the plaintiffs do not plead a single specific allegation regarding any of the Individual-Capacity Defendants.  This failure is equally fatal to their *Bivens* claims.[3]

Elsewhere in their brief, the plaintiffs cite the Fourth Circuit's decision in *Trulock* as support for their attempt to hold the Individual-Capacity Defendants, especially former FBI Director Comey, personally liable.  *See* Pls.' Opp'n at 25.  This is odd, given that the Fourth Circuit specifically dismissed a Fourth Amendment *Bivens* claim against former FBI Director Louis Freeh and two FBI supervisors because "there [was] no allegation that any of these three individuals were personally complicit in [the] alleged misrepresentations."  *Trulock*, 275 F.3d at 402 ("In a *Bivens* suit, there is no respondeat superior liability.  Instead, liability is personal, based upon each defendant's own constitutional violations.") (internal citation omitted).[4]  Decisions of this Court, which we cited in our opening brief but which the plaintiffs do not address in their opposition brief, are consistent with that holding.  *See*, *e.g.*, *Morris v. United*

---

[3]  With respect to former FBI Director Comey, the plaintiffs allege they were led to believe that he was going to be personally involved in the investigation regarding Montgomery's hard drives, but that the FBI did not conduct the promised investigation.  The latter allegation is also part of the laundry list in the plaintiffs' opposition brief.  *See* Pls.' Opp'n at 31.  But as we have pointed out, and as the plaintiffs do not dispute, those allegations are utterly irrelevant to their *Bivens* claims, which focus only on the alleged surveillance activities.  *See* Defs.' Memo. at 23 n.4.

[4]  Although the plaintiffs are correct that the Fourth Circuit allowed a First Amendment *Bivens* claim to proceed against all of the defendants in *Trulock*, that portion of its opinion contains no discussion of the personal-participation requirement necessary to maintain a *Bivens* action.  *See Trulock*, 275 F.3d at 404-06.

*States Sentencing Comm'n*, 62 F. Supp. 3d 67, 75 (D.D.C. 2014) (observing that "high-level officials, such as [the] Attorney General [], typically are not subject to *Bivens* liability since they do not routinely participate personally in decisions about a particular individual at a particular location"); *Jackson v. Donovan*, 844 F. Supp. 2d 74, 78 (D.D.C. 2012) (dismissing *Bivens* claim because plaintiff "stated no facts establishing Secretary [of Housing and Urban Development] Donovan's personal involvement in the alleged wrongdoing"). That precedent, including *Trulock*, is equally applicable here for exactly the same reason: the plaintiffs have pled no facts establishing the Individual-Capacity Defendants' "personal involvement in the alleged wrongdoing." *Jackson*, 844 F. Supp. 2d at 78.

The plaintiffs believe that we are claiming qualified immunity by just "summarily denying Plaintiffs' factual allegations." Pls.' Opp'n at 31. But in reality, we cannot deny what is not there. The Individual-Capacity Defendants are entitled to qualified immunity at the outset because the complaint contains *no* factual, well-pled allegations that any of them personally violated each of the plaintiffs' constitutional rights.

**B.     The Plaintiffs Have Not Sufficiently Pled A Constitutional Violation**

Qualified immunity bars Counts One and Two for the related but additional reason that the plaintiffs have not plausibly pled a constitutional violation. We (and the Government Defendants in their own briefing) have examined in detail the three categories of the plaintiffs' surveillance allegations that appear to underlie their *Bivens* claims: (1) their electronic communications have been collected under the NSA's targeted "PRISM" program, which is authorized by Section 702 of FISA, 50 U.S.C. § 1881a; (2) telephony metadata pertaining to their calls has been collected as part of a resurrected NSA bulk collection program; and (3) their personal electronic devices have been "hacked" to allow surveillance, supposedly through the

clandestine installation of CIA "malware." *See* Defs.' Memo. at 24-26; Gov't Defs.' Memo. at 9-23; Gov't Defs.' Reply at 4-15. And we have shown that the allegations regarding each of these categories are insufficient to "raise a right to relief above the speculative level" for qualified immunity purposes. *Twombly*, 550 U.S. at 555; *see* Defs.' Memo. at 24-26.

