# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR - 5 2018

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

DENNIS MONTGOMERY, *et al.*,               )
                                      )
        **Plaintiffs,**            )
                                        )
        **v.**                         )        **Civil Action No. 17-1074 (RJL)**
                                        )
JAMES COMEY, *et al.*,               )
                                        )
        **Defendants.**      )

## MEMORANDUM OPINION

March ___, 2018 [Dkts. ##7, 26, 27, 36]

Plaintiffs, Dennis Montgomery ("Montgomery") and Larry Klayman ("Klayman") filed the instant action against three federal agencies—the Federal Bureau of Investigations ("FBI"), the Central Intelligence Agency ("CIA"), and the National Security Agency ("NSA")—as well as seven current and former government officials—former President Barack Obama ("Obama"), Director of National Intelligence ("DNI") Daniel Coats ("Coats"), former DNI James Clapper ("Clapper"), CIA Director Mike Pompeo ("Pompeo"), former CIA Director John Brennan ("Brennan"), NSA Director Michael Rogers ("Rogers"), and former FBI director James Comey ("Comey"). Compl. [Dkt. #1] ¶¶ 5–16. Plaintiffs allege that defendants have engaged in "ongoing illegal, unconstitutional surveillance of millions of Americans," including high-profile Americans, such as the Chief Justice of the United States, President Donald J. Trump, other judges and justices across the nation, and prominent businessmen. *Id.* at ¶ 18. Plaintiffs claim that they, too, were targeted by this surveillance based on the fact that their personal and

business computers and cell phones were allegedly "hacked" by computers used by the CIA, the FBI, and the Department of Defense ("DOD"). *Id.* at ¶¶ 43–48, 56–62. According to plaintiffs, the FBI, under Comey's direction, sought to "cover-up" its wrongdoing by inducing Montgomery to turn over 47 computer hard drives containing evidence of the illegal surveillance. *Id.* at ¶¶ 28–37. They also claim that the FBI has refused to investigate plaintiffs' claims or return the incriminating hard drives. *Id.*

Based on this allegedly unlawful conduct by defendants, Klayman and Montgomery assert constitutional claims for violations of their First and Fourth Amendment rights, as well as common law tort claims for conversion and fraudulent misrepresentation. *Id.* at ¶¶ 67–80, 96–101, 109–20. They also seek injunctive relief and appointment of a special master to "conduct a real and through[sic] investigation of the information contained on the hard drives" and of "Defendants' attempts to and/or actual hacks of Plaintiff Klayman's Verizon Wireless cellular phone and Plaintiff Montgomery's computer." *Id.* at ¶¶ 81–95, 102–08.

These cases are before the Court on the Government Defendants' Motion to Dismiss and for Partial Summary Judgment, the Individual-Capacity Defendants' Motion to Dismiss, and Plaintiffs' Motion for a Preliminary Injunction. Upon consideration of the parties' submissions, and the entire record herein, defendants' motions are GRANTED, plaintiffs' motion is DENIED, and plaintiffs' complaint is DISMISSED with prejudice.

## BACKGROUND

This case—according to plaintiffs—is a "continuation" of three other lawsuits previously filed in this Court, in which Klayman has alleged that the federal government

2

and its agents have engaged in a "pattern and practice of illegally and unconstitutionally spying on millions of Americans." Pls.' Opp'n to Gov't Defs.' Mot. Dismiss & Mot. for Partial Summ. J. & Resp. to Opp'n to Mot for TRO [Dkt. #33] ("Pls' Opp'n") 1; Compl. ¶ 6. Two of those lawsuits—which have come to be known as "*Klayman I*" and "*Klayman II*"—have already been dismissed with prejudice, *see Klayman v. National Security Agency*, Civ. A. Nos. 13-851(RJL), 13-881(RJL), 2017 WL 5635668 (Nov. 21, 2017), and I have issued an order to show cause why the third should not be dismissed for the same reasons. *See Klayman v. Obama*, 14-cv-00092-RJL, Order [Dkt. #53]. Although plaintiffs admit that "there is a tremendous overlap in these cases," Status Hr'g Tr. 25:1–2, June 23, 2017 [Dkt. #12], there are some facts unique to the present suit, so I will provide a brief background of the specific allegations in this case.

The general theme of this action is similar to the previous three, and is a veritable anthology of conspiracy theorists' complaints. According to plaintiffs, "each and every" defendant has engaged in "ongoing illegal, unconstitutional surveillance of millions of Americans, including prominent Americans such as the [C]hief [J]ustice of the U.S. Supreme Court, other justices, 156 judges, prominent businessmen and others such as Donald J. Trump, as well as Plaintiffs themselves." *Id.* at ¶ 18. Plaintiffs claim that defendants have conducted—and continue to conduct—this surveillance "in numerous ways, including but not limited to, bulk telephony metadata collection similar to the now 'discontinued' Section 215 of the USA PATRIOT ACT as well as targeted 'PRISM' collection under Section 702 of the Foreign [Intelligence Surveillance] Act." *Id.* at ¶ 20. Plaintiffs further claim that "each and every" defendant in this case has covered up the

ongoing surveillance "by coordinating 'leaks' of sensitive information pertaining to those who may dare to oppose them or reveal their illegal, unconstitutional activities." *Id.* at ¶ 28.