The plaintiffs' only retort to that discussion is, once again, their laundry list of legal conclusions (half of which, once again, have nothing to do with their surveillance claims). *See* Pls.' Opp'n at 31. But merely (re)asserting that a defendant has violated the First or Fourth Amendment, and then reciting some constitutional buzzwords, does not come close to pleading enough "factual content to 'nudge'" a constitutional tort claim "'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570). The former is all that the plaintiffs have done. *See* Pls.' Opp'n at 31 (repeating conclusory allegations that the defendants "unreasonably searched and seized Plaintiffs' phone and other records, violating the Fourth Amendment by not describing with particularity the place to be searched or the person or things to be seized," and "abridged and violated Plaintiffs' First Amendment rights of freedom of speech and association by significantly minimizing and chilling Plaintiffs' freedom of expression and association"). Because the plaintiffs do not identify any *factual* allegations plausibly showing that their First or Fourth Amendment rights have been violated (but instead merely summarize the labels and conclusions included throughout their complaint), the Individual-Capacity Defendants are entitled to qualified immunity on this basis as well.

**C.     The Plaintiffs Have Not Pled A Clearly Established Constitutional Violation**

As weak as the plaintiffs' response to the first prong of the qualified immunity analysis is, their attempt to argue around the second, "clearly established" prong is even more facile. The plaintiffs in fact ignore our entire discussion, and every case we have cited, on this issue. *See*

Defs.' Memo. at 27-30.  All but one of those cases concluded that the now-discontinued bulk telephony metadata collection program under Section 215 of FISA was constitutional.  *See id*. at 28 (collecting cases).  And even that one exception, this Court's decision in *Klayman I*, acknowledged "the novelty of the constitutional issues" and noted that its decision "might appear to conflict … with longstanding doctrine that courts have applied in other contexts."  *Klayman*, 957 F. Supp. 2d at 41, 43.  This state of the law easily decides the qualified immunity question in favor of the Individual-Capacity Defendants.  *See Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges … disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").  The same is true with respect to the plaintiffs' unfounded theory that communications of theirs have been acquired as part of "PRISM" collection under Section 702, as PRISM collection involves reasonable reliance on a Foreign Intelligence Surveillance Court ("FISC") judge's authorization of intelligence-gathering under Section 702.  *See* Defs.' Memo. at 28-30.  The plaintiffs respond to none of this.

They instead cite several cases for the unremarkable propositions that qualified immunity can be denied in appropriate circumstances when the constitutional violation is "obvious," and that there need not be a prior case holding that "the very action in question" is unlawful.  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see* Pls.' Opp'n at 32-34.  This is all true, but completely irrelevant here.  As we have shown, the "very action in question" here, *i.e.*, the Section 215 bulk telephony metadata collection program, "has previously been held" to be *lawful* by several courts.  *Hope*, 536 U.S. at 739; *see* Defs.' Memo. at 28.  Likewise, with respect to the plaintiffs' baseless allegation that their communications have been acquired as part of "PRISM" collection, this (hypothetical) "very action in question" under Section 702 would have been conducted pursuant to the FISC's finding that the government's targeting and minimization procedures

were consistent with the Fourth Amendment.  *See* 50 U.S.C. §1881a(b)(5).  Under these

circumstances, it would be eminently reasonable for any government official to believe that the

alleged surveillance activities are constitutional.

Yet the plaintiffs' misunderstanding of the qualified immunity doctrine goes deeper still.

Other than summarizing a handful of cases, the rest of their qualified immunity analysis consists

of the following:  "The Fourth Amendment clearly establishes the right to be free from

unreasonable searches and seizures.  The First Amendment establishes freedom to associate and

freedom of speech.  The law does not get more clearly established than that."  Pls.' Opp'n at 34.