Plaintiff Montgomery is a former NSA, CIA, and DNI contractor who has allegedly engaged in whistleblowing regarding defendants' unconstitutional surveillance. *Id.* at ¶ 33. He claims that, on August 19, 2015, he was induced by the FBI, under the direction of Comey, to turn over 47 hard drives, valued in excess of $50,000, which allegedly contained evidence of defendants' unconstitutional mass surveillance. *Id.* at ¶¶ 37–38. Specifically, this evidence consisted of 600,000,000 pages of data on over 20 million Americans, much of which was collected on behalf of the U.S. Government on computers supplied by the FBI. *See* Amended Aff. of Dennis Montgomery in Supp. of Pls.' Mot. TRO & Prelim. Inj. ("Montgomery Aff.") [Dkt. #9] ¶ 4. Montgomery alleges that he only gave the hard drives to the FBI because the FBI expressly promised that it would conduct an investigation of the mass surveillance. Compl. ¶ 38. Former General Counsel of the FBI, James Baker ("Baker"), allegedly assured plaintiffs that Comey was taking "hands on" supervision of the Montgomery investigation, given its importance. *Id.* at p. 3. Comey and the FBI, however, never conducted the investigation, and Montgomery alleges that they are concealing the hard drives in order "to ensure that the evidence contained therein is not investigated or revealed to the public and prosecuted." *Id.* at ¶ 39.

Montgomery also claims that, on or around December 21, 2015, he was interviewed under oath at the FBI field office in Washington, D.C. *Id.* at ¶ 40. During that three-hour interview, which was recorded on videotape, Montgomery set forth the NSA, CIA, and

4

DNI's pattern and practice of unconstitutional mass surveillance. *Id.* Although plaintiffs have contacted Baker numerous times regarding the status of the Montgomery investigation, they have been ignored. *Id.* at ¶ 41. Plaintiffs have, however, advised Baker not to destroy the evidence on Montgomery's hard drives or the evidence contained in Montgomery's oral testimony. *Id.* at ¶ 42. On March 27, 2017, Montgomery sent a Privacy Act of 1974 disclosure request to the FBI, pursuant to 5 U.S.C. § 552(a)(d)(1), in order to obtain a copy of "any and all documents that refer or relate in any way to any and all 302 reports of the interview" conducted by the FBI.[1] *Id.* at ¶ 48. On May 1, 2017, the FBI confirmed its receipt of Montgomery's request, but it has failed to produce any documents to him thus far. *Id.* at ¶ 51.

Montgomery also alleges that, on an unspecified date, the FBI "raid[ed his] house, [tied him] to a tree, threaten[ed] him and his family, and search[ed] and seiz[ed his] property without a valid warrant or probable cause." *Id.* at ¶ 34. Montgomery claims that he suffers from a brain aneurysm of which the FBI was aware at the time of the raid, and he believes that the FBI conducted this search and seizure of his home and property in order "to cause him severe emotional distress and potentially cause a fatal brain aneurysm." *Id.* at ¶¶ 33, 35.

Since these events, Montgomery claims he has been the victim of multiple hacking attempts against his home and business computers, as well as his Apple account, by each

---

[1] The FD-302 "is an internal form used by the FBI to document interviews conducted in law enforcement investigations." Decl. of David M. Hardy ("Hardy Decl.") [Dkt. 27-5] ¶ 22.

of the defendants in this case. *Id.* at ¶¶ 43, 47. Specifically, he alleges that he has traced the IP addresses of the hacking attempts to the FBI's Criminal Justice Information Systems office in Clarksburg, West Virginia; the DOD's Network Information Center in Columbus, Ohio; the CIA in Washington, D.C.; and the CIA in Langley, Virginia. *Id.* at ¶¶ 44–47. He also claims that Comey, the FBI, and other defendants have "continued to harass" him, and have "fed misleading and false information about him to journalists . . . to smear [his] name and destroy [his] reputation in order to render him an ineffective whistleblower." *Id.* at ¶ 36.

Plaintiff Klayman is a self-described "prominent public interest attorney who was the founder of Judicial Watch, Inc. and now Freedom Watch Inc." Compl. ¶ 53. Klayman has brought several lawsuits against the federal government, its agencies, and its officers for allegedly unconstitutionally spying on him and other Americans. *Id.* According to Klayman, he has been "publicly trying to raise awareness of, and demand an investigation into, Defendants' ongoing illegal and unconstitutional surveillance of millions of Americans, as well as to prosecute wrongdoers." *Id.* at ¶ 54. These efforts have included meeting with the House Intelligence Committee, the Senate Intelligence Committee, the House Judiciary Committee, and the Senate Judiciary Committee about the surveillance. *Id.* at ¶ 55. Klayman claims that he has been targeted by defendants because of these meetings and his other attempts to reveal defendants' unlawful surveillance.

In particular, Klayman alleges that, "almost immediately after" he contacted the chairman of the House Intelligence Committee regarding the FBI's cover-up of Montgomery's evidence, he "received a purported 'software update' on his Samsung

Galaxy" cell phone. *Id.* at ¶ 56. After installing the update, however, his phone "began acting abnormally," and "the battery [began] draining at an exponential rate." *Id.* at ¶ 57. Klayman allegedly took his phone to two different Verizon Wireless stores, and the technicians confirmed to him that the abnormalities were "not normal and highly suspect." *Id.* at ¶ 58. He further claims that both Samsung and his wireless carrier confirmed that neither of them had initiated the "software update." *Id.* at ¶ 59. According to Montgomery, "battery drainage is a tell-tale sign that Defendants have successfully hacked into a cellular phone," so Klayman was forced to purchase a new cell phone to avoid being monitored by defendants. *Id.* at ¶¶ 60–61.