This formulation contravenes longstanding precedent that forbids defining "clearly established

law at a high level of generality."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  "The general

proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment

is of little help in determining whether the violative nature of particular conduct is clearly

established."  *Id.*; *see Anderson*, 483 U.S at 639 ("For example, the right to due process of law is

quite clearly established by the Due Process Clause, and thus there is a sense in which any action

that violates that Clause (no matter how unclear it may be that the particular action is a violation)

violates a clearly established right.  Much the same could be said of any other constitutional or

statutory violation.  But if the test of 'clearly established law' were to be applied at this level of

generality, … [p]laintiffs would be able to convert the rule of qualified immunity … into a rule

of virtually unqualified liability simply by alleging violation of extremely abstract rights.").  The

plaintiffs' "general propositions" about the First and Fourth Amendments therefore do nothing to

advance the qualified immunity analysis.  *al-Kidd*, 563 U.S. at 742.

Instead, the proper question here is whether the plaintiffs' speculative and implausible

allegations about the bulk collection of telephony metadata under a defunct Section 215 program,

and the hypothetical collection of the plaintiffs' communications under Section 702, give rise to the violation of a clearly established First or Fourth Amendment right. For the reasons we have described in detail, they do not. *See supra* Section III(B); Defs.' Memo. at 24-30.

## IV.   Former President Obama Is Entitled To Absolute Presidential Immunity

While the plaintiffs' arguments regarding standing, the unavailability of a *Bivens* remedy, and qualified immunity all take some liberties with the law and facts, their discussion of absolute Presidential immunity is in a class by itself. In the single page that they devote to the subject, the plaintiffs manage to misrepresent the holding of a key Supreme Court decision, rely on case law that has been overruled by that very same Supreme Court decision, and defy their own pleadings.

In their own words, the plaintiffs have sued former President Obama "individually under *Bivens* and in his official capacity as the former President of the United States … from January 20, 2009 until January 20, 2017." Compl. ¶ 16. They allege that, "*[d]uring this time span*, Defendant Obama oversaw and ordered the illegal and/or unconstitutional actions of the CIA, FBI, NSA, and DNI and covered them up." *Id.* (emphasis added). Because the plaintiffs thus seek to hold former President Obama personally liable for actions he took *as President* that were "well within the outer perimeter of his authority" (*i.e.*, supposedly ordering federal agencies to conduct foreign intelligence surveillance activities), he enjoys absolute Presidential immunity from suit. *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982); *see* Defs.' Memo. at 32-34.

Undeterred by *Nixon v. Fitzgerald*, the plaintiffs continue to press claims against former President Obama that are unwarranted by existing law and for which they have no nonfrivolous argument for reversing the law. They first suggest that absolute Presidential immunity does not apply to "illegal or unconstitutional" actions. Pls.' Opp'n at 35. That is demonstrably wrong.

*See Nixon*, 457 U.S. at 756 (holding that President is entitled to absolute immunity despite "allegation that an action was unlawful, or was taken for a forbidden purpose").

The plaintiffs next cite a case in which the D.C. Circuit denied absolute immunity to former President Nixon for a claimed Fourth Amendment violation. *See* Pls.' Opp'n at 35 (citing *Halperin v. Kissinger*, 606 F.2d 1192, 1197 (D.C. Cir. 1979)). What the plaintiffs fail to mention is that the D.C. Circuit decided *Halperin* three years before the Supreme Court decided *Nixon v. Fitzgerald*. Or that the Supreme Court specifically mentioned the *Halperin* decision in *Nixon v. Fitzgerald* on this very issue: "Although the [D.C.] Court of Appeals had ruled in *Halperin v. Kissinger* that the President was not entitled to absolute immunity, this Court never had so held." *Nixon*, 457 U.S. at 743. Or that the Supreme Court in *Nixon* held exactly the opposite of the D.C. Circuit in *Halperin* by finding that "a former President of the United States[] is entitled to absolute immunity from damages liability predicated on his official acts," even acts that are allegedly unlawful. *Nixon*, 457 U.S. at 749.