In May 2017, however, Klayman's new phone began acting abnormally as well. In addition to the battery drainage problem, his phone began "erasing and downloading files on its own and without [his] consent." *Id.* at ¶ 62. Klayman claims that, according to WikiLeaks, defendants have developed malware that hacks into smart phones remotely in order to turn them "into recording and transmitting stations to spy on their targets." *Id.* at ¶¶ 63–64. Klayman believes that defendants are using this malware to hack into his phone because they are afraid that "Montgomery will reveal their ongoing conspiracy to the public and that [Klayman] will continue to push for an investigation." *Id.* at ¶ 66.

Based on these allegations, plaintiffs filed this lawsuit on June 5, 2017, alleging eight claims for relief against the federal agencies and individual defendants. *See* Compl. Plaintiffs have sued the individual defendants in both their official capacities and their individual capacities, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Compl. ¶¶ 7–16. In total, plaintiffs seek

compensatory damages in excess of $16,000,000, punitive damages in excess of $235,000,000, and equitable, declaratory, and injunctive relief. *Id.* at p. 32. Two weeks after filing their complaint, plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction. *See* Mot. TRO & Prelim. Inj. [Dkt. #7] ("Pls.' Mot.").

I held a hearing in this case on June 23, 2017, during which I consolidated plaintiffs' motion for a temporary restraining order and preliminary injunction into a motion for a preliminary injunction. *See* Status Hr'g Tr. 29:1–7, June 23, 2017. I also set a briefing schedule for defendants to submit any motions to dismiss, and I informed the parties that I would rule on the motion for a preliminary injunction and any motions to dismiss simultaneously. *See* Min. Order, June 27, 2017. The Government defendants subsequently moved to dismiss and for partial summary judgment, and the individual defendants moved to dismiss the claims against them in their individual capacities. *See* Gov't Defs.' Mem. of P. & A. in Supp. of Mots. Dismiss & for Partial Summ. J. & in Opp'n to Pls.' Mot. TRO & Prelim. Inj. [Dkt. #27-1] ("Gov't Defs.' Mem."); Mem. in Supp. of Individual-Capacity Defs.' Mot. Dismiss [Dkt. #36-1] ("Individual Defs.' Mem."). Those motions—as well as plaintiffs' motion for a preliminary injunction—are now ripe.

## STANDARD OF REVIEW

### A. Motion to Dismiss

The Government defendants have moved to dismiss Count VI of plaintiffs' complaint, which requests the appointment of a special master, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive defendants' motion, plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level,

on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a trial court generally must consider a plaintiff's factual allegations as true, the court should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Once this Court has satisfied itself that plaintiffs have asserted "well-pleaded factual allegations," *id.*, I must determine that the allegations are plausible. That is, plaintiffs' factual allegations must allow this Court "to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," if the factual allegations are proven true. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Defendants have also moved to dismiss Counts I–III, V, VII, and VIII of plaintiffs' complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). In ruling on such a motion, I "may consider the complaint alone or may consider materials beyond the pleadings," *Bickford v. Gov't of U.S.*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011) (internal quotation marks omitted), and I must view "the factual allegations of the complaint in the light most favorable to the non-moving party." *Loughlin v. United States*, 230 F. Supp. 2d 26, 35 (D.D.C. 2002). In this case, that means that I must view the complaint in the light most favorable to plaintiffs, but this does not diminish plaintiffs' obligation "to state a claim of standing that is plausible on its face." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal quotation marks and alteration omitted), *cert. denied*, 136 S. Ct. 900 (2016), *reh'g denied*, 136 S. Ct. 1250 (2016).

## B. Motion for Summary Judgment

The Government defendants have moved for partial summary judgment on Count VI of plaintiffs' complaint, which seeks to compel the FBI to comply with Montgomery's Privacy Act request. Under Rule 56(a) of the Federal Rules of Civil Procedure, this Court should render summary judgment in favor of defendants unless the pleadings, and any attachments to the pleadings, establish a "genuine dispute as to any material fact." The moving party bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant—here, defendants—makes that showing, the burden shifts to plaintiff to "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). Unless plaintiffs can demonstrate a genuine issue of material fact—which requires that they "cast more than metaphysical doubt" on the evidence—defendants are entitled to judgment as a matter of law. *Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993).

## C. Motion for Preliminary Injunction

Plaintiffs are seeking a preliminary injunction, and thus they must establish "[1] that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (internal quotation marks omitted). The third and fourth factors "merge when the Government is the opposing party." *Colo. Wild Horse v. Jewell*, 130 F.