Finally, the plaintiffs dredge up their dark conspiracy theory of the "Obama Deep State," speculating that former President Obama is still engaging in "unconstitutional mass surveillance" after his presidency ended "through those he left in charge." Pls.' Opp'n at 36. Such assertions merit little attention. As we already have noted, they are far too speculative to state a plausible claim for relief. *See* Defs.' Memo. at 32 n.6; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). And even if the Court were willing to go down the plaintiffs' rabbit hole, the act of leaving people in charge, *i.e.*, appointing cabinet members and federal agency heads, is clearly an act within the outer perimeter of a President's official duties and, thus, just as deserving of absolute Presidential immunity. *Cf. Nixon*, 457 U.S. at 756-57 (holding that former President Nixon was entitled to

absolute immunity for allegedly ordering discharge of Air Force employee in retaliation for employee exercising First Amendment rights).

The plaintiffs' claims against former President Obama, and their arguments in support of those claims, are harassing to the former President and waste this Court's valuable time and resources. But because the plaintiffs refuse to drop those claims, the Court should dismiss former President Obama on the additional ground that he enjoys absolute Presidential immunity.[5]

## V.    The Plaintiffs Have Sued Former FBI Director Comey In His Individual Capacity Only In Counts One And Two

The Government Defendants have shown that Counts Five and Seven, which assert common law tort claims for conversion and fraudulent misrepresentation, must be dismissed as currently pled for lack of subject matter jurisdiction because the plaintiffs have not named the correct party (the United States) and because they have not exhausted their administrative remedies. *See* Gov't Defs.' Memo. at 23-25. Erring on the side of caution, the Individual-Capacity Defendants further explained that, although former FBI Director Comey is named as a defendant in Counts Five and Seven, the plaintiffs' pleadings make it clear he is sued in those counts only in his official, but not his individual, capacity. *See* Defs.' Memo. at 34-35.

The plaintiffs do nothing to clarify the matter in their opposition brief. Here is what they say: "Because the Complaint also mentions that Individual-Capacity Defendant Comey is being

---

[5]  Attached to the plaintiffs' opposition brief is an "Affidavit of Process Server," which purports to show that a process server served President Obama's designated agent with a summons and a copy of the complaint in this case on July 12, 2017. Pls.' Opp'n Exh. A. Despite making multiple inquiries of former President Obama's personal attorney regarding this matter, the undersigned was unaware of this attempt at service until the plaintiffs filed their opposition brief. Without conceding that such service was proper, we withdraw the Rule 12(b)(5) portion of our motion to dismiss the claims against former President Obama.

sued individually under *Bivens* and officially under other causes of action [*sic*] does not limit his personal liability for Counts Five and Seven."  Pls.' Opp'n at 37.  Whatever this means, it cannot change the explicit allegation in the complaint that the plaintiffs have sued Comey in his individual capacity *only* under *Bivens*.  *See* Compl. ¶ 7.  If the plaintiffs wish to amend their complaint to try suing Comey in his individual capacity for common law torts, then they need to file a motion for leave to amend.  Of course, such an amendment would be futile because, as we have pointed out, Comey would be entitled to absolute immunity under the Westfall Act, 28 U.S.C. § 2679.  *See* Defs.' Memo. at 35.  But in the meantime, as currently pled, Counts Five and Seven are brought against Comey only in his former "official capacity as Director of the FBI," Compl. ¶ 7, and therefore should be dismissed for the reasons articulated by the Government Defendants.

## CONCLUSION

For the reasons stated above, the Court should grant the Individual-Capacity Defendants' motion to dismiss, dismiss Counts One and Two of the plaintiffs' complaint, and dismiss all of the Individual-Capacity Defendants from this lawsuit.

Respectfully submitted this 27th day of October 2017,

CHAD A. READLER
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

/s/ *James R. Whitman*
JAMES R. WHITMAN (D.C. Bar No. 987694)
Senior Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4169
Fax: (202) 616-4314

Attorneys for James Comey, Michael Rogers, John
Brennan, Mike Pompeo, James R. Clapper, Dan Coats,
and Barack Obama, solely in their individual capacity