Supp. 3d 205, 220–21 (D.D.C. 2015) (internal quotation marks omitted). Because the relief

plaintiffs seek is "an extraordinary remedy," a preliminary injunction "should be granted

only [if they carry] the burden of persuasion." *Chaplaincy of Full Gospel Churches v.*

*England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

## DISCUSSION

### A. Count I: Fourth Amendment Violation

Much like their claims in *Klayman I* and *Klayman II*, plaintiffs allege that the

individual-capacity defendants violated the Fourth Amendment by unreasonably searching

and seizing their personal records, as well as the records of "millions of innocent U.S.

citizens," without reasonable suspicion or probable cause and without describing with

particularity the place to be searched or the person or things to be seized. Compl. ¶¶ 69–

70. Specifically, plaintiffs allege that the NSA collected their electronic communications

using three distinct methods: (1) the PRISM program,[2] (2) a resurrected version of the

NSA bulk collection program,[3] and (3) hacking of their personal electronic devices with

---

[2] The PRISM program is an ongoing targeted collection program conducted pursuant to Section 702 of the Foreign Intelligence Surveillance Act ("FISA"). *See* 50 U.S.C. § 1881a. Under the PRISM program, the Government uses selectors—like e-mail addresses—to collect online communications of non-U.S. persons located abroad. *See Klayman*, 2017 WL 5635668, at *3–4, 13 (describing the PRISM program). Importantly, Section 702 expressly prohibits the Government from intentionally targeting a U.S. person overseas or any person known to be in the United States. *See* 50 U.S.C. § 1881a(b).

[3] Beginning in May 2006, and pursuant to its authority under Section 215 of the USA PATRIOT Act, the Government conducted the bulk telephony metadata program that plaintiffs challenge today. *See* Pub. L. No. 107-56, 115 Stat. 272, 287 (2001) (codified at 50 U.S.C. § 1861(a)(1)). As part of this program, the Government obtained orders from the Foreign Intelligence Surveillance Court ("FISC") directing certain telecommunications service providers to produce, in bulk, call-detail records, which contained metadata about telephone calls, including the time and duration of a call and the dialing and receiving

CIA malware. *Id.* ¶¶ 20, 63. Plaintiffs allege that they themselves have been targets of this surveillance, based on the fact that they "have worked visibly, in the public eye, to raise awareness of, and demand investigation into" defendants' illegal surveillance. *Id.* at ¶¶ 30, 66. The individual defendants counter that plaintiffs have failed to establish standing to pursue their Fourth Amendment claim, and thus Count I must be dismissed. *See* Individual Defs.' Mem. 4; Gov't Defs.' Mem. 9. I find that defendants are correct.

First, plaintiffs' standing to challenge defendants' alleged surveillance under the PRISM program is clearly foreclosed by the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013). In *Clapper*, the Supreme Court held that, in order to establish Article III standing, plaintiffs challenging surveillance under the PRISM program must sufficiently allege that "potential future surveillance is certainly impending or is fairly traceable to [the PRISM program]." *Id.* at 414. Plaintiffs challenging the PRISM program must therefore set forth facts tending to show that: (1) they have communications with persons abroad; (2) their foreign contacts would be targeted by the PRISM program; (3) the Government would seek FISC authorization to surveil their foreign contacts under the PRISM program; (4) the Government would actually succeed in

_____

numbers. *See Klayman*, 2017 WL 5635668, at *2. Once the data was collected, the Government created a repository where that data could be accessed and queried by NSA analysts for the purpose of detecting and preventing terrorist attacks. *See id.* In 2015, however, in response to many of the same Fourth Amendment concerns I articulated in my initial opinion in *Klayman I, see Klayman v. Obama*, 957 F. Supp. 2d 1, 38–44 (D.D.C. 2013), *vacated and remanded*, 800 F.3d 559 (D.C. Cir. 2015) (per curiam), Congress passed the USA FREEDOM Act, Pub. L. No. 114-23, 129 Stat. 268, which amended Section 215 of the USA PATRIOT Act to prohibit bulk collection by the Government. *See Klayman*, 2017 WL 5635668, at *7. The bulk telephony metadata collection program under Section 215 is therefore now defunct.

obtaining communications from their foreign contacts; and (5) their communications with their foreign contacts would be among those collected pursuant to the PRISM program. *See id.* at 411–14 (requiring the plaintiffs in *Clapper* to allege "specific facts demonstrating that the communications of their foreign contacts will be targeted"). Plaintiffs clearly have not carried their burden here.

In fact, plaintiffs have not even alleged—in their complaint, their Motion for a Preliminary Injunction, or their supporting affidavits—that they communicate with any persons abroad, let alone that they have reason to believe that their foreign contacts have been targeted under the PRISM program. Plaintiffs' allegations here are therefore *even less* colorable than those I dismissed for lack of standing under *Clapper* in *Klayman I* and *Klayman II*. *See Klayman*, 2017 WL 563668, at *13 (holding that Klayman failed to establish standing to challenge the PRISM program, even where he alleged that he "frequents and routinely telephones and e-mails individuals and high-ranking government officials in Israel" and communicates with persons in several other nations). Plaintiffs accordingly lack standing to challenge defendants' alleged surveillance under the PRISM program.

Second, plaintiffs claim that they, and millions of other Americans, have been targeted for surveillance by the bulk telephony metadata collection program formerly conducted by the NSA pursuant to Section 215 of the USA PATRIOT Act. *See Klayman*, 2017 WL 563668, at *2 (discussing the history of the government's now defunct bulk telephony metadata collection program). But as I held in *Klayman I* and *Klayman II*, the USA FREEDOM Act expressly prohibits the bulk collection of telephony metadata under

13

Section 215. *See* USA FREEDOM Act §§ 103, 109, 129 Stat. at 272, 276; 50 U.S.C. § 1861(c)(3); *see also Klayman*, 2017 WL 5635688, at \*9 (explaining that bulk telephony metadata collection pursuant to Section 215 is now prohibited by statute—under the USA FREEDOM Act—and by Order of the FISC). Because I must assume, absent evidence to the contrary, "that government officials will conduct themselves properly and in good faith," *In re Navy Chaplaincy*, 850 F. Supp. 2d 86, 94 (D.D.C. 2012), I presume that defendants have acted in accordance with the limitations imposed by the USA FREEDOM Act.[4] Thus, because the bulk telephony metadata collection program is no longer in existence—and plaintiffs have offered no evidence to suggest that defendants have resurrected it in violation of FISC order and statutory command—plaintiffs' challenges to that program do not present a live Article III case or controversy. *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (instructing that a court must dismiss a case as moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future" (internal quotation marks omitted)).

Third, plaintiffs allege that their personal cell phones and computers have been hacked by defendants, and that Montgomery has traced the IP addresses of the hacks to the NSA, the DOD, and the CIA. Compl. ¶¶ 43–47, 60–64, 86–87, 95. But plaintiffs' only support for these allegations is Montgomery's own opinion that his computer and

---

[4] As I already noted in *Klayman I* and *Klayman II*, even if defendants tried to resurrect the Section 215 bulk collection program in the future, the FISC has already made clear that it would not sanction such surveillance. *See Klayman*, 2017 WL 5635668, at \*9.

Klayman's phone showed signs of being hacked. Compl. ¶¶ 43–47, 60–61. Without more, these sparse allegations are "similar to those in a number of cases that district courts have dismissed for patent insubstantiality: that plaintiff was subjected to a campaign of surveillance and harassment" by the Government. *Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009); *see also, e.g.*, *Lewis v. Bayh*, 577 F. Supp. 2d 47, 54–55 (D.D.C. 2008) (rejecting as frivolous claims that a U.S. Senator orchestrated a program of hacking into plaintiff's personal computer and monitoring his phone calls); *Delaine v. United States Postal Serv.*, 2006 WL 2687019, *2 (D.D.C. 2006) (dismissing complaint where plaintiff alleged that the U.S. Postal Service kept her under surveillance by unlawfully using electronic devises), *aff'd* No. 06–5321, 2007 U.S. App. LEXIS 7371 (D.C. Cir. June 1, 2007). Because plaintiffs' claims regarding hacking of their cellular phones and computers constitute the sort of "patently insubstantial claims" routinely dismissed on jurisdictional grounds in our Circuit, I find that they, too, must be dismissed. *Tooley*, 586 F.3d at 1009, 1010 ("A complaint may be dismissed on jurisdictional grounds when it is patently insubstantial." (internal quotation marks omitted)).

## B. Count II: First Amendment Violation

In addition to their Fourth Amendment challenge to defendants' alleged surveillance programs, plaintiffs also challenge those programs under the First Amendment. Specifically, Klayman alleges that he has "suffered a chilling effect in his First Amendment rights" because he and his clients, including Montgomery, are "afraid to speak over the phone and communicate otherwise for fear of being surveilled by Defendants." *Id.* at ¶ 32. Klayman further asserts that his attorney-client privilege with his clients has been

compromised as a result of defendants' surveillance of his communications. *Id.* Plaintiffs also broadly contend that defendants' alleged actions "chill, if not 'kill' speech" and violate their freedom of association by making "over a hundred million of Americans" afraid to contact other persons via cell phone, the internet, or social media. *Id.* at ¶¶ 76–77. Unfortunately for plaintiffs, I find that they lack standing to pursue this First Amendment claim. How so?

The basis of plaintiffs' First Amendment claim is that the government has engaged in a pattern or practice of unlawful surveillance that has caused a chilling effect on their associations and communications and has caused them to fear being spied on by the government. *Id.* at ¶¶ 32, 76–77. But in order to establish that defendants' conduct caused a chilling effect sufficient to constitute a First Amendment violation, plaintiffs must first sufficiently allege that they have reason to believe that they were actually surveilled. As I have already concluded, however, plaintiffs have not made this showing. Instead, plaintiffs' assertions that they "are afraid to speak over the phone" because the Government may be monitoring their communications, Compl. ¶ 32, constitute nothing more than a subjective—and baseless—fear of surveillance, which the Supreme Court has held to be insufficient to confer standing in the First Amendment context. *See Clapper*, 568 U.S. at 418 (explaining that allegations of a subjective chilling effect on speech and association "'are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm'" (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). Thus, plaintiffs' self-inflicted fear of surveillance, without more, is not fairly traceable to

defendants' alleged surveillance activities, and plaintiffs accordingly lack standing to pursue their First Amendment claim. *See Clapper*, 568 U.S. at 418.

## C. Count IV: Appointment of a Special Master

Plaintiffs next request that this Court "appoint a Special Master with the appropriate security clearance to conduct a real and [thorough] investigation of the information contained on the hard drives" that Montgomery gave to the FBI and of the hacks of Klayman's cell phone and Montgomery's computer. Compl. ¶¶ 94–95. Appointment of a special master in this context, however, would be inappropriate under the Federal Rules of Civil Procedure. *See* Gov't Defs.' Mem. 28.

Under Federal Rule of Civil Procedure 53(a)(1), a district court may appoint a special master *only* to:

> "(A) perform duties consented to by the parties;
> (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:
>   (i) some exceptional condition; or
>   (ii) the need to perform an accounting or resolve a difficult computation of damages; or
> (C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."

None of these circumstances are present in this case. Defendants have understandably made clear that they do not consent to the appointment of a special master. *See* Gov't Defs.' Mem. 29. And plaintiffs are requesting a special master to "conduct a real and through[sic] investigation of the information contained on the hard drives," so the damages provision of Rule 53(a)(1) is not applicable. Compl. ¶¶ 94–95. Similarly, plaintiffs have not alleged—and I have no reason to believe—that this Court is ill-equipped to address any

pretrial matters in an effective and timely manner. *Cf. Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 821 n.2 (2d Cir. 1986) ("[T]he fact that the case involves complex issues of fact and law is no justification for reference to a Master, but rather is a [com]pelling reason for trial before an experienced judge." (internal quotation marks omitted)). That accordingly leaves only the "exceptional condition" element of Rule 53. But plaintiffs have offered no justification as to why their request constitutes an "exceptional condition" sufficient to justify the appointment of a special master, and I find none. *Cf. Meeropol v. Meese*, 790 F.2d 942, 961 (D.C. Cir. 1986) ("The decision whether to appoint a master lies within the discretion of the trial court. Such appointments are the exception and not the rule, and the decision not to name one will very rarely constitute an abuse of discretion." (internal citations and quotation marks omitted)). Plaintiffs' request to appoint a special master must accordingly be denied.

### D. Count V: Conversion

Plaintiffs' fifth cause of action alleges a claim of common law conversion. Specifically, Montgomery alleges that the FBI, under the direction of Comey, induced him to turn over 47 hard drives containing evidence of defendants' illegal surveillance, and he requests that I issue an order requiring defendants either to return the hard drives to him or to compensate him "with the fair market value of the hard drives at the time of the conversion." *Id.* at ¶ 101. Unfortunately for plaintiffs, I find that they have failed to properly allege a claim for conversion because the FBI and Comey—in his official capacity—are immune from suit.

It is axiomatic that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotation marks omitted). The only waiver of sovereign immunity that is conceivably applicable in this case is the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2679(a), which waives the United States' sovereign immunity for certain common-law tort claims, such as conversion. The FTCA instructs, however, that the "exclusive remedy" for a common law tort, such as conversion, "is an action against the United States rather than against the individuals or the particular government agencies." *Dorman v. Thornburgh*, 740 F. Supp. 875, 879 (D.D.C. 1990); *see also Springer v. Supreme Court of the United States*, No. 04-5140, 2004 WL 2348134, at *1 (D.C. Cir. Oct. 18, 2004) (per curiam) ("[T]he United States is the only proper defendant in an [FTCA] action."); 28 U.S.C. § 2679 ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive."). Thus, a plaintiff cannot invoke the FTCA by filing suit against a government agency or a government official in his official capacity. *See Cox v. Sec. of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990) ("Since the plaintiff elected to sue the Secretary of Labor in her official capacity rather than the government itself, the complaint must fail for that reason alone for lack of subject matter jurisdiction."). And a plaintiff also may not sue a government official in his individual capacity under the FTCA. *See Johnson v. United States*, 642 F. Supp. 2d 1, 3 n.3 (D.D.C. 2009) ("Only the United States is a

proper defendant to a claim under the FTCA. Therefore, a claim under the FTCA against the BOP's Director in his individual capacity must be dismissed for lack of subject matter jurisdiction." (internal citations omitted)).

Here, plaintiffs have failed to name the United States as a defendant. Instead, they have sued a government agency—the FBI—and a government official—Comey. *See* Compl. p. 28. Plaintiffs' failure to name the United States as a defendant therefore "requires dismissal for lack of subject-matter jurisdiction" because plaintiffs have not established a waiver of sovereign immunity under the FTCA. *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 17, 14 (D.D.C. 2015) ("If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." (internal quotation marks omitted)).

### E. Count VI: Injunctive Relief Under the Privacy Act of 1974

In Count VI of the Complaint, plaintiffs seek to compel the FBI to comply with the Privacy Act of 1974 and turn over all documentation related to Montgomery's interview with the FBI. Compl. at ¶ 108. Specifically, plaintiffs seek "any and all documents that refer or relate in any way to any and all 302 reports of [Montgomery's] interview" with the FBI. *Id.* at ¶ 103. I find, however, that the requested records are exempt from disclosure under the Privacy Act, and thus I must grant summary judgment in defendants' favor.

The Privacy Act of 1974, 5 U.S.C. § 552a, "regulates the collection, maintenance, use, and dissemination of information about individuals by federal agencies." *Mobley v. CIA*, 924 F. Supp. 2d 24, 35 (D.D.C. 2013) (internal quotation marks omitted), *aff'd* 806 F.3d 568 (D.C. Cir. 2015). Under the Act, any "agency that maintains a system of records"

must "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." 5 U.S.C. § 552a(d)(1). But agencies are permitted to exempt systems of records from this requirement under certain circumstances. *See id.* § 552a(j)(2). Specifically, exemption (j)(2) applies if "(1) the records are stored in a system of records that has been designated by the agency to be exempt from the Privacy Act's disclosure requirements, and (2) the system of records is 'maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal law[s]' and consists of 'information compiled for the purpose of a criminal investigation.'" *Boehm v. FBI*, 948 F. Supp. 2d 9, 18 (D.D.C. 2013) (quoting 5 U.S.C. § 552a(j)(2)).

Here, the 302 reports that plaintiffs seek fall squarely within exemption (j)(2). The FBI is an agency that "performs as its principal function . . . the enforcement of criminal law[s]." *Id.* And plaintiffs do not dispute that all 302 reports—including the one requested here—are maintained within the FBI's Central Records System, *see* Pls.' Opp'n 25–27, which is an exempt system of records pursuant to 28 C.F.R. § 16.96. *See* 28 C.F.R. § 16.96 (exempting the FBI's Central Records System from the access provision in 5 U.S.C. § 552a(d)); *see also Lee v. FBI*, 172 F. Supp. 3d 304, 308 (D.D.C. 2016) ("The FBI's CRS is a system of records specifically exempt from the individual access provision . . . of the Privacy Act to the extent permitted under 5 U.S.C. § 552a(j)(2), as implemented by 28 C.F.R. § 16.96."). Although our Circuit has held that documents contained in the FBI's Central Records System "qualify for exemption *only* if they constitute law enforcement

21

records within the meaning of the statute," the requested documents at issue in this case clearly meet that standard. *Doe v. FBI*, 936 F.2d 1346, 1353 (D.C. Cir. 1991) (emphasis added). FD-302 reports are necessarily related to the FBI's law enforcement function. *See* Hardy Decl. ¶ 22 (defining a 302 report as a form "used by the FBI to document interviews conducted in law enforcement investigations"). And this court has held that exemption (j)(2) specifically applies to 302 reports. *See, e.g., Taylor v. U.S. Dep't of Justice*, 257 F. Supp. 2d 101, 107 (D.D.C. 2003) (concluding that FD-302 reports contained in the FBI's Central Records System "are wholly exempt under [Privacy Act] exemption (j)(2)"). Defendants' motion for summary judgment on this count must accordingly be granted.

## F. Count VII: Fraudulent Misrepresentation

Plaintiffs next claim that the FBI, "at the direction of and under the leadership of Defendant Comey," falsely represented to Montgomery that the FBI would conduct an investigation into the evidence contained on his hard drives and in his oral testimony. *Id.* at ¶ 110. They allege that the FBI made this false representation with knowledge of its falsity and with an intent to deceive Montgomery in order to induce him to turn over his hard drives and provide testimony under oath. *Id.* at ¶ 111. Unfortunately for plaintiffs, their claim for fraudulent misrepresentation suffers the same fate as their claim for conversion.

Fraudulent misrepresentation, like conversion, is a common-law tort claim that may only be asserted against the United States pursuant to a waiver of sovereign immunity under the FTCA. And "the United States is the only proper defendant in an [FTCA] action." *Springer*, 2004 WL 2348134, at *1. Here, plaintiffs have failed to name the

United States as a defendant. *See* Compl. p. 30 (naming Comey and the FBI as the sole defendants under Count VII). Thus, like their claim for conversion, plaintiffs' claim for fraudulent misrepresentation must be dismissed for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.").

### G. Count VIII: Fourth Amendment Violation

The second Fourth Amendment claim in this case is different in kind from the first, but it ultimately must suffer the same fate. Montgomery claims that the FBI violated his Fourth Amendment rights when its agents raided his home, tied him to a tree, threatened him and his family, and searched and seized his property without probable cause or a warrant. Compl. ¶ 117. To compensate him for his alleged injuries, he seeks an award of compensatory and actual damages in excess of $3 million, and punitive damages in excess of $30 million. *Id.* at ¶ 120. I have concluded, however, that Montgomery's claim is barred. How so?

The Supreme Court has made clear that "[f]ederal constitutional claims for damages are cognizable only under *Bivens*[, 403 U.S. at 388], which runs against individual government officials personally. *Loumiet v. United States*, 828 F.3d 935, 945 (D.C. Cir. 2016). Otherwise, "sovereign immunity shields the Federal Government and its agencies from suit." *Debrew v. Atwood*, 792 F.3d 118, 124 (D.C. Cir. 2015). Here, plaintiffs named only the FBI as defendant for the alleged violation of Montgomery's Fourth Amendment rights and resulting injuries; they did not name any defendants in their individual capacities or otherwise allege a *Bivens* claim. *See* Compl. p. 31. Plaintiffs' Fourth Amendment claim

23

under Count VIII must therefore be dismissed for lack of subject matter jurisdiction. *Cf. Meyer*, 510 U.S. at 457 ("Sovereign immunity is jurisdictional in nature.").

## H. Plaintiffs' Motion for a Preliminary Injunction

In Count III of their Complaint, plaintiffs request preliminary and permanent injunctive relief to stop the government from wiretapping and surveilling them in violation of their Fourth Amendment rights. Compl. ¶¶ 81–88. In their Motion for a Preliminary Injunction, plaintiffs request additional equitable relief that encompasses Counts V, VI, and VII of their Complaint. Specifically, plaintiffs request that I issue an order enjoining defendants from: (1) destroying evidence of their constitutional violations contained on Montgomery's hard drives; (2) destroying documents related to Montgomery's interview with the FBI; and (3) continuing their conversion of Montgomery's hard drives. Pls.' Mot. 15–16. Unfortunately for plaintiffs, I find that they have not met their burden for a preliminary injunction for any of the relief that they seek.

To begin with, plaintiffs cannot show a likelihood of success on the merits[5] on any of the claims that form the basis of their motion for a preliminary injunction. As discussed, plaintiffs cannot prevail on their Fourth Amendment claim regarding unlawful surveillance

---

[5] There is tension in the case law regarding whether a plaintiff seeking a preliminary injunction must show a "likelihood of success on the merits" or a "substantial likelihood of success on the merits." *Compare Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (requiring the plaintiff to show "likely" success on the merits), *with Sottera, Inc. v. FDA*, 627 F.3d 891, 893 (D.C. Cir. 2010) (requiring the plaintiff to show a "substantial likelihood" of success on the merits). Unfortunately, our Circuit has avoided clarifying the standard. *See, e.g., Pursuing America's Greatness v. Fed. Elec. Comm.*, 831 F.3d 500, 505 n.1 (D.C. Cir. 2016) ("We need not resolve here any tension in the case law regarding the showing required on the merits for a preliminary injunction. . . . [because plaintiff] meets either standard."). But even if plaintiffs need only show a likelihood of success on the merits—the less demanding standard—they have patently failed to do so. I therefore need not resolve the ambiguity our Circuit has left in play on this issue.

because they lack standing to do so, they cannot prevail on their common-law tort claims for conversion and fraudulent misrepresentation because they have sued the wrong parties, and they cannot prevail on their claim under the Privacy Act because the requested documents are exempt from disclosure. Plaintiffs thus have failed to satisfy the first—and most important—factor for a preliminary injunction.[6] *See Elec. Privacy Info. Ctr. v. FTC*, 844 F. Supp. 2d 98, 101 (D.D.C. 2012) ("The likelihood of success requirement is the most important of these factors.").

Plaintiffs also have not shown that they are likely to suffer irreparable harm in the absence of an injunction. Because I have already concluded that plaintiffs' allegations of government surveillance and hacking are speculative, at best, those allegations necessarily cannot support a finding of irreparable harm. *See Brown v. Dist. of Columbia*, 888 F. Supp. 2d 28, 31–32 (D.D.C. 2012) (explaining that the standard for establishing irreparable harm is "quite high," and that the impending harm must "be both certain and great" as well as "actual and not theoretical"). And plaintiffs' allegations of conversion, non-disclosure, and fraudulent misrepresentation fare no better. Plaintiffs allege that they would suffer irreparable harm if Montgomery's hard drives and video interview are not preserved because they constitute "direct proof" of defendants' unconstitutional spying on which this

---

[6] Our Circuit has traditionally evaluated the four factors required for a preliminary injunction on a "sliding scale," such that, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). It is not clear, however, whether our Circuit's sliding-scale approach survives the Supreme Court's decision in *Winter*, 555 U.S. at 7. *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction." (internal quotation marks omitted)). I need not, however, resolve our Circuit's lack of clarity on this issue because I conclude that a preliminary injunction is improper "even under the less demanding sliding-scale analysis." *Id.*

lawsuit is premised. Pls.' Mot. 16. The harm that plaintiffs fear, however, is unwarranted. At the status conference in this case, counsel for the Government defendants represented to this Court that the "hard drives are in a secure facility with the [I]ntelligence [C]ommunity's Office of Inspector General" and that there was "no risk" that they were "going to be destroyed anytime soon." Status Hr'g Tr. 15:13–18, 19:13–15, June 23, 2017. I also instructed the Government to put a litigation hold on the video of the interview, as well as any related FD-302 reports, *id.* at 33:16–25, and the Government has confirmed that it has done so. Gov't Defs.' Mem. 42. Plaintiffs therefore cannot show that the impending harm they fear is anything more than theoretical.

Finally, plaintiffs have not shown that the balance of equities weighs in favor of granting a preliminary injunction here. Plaintiffs' primary argument on this point is that, without preservation of the hard drives and the interview tapes, they "will lose the material evidence in this case." Pls.' Mot. 18. But as I have already explained, the Government has represented to this Court that there is a litigation hold preventing the destruction of either the hard drives or the interview tapes. There is accordingly no need for a preliminary injunction to ensure that plaintiffs' material evidence is preserved. Plaintiffs also claim that public interest considerations counsel in favor of issuing an injunction here because "'[i]t is always in the public interest to prevent the violation of a party's constitutional rights.'" *Id.* at 19 (quoting *Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 898 F. Supp. 2d 73, 84 (D.D.C. 2012). But, as I have already concluded, plaintiffs have not made the requisite showing that a constitutional violation actually occurred here.

Plaintiffs accordingly cannot show that it would be in the public interest to grant an injunction to prevent the alleged unconstitutional surveillance they allege has occurred.

## CONCLUSION

This case marks what I expect will be the end of this Court's role in adjudicating plaintiff Klayman's challenges to the Government's various surveillance programs. While the diligence with which Klayman has sought to protect Americans' constitutional rights against Government overreach over the last four and a half years is admirable, the allegations in this case, though sincerely advanced, are largely frivolous and duplicative of ones I have already found to be insufficient in *Klayman I* and *Klayman II*. As such, I have no choice but to dismiss this case as well.

Thus, for all the reasons stated herein, the Government Defendants' Motion to Dismiss and for Partial Summary Judgment is GRANTED, the Individual Defendants' Motion to Dismiss is GRANTED, and Plaintiffs' Motion for a Preliminary Injunction is DENIED. Plaintiffs' complaint is accordingly DISMISSED with prejudice. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge